IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **LEE ELBAZ**, <br><br> *Defendant*. | Criminal No. 18-157-TDC |

### MS. ELBAZ'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE SINCE THE CHARGED OFFENSES ARE IMPROPERLY BASED ON EXTRATERRITORIAL CONDUCT

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Lee Elbaz respectfully moves the Court to dismiss Count One (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349) and Counts Two, Three, and Four (wire fraud, in violation of 18 U.S.C. § 1343, and aiding and abetting wire fraud, in violation of 18 U.S.C. § 2). None of the statutory provisions cited in the Indictment may be applied to reach the extraterritorial conduct alleged in the Indictment.

### BACKGROUND

The Indictment contains few factual allegations about Ms. Elbaz relating to Count One's charge of conspiracy to defraud binary options investors and no allegations of conduct in or touching the shores of the United States. The Indictment alleges that, Ms. Elbaz, a resident of Israel, for a few months served as "Chief Executive Officer" of Yukom, an Israeli company, and, at times, represented herself as the "Trading Floor Manager" for BinaryBook and BigOption, Internet-based binary options companies that are not alleged to be based in, or operate in, the

United States. Indictment, ECF No. 37, ¶¶ 1–3, 6–7. Ms. Elbaz is alleged to have "supervised representatives of BinaryBook and BigOption, at Yukom and elsewhere," *id.* ¶ 8; *accord id.* ¶ 21, with no allegation that the "elsewhere" included the United States. Lastly, the Indictment alleges that Ms. Elbaz received emails from unnamed individuals, *id.* ¶¶ 22(a), 22(e), 24(a), 26(a), 26(d), 30(a)-(b), 38(a), 38(d); corresponded with two unnamed individuals concerning an "upcoming training course," *id.* ¶¶ 22(a), 22(e); and once emailed a representative to have a "bonus" added to an unidentified investor's account, *id.* ¶ 39. None of these emails is alleged to have been to or from the United States. At no point does the Indictment allege that Ms. Elbaz ever visited, interacted with, or knowingly targeted the United States. It is not alleged that an object of the conspiracy she allegedly joined was to defraud people in the United States.

The Indictment makes no factual allegations relating to Ms. Elbaz with respect to the charges of wire fraud and aiding and abetting wire fraud in Counts Two, Three, and Four. Instead, those Counts contain two boilerplate paragraphs and a list of three wire communications by "Representative F," "Representative G," and "Binary Book's 'Compliance Department'"— unnamed individuals and a Department not identified or referenced anywhere else in the Indictment, none of whom are alleged to have been in the United States—that reached three investors who were located in Maryland. *Id.* ¶¶ 41–42; *see* Def.'s Mot. to Dismiss the Indictment for Failure to State an Offense, ECF No. 58, at 10. There is no factual allegation tying these communications to Ms. Elbaz; nor is there any factual allegation that these communications were designed to defraud their Maryland-based recipients.

# ARGUMENT

Federal statutes are presumed to operate only within the borders of the United States. *See, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115–16 (2013). The Supreme Court has outlined "a two-step framework for analyzing extraterritoriality issues:"

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. . . . If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. ___, ___, 136 S. Ct. 2090, 2101 (2016).

Thus, if a statute is not intended to apply extraterritorially, then it can only apply if the facts alleged, based on the focus of the charged statute, would constitute a domestic application of the statute.

