IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **LEE ELBAZ**, <br><br> *Defendant*. | Criminal No. 18-157-TDC |

### MS. ELBAZ'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Lee Elbaz respectfully moves the Court to dismiss Count One (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349) and Counts Two, Three, and Four (wire fraud, in violation of 18 U.S.C. § 1343, and aiding and abetting wire fraud, in violation of 18 U.S.C. § 2) for failure to state an offense.

### BACKGROUND

Count One of the Indictment charges Ms. Elbaz with participating in a wire fraud conspiracy in violation of 18 U.S.C. § 1349, and Counts Two through Four charge her with substantive wire fraud in violation of 18 U.S.C. § 1343. Counts Two through Four also cite 18 U.S.C. § 2 as an alternate theory of liability.

The Indictment contains few factual allegations about Ms. Elbaz relating to Count One's alleged conspiracy to defraud binary options investors. Ms. Elbaz is alleged to be a resident of Israel who worked for Yukom Communications ("Yukom"), an Israel-based company that provided services to two Internet-based binary options companies, BigOption and BinaryBook.

Indictment, ECF No. 37, ¶¶ 1, 6. Ms. Elbaz is alleged to have served as "Chief Executive Officer" of Yukom for a few months, and, at times, allegedly represented herself as the "Trading Floor Manager" for BinaryBook and BigOption. *Id.* ¶¶ 6–7. Additionally, Ms. Elbaz is alleged to have "supervised representatives of BinaryBook and BigOption, at Yukom and elsewhere." *Id.* ¶ 8; *accord id.* ¶ 21. Ms. Elbaz also purportedly received emails from unnamed individuals, *id.* ¶¶ 22(a), 22(e), 24(a), 26(a), 26(d), 30(a)–(b), 38(a), 38(d); corresponded with two unnamed individuals concerning an "upcoming training course," *id.* ¶¶ 22(a), 22(e); did not share her real name with binary options investors, *id.* ¶ 28; and once emailed a representative to have a "bonus" added to an investor's account, *id.* ¶ 39.

Counts Two through Four allege no factual allegations relating to Ms. Elbaz with respect to the charges of wire fraud and aiding and abetting wire fraud. Instead, those Counts contain two boilerplate paragraphs and list three wire communications by unnamed individuals:

> 41. Beginning in or about May 2014 and continuing through approximately June 2017 . . . in the District of Maryland and elsewhere, the defendant, **LEE ELBAZ**, knowingly and with the intent to defraud, having devised and intending to devise, and willfully participated in, a scheme and artifice to defraud binary options investors in BinaryBook and BigOption and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted, and aided and abetted the transmission, by means of wire communication in interstate and foreign commerce, writings, signs, pictures, and sounds for the purpose of executing the scheme and artifice.
>
> 42. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant, **LEE ELBAZ**, for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, to wit:

| Count | Date | Description |
|---|---|---|
| 2 | On or about August 28, 2015 | Representative F emailed Victim A on behalf of BinaryBook at Victim A's Google email account regarding bank wire transfer instructions while Victim A was in the District of Maryland |
| 3 | On or about March 11, 2015 | While in Maryland, Victim B spoke by telephone with Representative G, working on behalf of BigOption. |
| 4 | On or about June 15, 2016 | An email was sent on behalf of BinaryBook's "Compliance Department" to Victim C at Victim C's Apple email account requesting the completion of a Deposit Confirmation Form while Victim C was in the District of Maryland |

*Id.* ¶¶ 41–42. Thus, Counts Two through Four charge Ms. Elbaz with violations of the Wire Fraud Statute, 18 U.S.C. § 1343, merely by parroting the statutory language of the substantive offense and citing § 2 as a theory of liability.

## ARGUMENT

**I.     THE COURT SHOULD DISMISS COUNT ONE OF THE INDICTMENT.**

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, the Court must dismiss any count in the indictment that fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment must "contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Oaks*, No. RDB-17-288, 2018 WL 1413005, at *2 (D. Md. Mar. 20, 2018) (quoting *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997)); *see* Fed. R. Crim. P. 7(c)(1). It is not enough to parrot the statute or simply state the elements of the charged offense—the indictment must contain the "essential facts" of the offense in order to survive a defendant's motion to dismiss. *See United States v. Perry*, 757 F.3d 166, 171 (4th Cir.

3

2014) (internal quotation marks omitted); *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002).

