IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> **v.** <br><br> **LEE ELBAZ**, <br><br> *Defendant*. | Criminal No. 18-157-TDC |

### MS. ELBAZ'S MOTION TO DISMISS COUNT ONE FOR FAILURE TO STATE AN OFFENSE SINCE CONGRESS LACKS AUTHORITY UNDER THE COMMERCE CLAUSE TO CRIMINALIZE A FOREIGN CONSPIRACY

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Lee Elbaz respectfully moves the Court to dismiss Count One (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349) because Congress lacks authority under the Commerce Clause to criminalize a wire fraud conspiracy that occurred entirely outside the United States between people who are not alleged to have any affiliation with the United States.

### BACKGROUND

Count One of the Indictment charges Ms. Elbaz with participating in a wire fraud conspiracy to defraud binary options investors, in violation of 18 U.S.C. § 1349, but contains no factual allegations that she actually entered into such an agreement in the United States or with anyone in the United States. Ms. Elbaz is alleged to be a resident of Israel who worked for Yukom Communications ("Yukom"), an Israel-based company that provided services to two Internet-based binary options companies, BigOption and BinaryBook, neither of which is alleged to be in the United States. Indictment, ECF No. 37, ¶¶ 1–3, 6. Each of these entities allowed

investors to purchase options that were not subject to regulations in the United States. *Id.* ¶ 10. The binary options investors to whom Yukom provided services on behalf of BinaryBook and BigOption included "individuals in the United States, including in the District of Maryland, and elsewhere throughout the world," *id.* ¶ 4, however, the Indictment does not allege that it was an object of the conspiracy to defraud investors in the United States.

## ARGUMENT

I. **THE COURT SHOULD DISMISS COUNT ONE OF THE INDICTMENT AS AN UNCONSTITUTIONAL APPLICATION OF SECTION 1349 UNDER THE COMMERCE CLAUSE.**

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, the Court must dismiss any count in the indictment that fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Ms. Elbaz is charged in Count One with violating the wire fraud conspiracy statute, 18 U.S.C. § 1349. *See* Indictment ¶¶ 16–39. The substantive offense of wire fraud is one premised on the involvement of interstate and foreign commerce. *See* 18 U.S.C. § 1343. In contrast, the wire fraud conspiracy statute contains no express connection to commerce and does not invoke any other enumerated power of Congress. *Id.* § 1349. To the extent Count One states a violation of Section 1349, Ms. Elbaz submits that Congress lacks constitutional authority under its Commerce Power to criminalize the acts alleged. Accordingly, Count One must be dismissed.

The Commerce Clause provides Congress with authority over matters that directly and indirectly relate to commercial transactions, expressly permitting Congress to regulate "Commerce with foreign Nations, and among the several States, and with the Indian Tribes." *See* U.S. CONST. art. I, § 8, cl. 3. These three sub-clauses have been characterized as the Foreign Commerce Clause, Interstate Commerce Clause, and the Indian Commerce Clause. *See*

2

*Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 18 (1831); *United States v. Reed*, No. 15-188-APM, 2017 WL 3208458 (D.D.C. July 27, 2017) (collecting cases).

Commercial conduct that takes place abroad is only subject to regulation by the United States Congress if it falls within the ambit of its Foreign Commerce Clause power. The Fourth Circuit has interpreted the Foreign Commerce Clause as permitting Congress to enact laws that regulate private individuals' "use of the channels of foreign commerce," "the instrumentalities of foreign commerce," and those public or private activities for which "it is rational to conclude that the activity has a demonstrable effect on foreign commerce." *United States v. Bollinger*, 798 F.3d 201, 215–16, 215, 218 (4th Cir. 2015) (alterations adopted) (internal quotation marks omitted); *contra Baston v. United States*, 580 U.S. ___, ___, 137 S. Ct. 850, 853 (2017) (Thomas, J., dissenting from denial of certiorari). The Necessary and Proper Clause supplements that authority by allowing Congress to reach conduct necessary to make its regulations of foreign commerce effective, even if that additional conduct itself does not substantially affect interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 22 (2005); *see also id.* at 34–35 (Scalia, J., concurring). The regulation must "constitute[] a means that is rationally related to the implementation of [the Commerce Power]," *see United States v. Comstock*, 560 U.S. 126, 134 (2010), and "reasonably adapted to the attainment of a legitimate end under the [C]ommerce power," *Montgomery Cty v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 923–24 (4th Cir. 2014) (quoting *Raich*, 545 U.S. at 37).

