**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      v.<br><br>LEE ELBAZ,<br>    a/k/a "Lena Green,"<br><br>         Defendant | Criminal Action No. TDC-18-157 |

**THE GOVERNMENT'S MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

MOTION *IN LIMINE* #1: MOTION FOR PRETRIAL DETERMINATION OF
ADMISSIBILITY OF EMAILS AS CO-CONSPIRATOR STATEMENTS ............................... 2

    I.      Relevant Background ........................................................................................ 2

          A.      The Charged Conduct .......................................................................... 2

          B.      Recovery of the Emails at Issue .......................................................... 3

    II.     Argument ........................................................................................................... 4

          A.      Applicable Law Governing Admissibility of Co-Conspirator
                 Statements ............................................................................................ 4

          B.      Evidence of the Conspiracy ................................................................. 6

                1.      Admissions by the Defendant ................................................. 6

                2.      Co-Conspirator Admissions .................................................... 6

                3.      Internal Scripts and Training Materials .................................. 7

                4.      Other Evidence ........................................................................ 7

          C.      Admissibility of the Co-Conspirator Statements ................................ 8

MOTION *IN LIMINE* #2: MOTION TO CLARIFY ADMISSIBILITY OF
DOCUMENTS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11) ......................... 8

    I.      Relevant Background ........................................................................................ 9

    II.     Argument ........................................................................................................... 9

MOTION *IN LIMINE* #3: MOTION TO EXCLUDE HEARSAY STATEMENTS OF
THE DEFENDANT ............................................................................................................... 10

    I.      Relevant Background ...................................................................................... 10

    II.     Argument ......................................................................................................... 11

MOTION *IN LIMINE* #4: MOTION FOR USE OF TRANSCRIPTS OF RECORDED
CONVERSATIONS ............................................................................................................... 12

    I.      Relevant Background ...................................................................................... 12

| | | |
|---|---|---|
| | II. Argument | 13 |
| MOTION *IN LIMINE* #5: MOTION TO PRECLUDE IMPEACHMENT OF WITNESSES WITH DOCUMENTS AUTHORED BY LAW ENFORCEMENT | | 14 |

The United States of America respectfully submits this memorandum in support of five motions *in limine*.

**INTRODUCTION**

*First*, the Government seeks a pretrial ruling that the Government has established the charged conspiracy by a preponderance of evidence. As a result, the Government may admit statements of representatives of Yukom, BinaryBook, and/or BigOption as co-conspirator statements made in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E).

*Second*, the Government seeks a pretrial ruling on the admissibility of certain third-party business records pursuant to Federal Rules of Evidence 902(11) and 803(6)(A)-(C). The relevant records were accompanied by sworn certifications provided by the producing parties in accordance with Rules 902(11) and 803(6) and are admissible on that basis, particularly given the absence of any objection to date by the Defendant.

*Third*, the Government moves to preclude the Defendant from introducing portions of her post-arrest *Mirandized* statement to Special Agents of the Federal Bureau of Investigation that are not introduced by the Government in its case-in-chief. Settled law prevents criminal defendants from admitting self-serving hearsay while simultaneously avoiding cross-examination.

*Fourth*, the Government requests that the Court permit the Government to use transcripts of certain recorded conversations at trial and allow the jurors to use them both during trial and in the course of their deliberations. The Fourth Circuit has approved this procedure, provided that the Court explains to the jury that their review of the recordings should not be displaced by the transcripts to the extent they believe there are any discrepancies.

*Finally*, the Government moves to preclude the Defendant from impeaching Government witnesses with documents authored by law enforcement, including summaries of witness

interviews. Because those documents and summaries are not the statements of the witnesses themselves, the law does not permit the Defendant to use them to impeach.

**MOTION *IN LIMINE* #1:
MOTION FOR PRETRIAL DETERMINATION
OF ADMISSIBILITY OF EMAILS AS CO-CONSPIRATOR STATEMENTS**

Under Federal Rule of Evidence 104(a), the Court may, subject to the provisions of Rule 104(b), determine whether a matter proffered may be admitted in evidence. The Court is not bound by the rules of evidence except with respect to privileges. The Government respectfully submits that ruling pretrial on the admissibility of the emails will streamline the presentation of evidence at trial and mitigate the need for lengthy bench conferences.

