# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br>         **v.** <br><br> **LEE ELBAZ**, <br><br>    *Defendant*. | Criminal No. 18-157-TDC <br><br> **EXPEDITED BRIEFING REQUESTED** |

**MS. ELBAZ'S MOTION TO COMPEL THE GOVERNMENT
TO OBTAIN AN ORDER OF USE IMMUNITY FOR THE DEFENSE WITNESSES
INFORMED BY THE GOVERNMENT SHORTLY BEFORE THEIR SCHEDULED
DEPOSITIONS THAT THEY ARE UNDER INDICTMENT; OR,
<u>IN THE ALTERNATIVE, FOR AN INSTRUCTION ON MISSING WITNESSES</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

EXHIBITS ......................................................................................................................... iv

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 6

I.    THE GOVERNMENT CAUSED FOUR DEFENSE WITNESSES TO
BECOME UNAVAILABLE. ..................................................................................... 7

    A.    The Government violated the sealing order and Rule 6(e) and advised three
witnesses on the eve of their deposition testimony that they had been
indicted. ......................................................................................................... 7

        1.    The Government violated Rule 6(e)(4) and the Court's sealing order. ......... 8

        2.    Disclosing the existence of the indictments served no legitimate
purpose and, predictably, resulted in the witnesses declining to
provide testimony each had previously agreed to provide............................ 9

    B.    The Government prejudiced Ms. Elbaz in a way that substantially
interfered with her fundamental rights. .............................................. 10

II.    THE COURT SHOULD COMPEL THE GOVERNMENT TO OBTAIN AN
ORDER OF USE IMMUNITY FOR THESE FOUR WITNESSES TO CURE
THE PREJUDICE MS. ELBAZ WOULD OTHREWISE SUFFER......................... 11

III.    IN THE ALTERNATIVE, IF IMMUNITY IS NOT ORDERED AND THE
WITNESSES REMAIN UNAVAILABLE, THEN A MISSING WITNESS
INSTRUCTION SHOULD BE GIVEN. ................................................................. 15

CONCLUSION................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Chambers v. Mississippi*,
  410 U.S. 284 (1973)........................................................................................... 6

*United States v. Beyle*,
  782 F.3d 159 (4th Cir. 2015) ......................................................................... 6, 11

*United States v. Bran*,
  950 F. Supp. 2d 863 (E.D. Va. 2013) ................................................................ 16

*United States v. Brooks*,
  928 F.2d 1403 (4th Cir. 1991) ........................................................................... 15

*United States v. Green*,
  103 F.3d 121 (4th Cir. 1996) (per curiam) ........................................................ 15

*United States v. Hammond*,
  598 F.2d 1008 (5th Cir. 1979) ........................................................................... 13

*United States v. Kaixiang Zhu*,
  105 F. Supp. 3d 585 (E.D. Va. 2015),
  *aff'd*, 854 F.3d 247 (4th Cir. 2017) ..................................................................... 9

*United States v. Leal-Del Carmen*,
  697 F.3d 964 (9th Cir. 2012) ............................................................................. 16

*United States v. Moussaoui*,
  382 F.3d 453 (4th Cir. 2004) ....................................................................... 10, 11

*United States v. MacCloskey*,
  682 F.2d 468 (4th Cir. 1982) ....................................................................... 10, 14

*United States v. Morrison*,
  535 F.2d 223 (3d Cir. 1976) ........................................................................ 12, 15

*United States v. Ordonez*,
  242 F. Supp. 3d 466 (E.D. Va. 2017) .................................................................. 7

*United States v. Ritchie*,
  No. 15-cr-18, 2018 WL 4693811 (E.D. Va. Sept. 28, 2018)................................ 6

*United States v. Rosen*,
  471 F. Supp. 2d 651 (E.D. Va. 2007) .................................................................. 8

*United States v. Saunders,*
   943 F.2d 388 (4th Cir. 1991) ............................................................................... 6

*United States v. Teague,*
   737 F.2d 378 (4th Cir. 1984) ............................................................................... 11

*United States v. Thomas,*
   488 F.2d 334 (6th Cir. 1973) (per curiam) .............................................. 11, 14, 15

*United States v. Valenzuela-Bernal,*
   458 U.S. 858 (1982) ......................................................................................... 6, 9

*Webb v. Texas,*
   409 U.S. 95 (1972) (per curiam) ......................................................................... 10

## Constitutional Provisions and Statutes

18 U.S.C. § 6002 .................................................................................................... 11

18 U.S.C. § 6003 .................................................................................................... 11

U.S. Const. amends. V, VI. ...................................................................................... 6

