**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| LEE ELBAZ, | Criminal Action No. TDC-18-157 |
| a/k/a "Lena Green," | |
| Defendant. | |

## OPPOSITION TO DEFENDANT ELBAZ'S MOTION TO COMPEL IMMUNITY OF DEFENSE WITNESSES OR FOR A MISSING WITNESS INSTRUCTION

The United States, through the undersigned attorneys, respectfully submits this response in opposition to Defendant Lee Elbaz's motion to compel the government to obtain an order of use immunity for four proposed defense witnesses or, in the alternative, for an instruction on missing witnesses.  D.E. 211.  The Defendant's motion alleging that the government partially unsealed the indictment in Case No. PX-19-77 (hereafter "*Herzog* Indictment") "for no legitimate purpose," and engaged in "substantial unjustifiable interference with the witnesses' decisions to testify" (*id.* at 9, 15) is meritless.

The government notified three prospective Rule 15 witnesses that they had been charged by indictment only after consulting with Judge Xinis as to the steps the government should take to ensure that these witnesses were fully apprised of their constitutional rights.  After consulting with the Court, the government concluded that in these highly unusual circumstances, the safest course was to inform these potential witnesses that they had been charged before they subjected themselves to cross-examination about the same fraud scheme by federal prosecutors.  The government was clear in its motion to unseal the *Herzog* Indictment that the purpose of unsealing was to provide the three defendants with notice of the charges and to "ensure that the Defendants [were] provided with sufficient information to preserve their Fifth Amendment right in the United

1

States against self-incrimination" in advance of the upcoming Rule 15 depositions.  Case No. PX-19-77 (D.E. 26 at 2).

On June 12, 2019, the government spoke with Defendant Elbaz's counsel to explain that the government had recently notified Israeli counsel for the three *Herzog* defendants named as Rule 15 witnesses of the pending *Herzog* Indictment, and that the purpose of the notification was to allow the witnesses to make fully informed decisions as to whether to waive their rights and proceed with the depositions.  During that June 12th call, and in anticipation of counsel's potential questions regarding those decisions, the government also explained that the government made the decision to notify the *Herzog* defendants of the charges only after consultation with the Court.

The Defendant's motion contains numerous allegations that the government acted unilaterally and in bad faith for the purpose of intimidating witnesses.  *Id*. at 11-15.  It is inexplicable that the motion does not admit or even address the fact that the government notified Defendant's counsel on June 12th that the government acted in consultation with the Court.  It is similarly inexplicable that Defendant's counsel made no effort whatsoever to obtain additional information from the government about the Court's involvement in those decisions before filing the instant motion.  While the government recognizes the obvious—filing an incendiary motion alleging government bad faith would be more difficult if the Defendant also had to address inconvenient truths about government consultation with the Court—counsel's failure to inquire further before filing the instant motion is both telling and inappropriate.

Equally troubling is counsel's imagined account of the discussions with Israeli counsel, in which he claims that the government "told counsel for the witnesses that the witnesses may want to reconsider whether they still wish to testify in Ms. Elbaz's case."  *Id.* at 1, 9, 15.  The government

2

never made any such statement.  And the Declaration from Mr. Herzog's counsel, which details his conversation with the government on June 11, 2019, does not include that statement.

It also bears noting that the contention that the government moved to unseal the *Herzog* Indictment in bad faith and for tactical reasons is nonsensical on its face.  By unsealing the *Herzog* Indictment, the government now faces the substantial risk that the three charged individuals—all of whom reside abroad and possess the means, opportunity, and motive to evade capture—will never be brought to justice for their roles in a scheme that cost victims worldwide at least $100 million.  Had these depositions proceeded, the government would likely have gathered information, including from Mr. Herzog, Defendant Elbaz's supervisor in the scheme, that could have been used in both pending cases.  Despite the government's interests in keeping the *Herzog* Indictment under seal, the government concluded that under these circumstances it should not, consistent with its obligations and the three defendants' constitutional rights, proceed without unsealing the *Herzog* Indictment.  Thus, the government moved to unseal the *Herzog* Indictment reluctantly, after consultation with the Court, and after concluding that there was no better option.[1]

Moreover, with respect to the Defendant's complaints about the timing of the notification to the three *Herzog* defendants, it was Defendant Elbaz who (1) waited a full year before filing a motion for Rule 15 depositions, despite apparently meeting with some of these individuals several months prior (*see* D.E. 211 at 3); (2) set the depositions for four weeks prior to trial;  and (3) failed to finalize a schedule or provide notice to the government as to the specific individuals who would sit for the depositions until June 7, 2019, 10 days before the depositions were set to take place.

