**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

**UNITED STATES OF AMERICA**,

**v.**

**LEE ELBAZ**,

*Defendant*.

Criminal No. 18-157-TDC

# MS. ELBAZ'S OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE (SECOND)

## I. OPPOSITION TO USE OF HYPOTHETICAL QUESTIONS WITH WITNESSES

The Government seeks permission to ask victim-witnesses "fraud hypothetical questions about whether they would have invested had they known certain facts," on the ground that the answers to these questions demonstrate the materiality of alleged false statements Ms. Elbaz and others purportedly made to those witnesses. *See* Gov't's Mots. in Limine (Second), ECF No. 221 ("Gov't's Mots."), at 1–2. The Government fails to recognize, however, that materiality is governed by an objective standard. Any individual witness's subjective response to a hypothetical question about whether, had he or she known "certain facts—including the success of BinaryBook and BigOption clients, the qualifications and incentives of the BinaryBook and BigOption representatives to whom they spoke," *see id.* at 3, is irrelevant to whether the alleged false statements are material. *See* Fed. R. Evid. 401, 402. Moreover, even if relevant, any probative value those answers would have is substantially outweighed by the danger of unfair prejudice, confusing the issue of which standard governs, and misleading the jury. *See* Fed. R. Evid. 403.

### A. Materiality is evaluated objectively, which makes the subjective considerations of individual purported victim-witnesses irrelevant.

In wire fraud cases, whether false statements are "material" is governed by an objective standard. *See Neder v. United States*, 527 U.S. 1, 22, 24 (1999); *United States v. Raza*, 876 F.3d 604, 616 (4th Cir. 2017) (describing *Neder* as creating a subjective test when the government is the victim, but an objective test when a private entity is the victim); *United States v. Robertson*, 760 F. App'x 214, 219 (4th Cir. 2019) (per curiam) ("In *Raza*, this Court reiterated the long-standing principle that materiality is evaluated under an objective standard in mail, wire, and bank fraud schemes targeting private entities or individuals."); Sand, Modern Federal Jury Instructions, 44-4 ("A material fact is one that would reasonably be expected to be of concern to a reasonable

and prudent person in relying upon the representation or statement in making a decision (e.g., with respect to a proposed investment).").

In *Robertson*, the defendant-appellant challenged his conviction on a count of mail fraud on the ground that the district court had applied the wrong standard for materiality, arguing that a subjective standard, rather than an objective standard, applied. *See* 760 F. App'x at 219. While noting that there was sufficient evidence to convict under a subjective standard, the Fourth Circuit expressly held that the standard is an objective one, whether a reasonable person would find the representations to be material. *See id.* at 219–20 & n.3.

In *Raza*, a case involving charges under 18 U.S.C. § 1343 and § 1349 brought against three individuals for a fraudulent mortgage-lending scheme in which a private bank was the victim, the Fourth Circuit explained that when a governmental body is the victim of a fraud, the test for materiality is a subjective one. *See Raza*, 876 F.3d at 616–17 ("when the victim is the government, the prosecution must prove materiality by reference to the particular government agency or public officials that were targeted"). But, when the victim is a private individual or entity, "the correct test for materiality . . . is an objective one, which measures a misrepresentation's capacity to influence an objective 'reasonable lender,'" rather than the bank itself. *See id.* at 621. As applied to a private individual-victim, the Fourth Circuit has articulated the objective materiality test as being whether "a reasonable person would find [defendant's] representations . . . to be material." *See Robertson*, 760 F. App'x at 220.

Applied here, the jury must evaluate the materiality of any alleged misrepresentation by considering only that alleged misrepresentation's capacity to influence a reasonable client of BinaryBook or BigOption. *See Neder*, 527 U.S. at 16, 25 ("A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking

body to which it was addressed." (alteration adopted) (internal quotation marks omitted)). The subjective considerations of any individual purported victim—as the Government seeks to elicit through its hypothetical-based questions—have no bearing on what a "reasonable person" would do and, therefore are not relevant. *See* Fed. R. Evid. 401; *cf. United States v. Gaver*, Criminal Action No. RDB-17-640, 2018 WL 3475455, at *1–2 (D. Md. July 19, 2018) (in case involving charges for bank fraud, 18 U.S.C. § 1344, granting government's motion in limine to preclude argument that bank was negligent or lacked care because materiality is governed by objective test, which made bank's negligence or lack of diligence irrelevant under Rule 401).

