**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| LEE ELBAZ, | Criminal Action No. TDC-18-157 |
| a/k/a "Lena Green," | |
| Defendant. | |

**GOVERNMENT'S BRIEF ON THE ADMISSIBILITY OF CO-CONSPIRATOR**
**STATEMENTS AND OTHER EVIDENCE**

The government, by and through undersigned counsel, respectfully submits this brief to provide the Court with the legal basis for the admission of (a) statements made by the defendant under Fed. R. Evid. 801(d)(2)(A), (b) statements made to the defendant or other co-conspirators offered not for the truth of the matter asserted in the statement, but for non-hearsay purposes including notice, and the fact that the communication took place, (c) statements made by the defendant's co-conspirators under Fed. R. Evid. 801(d)(2)(E), and (d) statements made by the defendant's employees within the scope of their employment under Fed. R. Evid. 801(d)(2)(D). The government is not asking the Court to make any rulings on the government's evidence in advance of Ms. Uzan's or Ms. Welles's testimony, but instead offers this brief to preview for the Court (1) the categories of evidence that will be admitted through each witness, and (2) a basis for admission. This brief is not intended to provide an exhaustive discussion of the categories of documents or the admissibility of all the government's evidence, as many of the government's trial exhibits are admissible on multiple grounds.

The government submits this brief after having learned tonight that the defendant will object to (or at least has not agreed to the admission of) the vast majority of the government's

exhibits which will be introduced through the government's next two witnesses, Shira Uzan and Liora Welles.  The government previously provided a list of Ms. Uzan's exhibits to the defendant by exhibit number on Monday at approximately 1:00 p.m.  Since Monday, the government has also provided the defendant with set of electronic exhibits for Ms. Uzan, and a separate set for Ms. Welles, in addition to the complete electronic set of exhibits previously provided to the defense.

## I.      The Defendant's Statements are Admissible under Fed. R. Evid. 801(d)(2)(A)

The government will be offering the defendant's own statements in the form of, among other things, (1) audio recordings of training sessions for new employees conducted by the defendant, (2) the defendant's own emails and chat messages, and (3) video recordings of the defendant speaking to employees inside Yukom.

The audio recordings of the defendant were made by her own employee, Shira Uzan, while Ms. Uzan was participating in the training class, and thus many of those recordings will be offered into evidence through Ms. Uzan.  In the audio recordings of Ms. Uzan's training, Ms. Elbaz can be heard engaging in a role-playing simulation to teach new employees how to speak with potential investors on the phone.  Among other things, Ms. Elbaz says while simulating the role of the account manager speaking to a client "even if I'm gonna make every month not 30 percent, every month I'm gonna make you 5 percent every month, in one year… do you know how many percent it's gonna be?"  Ms. Elbaz then breaks character and instructs her employees to "promise him 5 percent a . . . a month, and that means you make for him more than a 100 a year . . . it's surely more than he has in the bank."

In another recorded call of Ms. Uzan's training, Ms. Elbaz, again simulating the role of the account manager, says "So as you can see you have made a 15 percent return on your fund investment within only two days.  This means, you can make 150 percent a week, 600 percent a

month."  Later, Ms. Elbaz directs her employees during the training on the importance of not taking too much money from a client right off the bat, stating "If you 'drink' the client and you don't give him a good time, you'll 'drink' him once or twice and that's it.  If you give him a good time, you're f\*\*king going to drink every 3-4 days over a period of time . . . so give him a good time . . . ."

During these training sessions, Ms. Elbaz alternates between English and Hebrew.  The government will be offering the original audio of the training, along with a transcript of the audio that contains the English transcribed with the Hebrew translation.  The jury will be able to identify which portion of the transcript is in Hebrew as the translated Hebrew is identified on the transcript in italics.

The government also intends to introduce WhatsApp text messages between Ms. Welles and Ms. Elbaz, which were recovered from Ms. Elbaz's cellular telephone.  Defense counsel has already to stipulated to the fact that they were recovered from her telephone; however, counsel has indicated the defense objects to the admission of the messages, without providing a basis.  The government is offering these text messages both in the original Hebrew and in translated English. Messages from Ms. Elbaz sent to Ms. Welles are clear non-hearsay under Rule 801(d)(2)(A), and the accompanying messages from Ms. Welles to Ms. Elbaz are admissible because, as the Fourth Circuit has clearly held, they are "reasonably required to place [a defendant's] responses into context." *United States v. Wills*, 346 F.3d 476, 490 (4th Cir. 2003); *see also United States v. Dixon*, 481 F. App'x 806, 811 (4th Cir. 2012) ("We have previously held out-of-court statements may be admissible to provide context to conversations."); *United States v. Henderson*, 380 F. App'x 295, 297 (4th Cir. 2010) (admitting statements of another party on a recording of a conversation with a defendant were admissible to provide "context for Henderson's statements").