If, on the other hand, the statute was intended to apply extraterritorially, the Court must then determine whether the extraterritorial application of the statute to the alleged facts would violate the Due Process Clause of the Fifth Amendment. In making this determination, a court must ask whether "there is 'a sufficient nexus between the defendant and the United States,' so that applying a particular statute to the accused 'would not be arbitrary or fundamentally unfair.'" *United States v. Murillo*, 826 F.3d 152, 156 (4th Cir. 2016) (quoting *United States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012)); *see, e.g.*, *United States v. Bocachica*, 57 F. Supp. 3d 630, 632–33 (E.D. Va. 2014). Prosecuting the defendant in the United States is arbitrary if her actions did not "affect[] significant American interests." *Murillo*, 826 F.3d at 157 (internal

quotation mark omitted). Further, prosecution in the United States is fundamentally unfair unless the defendant "would reasonably understand that [her] conduct was criminal and would subject [her] to prosecution somewhere"; in other words, "self-evidently criminal." *Id.* at 156–57 (quoting *Brehm*, 691 F.3d at 552, 554).

I. **THE COURT SHOULD DISMISS COUNT ONE.**

   A. **Section 1349 does not apply extraterritorially.**

Section 1349 does not apply extraterritorially. That statute states:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 1349. On its face, Section 1349 contains no language indicating Congress intended this statute to reach conspiracies entered into abroad. Although the statute says "any person," that language is not so broad as to encompass any person anywhere in the world. Indeed, the Supreme Court has explained that "it is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality." *Kiobel*, 569 U.S. at 118. Consequently, in the absence of any clear language indicating Congress intended Section 1349 to extend beyond the borders of the United States, the Government cannot prosecute such conduct under this statutory provision. *See RJR Nabisco*, 136 S. Ct. at 2100–01.[1]

   B. **Count One does not allege domestic conduct relevant to the "focus" of Section 1349.**

Since Section 1349 does not have extraterritorial application to foreign conspiracies, Count One must be dismissed unless it alleges domestic conduct relevant to the focus of the

---

[1] Even if the Court decides to look beyond the statutory text and assesses Section 1349's extraterritorial application based on the reach of the underlying offense of wire fraud, *see, e.g.*, *United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015), the Court would reach the same result. For the reasons discussed below, Section 1343 does not apply extraterritorially. *See infra* at 9–10.

4

statutory offense. It does not. Count One contains no factual allegations that Ms. Elbaz entered into an agreement in the United States or with others in the United States to commit wire fraud.

Section 1349's "focus" is on *the agreement* to commit a subsequent criminal act. *See* 18 U.S.C. § 1349; *RJR Nabisco*, 136 S. Ct. at 2101. Indeed, because Section 1349 does not require an overt act, *see United States v. Chinasa*, 489 F. App'x 682, 685–86 (4th Cir. 2012); *United States v. Williams*, 820 F. Supp. 2d 663, 664 (D. Md. 2011), the agreement itself is the only conduct being criminalized. *See United States v. Melgar–Hernandez*, 832 F.3d 261, 265 (D.C. Cir. 2016) ("[W]hen no overt act is required for the commission of conspiracy, it has been held that an agreement in state *A* to commit a crime in state *B*, is a conspiracy with its situs in state *A*." (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 4.4 (2d ed. 2015))). Thus, the Court's analysis must center on whether Ms. Elbaz was in the United States when she purportedly entered into the alleged conspiratorial agreement or whether those with whom she entered the agreement were in the United States at the time of the agreement.

The conduct alleged relevant to the formation of the alleged conspiracy occurred entirely abroad. Ms. Elbaz is alleged to be a resident of a foreign country, working for a foreign-based company. *See* Indictment ¶¶ 1–2, 6. Her foreign-based employer is alleged to have provided services to BinaryBook and BigOption, two Internet-based companies, neither of which is alleged to have been based in or have done business in the United States. *Id.* ¶ 3. In fact, the only allegation in Count One that references the United States is a passing statement that "Yukom provided retention services on behalf of BinaryBook and BigOption through the use of communications by email and by phone to individuals in the United States, including in the District of Maryland, and elsewhere throughout the world." *Id.* ¶ 4. But, that allegation does not identify any conspiratorial conduct and no conduct at all by Ms. Elbaz. It certainly does not

5

allege that Ms. Elbaz was in the United States when she entered into the alleged conspiracy. Nor does it allege that any of her alleged co-conspirators were in the United States when they entered into a conspiracy with Ms. Elbaz. Consequently, to the extent Count One alleges an unlawful conspiracy by Ms. Elbaz, it is not an offense that occurred in the United States.