The Indictment does not set forth the "essential facts" that would fairly inform Ms. Elbaz of the conduct forming the offense charged in Count One. For Ms. Elbaz to be found guilty of wire fraud conspiracy, the Government must prove: "(1) that two or more persons entered into an agreement to commit [wire] fraud; and (2) that at some time during that conspiracy, [Ms. Elbaz] had knowledge of the criminal objective of the agreement and willfully joined the conspiracy with the intent to further its unlawful purpose." *See United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017). There is no factual allegation in the Indictment, however, that would support a finding that Ms. Elbaz had knowledge of or willfully joined a conspiracy to defraud binary options investors with the specific intent to further that conspiracy's purpose. *See United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004) (an indictment must be dismissed when, even if the allegations were true, they would not state an offense); *United States v. Daniels*, 973 F.2d 272, 275–76 (4th Cir. 1992) (dismissing count of indictment that failed to allege an essential element of illegal possession and transfer of sawed-off shotgun, even where the other essential element was alleged). The Indictment alleges that a conspiracy to defraud binary options investors in BinaryBook and BigOption arose in connection with Yukom employees' provision of services to those investors, *see* Indictment ¶¶ 2–9, but does not contain any factual allegations linking the supposed perpetrators of the fraud to Ms. Elbaz or allege that Ms. Elbaz was aware of, much less intended to further, that fraud.

*Allegations about others*

First, there is no allegation that those sharing marketing materials with one another or those making allegedly making false statements to investors were employees whom Ms. Elbaz

4

supervised, much less that she entered into an agreement with them to make false statements to investors or even had reason to know that any agreement to defraud investors existed. The Indictment alleges that Ms. Elbaz supervised "representatives of BinaryBook and BigOption, at Yukom and elsewhere," generally. Indictment ¶ 8.

The Indictment separately alleges that "[r]epresentatives of BinaryBook and BigOption working under [Elbaz's] supervision at Yukom and elsewhere claimed to be representing the interests of investors when, in fact, they were not," *id.* ¶ 21; and identifies Managers A, B, C, and Representatives A, B, C, D, and E, specifically, as individuals that circulated marketing materials to one another that contained false statements, *see id.* ¶¶ 22(a)–(e), 24(a)–(d), 26(a)–(d), 30(a)–(b), 32, 35, 38(a)–(d). But the Indictment does not contain any factual allegation that Manager A, B, or C, or Representative A, B, C, D, or E were supervised by Ms. Elbaz, let alone that Ms. Elbaz made an agreement with any of these individuals to defraud binary options investors; knowingly joined these individuals' existing scheme to defraud binary options investors and willfully participated in it; or directed these individuals to circulate false materials in furtherance of a scheme to defraud binary options investors. Simply alleging that Ms. Elbaz had supervisory responsibility over employees who allegedly conspired to defraud investors does not state an offense as to Ms. Elbaz.

*Allegations about Ms. Elbaz*

Second, the few factual allegations that actually pertain to Ms. Elbaz, even if true, could not support a finding that Ms. Elbaz conspired to commit wire fraud. At most, with respect to actions taken by Ms. Elbaz, rather than by others, the Indictment alleges that Ms. Elbaz responded to an email from Representative B at one point in time and Representative D at another point in time, specifically, Ms. Elbaz "request[ed]" a "script" and that she was sent a

5

"[c]ourse manual," respectively, without any allegation that the information in these emails was shared with any investor, much less done so at the direction of Ms. Elbaz. *See* Indictment ¶¶ 22(a), 22(e). Thus, these factual allegations, even if true, would not establish that Ms. Elbaz entered into a conspiracy with any of these individuals to defraud investors.

Missing from the Indictment is any allegation that Ms. Elbaz used "scripts" or "course manuals" when speaking with binary options investors or directed others to do so. Consequently, even assuming the allegations are true, the fact that Ms. Elbaz corresponded with Representatives B and D about a "script" and "course manual" do not state the offense of wire fraud conspiracy against Ms. Elbaz.

Additionally, the Indictment alleges that, "[a]fter one representative wrote that the bonus had been 'removed,'" Ms. Elbaz told a "representative" to "[p]ut a note or add some small bonus so if the client will ask to wd [withdraw] the profit we can explain that he cant [*sic*] do it because the bonus." *Id.* ¶ 39. This exchange reflects a *disagreement* between two individuals, not an agreement, much less an agreement to defraud an investor. *Contra* 18 U.S.C. § 1349. Further, it is not alleged that Ms. Elbaz's request violated the investor's contractual rights, much less that this request caused the investor to be defrauded. The factual allegation concerning Ms. Elbaz's request to add a "bonus" to an investor's account does not establish her participation in a conspiracy to defraud binary options investors.