### A. Foreign Commerce Clause does not support Section 1349 as applied to reach the conduct alleged in Count One.

Congress's constitutional authority to regulate the use of the channels and the instrumentalities of foreign commerce does not extend to the application of § 1349 to the conduct alleged Count One. Participation in a wire fraud conspiracy is an inchoate offense; the

3

formation of the agreement itself, with the requisite intent, is the offense conduct. *See United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017). Consequently, even though Count One's charge of wire fraud conspiracy contemplates the future use of a channel or instrumentality of commerce—sending an e-mail or making a telephone call, *see, e.g.*, *United States v. Jinian*, 725 F.3d 954, 968 (9th Cir. 2013) (wire communications are channels and/or instrumentalities of commerce)—the statute only regulates, and Count One only seeks to penalize, the creation of the agreement itself.

Importantly, an agreement to do something in the future that may affect commerce—such as using interstate or foreign wires to defraud someone, 18 U.S.C. § 1343—is not itself commercial activity. Consequently, even if it were true that Ms. Elbaz, living in Israel, entered into an agreement with others, none of whom are alleged to have been in the United States, to defraud binary options investors worldwide of their money, *see* Indictment ¶ 17, that *agreement* does not involve the use of the channels of foreign commerce or instrumentalities of foreign commerce susceptible to regulation by the United States Congress.

Nor does Count One allege conduct that Congress has a rational basis to believe will substantially or demonstrably affect foreign commerce when considered in the aggregate. The mere act of agreeing to defraud does not itself make any changes to the day-to-day number of investors in the marketplace; the number of deposits; or the price of the options. *Cf. Bollinger* 798 F.3d at 215–16, 218. Instead, the regulation of this noneconomic activity would be based on the *potential* future effects that flow from the conspiracy's execution. The Supreme Court has been unwilling to stretch the Commerce Clause so far. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 615–617 (2000) (Commerce Power did not support federal regulation of gender-motivated violence based on premise that, though noneconomic in nature, violent conduct affects

4

employment and national productivity, broadly); *United States v. Lopez*, 514 U.S. 549, 561–68 (1995) (Congress could not prohibit possession of guns in school zones based on the theory that such possession may contribute to violent crime and that crime affects the national economy; "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce"); *see also Nat'l Fed'n of Indep. Bus.*, 567 U.S. 519, 549–52 (2012) (Roberts, J.) (the federal statute compelling individuals to purchase health insurance was not a proper exercise of Congress's Commerce Power because it sought to create commercial conduct to be regulated rather than to regulate pre-existing commercial conduct; the act of *not* purchasing health insurance was not, itself, commercial.).[1]

### B. Necessary and Proper Clause does not extend Congress's power under the Foreign Commerce Clause to support application of Section 1349 to the conduct alleged in Count One.

The wire fraud conspiracy statute is one part of a broader statutory scheme aimed at eliminating fraud furthered by modern methods of communication, *see* 18 U.S.C. §§ 1341–1349, and Congress may have some rational basis to criminalize certain foreign conspiracies using a combination of its Foreign Commerce Clause and Necessary and Proper Clause sources of authority. It may be rational for Congress to believe that criminalizing conspiracies to commit wire fraud that are devised *in* the United States would further its goals of regulating malicious

---

[1] The Fourth Circuit's conclusion that Congress may enact laws aimed to protect channels and instrumentalities of the mail, under 18 U.S.C. § 1341, *see United States v. Photogrammetric Data Servs., Inc.*, 259 F.3d 229 (4th Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004), should not lead the Court to a different result here. In *Photogrammetric*, the Fourth Circuit held that private and commercial interstate mail carriers are instrumentalities of interstate commerce that Congress could protect by enacting the mail fraud statute and that allowing that statute to criminalize the sending of letters within the State of Texas was a constitutional application of the statute. 259 F.3d at 250–51. *Photogrammetric* not only pre-dates seminal cases in the Supreme Court's Commerce Clause jurisprudence, but also involved a domestic substantive offense of mail fraud, rather than a foreign inchoate offense of conspiracy.

uses of the channels or instrumentalities of foreign commerce in the United States. And, it may be rational for Congress to believe that criminalizing conspiracies to commit wire fraud that are devised *outside* the United States, but which are knowingly directed *at* the United States and her citizens, would also further that goal. Yet, it is a different thought entirely for Congress to conclude that, by criminalizing conspiracies to commit wire fraud that are devised *outside* the United States and which *are not directed at* the United States, Congress would further its goal of protecting its citizens from malicious uses of the channels and instrumentalities of foreign commerce. By way of example: there is no rational basis for Congress to believe that a conspiracy devised in France for the purpose of defrauding binary options investors in Germany would further the United States' goal of preventing substantive acts of wire fraud in the United States. *See Comstock*, 560 U.S. at 134.