**I.     Relevant Background**

   **A.     The Charged Conduct**

The Indictment charges the Defendant with one count of conspiracy to commit wire fraud (in violation of 18 U.S.C. § 1349) and three counts of wire fraud (in violation of 18 U.S.C. § 1343). (Dkt. No. 37.) The Indictment alleges that the Defendant participated for over three years (from approximately May 2014 and continuing through approximately June 2017) in a fraudulent scheme involving the sale and marketing of purported financial instruments known as "binary options"—including as the Chief Executive Officer of Yukom Communications—that victimized United States residents, including residents of this District, and others worldwide. As alleged in the Indictment, Yukom was an Israel-based business that provided sales and marketing services, including investor "retention services," for two internet-based businesses that sold and marketed binary options with the brand names BinaryBook and BigOption. (*Id.* at ¶¶ 2, 3.)

As the Government will establish at trial (and as alleged in the Indictment), the Defendant and co-conspirators and subordinates induced investors to deposit funds based on misrepresentations, including: (1) false statements and material omissions regarding the alignment

of financial incentives between investors and representatives; (2) false statements and material omissions regarding the suitability of binary options as investments and returns on investments in binary options; (3) false statements and material omissions about the names, qualifications, and physical location of representatives assisting investors; and (4) false statements and material omissions regarding investors' ability to withdraw investment funds and about the reasons that funds could not be withdrawn. Representatives of BinaryBook and BigOption also made false statements and material omissions regarding—and engaged in the deceptive use of—so-called "bonuses," "risk free trades," and "insured trades." (*See id.* at ¶ 19.)

As the Government will show at trial, the conspiracy was widespread, organized, and effective. Every investor-facing representative of BinaryBook and BigOption, as well as the managers, owners, and supervisors training and assisting them, participated in the conspiracy.

### B. Recovery of the Emails at Issue

The emails at issue were recovered pursuant to search warrants at Google for certain email accounts associated with BinaryBook, BigOption, and Yukom. They provide extensive documentation of the charged conduct—including planning, organizing, and executing the conspiracy—among the Defendant and others working on behalf of BinaryBook and BigOption.

On November 21, 2018, the Government provided the defense with custodial certifications regarding the emails recovered pursuant to the search warrants that (as discussed further in the Government's second motion *in limine*) should obviate the need for the Government to call a document custodian for the documents, in accordance with Federal Rule of Evidence 902(11). In the same letter, the Government asked the defense to inform the Government no later than December 3, 2018, if it intends to object to the introduction of the documents on the basis of the certifications, which establish that the emails are authentic documents but do not relieve the

Government of establishing that the contents are otherwise admissible. To date, no objection has been raised.

**II. Argument**

As explained further below, the Government anticipates that it will introduce various emails that were not authored by the Defendant—but, rather, written by others on behalf of Yukom, BinaryBook, and/or BigOption—because they constitute statements in furtherance of the charged conspiracy and scheme pursuant to Federal Rule of Evidence 801(d)(2)(E).

In addition to this basis for admission, the Government anticipates that it will otherwise seek to admit emails in accordance with one or more of the following principles or rules, which it does not address further in this submission: (1) that the emails were sent by the Defendant and are therefore admissible as statements of a party opponent, *see* Fed. R. Evid. 801(d)(2)(A); (2) that the emails contain statements by the Defendant or others that are not offered for their truth—such as correspondence with investors containing false or misleading representations, *see, e.g.*, *United States v. Bartko*, No. 5:09-CR-321-D, 2010 WL 3984603, at *2 (E.D.N.C. Oct. 8, 2010) ("the introduction of any statement alleged to be false is, by definition, not hearsay evidence"); (3) that the statement is an order or question, and therefore incapable of verification; and (4) that, to the extent that the Defendant manifested agreement with statements made by others in an email chain that the Government is introducing for the truth of the matter asserted, they constitute adoptive admissions pursuant to Federal Rule of Evidence 801(d)(2)(B).