## <u>EXHIBITS</u>

Exhibit A       E-mail from H. Van Dyck, Counsel for the Government, to Z. Gabbay, Counsel for Mr. Herzog, June 11, 2019

Exhibit B       E-mail from H. Van Dyck, Counsel for the Government, to Z. Gabbay, Counsel for Mr. Herzog, June 13, 2019 (followed by the attachments thereto)

           Advice of Rights Form

           Redacted Indictment, *United States v. Under Seal*, No. 19-cr-77-PX, ECF No. 18

In April 2019, Ms. Elbaz moved to take the depositions pursuant to Rule 15 of four witnesses in Israel who had agreed to provide testimony. The Government opposed the motion, without revealing to Ms. Elbaz or the witnesses that three of the four witnesses had been indicted under seal in February 2019. The Court granted that motion for Rule 15 depositions on May 15, 2019. The depositions were scheduled to commence on June 19, 2019. On June 11th, about one week before Rule 15 depositions were to begin, the Government contacted counsel for the three witnesses who were under sealed indictment and, in an apparent violation of the Court's sealing order and Rule 6(e), disclosed to them the existence of the sealed indictment and described the nature of the charges. Further, the Government did not merely warn the witnesses, generally, of the right to remain silent under United States law, but rather, noted that defendants in the United States do not typically testify and told counsel for the witnesses that the witnesses may want to reconsider whether they still wish to testify in Ms. Elbaz's case. The Government followed up the conversation with an e-mail. A couple of days later, when a redacted version of the indictment was unsealed, the Government sent another e-mail to counsel for the witnesses, providing a copy of the redacted indictment and an "advice of rights" form in Hebrew. In both e-mails, the prosecutors expressly stated that they were providing information about the pending charges to ensure that the witnesses  made an "informed decision" to give deposition testimony in this case.

The impact of the Government's actions was predictable. Each of the three witnesses has now indicated he is no longer willing to appear without immunity at a deposition next week to testify as a witness in Ms. Elbaz's case. Additionally, having learned of the February indictment, the fourth defense witness has also decided he is no longer willing to appear at a deposition next week without immunity to testify as a witness in Ms. Elbaz's case. Accordingly, all four witnesses' exculpatory testimony, which this Court has already found to be material and in the interest of

1

justice for Ms. Elbaz to be able to present to the jury in her case, is now entirely unavailable to Ms. Elbaz.

Ms. Elbaz respectfully requests the Court to compel the Government to seek an order granting use immunity to these four witnesses so that she may take their testimony pursuant to Rule 15.  In the alternative, if no use immunity order issued and the witnesses remain unwilling to provide testimony, Ms. Elbaz seeks an order from the Court that she is entitled to a missing witness instruction for each of the four witnesses.

## BACKGROUND

On September 14, 2017, Lee Elbaz was arrested at John F. Kennedy International Airport pursuant to a criminal complaint for wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, in the District of Maryland.  *See* Compl., ECF No. 1.  The charges against Ms. Elbaz arise out of the Government's investigation into the Israeli-based binary options industry.  Yukom Communications Ltd. ("Yukom") operated a call center in Israel, from which a sales force of retention agents regularly contacted existing customers of BinaryBook and BigOption, two Internet-based binary options companies.  Ms. Elbaz was at one point the CEO of Yukom and supervised managers who, in turn, supervised retention agents, the employees primarily responsible for interacting with customers.  Ms. Elbaz reported to the company's owner, Yosef Herzog.  The Government has alleged that, while working at Yukom, Ms. Elbaz participated in a conspiracy to defraud binary options customers by making, or causing to be made, misrepresentations to the customers of the names and location of Yukom's retention agents, the financial interests of Yukom and its retention agents, the risks and likely returns from trading binary options, and the terms and conditions applicable to the customer, particularly the terms and conditions related to bonuses that were provided to the customers as an inducement to trade.

Following Ms. Elbaz's arrest, agents for the Government interviewed a number of individuals in Israel, including Mr. Herzog, Elad Bigelman, and Nissim Alfasi.  Mr. Bigelman and Mr. Alfasi held positions as retention agents and later served as managers who supervised retention agents.  Each reported directly to Ms. Elbaz.  The videotaped interviews were produced to Ms. Elbaz in discovery.  Each interview contains considerable information exculpatory as to Ms. Elbaz.