---

[1] Indeed, the Court declined the government's initial proposal that the government issue warnings to the charged Rule 15 witnesses during the depositions in lieu of unsealing the *Herzog* Indictment.

The government's notice to the three *Herzog* defendants was made on June 11, 2019, because it was the first date that the government was provided contact information for counsel for the *Herzog* defendants and was thus in a position to provide notice.  Bizarrely, the Defendant still argues that the government erred in contacting counsel on June 11th as opposed to waiting until later in the week, despite the fact that we now know such a decision would likely have resulted in Mr. Pollack spending 2 days needlessly flying back and forth to Israel just five weeks before trial.[2]

Regardless, the government has set forth below a chronology of the facts and circumstances that led to the unsealing of the *Herzog* Indictment, which demonstrates that the government acted carefully and appropriately in all respects.  With respect to the Defendant's ultimate argument that the government should be compelled to immunize the Rule 15 witnesses, the Defendant fails to cite or discuss the controlling Fourth Circuit cases, or even set forth the correct legal standard.  Instead, the Defendant cites primarily to inapposite cases that do not address the issue of immunizing a defense witness.  The Court should also deny the Defendant's request for a missing-witness instruction because she cannot show she is entitled to the instruction.  Finally, given the serious nature of the allegations in the motion that the undersigned counsel engaged in witness intimidation, the government also respectfully requests that the Court make a finding that the government did not engage in misconduct or otherwise act in bad faith.

---

[2] While the government was set to participate in the depositions via videoconference, counsel informed the government that he would be flying to Israel the weekend of June 15th–16th.  Thus, on June 11th, when the government was first in a position to provide notice to the Rule 15 witnesses, the government was rightly concerned that if it did not act promptly, there would be insufficient time for the witnesses to evaluate the information or potentially consult with counsel in the United States before Mr. Pollack's trip.

## FACTS

On February 13, 2019, a grand jury returned an indictment charging multiple individuals—including Yosef Herzog, Nissim Alfasi, and Elad Bigelman—with conspiring to defraud BinaryBook and BigOption investors out of millions of dollars. Case No. PX-19-77 (D.E. 1). The *Herzog* Indictment alleged that each defendant was involved with Yukom Communications, the same company where Defendant Elbaz is alleged to have worked during the conspiracy.

On April 24, 2019, a full year after Defendant Elbaz was charged, and three months prior to trial, the Defendant first moved to take Rule 15 depositions of Herzog, Alfasi, and Bigelman, as well as Chanan Tabarko. D.E. 160. The Defendant's reasons for seeking these depositions were filed *ex parte* and under seal. The Defendant provided no additional information to the government as to the witnesses' location or representation, other than to say they were located "in Israel." D.E. 160 at 1.

On May 8, 2019, the government filed its response opposing the proposed Rule 15 depositions, noting that the Defendant had provided no public explanation as to why the witnesses were unavailable or why their testimony was relevant. D.E. 170. In addition to its public filing, the government also filed a sealed, *ex parte* supplement, notifying the Court that Herzog, Bigelman, and Alfasi had been indicted and that the government was in the process of trying to apprehend the defendants, all of whom were believed to be abroad. D.E. 173. The government also informed the Court that "[s]hould depositions of some or all of Herzog, Bigelman, and Alfasi go forward," the government would "take steps to ensure that they are provided with sufficient information to preserve their Fifth Amendment right in the United States against self-incrimination." *Id.* at 1. On May 15, 2019, the Court granted the motion for Rule 15 depositions. D.E. 184.

On May 23, 2019, the government filed a motion before Judge Xinis informing the Court that Rule 15 depositions could take place the week of June 17, 2019.  Case No. PX-19-77 (D.E. 25).[3]  The government also informed Judge Xinis that it had provided notice to this Court that Herzog, Bigelman, and Alfasi had been charged, and that the government would take steps to ensure that the witnesses would be provided with sufficient information to preserve their Fifth Amendment rights.  *Id.*  To that end, the government proposed issuing a warning about the possible consequences of testifying at the start of each deposition.  *Id.* at 3.[4]  The government did not propose notifying Herzog, Bigelman, or Alfasi about the *Herzog* Indictment, since the government intended (and still intends) to pursue extradition of these defendants.