**B. The Government's cases do not address the relevance of hypothetical questions when materiality is evaluated under an objective standard.**

None of the cases the Government cites consider how hypothetical questions intersect with the objective standard for materiality. The Government relies heavily on *United States v. Dukes*, 242 F. App'x 37 (4th Cir. 2007)—an unpublished decision that does not bind this Court and that predates the Fourth Circuit's published decision in *Raza*. *Dukes* does not address how hypothetical questions designed to demonstrate that certain facts were subjectively material to the witness are relevant and admissible when the governing standard for materiality is an objective one. In *Dukes*, in relevant part, the Fourth Circuit looked only at whether the district court committed reversible error by allowing the prosecution to ask a witness a hypothetical question—"whether his investment choice would have been different if [defendant] had altogether discounted the infrastructure companies' IPO chances"—and concluded that question was not a guilt-assuming hypothetical question. *See id.* at 45–46. The Court explained that the question went to materiality and did not "assume the defendant's guilt of the very crime(s) with which he is charged," which means it was "qualitatively different" than guilt-assuming hypothetical questions. *Id.* at 46; *see also United States v. Orr*, 692 F.3d 1079, 1097 (10th Cir. 2012) (citing *Dukes* and holding that a

hypothetical question was not prosecutorial misconduct, without considering whether the hypothetical question should have been permitted in light of the objective standard of materiality).

The Government also cites *United States v. Jennings*, 487 F.3d 564 (8th Cir. 2007), a case that case where the victim was the government and, therefore, a *subjective* evaluation of materiality applied. In *Jennings*, a case that included charges of honest services mail fraud arising from a state legislator's non-disclosure of his financial interest in a company that received state funds, the Eighth Circuit found no error in permitting the Minnesota Commissioner of Commerce, who approved the proposal that provided those state funds to the conflicted entity, to answer "a hypothetical question regarding how a legislator's 'financial interest' would affect [his] decision making," because, *inter alia*, the "government was required to prove whether [defendant's] financial interest . . . was material by showing that it would have had a natural tendency to influence, or was capable of influencing the government agency or official," which it would have been "hard pressed" to do "without asking whether the undisclosed information would have affected the decision maker's analysis." *Id.* at 582 (alteration adopted) (internal quotation marks omitted).

The same is true of *United States v. Bush*, 522 F.2d 641 (7th Cir. 1975), another case on which the Government relies. That case involved honest services-based mail fraud charges arising from a City of Chicago public official's misrepresentation of his financial interest in a company in receipt of a municipal contract. Again, since the victim was the government, subjective materiality was at issue and hypothetical questions designed to establish subjective materiality were permissible.

The remaining out-of-Circuit cases the Government cites on this point do not address how hypothetical questions would be relevant to the jury's consideration of objective materiality. *See*

*United States v. Cuti*, 720 F.3d 453, 458–59 (2d Cir. 2013) (hypothetical questions did not elicit expert opinion testimony from nonexpert witnesses because, per Rule 602, "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior"); *United States v. Hill*, 643 F.3d 807, 842 (11th Cir. 2011) (hypothetical questions did not transform lay testimony into expert testimony).[1]

The Government's argument that the answers to its hypothetical questions would not qualify as expert testimony only proves the point: the testimony the Government seeks to elicit is subjective in nature because it is based on the personal experience of the individual witness. *See* Gov't's Mots. at 2–3. As the Fourth Circuit noted in *United States v. Offill*, 666 F.3d 168 (4th Cir. 2011), although a fact witness may testify to his or her "reasoning and opinions about witnessed events, such as are familiar in every day life," that testimony is limited to "the witness' actual perception of events" and "that it be helpful to the jury in understanding those events." *Id.* at 177. Here, recounting what an individual witness would have done had he or she known different facts is not helpful to the jury in evaluating the effect of any particular statement on a "reasonable person," because that testimony only goes to the subjective individual proclivities of a particular witness.

**C. Even if relevant, hypothetical questions should be excluded under Rule 403.**

Even if the answers to the Government's hypothetical questions were relevant, the Government still should be precluded from asking them because any probative value they have is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading

[1] The government also cites *United States v. Ranney*, 719 F.2d 1183, 1187 (1st Cir. 1983) (district court did not err by allowing prosecution to pose hypothetical questions to each investor about "whether he would have made the investment had he known that [the salesman's] representations were false" because, *inter alia*, that testimony went to investors' reliance). But this case was decided before *Neder*, 527 U.S. at 24–25 (reliance is not an element of the offense under the federal criminal fraud statutes), and before *Raza*, 876 F.3d 604, and *Robertson*, 760 F. App'x 214.

the jury with respect to the way in which materiality is evaluated. *See* Fed. R. Evid. 403. Although the jury will receive instructions from the Court on the applicable law, having the jury hear the personal evaluations of each purported victim-witness as to what he or she "would have done" serves only to confuse the jury when applying the "reasonable person" standard.

With respect to its efforts to prove materiality, the Government's inquiries should be limited to inquiring what misrepresentations, if any, were made to customers of BinaryBook and BigOption by representatives employed at Yukom. The jury then, applying the objective standard for materiality, can assess whether a reasonable person would find whether such a statement has a natural tendency to influence, or is capable of influencing, the decision of a reasonable customer of BinaryBook or BigOption.