The government also intends to offer multiple video recordings recovered from the defendant's telephone. Like the messages, defense counsel has stipulated to the fact that these videos were recovered from the defendant's phone, but has indicated he may object to their admission at trial. Some of these recordings are between the defendant and other Yukom employees. These statements are admissible for the same reasons as the WhatsApp chats discussed above. *See Wills*, 346 F.3d at 490 *Dixon*, 481 F. App'x at 811; *Henderson*, 380 F. App'x at 297.

## II.   Statements Made to the Defendant and her Co-conspirators are Admissible for Non-Hearsay Purposes

Some exhibits (or portions of exhibits) to which the defendant objects are being admitted for proper non-hearsay purposes, such as to establish the defendant was on notice of certain conditions and the fact of certain events.[1] For example, the government intends to offer other video recordings recovered from a court-authorized search of the defendant's telephone that were taken inside Yukom's offices, which show employees making calls and other conduct inside of Yukom. The government does not intend to offer many of the statements in these videos for the truth; indeed, there is no "truth" in question because the recorded statements are short snippets of conduct (calls being made) and greetings (employees sending greetings to Ms. Elbaz).[2]

Similarly, the government intends to offer certain email chains in which the defendant and her co-conspirators received customer complaints, then forwarded them internally inside of

---

[1] *See* 5–801 Weinstein's Federal Evidence § 801.11[5][a] (an out-of court-statement is not hearsay when "offered not for [its] truth but to prove the extent of . . . a recipient's notice of certain conditions.").

[2] These videos are also highly relevant. The defendant's stated defense is that she was unaware of conduct taken by her employees. All evidence showing the relationship between the defendant and her employees is therefore relevant. Evidence of proximity and close relationships, including the videos described above, undermines the defendant's claim that she was unaware of the crimes being committed in her office.

Yukom.  The customers complaints themselves are admissible to show notice.  In *United States v. Cone*, the Fourth Circuit affirmed the district court's admission of emails (specifically, customer complaints) sent to two defendants accused of counterfeit fraud.  714 F.3d 197, 219 (4th Cir. 2013).  The Fourth Circuit concluded "that the district court properly admitted the e-mails for the non-hearsay purpose of showing that Cone and Zhao were on notice as to the counterfeit nature of the goods they sold."  *Id.* at 219.[3]

The defendant also objects to emails in which she was sent training materials used by Yukom.  The attached training materials (and the sending email) are admissible for the non-hearsay purpose of showing the defendant received certain training materials, such as call scripts, at certain points in time during her employment.  (Certain statements made by the defendant's employees in the cover emails are admissible for the truth under both Rules 801(d)(2)(E) and 801(d)(2)(D), discussed below).

### III.   Statements Made by the Defendant's Co-conspirators are Admissible Under Fed. R. Evid. 801(d)(2)(E)

The government will also offer the statements of the defendant's co-conspirators under Fed. R. Evid. 801(d)(2)(E), which provides that such statements are not hearsay when "offered against an opposing party" and "made by the party's coconspirator during and in furtherance of the conspiracy."  The Fourth Circuit has held that "in order to admit a statement under 801(d)(2)(E), the moving party must show that (i) a conspiracy did, in fact, exist, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made in the course of, and in furtherance, of the conspiracy."  *United States v. Pratt,* 239 F.3d 640, 643 (4th Cir. 2001).  A

---

[3] The Fourth Circuit cautioned that a limiting instruction asked for by defense counsel should have been given.  The government will not object to such an instruction, and the government can provide the Court with such an instruction if it wishes.

co-conspirator's statement was "made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *United States v. Graham*, 711 F.3d 445, 453 (4th Cir. 2013) (quoting *United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994)). Put differently, a statement can still be "in furtherance" of the conspiracy even if the statement was not "exclusively, or even primarily, made to further the conspiracy," as long as there is "some reasonable basis" for concluding that the statement was intended to further the conspiracy. *See Shores*, 33 F.3d at 444.

While the government must show some "independent evidence" of the conspiracy, *see United States v. Talbert*, 706 F.2d 464, 468 (4th Cir. 1983), Rule 801(d)(2)(E) is "broadly interpreted" to allow "the use of circumstantial evidence" to show the existence of the conspiracy. *See United States v. Warman*, 578 F.3d 320, 337 (6th Cir. 2009) (citing *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995); *United States v. Miller*, 981 F.2d 439, 442 (9th Cir. 1992)). And the government must only establish that statements meet the requirements of Rule 801(d)(2)(E) by a preponderance of the evidence. *See Graham*, 711 F.3d at 453.