In the absence of any allegation that the conspiracy was made in the United States or with anyone based in the United States, allegations that the agreement made abroad to defraud binary options investors reached some investors who were in the United States does not support the conclusion that Count One involves a domestic application of Section 1349. The fact that a supposed scheme may have incidentally touched the United States does not make it domestic conduct. Indeed, the Supreme Court has noted that "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." *Morrison v. Nat'l Australia Bant, Ltd.*, 561 U.S. 247, 266 (2010). The fact that some binary options investors may have been located in the United States and the purported foreign conspiracy may have been broad enough to reach them does not transform the allegations in Count One to a domestic application of Section 1349. Since Section 1349 does not apply extraterritorially and the conspiracy alleged in Count One does not constitute a domestic application of that statute, Count One must be dismissed.

### C. Even if Section 1349 applies extraterritorially, applying Section 1349 to reach the conduct alleged in Count One would violate due process.

Even if Section 1349 could be applied extraterritorially, prosecuting Ms. Elbaz in the United States for the offense alleged in Count One would be arbitrary and, therefore, violate the

6

Due Process Clause. The United States does not have a broad interest in preventing fraud on the Internet, worldwide, and, even if it does, the conduct alleged did not affect that interest.

This case presents facts diametrically opposed to those in which courts have found "significant American interests" affected by a defendant's foreign conduct. In *Murillo*, for example, the Fourth Circuit held the United States has a "significant interest in protecting its diplomatic agents while they represent this country abroad" and that such interest was affected by the defendant's participation in the kidnapping and murder of a DEA Special Agent. 826 F.3d at 157. Similarly, in *Brehm*, the Fourth Circuit held that the United States has a significant interest in "preservation of law and order on [its] [military] bases" and that the defendant, a foreign national employed by a military contractor headquartered in Virginia, affected that interest when he stabbed a British citizen on a U.S. base abroad. 691 F.3d at 552–53. Those cases stand for the proposition that the United States has a significant interest in protecting its assets in foreign countries, whether those assets are individual Americans or physical assets. There is no similar interest implicated on the facts alleged in the Indictment. Here, unlike in those cases, there is no asset of the United States that needs protection abroad and no action by the accused that could cause that asset harm. The United States does not have a "significant interest" in preventing all fraud on the Internet at all times.

While the United States may have a significant interest in preventing fraud of Americans on the Internet, the allegations in Count One do not make out a claim that Ms. Elbaz joined in any conspiracy to defraud Americans. And, in any event, an agreement itself does not qualify as an "*action*[] [that] *affected*" an American interest—it is an inchoate offense, the only act involved being a meeting of the minds. *Cf. Murillo*, 826 F.3d at 157 (emphases added) (internal quotation marks omitted); *see also Chinasa*, 489 F. App'x at 685–86 (4th Cir. 2012) (Section

7

1349 does not require an overt act); *Williams*, 820 F. Supp. 2d 664 (D. Md. 2011) (same). The act of making an agreement to do something in the future (even if that something were to have a global effect and, therefore, have some impact on people in the United States) does not in and of itself have any impact in the United States. Consequently, even were such an agreement to exist, it would not be action affecting any significant American interest.