Finally, the Indictment's allegations that Ms. Elbaz *received* emails, *see* Indictment ¶¶ 22(a), 22(e), 24(a), 26(a), 26(d), 30(a)–(b), 38(a), 38(d), do not state the charged offense, which requires that Ms. Elbaz affirmatively agreed to participate in a conspiracy. Passive receipt of an email might establish the recipient's knowledge of wrongdoing by others, but cannot establish that the recipient knowingly joined a conspiracy. *See Vinson*, 852 F.3d at 351.

6

Beyond these few factual allegations, the Indictment contains only boilerplate assertions, *see* Indictment ¶¶ 22, 24, 26, 30, 32, 36, 38. Such statements parroting the language of § 1349 cannot suffice to state an offense under that section, *see Perry*, 757 F.3d at 171; *Brandon*, 298 F.3d at 310.

*The allegations in support of Counts Two through Four*

The allegations in Paragraphs 41 and 42 in support of Counts Two through Four cannot be read into Count One to cure its defects. A missing essential element of a charge cannot "be read into an indictment from another count—at least not when the challenged count fails to incorporate the other counts by reference." *United States v. Hooker*, 841 F.2d 1225, 1227–32 (4th Cir. 1988) (en banc). The presumption against incorporation is particularly strong when the Grand Jury has incorporated other allegations by reference elsewhere in the Indictment, thereby demonstrating that it knew how to incorporate paragraphs by reference if it so chose. *See id.* Here, Count One incorporates by reference the general allegations set forth in Paragraphs 1 through 15, but does not reference Paragraphs 41–42, which comprise Counts Two through Four; Counts Two through Four not only incorporate by reference the general allegations contained in Paragraphs 1 through 15, but also the allegation related to Count One, which are set forth in Paragraphs 18 through 39. *See* Indictment ¶¶ 16, 40. Consequently, the Grand Jury knew how to incorporate paragraphs by reference if it so chose, and it chose not to incorporate Paragraphs 41 through 42 into Count One. The Government may not rely on those paragraphs to demonstrate that Ms. Elbaz had knowledge of a conspiracy to commit wire fraud and that she willfully joined in such a conspiracy with the intent to further its objective. *See Hooker*, 841 F.2d at 1231.

Count One fails to state the "essential facts" supporting the charge of conspiracy in violation of § 1349. Accordingly, Count One should be dismissed. *See* Fed. R. Crim. P. 12(b)(3)(B)(v).

## II. THE COURT SHOULD DISMISS COUNTS TWO THROUGH FOUR OF THE INDICTMENT.

The Indictment does not set forth the "essential facts" that would fairly inform Ms. Elbaz of the conduct supporting the charges in Counts Two through Four.

### A. Counts Two through Four Fail to Allege Ms. Elbaz Violated Section 1343.

For the Government properly to allege the offense of wire fraud, the Indictment must contain factual allegations that, if true, would demonstrate Ms. Elbaz: "(1) devised or intended to devise a scheme to defraud and (2) used the . . . wire communications in furtherance of the scheme." *See United States v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012). One devises or intends to devise a scheme to defraud if she "acted with the specific intent to defraud" by specifically intending to "lie or cheat or misrepresent with the design of depriving the victim of something of value." *See id.* at 478. This, in turn, requires that she made or caused to be made a material false statement—a false statement, objectively viewed, that "has a natural tendency to influence, or is capable of influencing its target." *See id.* at 479; *see Neder v. United States*, 527 U.S. 1, 22, 24 (1999) (internal quotation marks omitted); *United States v. Raza*, 876 F.3d 604, 616 (4th Cir. 2017) (objective test applies to assess materiality as to private victims). Consequently, in order for Counts Two through Four to allege facts that, if true, would state the offense of wire fraud, *see Thomas*, 367 F.3d at 197, the Indictment must contain factual allegations that: (1) Ms. Elbaz made or caused to be made false statements that had a natural tendency to influence, or were capable of influencing, binary options investors, and (2) that she used or caused to be used a wire communication in furtherance of the scheme.

8

Counts Two through Four do not allege that Ms. Elbaz made or caused to be made a materially false statement. There are no statements attributable to Ms. Elbaz in Counts Two through Four. Although these Counts incorporate the preceding paragraphs by reference, in no paragraph does the Indictment contain a factual allegation that Ms. Elbaz made or caused to be made a false statement with a natural tendency to influence or capability of influencing binary options investors.