The Indictment in this case presents a foreign conspiracy closest in kind to the last scenario described. As set forth in Ms. Elbaz's accompanying motions to dismiss, the only connections this purported conspiracy has to the United States are three wires to and from residents of Maryland that are alleged in Paragraphs 41–42 of the Indictment as part of the substantive wire fraud counts, Counts Two through Four, and are not incorporated into Count One. *See* Def.'s Mot. to Dismiss the Indictment for Failure to State an Offense, ECF No. 58, at 7–8. Further, even if these allegations could be considered in determining the constitutionality of proscribing the conduct at issue in Count One, none of these wires are alleged to have contained any falsity, and there are no non-conclusory factual allegations that Ms. Elbaz caused the wires to be sent in furtherance of the alleged fraudulent scheme. While the alleged conspiracy may have had an incidental effect on the United States, it did not target the United States and is therefore, at best, only tangentially related to U.S. commerce.

Count One alleges a conspiracy devised somewhere other than the United States by people who do not reside in the United States to reach binary options investors, generally. Although Yukom allegedly provided services to BinaryBook's and BigOption's customers, who are located around the world, including in the United States, *see* Indictment ¶ 4, there is no allegation that the binary options investors purportedly targeted by the wire fraud included binary options investors in the United States. Consequently, at most, the Indictment alleges a foreign conspiracy that may or may not have incidentally reached some individuals in the United States.

Even if it is rational for Congress to believe that it could stamp out instances of wire fraud in the United States by criminalizing the acts of all those who enter into conspiracies to commit wire fraud, worldwide, regardless of any intention to direct that conspiracy at the United States, *see Comstock*, 560 U.S. at 134, criminalizing a foreign conspiracy on the ground that it *might* reach the United States is not a means of regulation "reasonably adapted" to that end, *see Montgomery Cty.*, 740 F.3d at 923–24. Finding to the contrary would mean Congress could reach into the sovereign space of another country and criminalize the conspiratorial agreements of that other nation's citizens based on the hypothesis that that criminal activity might, maybe, harm the United States. *Cf. Raich*, 545 U.S. at 66 (Thomas, J., dissenting) (such an expansive interpretation of the Commerce Clause runs afoul of local police power principles). Exercises of constitutional authority cannot rest on such freewheeling hypotheticals. If Congress can rely on the Necessary and Proper Clause to expand its Foreign Commerce Clause authority wide enough to ensnare the local, foreign conduct alleged in Count One, then it is difficult to imagine conduct Congress could not reach. *Cf. id.* at 69.

As such, Count One should be dismissed as an unconstitutional exercise of Congress's authority under the Foreign Commerce Clause. Congress's Commerce Power is not so broad as to allow it to reach all agreements, everywhere in the world, on the premise that the object of the conspiracy *might* affect the United States, in theory. The federal Government is not the world's police. *Cf. McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 421 (1819) (a statute is a "proper" exercise of one of Congress's enumerated powers only if it is "not prohibited" by the Constitution and "consist[ent] with the letter and spirit of the [C]onstitution"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803) ("The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the [C]onstitution is written.").[2]

\*   \*   \*

In short, constitutional applications of criminal statutes cannot rest on conjecture. Allowing Congress to reach the specific conduct alleged here—a conspiracy devised entirely outside the United States by people who are not residents of the United States and who did not target U.S. citizens—tugs at the intellectual underpinnings of a federal government of enumerated and limited powers. Congress's constitutional authority is not so broad as to allow Congress to criminalize conspiracies hatched abroad, based on the possibility that they *might* reach the shores of the United States. The Constitution is a document vesting limited power in

---

[2] The challenge to Count One is to how it attempts to apply § 1349. It is not a facial challenge to the constitutionality of that statute or even a challenge to its application to any foreign conspiracy. Those foreign conspiracies alleged to have directly targeted those in the United States are different in kind than the one alleged in the Indictment here. It may be that, if presented with such allegations, the Court would conclude that criminalizing those foreign inchoate acts under Section 1349 is a means of protecting American commercial interests rationally related to the implementation of the Commerce Power and that so doing is reasonably adapted to preventing the negative economic consequences that flow from substantive acts of wire fraud. *See* U.S. CONST. art. I, § 8, cl. 18; *Comstock*, 560 U.S. at 134; *Montgomery Cty.*, 740 F.3d at 923–24. But that is not this case. Granting Ms. Elbaz's motion results only in the conclusion that the facts alleged in this Indictment fall short of meeting that standard.

each of the three branches of Government.  To permit Congress to apply its criminal statute to the conduct alleged here would stretch the parchment beyond its intentionally circumscribed shape.

## CONCLUSION

The Court should dismiss Count One for failure to state an offense because it is an unconstitutional application of 18 U.S.C. § 1349.

Date:   May 16, 2018

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS RUSSELL ENGLERT ORSECK
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411-L
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
Email: bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*

# CERTIFICATE OF SERVICE

On this 16th day of May, 2018, I directed the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411 L
Washington, District of Columbia 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
Email: bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*