**A. Applicable Law Governing Admissibility of Co-Conspirator Statements**

The essential elements of wire fraud are (1) the existence of a scheme to defraud and (2) the use of a wire communication in furtherance of the scheme. *See United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012); 18 U.S.C. § 1343. In order to establish a conspiracy to commit wire

fraud, the government must establish that (1) two or more persons agreed to commit wire fraud and (2) the defendant willfully joined the conspiracy with the intent to further its unlawful purpose. *See United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018); 18 U.S.C. § 1349.

Rule 801(d)(2)(E) provides that a statement is not hearsay if the statement was made by a co-conspirator "during the course and in furtherance of the conspiracy." Accordingly, a court may admit evidence under this rule if it concludes, by a preponderance of the evidence, "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." *United States v. Blevins,* 960 F.2d 1252, 1255 (4th Cir. 1992).

The party seeking to introduce the statements "must show the existence of the conspiracy and the declarant's role in the conspiracy through independent evidence but may supplement that evidence with the statements of the declarant." *United States v. Afridi,* 241 F. App'x 81, 84 (4th Cir. 2007); *see also* Fed. R. Evid. 801(d)(2) ("The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)."). A trial court is "not required to hold a hearing to determine whether a conspiracy exists" before admitting statements under Rule 801(d)(2)(E). *Blevins*, 960 F.2d at 1256.

"A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994). A particular statement may be found to be "in furtherance" of the conspiracy even though it is "susceptible of alternative interpretations" and was not "exclusively, or even primarily, made to further the conspiracy," so long as there is "some reasonable basis" for concluding that it was designed to further the conspiracy. *Id.* at 444.

5

B.  **Evidence of the Conspiracy**

The Government expects to offer extensive evidence of the charged conspiracy, but at this stage, we respectfully submit that the following is sufficient to satisfy the Government's burden under a preponderance of the evidence.

1.  **Admissions by the Defendant**

As discussed further in connection with the Government's motion *in limine* to preclude the Defendant from admitting her own hearsay statements, the Defendant voluntarily participated in a *Mirandized* interview with the FBI shortly after she was arrested. During that interview—the relevant portions of which the Government will admit at trial—the Defendant acknowledged (1) that she had been the CEO of Yukom; (2) that she used the alias Lena Green—which she referred to as a "stage name"—and that, to her knowledge, no one else at Yukom used it; (3) that she used the email addresses lena.green@binarybook.com and lena.green@bigoption.com; (4) that Yukom provided "retention" services to BinaryBook and BigOption; (5) that other employees used "stage names" and told investors that they were located in London when they were actually in Israel—the latter of which she conceded was a "lie"; and (6) that "95%" of investors in the binary options market lose money. (The Government can furnish the Court with a copy of the recorded interview upon request.)

2.  **Co-Conspirator Admissions**

As the Court is aware, one individual has executed a plea agreement with the Government admitting her criminal involvement in the charged conspiracy that contains detailed factual admissions concerning the same conduct at issue in this proceeding. Those admissions include acknowledging the existence of the conspiracy, every manner and means charged in the Indictment, and the Defendant's active participation and management of the conspiracy.

### 3. Internal Scripts and Training Materials

In addition to alleging the means by which the Defendant and her co-conspirators perpetrated their fraud, the Indictment refers to internal scripts, training materials, and other correspondence that establish the systematic use of statements designed to induce investors to deposit money with BinaryBook and BigOption. (*See generally* Indictment ¶¶ 22, 24, 26, 30, 32, 38.) The Government will seek to admit all of these materials at trial.

### 4. Other Evidence

The Government also proffers that it will establish at trial that Yukom worked in coordination with at least two affiliated companies—Linkopia, a Mauritius-based business that performed investor "conversion" work for BinaryBook and BigOption, as well as Numaris, which performed "retention" work in connection with Yukom. "Conversion services" were services provided with the objective of converting a prospective binary options customer into an investor and obtaining an initial deposit of funds, and "retention services" were services provided with the objective of obtaining additional deposits from investors who had previously made deposits (*i.e.*, investors who had already been "converted").