The grand jury returned an indictment against Ms. Elbaz on March 22, 2018.  *See* Indictment, ECF No. 37.  In the months that followed, the Government publicly filed charges against several individuals affiliated with Yukom for wire fraud based on allegations similar to the ones it has made against Ms. Elbaz.  *See, e.g.*, *United States v. Hadar*, No. 19-cr-108-TDC (D. Md.); *United States v. Uzan*, No. 18-cr-608-TDC (D. Md.); *United States v. Welles*, No. 18-cr-613-TDC (D. Md.).

On January 8, 2019, the Court held a telephonic status conference to set a new pretrial schedule in this case following Ms. Elbaz's change in counsel.  *See* Minute Order, ECF No. 121.  During that conference, undersigned counsel stated that having sufficient time to travel to Israel and other foreign countries to identify potential defense witnesses and take their testimony abroad would be critical to Ms. Elbaz's defense.  On January 22, 2019, the Court issued a Pretrial Scheduling Order that set trial for July 16, 2019.  *See* Pretrial Scheduling Order, ECF No. 129.

On February 13, 2019, unbeknownst to Ms. Elbaz, a grand jury in the District of Maryland returned a sealed indictment against twelve defendants, among whom were Mr. Herzog, Mr. Bigelman, and Mr. Alfasi.  *See* Redacted Indictment, No. 19-cr-00077-PX, ECF No. 18 (Ex. B).  Later that same month, with no knowledge of the sealed indictment, undersigned counsel traveled to Israel and met with multiple potential defense witnesses, including Mr. Herzog, Mr. Bigelman, and Mr. Alfasi.

3

On April 24, 2019, Ms. Elbaz filed a motion seeking permission to take videotaped depositions of Mr. Herzog, Mr. Bigelman, Mr. Alfasi, and Chanan Tabarko in Israel in order to preserve their testimony for trial.  *See* Def.'s Mot. for Rule 15 Depositions, ECF No. 161. Ms. Elbaz filed an *ex parte* Memorandum of Law in support of the Motion stating the reasons why exceptional circumstances and the interest of justice supported granting the Motion.  *See* Def.'s Mem. of Law, ECF No. 162.  The Government opposed Ms. Elbaz's Motion and made an *ex parte* submission of its own "in order to provide additional information to the Court that may be relevant to the Court's consideration of the Defendant's request."  *See* Gov't's Opp'n to Def.'s Mot., ECF No. 170, at 1.

The Court granted Ms. Elbaz's Motion on May 15, 2019, *see* Order, ECF No. 184, and Ms. Elbaz's counsel worked with the deponents and counsel for the Government to schedule the depositions in Tel Aviv between June 19 and June 23, 2019.  Nearly a month later, on June 11, 2019—about one week before the scheduled depositions and approximately one month before trial—the Government contacted counsel for Mr. Herzog, Mr. Bigelman, and Mr. Alfasi and informed them that all three individuals had been charged in the United States in a sealed indictment.

The Prosecution Team memorialized the telephone call it had with counsel for Mr. Herzog in a follow-up e-mail immediately after the call:

> Mr. Gabbay – as we just discussed, myself, Rush Atkinson, and Caitlin Cottingham are prosecutors with the United States Department of Justice, Criminal Division, Fraud Section – Securities and Financial Fraud Unit.  On our call we notified you that your client Yosef Herzog has been charged by indictment in the United States with a number of offenses for his role in a scheme to defraud investors in the United States and elsewhere through purported investments in "binary options."  The charges against Mr. Herzog have been pending under seal in the United States District Court for the District of Maryland since February 2019.  We

4

> will be in a position to provide you with a copy of the indictment shortly.
>
> The purpose of our call was to provide you and your client notice of the pending charges so that your client may make an informed decision as to whether to participate in the upcoming depositions that have been scheduled next week in Israel in the related case of United States v. Lee Elbaz, which is also pending in the United States District Court for the District of Maryland (Criminal Action No. TDC-18-157).  As I discussed on our call, under the laws of the United States your client is afforded many rights now that he has been charged, including the right not to subject himself to examination during a deposition.  . . . .

Ex. A.  What the e-mail does not reflect, but what counsel for Mr. Herzog recalls, is that counsel for the Government also told him in the telephone call that defendants in the United States typically do not testify.[1]

On the afternoon of June 12, 2019, the day following the calls by the Government to counsel for the witness apprising them of the sealed charges, the district court partially unsealed the indictment against Mr. Herzog, Mr. Bigelman, and Mr. Alfasi, making the charges against them publicly available for the first time.  *See* Redacted Indictment, No. 19-cr-00077-PX, ECF No. 18.