On May 29, 2019, Judge Xinis contacted the government and raised concerns that the proposed warning was insufficient in light of the *Herzog* Indictment.  Given these concerns, the government suggested that a better path forward would be to provide actual notice of the charges and partially unseal the *Herzog* Indictment.  The government indicated it would likely file a motion to unseal if and when the Rule 15 deposition schedule was finalized.

---

[3] The motion was filed on May 23, 2019 but not docketed until the government moved to unseal the motion.

[4] The proposed warning was the following:

> We represent the United States government in connection with the prosecution of Lee Elbaz.  The Government did not request this deposition, and it is our understanding that you are participating voluntarily.
>
> You may now or in the future be charged in the United States with criminal conduct pertaining to the subject matter of this deposition.  To the extent that has occurred or does occur, the Government would be permitted to use your answers today against you in any such prosecution.  This includes both using your statements directly against you at any trial and also using any information that you provide today to develop and pursue investigative leads that could produce evidence that would be used against you.

On May 30, 2019, Defendant's counsel informed the government by email that he had been able to talk to "two of the four deponents," and that they were "available for a deposition between Wednesday, June 19 and Friday, June 21."  In the same email, counsel stated that he had "scheduled calls with the other two and should be able to speak with each by Monday."  Ex. A.[5]

On June 3, 2019, Defendant's counsel informed the government that he had "now confirmed with three of the four witnesses that each is available June 19-21," and that he would "let [the government] know as soon as I confirm the fourth witness."  Ex. B.  Counsel did not specify which of the four proposed deponents he had confirmed.

On June 4, 2019, the government requested names of counsel or contact information for Herzog, Bigelman, and Alfasi from Defendant's counsel.

On June 6, 2019, based on counsel's prior representations that at least some of the four proposed deponents had actually agreed to be deposed on dates certain, the government filed the motion to partially unseal the *Herzog* Indictment.  Case No. PX-19-77 (D.E. 26).  The government noted the potential depositions of Herzog, Bigelman, and Alfasi, and stated the following:

> Should depositions of Defendants Herzog, Bigelman, and Alfasi move forward, the Government intends to take steps to ensure that the Defendants are provided with sufficient information to preserve their Fifth Amendment right in the United States against self-incrimination, including notice that they have been charged by Indictment in this case.  Accordingly, the Government respectfully requests that this Court unseal the Indictment as to Defendants Herzog, Bigelman, and Alfasi to allow the Government to appropriately notify of the charges against them.

*Id.* at 2.  The government also submitted a copy of the *Herzog* Indictment with proposed redactions to share with the Rule 15 witnesses, and with Defendant Elbaz.

---

[5] The government has attached correspondence with defense counsel as exhibits, which has been redacted to remove irrelevant and potentially sensitive information relating to the Defendant.

On June 7, 2019, the government emailed Defendant's counsel again asking for names of counsel or contact information for the proposed deponents.  Ex. C.  During a call that afternoon, Defendant's counsel discussed the schedule for the depositions and stated that he could not provide any names of counsel or contact information for three of the four proposed witnesses because the only way he had been in contact with them previously is when they had called him.  With respect to Mr. Herzog, Defendant's counsel notified the government that he had retained Zvi Gabbay, of the Israeli law firm Barnea Jaffa Lande & Co.  Also during that call, the government informed Defendant's counsel that there might be additional information forthcoming from the government in the next few days that could impact the depositions, but that the government was not yet in a position to discuss the information.  The government also learned during the call that Defendant's counsel was scheduled to fly to Israel for the depositions the weekend of June 15th-16th, which by that time was only eight days away.

On June 11, 2019, now five days before Defendant's counsel was scheduled to fly to Israel, counsel provided the government, *for the first time,* contact information for the remaining three deponents at the Israeli law firm Benaroya-Wolf.  No U.S. counsel was identified for any of the parties.  Ex. D.  Within hours after receiving the contact information for the remaining three witnesses' counsel, the government separately contacted counsel in Israel for the witnesses to inform them that their clients had been charged by indictment in the United States, and that the purpose of the call was to provide notice of those charges so that their clients could make an informed decision as to whether to invoke their rights under U.S. law.  *See* D.E. 215-1 [Ex. C to Def. Mot.] (Gabbay Declaration).  Each attorney asked that the government provide the relevant information in a follow-up email, which the government did the same day in two substantially similar emails.  The government's email to Mr. Herzog's counsel stated the following:

Mr. Gabbay – as we just discussed, myself, Rush Atkinson, and Caitlin Cottingham are prosecutors with the United States Department of Justice, Criminal Division, Fraud Section – Securities and Financial Fraud Unit.  On our call we notified you that your client Yosef Herzog has been charged by indictment in the United States with a number of offenses for his role in a scheme to defraud investors in the United States and elsewhere through purported investments in "binary options."  The charges against Mr. Herzog have been pending under seal in the United States District Court for the District of Maryland since February 2019.  We will be in a position to provide you with a copy of the indictment shortly.