## II. OPPOSITION TO JULY 2, 2019 DEADLINE FOR SELECT DEFENSE EXHIBITS

The Government also seeks to preclude Ms. Elbaz from introducing or relying on "attorney-client and related communications" that have not been disclosed by July 2, 2019, the date that this opposition is due. Both parties, of course, are obligated under Rule 16 to provide the other party documents each intends to introduce in its case-in-chief. To date, the Government has provided a preliminary list of 671 exhibits and draft translations of approximately 150 potential exhibits, the original of which were in Hebrew. In doing so, the Government has made clear what it has provided is a good faith list of the bulk of the exhibits it intends to introduce, but has expressly left open the possibility that it will continue to make additions to the list (and with respect to the draft translations, will continue to make changes in those documents). With respect to "attorney-client and related communications," the Government wishes to impose a different rule on Ms. Elbaz, one that would prohibit her from using any document from an entire category of

documents if the document at issue was not identified fully two weeks prior to the commencement of the trial, which is likely five weeks prior to the commencement of the defense case.

The Government provides no authority in support of this extraordinary request. Like the Government, Ms. Elbaz has complied with Rule 16. Indeed, rather than merely providing the Government a list of potential exhibits, Ms. Elbaz has provided the Government with a set of documents, including a set of the "attorney-client and related communications" that in good faith she has identified to date as being the documents in that category that she will seek to introduce at trial. Rule 16 does not require Ms. Elbaz to preview for the Government her defense and there is no "attorney-client and related communications" exception to that Rule. The Government's motion *in limine* regarding "attorney-client and related communications" should be denied.

As the Government set forth in its motion, Ms. Elbaz is not putting on an advice of counsel defense and is not seeking a jury instruction on that defense. Her state of mind, however, such as her intent to commit fraud or absence of such intent, and whether she was acting in good faith, will be at issue at trial. To the extent that she saw legal opinions or had them described to her, she plainly is entitled to put on evidence about those opinions and communications.

At the Government's request, Ms. Elbaz provided the Government with a list by Bates number of documents relating to legal opinions that she may seek to introduce in her case-in-chief. After receiving the list, Government counsel then informed Ms. Elbaz that the Filter Team has denied the Prosecution Team access to three of these documents. The Government asked Ms. Elbaz to respond to a series of inquiries about the documents. The queries related to the provenance of the documents and implicated the existence of joint defense or common interest privileges that may have covered the documents. In other words, the Government was asking

Ms. Elbaz to reveal the very type of information that, if it were appropriate for her to discuss at all, would only be appropriate for her to discuss with the Filter Team.

Rather than allowing actions of the Prosecution Team to (again) breach the wall that the Filter Team was created to erect, Ms. Elbaz responded by representing that the three documents were the same as documents that appeared under three different Bates numbers, which Ms. Elbaz believed the Prosecution Team could access. While Ms. Elbaz could not explain why the Filter Team had given the Prosecution Team access to the documents under one set of Bates numbers but not given the Prosecution Team access to the same documents under a different set of Bates numbers, Ms. Elbaz believed that she had effectively resolved the issue by representing they were the same documents. Rather than tell Ms. Elbaz that, in fact, the Filter Team had not released the documents to the Prosecution Team under either set of Bates numbers, it filed this motion.

After reading the motion and understanding that the Prosecution Team did not have access to the three documents under any Bates number, Ms. Elbaz promptly produced the documents to the Prosecution Team. Accordingly, Ms. Elbaz is aware of no documents that require disclosure under Rule 16 that have not been produced by Ms. Elbaz to the Prosecution Team.

The Government mischaracterizes Ms. Elbaz's position by saying, "After litigating privilege issues for months, the defendant has apparently changed course and decided that it is time to admit attorney-client communications in her defense." Gov't's Mots. at 6. There has been no change in course. The Prosecution Team had no right to have access for months to more than 10,000 documents the Filter Team had deemed to be potentially privileged. There is nothing inconsistent about Ms. Elbaz taking, and maintaining, that position, and yet deciding that there is a tiny subset of those documents that is relevant to her defense and, accordingly, which she seeks to introduce as evidence at trial after complying with Rule 16. The Government is free, of course,

to argue that by doing so, she has waived privilege with respect to other communications, but the Government's motion *in limine* expressly states that it is not making any waiver argument "at this time." *Id.* at 7. The Government has the documents that Ms. Elbaz has given notice she intends to introduce in her case-in-chief. If the Government wants to make a motion regarding a waiver of privilege, it may do so. It does not need relief from the Court in the form of its motion *in limine* to do so.

Date: July 2, 2019

Respectfully submitted,

/s/ Barry J. Pollack
Barry J. Pollack (MD Bar No. 12415)
Jessica Arden Ettinger (*pro hac vice*)
ROBBINS RUSSELL ENGLERT ORSECK
UNTEREINER & SAUBER LLP
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com
jettinger@robbinsrussell.com

*Counsel for Ms. Elbaz*

**CERTIFICATE OF SERVICE**

On this 2nd day of July 2019, I directed the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack (MD Bar No. 12415)
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K Street NW, 4th Floor
Washington, District of Columbia 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Ms. Elbaz*