In making these determinations, a court is not bound by the Rules of Evidence. *See* Fed. R. Evid. 104(a), 1101(d)(1). "[T]he district court has the discretion to consider any evidence, not subject to a privilege, including both the alleged co-conspirator statements and any other hearsay evidence, whether or not that evidence would be admissible at trial." *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995); *see generally* Fed. R. Evid. 104(a) (a court is not bound by evidence rules in deciding any preliminary question regarding the admissibility of evidence); Fed. R. Evid. 1101(d)(1) (same).

Importantly, in the Fourth Circuit a district court judge may also "admit conditionally the declarations of co-conspirators before the conspiracy has been independently established, subject

to the subsequent fulfillment of that factual predicate." *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983); *see also United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992) (stating that a trial court may "conditionally admit co-conspirators' statements subject to the subsequent satisfaction of the requirements for their admission"); *United States v. Gutierrez*, 993 F.2d 1540 (4th Cir. 1993) (unpublished) ("[T]he district court's reliance upon the Government's forecast that the next witnesses would connect [admitted evidence] with the conspiracy was appropriate."); *United States v. Nelson*, 530 F. Supp. 2d 719, 728 (D. Md. 2008) (noting "[a]lthough some circuits require a pretrial hearing to determine the admissibility of co-conspirator statements . . . ours is not among them.").

The Fourth Circuit rule of conditional admission of co-conspirator statements promotes efficiency. And as another district court in the Fourth Circuit explained, "[t]his policy is in accord with the Supreme Court's recognition in *Bourjaily* that 'individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it,' especially on complicated issues such as the existence of a conspiracy." *United States v. Seko*, No. 1:15-cr-301, 2016 WL 1586557, at *3 (E.D. Va. Apr. 19, 2016) (quoting *Bourjaily v. United States*, 483 U.S. 171, 172 (1987)). Conditional admission promotes an efficient trial because it "avoids a lengthy mini-trial on the existence of the conspiracy which would likely be nearly as lengthy as the trial itself." *See id.* at *3; *see also Warman*, 578 F.3d at 335 (stating that the court may conditionally "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence"); *United States v. Freitas*, 904 F.3d 11, 17 n.3 (1st Cir. 2018) ("If a defendant challenges the admissibility of a supposed coconspirator statement, the judge can conditionally admit the evidence and delay ruling until the close of all the evidence."); *United States v. Blakeney*, 876 F.3d 1126, 1134 (8th Cir. 2017) ("The court may conditionally admit the statement and rule on its

admissibility at the conclusion of the evidence."); *United States v. Ferguson*, 676 F.3d 260, 273 n.8 (2d Cir. 2011) ("The court conditionally admitted co-conspirator statements during the government's presentation of its case.").

The government anticipates offering substantial additional evidence to establish the existence of a conspiracy at Yukom involving the defendant, including testimony from cooperating witnesses who have pleaded guilty to conspiring with the defendant. For example, Ms. Uzan has already testified that she pled guilty to conspiring to commit wire fraud and that she conspired with "the CEO of the Company, Lee Elbaz, the managers, the supervisors, the rest of the employees that worked" with her at Yukom. Trial Tr. July 16, 2019 at 81. Ms. Uzan testified that the defendant, Lee Elbaz, hired her and directed her to participate in a training course when she started working at Yukom. Among other things, Ms. Uzan testified that she lied to clients about whether she had experience in financial markets (telling them she had 15 years of experience) and about how Yukom made money (telling clients she was paid commissions on winning trades). Ms. Uzan testified that she was "taught what to tell clients," including the lies described above, "during the training course," that the defendant directed her to take during her first weeks at Yukom. *Id.* Ms. Uzan further testified and "after the one week of the training course, [she] continued to have training by the managers, by the CEO." *Id.* at 81-82.

Thus, even Ms. Uzan's brief testimony, coupled with the fact of her guilty plea, would be sufficient to satisfy the first and second requirements of Rule 801(d)(2)(E). *See e.g.*, *United States v. Lysaith*, 49 F. App'x 407, 408 (4th Cir. 2002) ("[T]he burden of proof for admission of testimony under Rule 801(d)(2)(E) is a mere preponderance rather than the higher standard—beyond a reasonable doubt."); *see also United States v. Chan*, 184 F. Supp. 2d 337, 343 (S.D.N.Y. 2002) ("The redacted plea allocutions are relevant because they tend to show that a conspiracy to

distribute heroin existed, an issue which is central to the case.").[4]  Moreover, the government anticipates that Ms. Uzan's additional testimony will only further establish that the defendant conspired with Ms. Uzan and her other employees to defraud victims.   Specifically, the government anticipates that Ms. Uzan will identify her direct supervisors, including Or Maymon and Nissim Alfasi, as among her supervisors who also trained her to lie to potential investors.