Moreover, applying the statute to Ms. Elbaz would be fundamentally unfair. The Indictment alleges only that Ms. Elbaz worked at Yukom in a supervisory role, received certain emails, responded to others, and once emailed a representative about a "bonus," disconnected from any other allegation about a scheme and not alleged to have involved anyone in the United States. *See* Indictment ¶¶ 1–3, 6–8, 21, 22(a), 22(e), 24(a), 26(a), 26(d), 30(a)–(b), 38(a), 38(d), 39. Those facts do not reflect "self-evidently criminal" behavior. This is not a case in which Ms. Elbaz signed an agreement with an American employer, *cf. Brehm*, 691 F.3d at 549, or one in which there exists a treaty that provides "global notice" defining and condemning binary options investment fraud, *cf. Murillo*, 826 F.3d at 158 (finding due process satisfied where United States signed treaty that created mechanism for extradition for kidnapping and murdering an Important Political Person ("IPP"), where the defendant was from a signatory State Party and had murdered an IPP). Further, there is no allegation in the Indictment that Ms. Elbaz was engaged in activity that was illegal in her home country. In short, the Indictment fails to allege that Ms. Elbaz had reason to know that her conduct could subject her to prosecution in the United States, and it would offend principles of due process to force her to stand trial here.

Thus, Count One involves an impermissible extraterritorial application of Section 1349. The statute does not apply extraterritorially and Count One does not allege a domestic application of the conduct relevant to the statute's focus. Moreover, even if the statute did apply

extraterritorially, it would offend the Due Process Clause to make Ms. Elbaz stand trial in the United States, Accordingly, Count One must be dismissed.

## II. THE COURT SHOULD DISMISS COUNTS TWO THROUGH FOUR.

### A. Section 1343 does not apply extraterritorially

Section 1343 states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343.

By its plain terms, Section 1343 does not apply extraterritorially. The statute does not contain any express language reflecting Congress's intent to reach conduct occurring outside the United States. While the statute references "foreign commerce," the Supreme Court has expressly addressed such general references and concluded that, standing alone, those phrases are insufficient to rebut the presumption against extraterritoriality. *See Morrison*, 561 U.S. at 254; *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014) (applying *Morrison* to conclude that the reference to "foreign commerce" in the wire fraud statute does not indicate Congress's intent for the statute to apply extraterritorially), *rev'd on other grounds*, 136 S. Ct. 2090. Other courts to consider the breadth of Section 1343 also have concluded it does not apply

9

extraterritorially. *See, e.g.*, *United States v. Hussain*, No. 16-462-CRB, 2017 WL 4865562, at *2 (N.D. Cal. Oct. 27, 2017); 251 F. Supp. 3d at 103; *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 101–02 (D.D.C. 2017); *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1127 (N.D. Cal. 2015).[2]

### B. Counts Two through Four do not allege a domestic application of Section 1343.

The few courts to consider whether the conduct at issue under Section 1343 is sufficiently domestic to fall within the statute's focus have fractured in their methodology for making this determination. *Hussain*, 2017 WL 4865562, at *4 (comparing approaches). Some courts have determined the statute's "focus" to be the use of the wires, while others have concluded that the statute's focus is on the broader scheme to defraud. *See, e.g.*, *id.* at *3–4; *All Assets Held at Bank Julius*, 251 F. Supp. 3d at 102–03; *see also Elsevier Inc. v. Grossman*, 199 F. Supp. 3d 768, 784 (S.D.N.Y. 2016) (assessing "focus" of the mail fraud statute).

Whether this Court views the wire fraud statute's "focus" as being on the use of domestic wires or on the broader scheme to defraud, the conduct alleged in Counts Two through Four is not sufficiently domestic to be within the Government's reach. The alleged scheme to defraud was devised and implemented abroad. Further, the alleged wires to and from the United States are not adequately tied to the alleged scheme to defraud and lack sufficient allegations that Ms. Elbaz knowingly caused wires to be sent to or from the United States in furtherance of the alleged foreign scheme to defraud. Although the Indictment lists three wire communications