The false statements made to prospective investors that are attributable to Ms. Elbaz in the earlier paragraphs—that she was the "Trading Floor Manager" for BinaryBook and BigOption, Indictment at ¶¶ 6–7, and that her name was "Lena Green," *id*. ¶ 28—are not material and, therefore, cannot support a wire fraud conviction. Although the Fourth Circuit previously understood materiality to be a question of law, the Supreme Court's decision in *Neder v. United States*, 527 U.S. 1, made clear that this is a question of fact . *See, e.g.*, *United States v. Mora*, 15 F. App'x 98 (4th Cir. 2001) (explaining the jurisprudential change). Thus, an indictment, in order to state the offense of wire fraud by properly pleading the intent element, must contain factual allegations from which a reasonably jury could conclude that the defendant made or caused to be made a materially false statement. *Cf. Neder*, 527 U.S. at 22, 24; *Wynn*, 684 F.3d at 477–79. Here, those factual allegations are missing. Whether Ms. Elbaz identified herself as an employee of Yukom, which was hired by BinaryBook and BigOption, or directly by BinaryBook and BigOption, or identified herself as Lee Elbaz or Lena Green, has *no* natural tendency to influence or capability of influencing a binary options investor to do anything, let alone specifically influence the person to invest. *See Neder*, 527 U.S. at 22, 24; *Raza*, 876 F.3d at 617–18. As such, the only factual allegations in the Indictment, even were they to be found true,

could not support a finding that Ms. Elbaz acted with the intent necessary to have committed the offense of wire fraud. As such, the Government has not made allegations that state an offense.

Counts Two through Four likewise do not allege use of a wire communication in furtherance of a scheme to defraud. None of those Counts alleges that Elbaz used a wire communication or caused a wire communication to be used. Although Counts Two through Four identify "Representative F," "Representative G," and "BinaryBook's 'Compliance Department'" as individuals or an entity that used a wire communication, there is no alleged connection between Ms. Elbaz and Representative F, Representative G, or to those individuals with access to BinaryBook's Compliance Department's email account. These individuals are not introduced in any preceding paragraph or referenced as individuals Ms. Elbaz knew, directed, or to whom she was otherwise connected. Consequently, these Counts reference acts by individuals with no identifiable connection to Ms. Elbaz or the supposed scheme to defraud.

In short, the fact that individuals connected to BinaryBook and BigOption used wires does not mean that Ms. Elbaz caused those wires to be used or that they were used in furtherance of a scheme to defraud. It is not "use of a wire," but "*misuse* of wires," that constitutes wire fraud. *United States v. Jefferson*, 674 F.3d 332, 365, 366 (4th Cir. 2012) (emphasis added) (internal quotation marks omitted). Consequently, absent any factual allegation that Representative F, Representative G, or BinaryBook's Compliance Department were part of the group allegedly scheming with Ms. Elbaz to defraud binary options investors, Counts Two through Four fail to allege a violation of Section 1343.

**B.** **Counts Two through Four Fail to Allege Ms. Elbaz Aided and Abetted Wire Fraud.**

The Indictment's citation to 18 U.S.C. § 2 does not save Counts Two through Four from failing to state an offense. A defendant can only be guilty of aiding and abetting a scheme if she

10

has "knowingly associated" herself with the scheme and participated in it. *See United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc) (internal quotation marks omitted). Here, the citation to 18 U.S.C. § 2 is barely more than a citation, let alone a statement of "essential facts" that supports the charge. The Indictment uses the phrase "aided and abetted" just once, without any allegations of fact in support. It cannot be read to identify a principal, let alone that Ms. Elbaz was aware of that principal's intent and the lawlessness of the activity, *see id.* at 873, or that she willfully participated in some part of a scheme. This empty parroting of statutory language is not enough for Counts Two through Four to state an offense. *See Perry*, 757 F.3d at 171; *Brandon*, 298 F.3d at 310. Counts Two through Four, to the extent they rely on an aiding and abetting theory of liability, should be dismissed.

## CONCLUSION

The Court should dismiss the Indictment in its entirety. The Indictment in each Count lacks essential factual allegations that are required to state an offense.

Date: May 16, 2018                                  Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS RUSSELL ENGLERT ORSECK
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411-L
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
Email: bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*

**CERTIFICATE OF SERVICE**

On this 16th day of May, 2018, I directed the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411 L
Washington, District of Columbia 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
Email: bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*