The Government will also establish that, in addition to the Defendant, Yukom employed a number of senior managers who had oversight responsibility over daily matters. Those responsibilities included direct supervision of representatives who performed sales and/or retention services, distributing new investor leads, establishing and conducting training sessions, and reviewing employee sales pitches and scripts for use with client investors at both BinaryBook and BigOption.

Government witnesses will testify that in order to achieve the ends of the scheme, the owners and managers of the relevant corporate entities employed conversion and retention staff for both BinaryBook and BigOption. These individuals were the front-line representatives for the

brands and had direct contact with client investors. Representatives with conversion responsibilities were responsible for establishing an initial investor relationship with a first deposit, and representatives with retention responsibilities were responsible for working with investors to induce further deposits. These employees were trained, encouraged, and directed by the Defendant and other managers to use aggressive sales tactics—including through the use of the false and misleading statements and material omissions alleged in the Indictment—in order to obtain the maximum deposits from investors and ensure that the investors lost money in their accounts.

### C. Admissibility of the Co-Conspirator Statements

In light of the foregoing and subject to the Government's proffer, the Government respectfully requests that the Court rule that the Government may offer co-conspirator statements in furtherance of the charged conspiracy at trial. In addition to statements about the overall management and operation of BinaryBook and BigOption, these statements would include email correspondence between and among co-conspirators (*i.e.*, managers and representatives of Yukom, BinaryBook, and/or BigOption) about the sale and marketing of binary options on behalf of BinaryBook and BigOption; direct interactions and communications with and/or about investors; sales tactics to increase deposits and prevent withdrawals; and the operations and performance of sales and retention work performed on behalf of BinaryBook and BigOption.

## MOTION *IN LIMINE* #2: MOTION TO CLARIFY ADMISSIBILITY OF DOCUMENTS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

The Government requests a pretrial ruling clarifying the admissibility of domestic business records pursuant to Federal Rules of Evidence 803(6) and 902(11), portions of which the Government anticipates introducing at trial.

**I.      Relevant Background**

In the course of its investigation concerning the conduct of the Defendant and her co-conspirators, the Government has obtained records from various domestic corporate third parties. Certain of those corporate third parties provided the Government with certifications of custodians attesting that the relevant documents reflected records of a regularly conducted business activity. As noted above, the Government provided notice of its intention to introduce certified records—as well as copies of the relevant certifications—to the defense approximately three weeks ago. (The Government can furnish copies of the relevant 902(11) certifications to the Court upon request.)

**II.     Argument**

The Federal Rules of Evidence permit the Government to admit the relevant records pursuant to the certifications and without the testimony of custodial witnesses.

In particular, Federal Rule of Evidence 902(11) provides that certified domestic records of regularly conducted activities may be self-authenticating and admissible under Federal Rule of Evidence 803(6)(A)-(C) if accompanied by a written declaration from a records custodian or other qualified person certifying that the records: (i) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (ii) were kept in the course of a regularly conducted activity; and (iii) were made as a regular practice.  Rule 902(11) further specifies that the proponent must give an adverse party reasonable written notice prior to trial of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

All of these conditions have been met.  The Government has provided the defense with written notice and has provided copies of both the records and the certifications to her sufficiently

in advance of trial to provide a fair opportunity to challenge the records. No such challenge has been raised, and as a result, the Government requests that the Court provide a pretrial ruling clarifying that the certifications provide a sufficient basis for admissibility and, in turn, that the Government can avoid the need to subpoena and call records custodians from throughout the country to testify about them (an imposition on the time of the jurors that would be lengthy and unnecessary).

**MOTION *IN LIMINE* #3:**
**MOTION TO EXCLUDE HEARSAY STATEMENTS OF THE DEFENDANT**

The Government also requests that the Court preclude the Defendant from introducing portions of her post-arrest, *Mirandized* statement to Special Agents of the FBI because, if offered by the Defendant, they would constitute inadmissible hearsay.