On June 13, 2019, the Government contacted the witnesses again to provide a copy of the unsealed, redacted indictment and "an advice of rights form."  *See* Ex. B.  The Government for a third time (in the telephone call, the follow-up e-mail, and now in a second e-mail) repeated its assertion that the pending charges could affect the decision previously made by the witnesses to testify at the upcoming scheduled depositions, noting that it was providing the advice of rights form "so that your client may make a fully informed decision with respect to the potential upcoming deposition."  *Id.*

---

[1] Mr. Gabbay, counsel for Mr. Herzog, informed undersigned counsel of this aspect of his conversation with the Government.

On June 14, 2019, counsel for Mr. Herzog, Mr. Bigelman, Mr. Alfasi, and Mr. Tabarko informed undersigned counsel that their clients are no longer willing to appear voluntarily for their scheduled depositions next week without immunity.

## ARGUMENT

Under the Fifth and Sixth Amendments to the United States Constitution, a defendant is promised "a fair opportunity to defend against the [Government's] accusations" and a "right . . . to have compulsory process for obtaining witnesses in [her] favor." *United States v. Beyle*, 782 F.3d 159, 170 (4th Cir. 2015) (alteration adopted) (internal quotation marks omitted); *see* U.S. CONST. amend. V, VI. These rights are intimately related because "the right to call witnesses on one's own behalf has long been recognized as essential to due process." *See Beyle*, 782 F.3d at 170(alteration adopted) (internal quotation marks omitted). In other words, it is an essential element of a fair trial that the defendant have an opportunity to defend herself by presenting defense witnesses. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.").

Substantial government interference in a defense witness's "free and unhampered choice to testify" violates a defendant's due process right to a fair trial if the witness's "testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 872 (1982); *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991) (internal quotation marks omitted); *accord Beyle*, 782 F.3d at 170–71 (assessing whether defendant's inability to secure witnesses was a matter "of the government's making"). "Materiality," in this context, "conforms to the same standards as materiality in *Brady* violations or Federal Rule of Criminal Procedure 15." *United States v. Ritchie*, No. 15-cr-18, 2018 WL 4693811, at *2 (E.D. Va. Sept. 28, 2018); *see Valenzuela-Bernal*, 458 U.S. at 872 ("materiality requirement" applies

equally to Fifth and Sixth Amendment claims).  Thus, if the Government substantially interferes with a defense witness's choice to testify and that witness's anticipated testimony "negates any element of the charged crime or establishes a defense," *see United States v. Ordonez*, 242 F. Supp. 3d 466, 473 (E.D. Va. 2017) (internal quotation marks omitted) (Rule 15 materiality standard), then the Government has violated the defendant's rights under the Fifth Amendment.

## I.   THE GOVERNMENT CAUSED FOUR DEFENSE WITNESSES TO BECOME UNAVAILABLE.

As a direct result of the Government's improper disclosure of the existence and content of a sealed indictment against three witnesses, and encouragement to consider those charges in reconsidering their decision to testify, each witness now refuses to be deposed without immunity and a fourth witness, upon learning of the indictments of the other three, has taken the same position.  Had the Government not interfered, the witnesses would have offered detailed exculpatory testimony about Yukom's policies and practices and their interactions with Ms. Elbaz, either as her superior or her subordinates at Yukom.  This Court has already found that their testimony is material to the defense.  Depriving Ms. Elbaz of this testimony—which is unique to these witnesses and not otherwise available—would violate her fundamental right to a fair trial.

### A.   The Government violated the sealing order and Rule 6(e) and advised three witnesses on the eve of their deposition testimony that they had been indicted.

The Government disclosed the existence and content of a sealed indictment to counsel for three defense witnesses, in violation of the Court's sealing order and Rule 6(e) of the Federal Rules of Criminal Procedure, shortly before they were scheduled to provide deposition testimony.  It did so in a manner that predictably rendered them unavailable to Ms. Elbaz and also caused the fourth defense witness who was scheduled to testify to decline to do so.

**1.    The Government violated Rule 6(e)(4) and the Court's sealing order.**

The purpose of sealing indictments is, as Rule 6(e) expressly contemplates, to maintain secrecy until a defendant has been arrested and has had his or her initial appearance in court.  *See* Fed. R. Crim. P. 6(e)(4) (permitting a magistrate judge to instruct a clerk to seal an indictment "until the defendant is in custody or has been released pending trial").  Once the clerk of the court has sealed an indictment, "no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons."  *Id.*