The purpose of our call was to provide you and your client notice of the pending charges so that your client may make an informed decision as to whether to participate in the upcoming depositions that have been scheduled next week in Israel in the related case of United States v. Lee Elbaz, which is also pending in the United States District Court for the District of Maryland (Criminal Action No. TDC-18-157).  As I discussed on our call, under the laws of the United States your client is afforded many rights now that he has been charged, including the right not to subject himself to examination during a deposition.  We understood from you that in light of the news that your client has been charged, your client will be seeking counsel in the United States.  Please pass along our contact information to any counsel in the United States that is retained on behalf of your client, and as we discussed during our call, you should also feel free to reach out to us with any questions.

D.E. 211-1 [Ex. A to Def. Mot.].

On June 12, 2019, within twenty-four hours of the government's calls to Israeli counsel, Judge Xinis granted the motion to partially unseal the redacted *Herzog* Indictment.  Case No. PX-19-77 (D.E. 27).  Later that afternoon, the government informed the Defendant's counsel in a telephone call that the government had notified the Israeli counsel of the charges so that they were fully informed of their rights, that the indictment was now unsealed, and that the government had not acted unilaterally but in consultation with the Court.  On June 13, 2019, the government transmitted copies of the redacted *Herzog* Indictment to counsel for Herzog and to counsel for Bigelman and Alfasi.  D.E. 211-2 [Ex. B. to Def. Mot.].  Because both counsel had indicated they

would not be representing the individuals in the U.S. proceedings, the government attached the FBI's standard written advice of rights forms in Hebrew.[6]

On June 14, 2019, the day before the Defendant's counsel was set to fly to Israel, counsel told the government in an email that he had "learned this morning that Mr. Herzog, Mr. Bigelman, and Mr. Alfasi have all decided in light of the pending indictments and the absence of any immunity, they are no longer willing to give testimony next week."  Ex. E.  Counsel indicated that he still intended to proceed with the deposition of Mr. Tabarko.  Later that day, the Defendant's counsel informed the government that "Mr. Tabarko is now unwilling to testify next week."  *Id*. The Defendant's counsel never asked for any additional information from the government about either the decision to notify the witnesses of the charges, or the Court's involvement in those decisions, before filing the instant motion.

## **ARGUMENT**

### I.   **THE GOVERNMENT'S DECISION TO UNSEAL THE *HERZOG* INDICTMENT WAS MADE IN GOOD FAITH AND IN CONSULTATION WITH THE COURT**

As described above, the government made two motions before Judge Xinis as the presiding judge over the *Herzog* Indictment, in addition to consulting with the Court via phone, in order to ensure that the government was acting appropriately to safeguard the rights of Herzog, Bigelman, and Alfasi.  The Fourth Circuit has encouraged the government to alert district courts to a potential defense witness having criminal exposure so that the court may ensure the witness's legal rights and interests are considered.  For example, in *United States v. Washington*, the government advised

---

[6] The government also provided these warnings to counsel because counsel had acknowledged during the telephone call that they did not practice inside the United States and were not U.S. criminal defense attorneys.  Had any of these witnesses testified, the government intended to establish a record confirming that each witness was aware of their rights.  Ordinarily, this responsibility would be handled by the district court, but given that these were Rule 15 depositions, such responsibility would have to be handled by the parties.

the court prior to trial that the witness's testimony "could subject him to obstruction of justice and perjury charges." 398 F.3d 306, 308 (4th Cir. 2005).[7]   After the court appointed counsel for the witness, he elected to invoke his Fifth Amendment privilege against self-incrimination. *Id.*  On appeal, the Fourth Circuit rejected the idea that the government had engaged in any misconduct or overreaching. *Id.* at 310.  Citing the district court, the Fourth Circuit noted that "that the prosecutor's statement [to the district court] that [the witness] possibly faced prosecution for perjury or obstruction of justice by repudiating his earlier statements [when he testified] was, in these circumstances, the act of a prudent prosecutor." *Id.* at 310.