In addition to Ms. Elbaz's recorded statements from Ms. Uzan's training as a new employee, the government will be offering audio recordings of Mr. Alfasi and Mr. Maymon instructing new employees to (1) "choose whatever the f**k you want, 15 to 20% [return]" to tell investors they will earn in binary options, (2) falsely tell potential investors "[a]lways you work 20 years, 15 years" because "nobody wants to invest 100k or a quarter of a million, and this is your targets, with somebody that works five, six years because on his end, you're like uh, you just started.  You're a junior broker[,]" and (3) falsely tell potential investors employees are paid "five percent" from the client's successful trades.   Again, Ms. Uzan has already identified her

---

[4] For purposes of conditionally admitting the statements in question, the Court may also take into account the fact of other guilty pleas by identified government witnesses.  For example, in *United States v. McGill*, a district court conditionally admitted certain statements pretrial, noting:

> [T]he conspiracy will likely be clearly defined only after the testimony of several witnesses and presentation of various proofs. Since McGill's co-defendants charged with participation in the conspiracy were previously found guilty after trial or pled guilty, the Government has previously established the existence of the conspiracy based on the facts of this case. Accordingly, the Court finds that the Government has made a prima facie showing of the existence of a conspiracy, and the Court need not be overly concerned, under the circumstances of the case, about the danger of irremediable prejudice to the jury if the Government does not meet its burden of establishing the conspiracy.

No. CR 12-112-01, 2016 WL 48214, at *6 (E.D. Pa. Jan. 5, 2016).

supervisors as having trained her to lie to potential investors, and the training audio itself is unquestionably in furtherance of the objectives of the conspiracy to which Ms. Uzan has pleaded guilty.  The government will also offer emails written by the defendant's co-conspirators which further the conspiracy in other ways, including by stopping withdrawals, changing Yukom bank accounts, passing along wire confirmations, and communications from Ms. Uzan and Ms. Welles to investors.

## IV.     Statements of the Defendant's Employees are Also Admissible Under Rule 801(d)(2)(D).

In addition to Rule 801(d)(2)(E), many of the documents in question are also independently admissible under Rule 801(d)(2)(D) because they are "offered against an opposing party," and made by the opposing party's "employee on a matter within the scope of that relationship and while it existed."  To introduce a statement under Rule 801(d)(2)(D), the record must reveal "independent evidence establishing the existence of the agency."  *Sutton v. Roth, L.L.C*, 361 F. App'x 543, 547–48 (4th Cir. 2010) (quoting *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 321 (4th Cir.1982)).  As the Fourth Circuit has explained, statements are admissible under Rule 801(d)(2)(D) "whenever an employee makes a statement 'about a matter within the scope of her employment," even if she is not authorized to speak on the matter." *United States v. Poulin*, 461 F. App'x 272, 282 (4th Cir. 2012) (quoting *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir. 1982)).  "[A] statement of illegal activity can still be within the scope of employment and can be admissible under 801(d)(2)(D)." *United States v. Riley*, 621 F.3d 312, 338 (3rd Cir. 2010) (citation omitted).

Here, the evidence will readily establish (and the defense appears to concede) that the defendant exercised supervisory authority over her co-conspirator employees.  The government anticipates that testimony from numerous cooperating witnesses will confirm that the defendant

was a high-level manager who oversaw all Yukom employees. Indeed, defense counsel highlighted the defendant's role as CEO, mentioning it a half dozen times during his opening statement and displaying an organizational chart. The defense emphasized that she not only monitored her employees by listening to recorded calls, she also maintained the authority to dictate policy at Yukom and to discipline and terminate employees — even though the latter was apparently "very difficult" under Israeli labor laws. In short, there appears to be no dispute that the evidence will establish an agency relationship between the defendant and her employees.

Moreover, the statements the government intends to offer largely include: (1) training sessions for new Yukom employees conducted at the defendant's direction; (2) internal Yukom communications regarding clients; and (3) communications between Yukom employees and clients. Yukom managers, including the defendant, were responsible for training new employees, and, again, as the defense has conceded, using binarybook.com and bigoption.com email accounts to communicate with and about clients was precisely what the defendant's employees were hired and directed to do by the defendant. Thus, all of these statements are well within the scope of the employees' role at Yukom. *See Poulin*, 461 F. App'x at 282 (relevant inquiry is "whether the subject matter and circumstances of the out-of-court statement demonstrate that it was about a matter within the scope of the employment").

Dated: July 17, 2019

11

Respectfully submitted,

ROBERT A. ZINK
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:     _____/s/_____

L. Rush Atkinson, Trial Attorney
Caitlin R. Cottingham, Trial Attorney
Henry P. Van Dyck, Deputy Chief
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave. N.W.
Washington, D.C. 20530

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 17, 2019, I electronically filed the foregoing with the Clerk of

the Court by using the CM/ECF system, which will notify counsel for the defendant of the filing.


By:      _____/s/_____
         Caitlin R. Cottingham
         Trial Attorney
         Fraud Section, Criminal Division
         U.S. Department of Justice