---

[2] The Third Circuit has read *Pasquantino v. United States* to stand for the proposition that the wire fraud statute applies extraterritorially. *See United States v. Georgiou*, 777 F.3d 125, 137 (3d. Cir. 2015). In *Pasquantino*, the Supreme Court held that the wire fraud statute could be applied to reach a scheme to defraud a foreign government of tax revenue, but the Court also affirmatively stated that criminalizing the scheme at issue did *not* require extraterritorial application of 18 U.S.C. § 1343. 544 U.S. 349, 371 (2005). Thus, *Georgiou* is a misreading of *Pasquantino* and should not be followed by this Court.

undertaken by Representative F, Representative G, and BinaryBook's "Compliance Department," *see* Indictment ¶ 42, there is not a single allegation in the Indictment that ties either of those individuals or that Department to Ms. Elbaz. *See id.* ¶ 41; *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) (it is not enough to parrot the statute or simply state the elements of the charged offense—the indictment must contain the "*essential facts*" of the offense in order to survive a defendant's motion to dismiss).

### C. Even if Section 1343 applies extraterritorially, applying Section 1343 to reach the conduct alleged in Counts Two through Four would violate principles of due process.

Even if Section 1343 applies extraterritorially, prosecuting Ms. Elbaz in the United States for the offenses alleged in Counts Two through Four would be arbitrary. While the United States may have a "significant interest" in preventing use of wire communications in furtherance of schemes to defraud Americans, the allegations in Counts Two through Four do not make out charges that Ms. Elbaz devised or intended to devise a scheme to defraud Americans and caused the transmission of a wire communication in furtherance of that scheme. As discussed, those Counts do not provide any factual allegations supporting the boilerplate claim that Ms. Elbaz devised a scheme to defraud binary options investors in the United States. *See* Indictment ¶ 41. Moreover, even if a scheme existed, the wire communications outlined in Paragraph 42 are disconnected from that scheme, because there is no factual allegation that the individual using those wires bear any connection to Ms. Elbaz. *Id.* ¶ 42. As such, Counts Two through Four do not allege any action by Ms. Elbaz to cause wires to be sent to or from the United States to further a scheme to defraud people in the United States. Whatever "significant American interest" exists, there is no allegation that Ms. Elbaz took "actions [that] affected" that interest. *Cf. Murillo*, 826 F.3d at 157.

Similarly, too, applying Section 1343 to Ms. Elbaz on these facts would be fundamentally unfair. In the absence of any allegation that Ms. Elbaz committed any act that was criminal in Israel where she resided and where she engaged in the conduct at issue, it cannot be said that she would recognize her behavior as criminal. *Cf. id.* at 158; *Brehm*, 691 F.3d at 549. And, the acts alleged plainly do not qualify as "self-evidently criminal" behavior. The wires to and from the United States were with individuals purportedly affiliated in some way with BinaryBook and BigOption and it is not alleged that they bear any connection to Ms. Elbaz, much less that she caused them to be sent in furtherance of a fraud perpetrated in the United States. *See* Indictment ¶ 42. Consequently, it is not even clear what Ms. Elbaz *did*. It would offend principles of due process to force her to stand trial in the United States.

Accordingly, Counts Two through Four involve an impermissible extraterritorial application of Section 1343. The statute does not apply extraterritorially and Counts Two through Four do not allege a domestic application of the conduct relevant to the statute's focus, whether that focus is deemed to be on the use of wires or on a broader scheme to defraud. Moreover, even if the statute does apply extraterritorially, it would offend the Due Process Clause to make Ms. Elbaz stand trial in the United States. Thus, these Counts should be dismissed.

## CONCLUSION

The Court should dismiss the Indictment in its entirety. The charged statutes do not apply extraterritorially, and the Indictment does not allege facts that would constitute a domestic application of those statutes to Ms. Elbaz. Application of these statutes to Ms. Elbaz would not offend the Due Process Clause.

Date: May 16, 2018

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS RUSSELL ENGLERT ORSECK
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411-L
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
Email: bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*

## CERTIFICATE OF SERVICE

On this 16th day of May, 2018, I directed the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411 L
Washington, District of Columbia 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
Email: bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*