**I.     Relevant Background**

The Defendant was arrested on September 14, 2017, and shortly thereafter, agreed to an interview with two FBI Special Agents that lasted approximately two-and-a-half hours. The Defendant was given *Miranda* warnings both verbally in English and in writing in Hebrew, and she signed the written version. The Government produced a copy of the interview to the defense—which was digitally recorded on video—within days (specifically, on September 18, 2017). The Defendant did not move to suppress any statements made to law enforcement as part of her pretrial motions earlier this year.

The interview contains both admissions and false exculpatory statements that the Government may introduce at trial. As noted above, the Defendant admitted key aspects of her work at Yukom, her use of an alias (or "stage name"), and the fact that "95%" of investors in the binary options market lose money. At the same time, the Defendant falsely stated (1) that her employees were compensated based on how much time they spent working with investors to

improve investors' ability to succeed when trading—when, in fact, they received commissions based on net investor deposits generated; and (2) that she and other salespeople informed investors that 95% of people lost money in the market—a claim that is belied by voluminous documentary and recorded evidence.

Other portions of the interview contain lengthy, self-serving statements about the work of the Defendant and her co-conspirators on behalf of Yukom, BinaryBook, and BigOption.

## II. Argument

A defendant may not introduce her own out-of-court statements for the truth of the matter asserted—even if those statements appear to be exculpatory. *See, e.g.*, *United States v. Chiles*, 185 F. App'x 301, 305 (4th Cir. 2006) (noting that the Federal Rules of Evidence do not provide for the admission of "self-serving, exculpatory statements made by a party which are being sought for admission by that same party"); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (holding that the defendant could not introduce his own out-of-court statements, because the Rules of Evidence "do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party"). The requirement of Rule 801(d)(2)(A) that an admission be offered "against" a party is designed to exclude the introduction of self-serving statements by the party making them, even when the defendant claims that those statements would be exculpatory. *See Wilkerson*, 84 F.3d at 696.

This rule ensures that a defendant's self-serving statements are not presented to the jury "without subjecting [her] to cross-examination, precisely what the hearsay rule forbids." *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). In the absence of such a rule, the parties could "effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *United*

11

States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005). Accordingly, the Defendant should not be permitted to admit statements by her that were not admitted by the Government in its case-in-chief.

The Defendant may argue that portions of the statements in her interview should be admitted pursuant to the rule of completeness—which, as codified in Federal Rule of Evidence 106, provides that "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 106 does not provide a basis for the Defendant's independent introduction of her own statements because, as the Fourth Circuit has held, the rule of completeness may not be used to admit "self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008); *see also Wilkerson*, 84 F.3d at 696 (explaining that Rule 106 does not "render admissible the evidence which is otherwise inadmissible under the hearsay rules").

## MOTION *IN LIMINE* #4:
## MOTION FOR USE OF TRANSCRIPTS OF RECORDED CONVERSATIONS

The Government also requests a pretrial ruling concerning the use of transcripts of certain recorded conversations—in particular, recorded calls between BinaryBook and BigOption representatives and client investors.

I.   **Relevant Background**

As part of the ordinary course of business of BinaryBook and BigOption, calls were recorded and reviewed by managerial staff—including the Defendant—for training, quality control, and to respond to complaints or inquiries of client investors. Certain of the calls were distributed to managerial staff by email, attaching audio files of the calls.

The Government obtained copies of the recordings as a result of the email search warrants discussed earlier in this memorandum. Information obtained from the Google search warrants was produced to the defense on various dates beginning in May 2018 and continuing through August 2018.

The recorded calls are replete with false and misleading statements by representatives of BinaryBook and BigOption and are consistent with call scripts and training materials that were internally circulated among the Defendant and others. (*See generally* Indictment ¶¶ 22, 26, 30, 32, 38.) At least one of these recordings contains a call with an investor by the Defendant herself that appears to have occurred on or about August 19, 2015. On the recording, the Defendant stated to the victim that she was originally from Russia; that she was the "floor manager" for BigOption; and that she was "almost the CEO" and "the highest person in the company." She also stated to him that she wanted him to be "my partner" and "to succeed," and that he would "like [her] results." The Defendant emailed a recording of that call to other representatives of BinaryBook and BigOption with the explanation that it was "my call" "[t]o show you they all have money."