If a court has prima facie evidence of a Rule 6(e) violation, then "a hearing must be held to determine whether a violation occurred."  *United States v. Rosen*, 471 F. Supp. 2d 651, 656 (E.D. Va. 2007).  The Government violated Rule 6(e)(4) when it disclosed the existence, content, and procedural history of a sealed indictment to counsel for Mr. Herzog, Mr. Bigelman, and Mr. Alfasi, none of whom has been arrested or appeared in court.  The Government told counsel for the witnesses that there existed an indictment against them under seal, that that indictment contained "a number of offenses for his role in a scheme to defraud investors in the United States and elsewhere through purported investments in 'binary options,'" and that the indictment had been pending since February 2019.  Ex. A.  Recognizing that all that information *remained* under seal, the prosecutors noted that they were not yet "in a position to provide [counsel] with a copy of the indictment," but would be able to do so "shortly."  *Id.*  The Government was not seeking to issue or execute an arrest warrant or summons; indeed, no extradition request has been made for any of the three witnesses, despite the fact they have each been under indictment for six months.  Rather, the Government was providing information shortly before the scheduled testimony of deponents who had agreed to provide testimony that likely would, and did, impact their willingness to testify.  Because the Government was not seeking to issue or execute an arrest warrant or

summons, the disclosures did not fall within the only exception Rule 6(e)(4) provides for communicating such information while an indictment is under seal.

> ### 2. Disclosing the existence of the indictments served no legitimate purpose and, predictably, resulted in the witnesses declining to provide testimony each had previously agreed to provide.

Revealing to witnesses on the eve of their scheduled depositions that they have been indicted served no legitimate purpose. The Government, in violation of Rule 6(e) and the Court' sealing order, informed the witnesses they were under indictment under the guise that, if it did not do so, the Government would then be able to use that testimony in a subsequent prosecution of the witness in the pending case against him, which would be inherently unfair to the witness. Such an assertion cannot survive any meaningful scrutiny. Simply because testimony is taken does not mean that the Government needs to use it in an unfair manner. If any of the witnesses are ultimately tried in the United States, the Government would not need to use the deposition testimony in that case. And, if the Government sought to do so, then the defendant could move to suppress the testimony. Alternatively, the Government could have voluntarily sought court-ordered immunity for the deposition testimony. Thus, there was no legitimate reason for the Government to proceed in the manner it did to prevent unfairness to the witnesses.

The impact of proceeding in this manner, however, was utterly predictable. It deprived Ms. Elbaz of materially exculpatory testimony.[2]

---

[2] The Government, which had known since April that Ms. Elbaz intended to depose these witnesses and they had agreed to provide testimony, and which had known since mid-May that the Court had authorized the depositions, waited until the eve of their scheduled testimony to alert them, in violation of Rule 6(e) and the Court's sealing order, of the sealed charges against them, simultaneously warning them their testimony could be used against them in a future proceeding, and stating that the witnesses should reconsider their willingness to testify on account of the sealed indictments. While it is a reasonable inference that this not only had the effect of disadvantaging Ms. Elbaz, but also that this was the Government's intent, the Fourth Circuit does not require that a defendant asserting a violation of her Fifth and/or Sixth Amendment rights to demonstrate that the Government acted in bad faith when it made a witness unavailable to the defense. *See United States v. Kaixiang Zhu*, 105 F. Supp. 3d 585, 589 (E.D. Va. 2015) (observing that Fourth Circuit has not adopted bad faith requirement and has "interpreted *Valenzuela-Bernal* as allowing for the imposition of sanctions even if the government acted in good faith"), *aff'd*, 854 F.3d 247, 254–55 (4th Cir. 2017) (acknowledging other Circuits have adopted this requirement but leaving the question open).

## B. The Government prejudiced Ms. Elbaz in a way that substantially interfered with her fundamental rights.

The Government's actions prejudiced Ms. Elbaz's constitutional right to secure witnesses in her own defense because the Government's disclosure, in violation of Rule 6(e) and the Court's sealing order, substantially interfered with those witnesses' decision to testify in Ms. Elbaz's case. Due solely to the Government's conduct, Ms. Elbaz is now unable to obtain the testimony of Mr. Herzog, Mr. Bigelman, Mr. Alfasi, or Mr. Tabarko.  All four witnesses had agreed to be deposed next week.  Following the unauthorized disclosure of the charges against three of these witnesses, none is willing to appear for his previously scheduled deposition without immunity. There is a direct causal connection between the Government's conduct and the prejudice suffered by Ms. Elbaz.  *See Webb v. Texas*, 409 U.S. 95, 95–98 (1972) (per curiam) (finding due process violation where defense witness became unwilling to testify "only after the judge's lengthy and intimidating [perjury] warning[, which] strongly suggests that the judge's comments were the cause of [the witness's] refusal to testify"); *United States v. MacCloskey*, 682 F.2d 468, 475–76, 479 (4th Cir. 1982) (finding due process violation when prosecutor told witness's attorney he "would be well-advised to remind his client that, if she testified at [defendant's] trial, she could be reindicted if she incriminated herself during that testimony," witness subsequently refused to testify, and witness had been "the primary defense witness" whose testimony was "vital to [defendant's] defense"); *cf. United States v. Moussaoui*, 382 F.3d 453,  476 (4th Cir. 2004) (finding Sixth Amendment violation when Government refused to produce enemy combatant-witnesses in custody of United States military for Court-ordered Rule 15 deposition).  Put differently, the