Similarly, in this case the government consulted with Judge Xinis not only because these were very unusual circumstances, but also because the government wanted to ensure that it was properly advising these defendants of their rights and the potential consequences of their testimony. The government initially proposed warnings as opposed to unsealing the *Herzog* Indictment, since unsealing could compromise efforts to arrest or extradite Herzog, Bigelman, and Alfasi, as well as alert others to the existence of a separate BinaryBook/BigOption indictment. However, in consultation with Judge Xinis, the government ultimately decided that the better and safer course was to unseal the *Herzog* Indictment should the depositions go forward.

Informing a possible defense witness of their criminal exposure—or, in this case, of pending criminal charges—to ensure that the witness understands his constitutional rights and the potential risks of testifying is not government misconduct.  For example, in *United States v. Vaughn*, the defense sought to call a witness to testify on his behalf.  The day before trial, the prosecution informed the defendant the witness "was about to be indicted." 254 F. App'x 175,

---

[7] The proposed witness was the alleged victim of an assault by the defendant.  In an affidavit given to the defense prior to trial, the witness claimed he had been assaulted by another party and that his prior identification of the defendant was coerced by law enforcement. *See* 398 F.3d at 308.

177 (4th Cir. 2007) (unpublished).  After the witness invoked his Fifth Amendment rights and refused to testify, the Fourth Circuit affirmed the district court's denial of the motion to compel immunization, concluding that the defendant had not shown prosecutorial "misconduct or overreaching." *Id.* at \*5-6.  In sum, Defendant's arguments that the government acted in bad faith or intimidated witnesses are factually baseless and find no support in the law of the Fourth Circuit.[8]

## II.   THE TIMING OF THE GOVERNMENT'S NOTIFICATION TO THE PROPOSED RULE 15 WITNESSES WAS APPROPRIATE AND MADE IN GOOD FAITH

The Defendant complains both that the government should have unsealed the *Herzog* Indictment long ago, before the deposition schedule had been set or finalized, *see* D.E. 211 at n.2, and also that the government should not have provided notification to the *Herzog* defendants on June 11, 2019 because such notification violated the sealing order and Rule 6(e).  Taking these arguments in turn, the government admits that until the Defendant was able to actually confirm that the Rule 15 depositions would take place, the government was not willing to take the consequential step of unsealing an indictment that was under seal for important law-enforcement reasons.  It was not until June 7, 2019 that the defendant identified with specificity who had agreed to be deposed, and it was not until June 11, 2019 that the government received contact information for the potential deponents and was thus in a position to even provide notice.

The government's notice to the three witnesses on June 11, 2019 did not violate Rule 6(e) or any court orders.  To the contrary, on June 11, 2019, the government made an exceedingly narrow disclosure to counsel for each of the *Herzog* defendants, and specifically advised during the call that because the indictment remained under seal the government could neither provide

---

[8] The defense distorts the sequence of events.  Each witness declined to participate in the Rule 15 depositions *after* the district court partially unsealed the Herzog Indictment, and *after* it was shared with counsel.  The *Herzog* Indictment was unsealed and shared on June 13, 2019; counsel for Elbaz was informed on June 14, 2019 that Herzog, Bigelman, and Alfasi had decided not to testify.

additional details about the charges, nor provide a copy of the charging instrument.[9]  Moreover, the redacted *Herzog* Indictment was unsealed on June 12, 2019, within twenty-four hours. Thereafter, the government followed up by providing the redacted indictment to the Israeli counsel via email, as well as to counsel for the Defendant.

The timing and scope of the government's notice to the three *Herzog* defendants was thus entirely appropriate, and reflects the government's good-faith efforts to apprise these individuals of their rights in a timely and practical fashion.  *See Washington*, 398 F.3d at 308; *Vaughn*, 254 F. at 177.  Moreover, because the government had not known exactly who was being deposed or when, and had no contact information to make disclosures until June 11, 2019, the government was understandably concerned that any additional delay in providing notification of the charges would result in Defendant's counsel getting on a plane and flying to Israel for no reason.  Indeed, even with the government's phone call and email on June 11th, the four witnesses did not tell Defendant's counsel that they were not going to testify until Friday, the day before counsel was set to travel.

The Court should also summarily reject the Defendant's argument that the substance of the government's communications about the charges was somehow improper.  *See, e.g.*, D.E. 211 at 1.  The government never said that "the witnesses may want to reconsider whether they still wish to testify in Ms. Elbaz's case" as the Defendant alleges.  *Id*.  Mr. Gabbay does not attribute that statement to the government in his Declaration.  *See* D.E. 215-1.  Instead, the government's calls and emails with Israeli counsel reflect the government's careful and measured approach.