As noted earlier, Google provided written certifications that the emails and attachments obtained pursuant to the Government's search warrants were business records maintained in the ordinary course of business pursuant to Federal Rule of Evidence 902(11), and the Defendant has not objected to admission of the emails pursuant to the certifications.

**II.     Argument**

In addition to introducing the recordings as substantive evidence, the Government intends to introduce transcripts associated with the calls. The Government does not intend to move the transcripts into evidence but—consistent with Fourth Circuit precedent—requests that the Court allow the transcripts to be used as an aid for the jury while listening to the recordings and during deliberations.

For instance, in *United States v. Collazo*, 732 F.2d 1200, 1203-04 (4th Cir. 1984), the court held that it is within the discretion of the trial court to permit jurors to use transcripts not only as an aid during trial, but also as an aid during the deliberative process. The trial court can ensure that the transcripts are not used as substitute evidence by advising the jury, as in *Collazo*, that the transcripts are not evidence but merely aids to follow the recordings and that the jury is bound by its own recollection and evaluation of the recordings, not the transcripts. *Id. See also United States v. Brandon,* 363 F.3d 341, 345 (4th Cir. 2004) (holding that court's cautionary instructions "ensured that the jury did not mistake the transcripts, rather than the tapes, as the critical pieces of evidence"); *United States v. Pratt,* 351 F.3d 131, 140 (4th Cir. 2003) (same); Sand, *Modern Federal Jury Instructions*, 5-9.

**MOTION *IN LIMINE* #5:**
**MOTION TO PRECLUDE IMPEACHMENT OF**
**WITNESSES WITH DOCUMENTS AUTHORED BY LAW ENFORCEMENT**

Finally, the Government requests that the Court specify prior to trial that the Defendant may not use documents authored by law enforcement, including but not limited to summaries of witness interviews commonly referred to as FBI 302s, to impeach interviewees on the basis of inconsistent statements if they are called by the Government as witnesses at trial.

Witnesses may only be impeached with their own prior statements, and FBI notes and interview summaries are not the statements of the witnesses themselves. The Supreme Court has recognized that it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959).

In taking notes and preparing 302s or similar summaries, investigating agents necessarily exercise some discretion by including their characterization of only those segments of a witness's

14

interview to which they assign importance and relevance. As a result, the notes and 302s are not the "statements" of the interviewee. *See United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) ("[w]hile a statement need not have been written or signed by the witness, if the statement is not the witness' actual words, it must in some way have been adopted or approved by the witness to qualify as Jencks material"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1997) (under *Palermo*, FBI notes and 302s that constitute a selection of what was said during the interview are not statements of interviewees that would be discoverable under the Jencks Act).

As a result, courts have held that law enforcement summaries cannot be used to impeach interviewees if they are called as witnesses at trial. *See, e.g.*, *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (upholding trial court's refusal to admit FBI agent's summary of interview with government witness as a prior inconsistent statement because document was "not attributable to" the witness); *United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir. 1979) (upholding refusal of trial court to permit defense to use FBI report of interview to impeach government witnesses because "reports did not come within the rule authorizing the use of prior statements").

The Government does not object to the defense cross examining a witness using information contained in 302s. Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh a witness's recollection by showing the witness a 302, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

Dated: December 10, 2018

                    Respectfully submitted,

                    Sandra Moser
                    Acting Chief, Fraud Section
                    Criminal Division
                    U.S. Department of Justice

By:        /s/
                    Tracee Plowell, Assistant Chief
                    Ankush Khardori, Trial Attorney

                    Fraud Section, Criminal Division
                    U.S. Department of Justice
                    1400 New York Ave. N.W.
                    Washington, D.C. 20530

# CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will notify counsel for the Defendant of the filing.

By:    /s/
Tracee Plowell
Assistant Chief
Fraud Section, Criminal Division
U.S. Department of Justice