10

defense witnesses' sudden unavailability is "of the Government's making." *See Beyle*, 782 F.3d at 170–71.[3]

## II. THE COURT SHOULD COMPEL THE GOVERNMENT TO OBTAIN AN ORDER OF USE IMMUNITY FOR THESE FOUR WITNESSES TO CURE THE PREJUDICE MS. ELBAZ WOULD OTHERWISE SUFFER.

The Government's action prejudiced Ms. Elbaz by causing four witnesses with material exculpatory testimony who had already agreed to testify without immunity to reconsider and to refuse to do so. The testimony of these witnesses is material, exculpatory testimony that is not available from other sources.

This is precisely the kind of situation in which the district court may, and should, compel the Government to request use immunity be given to defense witnesses. *See Moussaoui*, 382 F.3d at 468 ("[W]hen the Government's misconduct threatens to impair the defendant's right to a fair trial, it is proper for the district court to protect that right by compelling the Government to immunize the witness."). Ms. Elbaz asks the Court to preserve her Fifth and Sixth Amendment rights by compelling the Government to seek court-ordered immunity for the deposition testimony of Mr. Herzog, Mr. Bigelman, Mr. Alfasi, and Mr. Tabarko. *See* 18 U.S.C. §§ 6002, 6003.

The situation the Government has created here is similar to the one in *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973) (per curiam), where the Sixth Circuit held the Government intimidated a witness and should have requested that the witness be provided use immunity in

---

[3] In *United States v. Teague*, the Fourth Circuit found no constitutional violation where a prosecutor called a defense witness's attorney to warn that "if [the witness] perjured himself he would be hearing from the United States and his pretrial diversion agreement would be revoked," but the witness nonetheless subsequently took the stand and provided helpful testimony on all the topics within his personal knowledge. 737 F.2d 378, 380–82, 384 (4th Cir. 1984). The Court emphasized that the defendant had suffered no prejudice as a result of the phone call, given that the defendant had received all the helpful testimony the witness had to provide. *See id.* at 384. Here, in contrast, the phone call the Government made and follow-up e-mails it sent to the witnesses' counsel were prejudicial, as they caused those witnesses to reconsider their decision to testify. The Court, in ruling on Ms. Elbaz's motion to take these depositions, has already found the testimony is material to the defense. If, however, the Court would like a further submission in that regard, *ex parte*, Ms. Elbaz will be happy to provide additional detail as to why the testimony of Mr. Herzog, Mr. Bigelman, Mr. Alfasi, and Mr. Tabarko is materially exculpatory and is not cumulative.

order to preserve the defendant's constitutional rights.  In *Thomas*, a defense witness had already been told by the Court that he was required to testify truthfully, but the Government approached that witness (through a secret service agent) during a recess to tell him that "he would be prosecuted for misprision of a felony if he testified in the case."  *Id.* at 335.  Although the Government represented to the Court that the witness would not be prosecuted if he testified, the Government did not provide immunity, and the witness did not testify.  The Sixth Circuit held that the Government's admonishment of the witness during the recess "cannot be viewed as serving any valid purpose, even accepting the assertions of good faith," and a new trial was necessary because "[n]othing short of complete immunity, if even that, could have relieved [the witness's] apprehension, and restored his free and voluntary choice [whether to testify], eliminating the prejudice [to the defendant]."  *Id.* at 336.  Likewise, in this case, three of the four witnesses have been told they have been charged and will be prosecuted, causing all four witnesses to change their mind about their willingness to provide testimony.  Only providing them use immunity can relieve the witnesses' apprehension so that they will provide testimony that has already been determined by the Court to be material to Ms. Elbaz's defense.