---

[9] The government specifically noted in its June 11, 2019 emails to Israeli counsel that the indictment was under seal after counsel had understandably pressed the government for a copy of the charging instrument, and the government had refused to provide it since Judge Xinis had not yet ruled on the government's motion.

Finally, it is unclear what the Defendant is suggesting about the government's June 11th email to Israeli counsel with the statement: "What the e-mail does not reflect, but what counsel for Mr. Herzog recalls, is that counsel for the government also told him in the telephone call that defendants in the United States typically do not testify."  D.E. 211 at 5.  The government takes Mr. Gabbay at his word that the government made this unquestionably true statement about U.S. criminal practice to a foreign lawyer who also told the government that his client would need U.S. counsel.  And if the suggestion is that this comment was somehow significant because it was the reason that Mr. Herzog decided not to testify, Mr. Gabbay's Declaration fully refutes that suggestion.  *See* D.E. 215-1 ¶ 7 [Ex. C to Def. Mot.] (explaining that Mr. Herzog is not willing to testify because he has had insufficient time to consider the consequences of doing so in the face of a pending indictment and is in the process of retaining U.S. counsel).

## III.   IMMUNITY WOULD BE IMPROPER AND WOULD UNDERMINE THE HERZOG, BIGELMAN, AND ALFASI PROSECUTIONS

"The decision of whether to grant immunity is in general vested with the prosecution." *United States v. Gravely*, 840 F.2d 1156, 1160 (4th Cir. 1988).  "The circuit courts, including the Fourth Circuit, have uniformly held that district courts do not have any authority to grant immunity, even when a grant of immunity would allow a defendant to present material, favorable testimony."  *United States v. Moussaoui*, 382 F.3d 453, 466 (4th Cir. 2004).  In the Fourth Circuit, the exception to that rule is that "the district court can compel the prosecution to grant immunity when (1) the defendant makes a decisive showing of prosecutorial misconduct or overreaching, and (2) the proffered evidence would be material, exculpatory and unavailable from all other sources."  *United States v. Abbas*, 74 F.3d 506, 512 (4th Cir. 1996).  "Without misconduct or overreaching, the Government is not required to provide defense witnesses immunity."  *Id.*  "The defendant bears a heavy burden when seeking to have the district court compel the grant of

immunity," *Gravely*, 840 F.2d at 1160, and "the evidence of overreaching must be decisive, material and exculpatory," *United States v. Banks*, 165 F.3d 912 (4th Cir. 1998) (unpublished).

### A. The Defendant's Request to Compel Immunization of Three Charged Co-Conspirators is "Meritless" and Unsupported by Fourth Circuit Law

The redacted *Herzog* Indictment makes clear that Herzog, Bigelman, and Alfasi are alleged to have participated in the same conspiracy and scheme as the Defendant.  Likewise, during the Defendant's trial, the government will prove that Herzog, Bigelman, and Alfasi were the Defendant's co-conspirators.

The Fourth Circuit has squarely rejected the proposition that the government should immunize a charged co-conspirator because the defendant wishes to call him as a witness.  In *Abbas*, the defendant, Abbas, sought to compel the immunization of a co-defendant, Khan, who refused to testify as a defense witness out of fear that any testimony would be used "against him in his upcoming trial."  *See* 74 F.3d at 511.  The Fourth Circuit rejected the defendant's argument as "meritless" concluding that "the Government exercised sound judgment in its refusal to grant immunity" and it would "be preposterous to grant immunity to an orchestrator of international drug smuggling to secure the conviction of a seemingly lower-level co-conspirator."  *Id.* at 11-12.  There, as here, the government's decision not to immunize a co-conspirator (or several) falls far short of prosecutorial misconduct.  Like this case, *Abbas* also involved international defendants and the Fourth Circuit noted that "[t]he Government expended great efforts and resources to have Khan extradited from Pakistan to stand trial" and that "[g]ranting Khan immunity would be an insult to the Pakistani authorities" who had assisted in the extradition.  *Id.* at 512.[10]

---

[10] The Fourth Circuit has reaffirmed that the government is not required to grant immunity to a charged co-defendant.  *See United States v. Miller*, 434 F. App'x 287, 293 (4th Cir. 2011) (finding "no merit" to argument that immunity should have been granted to a co-defendant who had previously pleaded guilty and was awaiting sentencing).