In *United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976), the Third Circuit concluded the Government committed prosecutorial misconduct when it sent multiple messages to the defendant's lead witness through defense counsel, warning the witness "that she was liable to be prosecuted on drug charges; that if she testified, that testimony would be used as evidence against her and, further, that as she was now eighteen it would be possible to bring federal perjury charges against her," and then sent a legally invalid subpoena to the witness to have her brought to his office.  *Id.* at 225–26.  Although the witness testified the following day, she did not answer multiple questions, thereby "depriving [the defendant] of much of the evidence he had expected to place

before the jury." *Id.* at 226.  The Third Circuit explained that, under these circumstances, due process demanded that the Government request use immunity for the witness.  *Id.* at 229.  Because the Government had not done so, the Court ordered a new trial and, in the event the defendant called the same person as a witness and that witness invoked her Fifth Amendment right not to testify, the Court ordered the district court to enter a judgment of acquittal unless the Government requested immunity for the witness.  *Id.*  Thus, even though the witness agreed to provide some testimony, the deprivation of the defense of the remainder of her testimony warranted the provision of use immunity.  Here, in contrast, the Government's action has deprived Ms. Elbaz of the entirety of the testimony of all four witnesses, making this an even stronger case for the provision of use immunity.

In *United States v. Hammond*, 598 F.2d 1008 (5th Cir. 1979), the Fifth Circuit held that the defendant's due process rights were violated when an FBI agent approached a witness after the first day of that witness's testimony and informed the witness that he was aware the witness had been indicted in a different matter in Colorado and was a cooperator, told the witness that "if he 'continued on,' he would have 'nothing but trouble' in Colorado," and then subpoenaed both that witness and a second defense witness to appear before a grand jury, at which point neither witness would testify in the defendant's case.  *Id.* at 1012.  The parties stipulated as to what the witnesses would have said, had they testified, and the judge read the stipulation to the jury.  *Id.*  The Fifth Circuit held that the comments to the first witness alone, separate from issuance of the subpoenas, deprived the defendant of his due process right to present his witnesses because the comments interfered with the witness's "free and unhampered choice to testify."  *Id.* at 1013.  The *Hammond* Court concluded that it would reach the same result regardless of whether a harmless error rule applied, because the testimony of the two defense witnesses was important to the defendant's

defense and would have been more effective if presented through live testimony than stipulation. *Id.* at 1014. Accordingly, the Court reversed the district court and remanded the case for a new trial. *Id.* at 1014–15.[4] Again, the facts here present a stronger case, as the Government has not agreed to stipulate to the testimony of the four witnesses in lieu of providing them use immunity.[5]

The Fourth Circuit cited each of these cases with approval in *United States v. MacCloskey*, 682 F.2d 468, in which the Circuit held that improper prosecutorial behavior prejudiced the defendant and warranted reversal of his conviction and a new trial. As noted above, in *MacCloskey*, the defendant's constitutional rights were violated when the prosecutor told a defense witness's attorney that he "would be well-advised to remind his client that, if she testified at [defendant's] trial, she could be reindicted if she incriminated herself during that testimony," and the witness subsequently refused to testify in full, despite having done so during a *voir dire* hearing a few days prior. *Id.* at 475–76. The witness explained that she would not testify further "because her attorney told her that the U.S. Attorney's office suggested that she had 'better remember the privilege of the Fifth Amendment.'" *Id.* at 476. With citation to *Thomas*, *Morrison*, and *Hammond*, the Fourth Circuit held that this "suggestion" was not harmless because it "destroyed the choice of [the witness] to testify freely," and, indeed, the witness refused to testify, thereby depriving the defendant of "detailed testimony [that] was vital to [his] defense." *Id.* at 479. Accordingly, the *MacCloskey* Court reversed the defendant's conviction and remanded for a new trial. *See id.*

---

[4] Upon rehearing, the panel revised its order to allow the defendant to choose between maintaining the result of the original trial or facing jeopardy a second time. *See* 605 F.2d 862, 864 (5th Cir. 1979).

[5] As alternative relief in this case, which would parallel the stipulation reached in *Hammond*, the Court could order the admission of the videotaped interviews of Mr. Herzog, Mr. Bigelman, and Mr. Alfasi and order the parties to attempt to reach a stipulation regarding the testimony that Mr. Tabarko would provide.

So too, here, the Court should find that Ms. Elbaz has been prejudiced by the Government's substantial unjustifiable interference with the witnesses' decisions to testify in her case.  Just as in *MacCloskey*, the Government's "suggestion" here that three defense witnesses should reconsider whether they wished to sit for depositions in Ms. Elbaz's case in light of their pending indictments and Fifth Amendment rights interfered with those witnesses' decision to testify.  And, just as in *Hammond*, the Government's interference with those three witnesses has exacerbated the prejudice to Ms. Elbaz by causing a fourth witness, who the Government did not contact directly, also to refuse to testify despite his earlier agreement to do so.  The proper remedy is the one the Third and Sixth Circuits envisioned in *Morrison* and *Thomas*, respectively: an Order requiring the Government to obtain court-ordered use immunity for each witness in order to restore each witness's free and voluntary choice whether to testify in Ms. Elbaz's case and purge the taint that resulted from the Government's conduct.  *See* 535 F.2d at 229; 488 F.2d at 336.