In *United States v. Mitchell*, the Fourth Circuit instructed that "[t]rial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution." 886 F.2d 667, 670 (4th Cir. 1989). In *Mitchell*, the defendant sought immunity for a possible witness who was the subject of a grand jury investigation (the defendant was convicted of obstructing that investigation). 866 F.2d at 668-69. The Fourth Circuit determined the government had not engaged in "misconduct or overreaching" by refusing to grant immunity to a witness who "was the subject of a criminal investigation." *Id.* at 670.

In short, absent any shred of evidence of prosecutorial misconduct here, because Herzog, Bigelman, and Alfasi are all the "subject[s] of impending prosecution," *Abbas*, 74 F.3d at 512, the government's decision not to immunize any of them is wholly proper.

## B. Elbaz Fails to Apply the Correct Legal Standard and Cites Inapposite Cases

The controlling legal standard in the Fourth Circuit for immunizing defense witnesses is clearly set forth in the *Abbas*, *Mitchell*, *Gravely*, and *Washington* line of cases, but the Defendant fails to cite or discuss any of these decisions. Instead, in her discussion of possible immunization, she cites only three Fourth Circuit cases, none of which dealt with the issue of immunizing a defense witness.

First, *United States v. MacCloskey*, 682 F.2d 468 (4th Cir. 1982) did not involve the question of immunizing a witness; the questions raised in that case were instead whether a witness who had previously testified after waiving her Fifth Amendment rights could be compelled to testify at trial, or whether prior testimony could be admitted. *Id.* at 478–79. And in any event, the government conduct at issue in *MacCloskey* was of an entirely different character than the actions at issue here. In *MacCloskey*, the defense witness, Edwards, had been charged as a co-defendant,

but the government had made the decision to drop the charges against her. *Id.* at 475. After that decision was made, the defense identified Edwards as a witness at the beginning of trial. *Id.* Two days into trial, the U.S. Attorney telephoned Edwards's attorney and said "[i]n essence . . . that he [Edwards's attorney] would be well-advised to remind his client that, if she testified at MacCloskey's trial, she could be reindicted if she incriminated herself during that testimony." *Id.* Given that Edwards had been previously indicted, only for the government to dismiss those same charges, the *MacCloskey* court concluded the prosecutor's call was intended to intimidate. *Id.* at 479 (noting the government conceded on appeal that the call was "ill-advised and possibly improper"). Two years later, the Fourth Circuit described this kind of call as an "unsolicited call to an attorney for a prospective witness to remind them of the consequences of perjury." *United States v. Teague*, 737 F.2d 378, 382 (4th Cir. 1984).[11]

Of course, the facts here are wholly inapposite to what took place in *MacCloskey*. Here, the government consulted with the Court before it took action, and the government was not concerned with mere "false swearing," but with the fundamental rights of defendants to know that they have been charged prior to sitting for a deposition in which they will testify regarding the very scheme for which they are charged.[12]

---

[11] The *Teague* court admonished that such calls are "unnecessary because most witnesses in criminal cases are aware of the laws against false swearing. Such calls are also dangerous and foolish—dangerous because they can violate a defendant's due process right to present his defense witnesses freely, and foolish because of the warnings given by this court and others." *Id.*

[12] The defense also cites *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004), in which the court considered whether it could compel the government to grant the defense *access* to witnesses in the custody of the United States. *Id.* at 456–57. The court did not consider the need to immunize any of the enemy combatants in question, apparently because it believed the witnesses would testify voluntarily. *See United States v. Benko*, No. 1:13-CR-6, 2013 WL 2467675, at *3 (W.D. Va. June 7, 2013) ("The defendant in this case, however, misreads the import of the Fourth Circuit's decision. The *Moussaoui* court observed that the defendant could assert his right to compel the testimony of the witnesses precisely because none of those witnesses had asserted the privilege against self-incrimination."). The *Moussaoui* court only considered immunity cases in

### C. The Defendant's Arguments Concerning Chanan Tabarko Are Conclusory and Meritless

The defense additionally seeks immunity for Chanan Tabarko, the fourth witness who was scheduled for a Rule 15 deposition. The Defendant claims that counsel for Mr. Tabarko rescinded his offer to sit voluntarily (D.E. 211, at 11), but makes no specific allegation as to what the government did to cause this or how that behavior constitutes misconduct, and has thus failed to carry her "heavy burden" demonstrating that Mr. Tabarko should be immunized. *See Gravely*, 840 F.2d at 1160.