## III.    IN THE ALTERNATIVE, IF IMMUNITY IS NOT ORDERED AND THE WITNESSES REMAIN UNAVAILABLE, THEN A MISSING WITNESS INSTRUCTION SHOULD BE GIVEN.

A missing witness instruction is appropriate where the failure of a party to call a witness permits an inference that the witness's testimony would be unfavorable to the party's case.  To qualify for such an instruction, two requirements must be met:  (1) "the party failing to call the witness has it peculiarly within its power to produce the witness" and (2) "the witness's testimony must 'elucidate' issues important to the trial, as opposed to being irrelevant or cumulative." *United States v. Green*, 103 F.3d 121 (4th Cir. 1996) (per curiam) (unpublished) (citing *United States v. Brooks*, 928 F.2d 1403, 1412 (4th Cir. 1991)).

The Court's prior ruling, granting Ms. Elbaz's motion to take these Rule 15 depositions, establishes that the second prong has been met.  The first prong is also met under the unique circumstances presented in this case.  The Court should treat these witnesses as having been

"peculiarly within [the Government's] power to produce," given that they were willing to sit for their already-scheduled depositions until the Government substantially interfered with their decision to testify by informing their counsel of sealed charges against them and repeatedly suggesting the witnesses consider the pending charges and revisit their decision to testify, noting that defendants typically do not testify. *See United States v. Leal-Del Carmen*, 697 F.3d 964, 974–75 (9th Cir. 2012) (district court abused its discretion by failing to give missing-witness instruction where government caused defendant to be unavailable by deporting her because, "[i]f jurors are not given a missing-witness instruction, their view of the case may skew in the government's favor"); *cf. United States v. Bran*, 950 F. Supp. 2d 863, 875 (E.D. Va. 2013) (request for missing witness instruction granted where Government deported possible defense witness and therefore was "directly responsible for his absence at the trial," and witness "possessed relevant non-cumulative evidence" of leadership structure of gang in which defendant was allegedly a member and one of two murder victims defendant was charged with killing).

## CONCLUSION

By informing the witnesses of sealed charges against them, in violation of Rule 6(e) and the Court's sealing order, just one week before their previously scheduled depositions, the Government directly caused three witnesses who had agreed voluntarily to provide testimony to reconsider and refuse to testify, and indirectly caused a fourth witness to do so. This Court has already ruled that the testimony of these witnesses is material and that it is in the interest of justice for the testimony to be taken. The testimony is exculpatory and not cumulative. The Court should not hesitate to find that the Government's conduct has prejudicially affected Ms. Elbaz's fundamental right to present witnesses in her own defense to the point of depriving her of a fair trial. That prejudice can be cured, however, through a grant of use immunity to the witnesses.

Accordingly, Ms. Elbaz respectfully requests the Court compel the Government to seek court-ordered use immunity for each of the witnesses.

Alternatively, if the Court declines to compel the Government to provide use immunity, then Ms. Elbaz seeks a missing witness instruction.  The witnesses are material and their unavailability is peculiarly the result of actions by the Government.

Date:   June 14, 2019                                  Respectfully submitted,

                                                                        */s/ Barry J. Pollack*
                                                                        Barry J. Pollack (MD Bar No. 12415)
                                                                        Jessica Arden Ettinger (*pro hac vice*)
                                                                        ROBBINS RUSSELL ENGLERT ORSECK
                                                                        UNTEREINER & SAUBER LLP
                                                                        2000 K Street NW, 4th Floor
                                                                        Washington, D.C. 20006
                                                                        Telephone: (202) 775 4500
                                                                        Fax: (202) 775 4510
                                                                        bpollack@robbinsrussell.com
                                                                        jettinger@robbinsrussell.com

                                                                        *Counsel for Ms. Elbaz*

17

**CERTIFICATE OF SERVICE**

On this 14th day of June 2019, I directed the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.  Consistent with the Court's Electronic Case Filing Procedures, a courtesy copy of this document will be mailed to the Clerk's Office.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack (MD Bar No. 12415)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street NW, 4th Floor
Washington, District of Columbia 20006
Telephone:  (202) 775 4500
Fax:  (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*