## IV. DEFENDANT'S REQUEST FOR A MISSING-WITNESS INSTRUCTION IS WITHOUT MERIT

In the alternative, the Defendant seeks a "missing witness" instruction. "To qualify for such an instruction, two requirements must be met. First, it must be shown that the party failing to call the witness has it peculiarly within its power to produce the witness. . . .  Second, the witness's testimony must elucidate issues important to the trial, as opposed to being irrelevant or cumulative." *United States v. Graves*, 545 F. App'x 230, 241 (4th Cir. 2013) (unpublished).[13]

The Defendant has failed to establish either of these elements. First, it is not "peculiarly" within the government's power to produce these witnesses. A party can satisfy this requirement "by showing either (1) that the witness is physically available only to the other party, or (2) that, because of the witness's relationship with the other party, the witness 'pragmatically' is only

---

the context of understanding the relationship between the executive and judicial branches of government, and it simply noted that "[t]he Fourth Circuit, consistent with the majority rule, has held that a district court may compel the government to grant immunity upon a showing of prosecutorial misconduct and materiality." *Id.* at 467.

[13] The prototypical case for the instruction involves the government deporting a material defense witness prior to trial. *United States v. Bran*, 950 F. Supp. 2d 863, 875 (E.D. Va. 2013) ("[C]ourts that have found that the deportation of a material witness violated the defendant's rights have consistently concluded that the missing witness instruction is the appropriate sanction.").

available to that party." *Id.*  Here, all four witnesses are located in Israel and were apparently unwilling to travel to the United States to testify even before learning of the *Herzog* Indictment. The government has no ability to secure their testimony from Israel; indeed, the government has had to resort to seeking extradition of Herzog, Bigelman, and Alfasi.  Likewise, none of these witnesses are "pragmatically" available only to the government.  The defense's own exhibits show that these witnesses have openly communicated with the defense counsel in a way they have not with the government.

In addition, based on the Defendant's own representations, these four witnesses would likely assert their Fifth Amendment privilege against self-incrimination and refuse to testify.  As the Fourth Circuit has concluded, "[a] witness' decision to invoke his Fifth Amendment privilege 'makes him neither peculiarly available to the government nor within the government's exclusive control.'"  *United States v. Green*, 103 F.3d 121 (4th Cir. 1996) (quoting *United States v. Saint Michael's Credit Union*, 880 F.2d 579, 598 (1st Cir. 1989); *see also Harris v. Moyer*, No. TDC-15-cv-3745, 2018 WL 5268120, at *10 (D. Md. Oct. 23, 2018) (Chuang, J.) (citations omitted) ("To the extent that federal courts have addressed this issue in published opinions, it has been in the context of requests for a defense request for a "missing witness" instruction when a witness asserts the Fifth Amendment privilege against self-incrimination. Courts generally have concluded that such an instruction is not necessary.").[14]

---

[14]  The Defendant's motion claims that the witnesses have "considerable information exculpatory as to Ms. Elbaz" (D.E. 211, at 8) and "detailed exculpatory testimony about Yukom's policies and practices and their interactions with Ms. Elbaz" (D.E. 211, at 12), but it goes no further as to what those policies and practices were, or how their interactions with the Defendant are relevant.  Thus, the government cannot contest the purported value of the information the Defendant believes these witnesses might have because such information has not been shared with the government.

## CONCLUSION

The government's actions were considered, appropriate, and taken in order to protect the rights of three individuals who face criminal charges for their roles in this fraud scheme. The Court should deny the Defendant's motion in its entirety because she has not satisfied any of the governing legal standards. Moreover, in light of the serious nature of the allegations about the government's decisions and conduct, the government also respectfully requests that the Court make a finding that the government did not engage in misconduct or otherwise act in bad faith.

Dated: June 25, 2019

Respectfully submitted,

ROBERT A. ZINK
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: _____/s/_____
L. Rush Atkinson, Trial Attorney
Caitlin R. Cottingham, Trial Attorney
Henry P. Van Dyck, Deputy Chief
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave. N.W.
Washington, D.C. 20530

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2019, I electronically filed the foregoing with the Clerk of

the Court by using the CM/ECF system, which will notify counsel for the Defendant of the filing.


By:       /s/
                          Caitlin Cottingham
                          Fraud Section, Criminal Division
                          U.S. Department of Justice