1         UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF MARYLAND
2              SOUTHERN DIVISION

3   UNITED STATES OF AMERICA        Criminal No.  TDC-18-00157

4           v.                      Greenbelt, Maryland

5   LEE ELBAZ,                      July 11, 2019

6              Defendant.           9:00 a.m.

7   --------------------------/

8              TRANSCRIPT OF PRETRIAL CONFERENCE
         BEFORE THE HONORABLE THEODORE D. CHUANG
9              UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:     U.S. Department of Justice
                           By: CAITLIN R. COTTINGHAM, ESQUIRE
12                             LAWRENCE RUSH ATKINSON, ESQUIRE
                               HENRY P. VAN DYCK, ESQUIRE
13                         1400 New York Avenue, NW
                           Washington, D.C. 20005
14

15  For the Defendant:     Robbins Russell Englert Orseck
                           Untereiner & Sauber LLP
16                         By: BARRY J. POLLACK, ESQUIRE
                               JESSICA ETTINGER, ESQUIRE
17                         2000 K Street, NW
                           Fourth Floor
18                         Washington, D.C. 20006

19

20
    Court Reporter         Lisa K. Bankins RMR FCRR RDR
21                         United States District Court
                           6500 Cherrywood Lane
22                         Greenbelt, Maryland 20770

23

24  Proceedings recorded by mechanical stenography,
    transcript produced by notereading.
25

1

```
 1                    P R O C E E D I N G S
 2              THE COURT:  The matter now pending before this
 3    Court is Criminal Case Number TDC-18-0157, United States
 4    of America versus Lee Elbaz.  We are here today for the
 5    purpose of a pretrial conference.  Counsel, please
 6    identify yourselves for the record.
 7              MS. COTTINGHAM:  Good morning, Your Honor.
 8    Caitlin Cottingham for the United States.  Here with me at
 9    counsel's table are Rush Atkinson and Henry Van Dyck.
10              THE COURT:  Okay.  Good morning.
11              MR. POLLACK:  Good morning, Your Honor.  Barry
12    Pollack on behalf of Ms. Elbaz and also on behalf of Ms.
13    Elbaz is Jessica Ettinger.
14              THE COURT:  Okay.  Good morning.  We have an
15    interpreter today.  Is that correct?
16              THE CLERK:  Yes.
17              THE COURT:  So why don't we administer the oath
18    to the interpreter before we begin?
19              THE CLERK:  Please raise your right hand.
20              (Interpreter sworn.)
21              THE CLERK:  Please state your first and last
22    name for the record.
23              THE INTERPRETER:  Nurit Shoham.
24              THE CLERK:  Thank you.
25              THE COURT:  Okay.  So we are here for the
```

1    pretrial conference in this matter.  I understand we have

2    new counsel on the government side.  So this is our first

3    session together.  Hopefully, it will be a seamless

4    transition.

5              The process I'd like to follow for today is I

6    would like to start by trying to resolve the pending

7    motions.  There's a motion to compel immunity and then

8    there's also the motion, the government's motion in

9    limine, which has more than one part.  Then I would like

10   to review the voir dire procedure and the questions, try

11   to reach a final resolution on what questions will be

12   asked next week and then go through as much as we can, the

13   jury instructions, both my preliminary instructions and

14   the overall instructions.

15             See again if we can -- I'd like to effectively

16   have the charge conference before the trial so everyone

17   knows what the law that they are working towards applying

18   the facts to is.  Sometimes that's possible.  Sometimes

19   it's not.  There is usually some things that we won't know

20   until the middle of the trial.  But if we can resolve as

21   much of it as possible, I think that's helpful.

22             And then along the way, we'll talk about

23   logistics, particularly for things like voir dire.  But if

24   there's any logistical questions or housekeeping matters

25   to address, we'll do that at the end.

1          So with the motions, let's start with the motion

2     to compel immunity.  It's been fully briefed.  I'm not

3     sure I need to hear anything else.  But I did want to just

4     clarify one thing first off from the government.

5          My understanding just -- and I understand it may

6     not have been you, but I assume you've gotten all the

7     information we need here.  My understanding is the

8     sequence of events from the government's side was that you

9     had initially been notified that I had issued an order to

10    have the depositions taken.  That at some point when it

11    looked as if they were really going to happen, government

12    counsel filed a motion with Judge Xinis in the other case,

13    asked for approval of basically a set of warnings or

14    disclosures to be made so that the witnesses would not be

15    unaware of important information at the time that they

16    testified in the deposition.

17         But Judge Xinis refused to approve that as

18    inadequate to notify these witnesses of their rights and

19    then as a result, the government then proposed instead the

20    unsealing of the indictment partially to be able to tell

21    them specifically that they had been indicted and to share

22    the indictment with them and that Judge Xinis approved

23    that motion, although there may have been some informal

24    notification before the order was actually signed.

25         Do I have that correct or is there anything to

1    add or subtract from that?

2            MS. COTTINGHAM:  Your Honor, that is more or

3    less correct.  You're right that after it looked like the

4    depositions -- I will say the government never received

5    any formal notice that these depositions were going to

6    take place.  There were ongoing discussions between

7    counsel for the United States and Mr. Pollack of the

8    scheduling of the depositions.  So when it looked as

9    though they were potentially going to take place, prior

10   counsel filed a motion, although it was not in fact

11   docketed with Judge Xinis as I think we noted in our

12   motion and then had a followup ex parte conversation --

13           THE COURT:  How is a motion not docketed?  I

14   don't understand that.

15           MS. COTTINGHAM:  Your Honor, I had a number of

16   conversations with the clerk's office about that and

17   candidly, we don't entirely know how it happened.

18           THE COURT:  I mean is it that it was just

19   emailed to chambers and not formally put on ECF even as a

20   sealed motion?

21           MS. COTTINGHAM:  My understanding is that it

22   went to the clerk's office and was delivered to Judge

23   Xinis' chambers and that they received it, but that it was

24   not docketed by the clerk's office.

25           THE COURT:  Um-hum.

1          MS. COTTINGHAM:  When we became involved in the

2     case and contacted Judge Xinis' chambers, they had it and

3     had a record of having received the motion and so then the

4     solution we worked out was to essentially docket it after

5     the fact and reflect when it was received.

6          THE COURT:  Um-hum.  Okay.

7          MS. COTTINGHAM:  In any event, that took place

8     and after Judge Xinis expressed concern that this wasn't

9     adequate.  And in the interim, it looked as though the

10    depositions were actually more likely to proceed, we had

11    additional information from Mr. Pollack.  We actually went

12    ahead and moved to unseal at that time.

13         THE COURT:  Okay.  While I have you here, is

14    there anything else you want to add to what you've already

15    submitted in writing on this topic?

16         MS. COTTINGHAM:  No, Your Honor.

17         THE COURT:  Okay.  Mr. Pollack, anything you

18    want to add either in response to what I just discussed

19    with government counsel or otherwise?

20         MR. POLLACK:  Yes, Your Honor.  A couple of

21    things.  First of all, about the timeline that you asked

22    about.  The timeline really starts back in February when

23    these individuals were indicted.  The government took

24    absolutely no action as far as I can tell to do anything

25    about that indictment.  As far as I can tell, there was no

1    red notice, there was no extradition request.

2            In April, I filed the motions to take

3    depositions.  I don't really understand this whole

4    business about when it looked like they were going to go

5    forward.  I'm not in the business of filing motions --

6            THE COURT:  Mr. Pollack, I assure you I don't --

7    to the extent there's a timeline issue here, I would agree

8    with you that at least when they received notice that the

9    motion was granted, that that would be the point at which

10   one would assume that they expected the depositions to

11   occur.

12           Now there may have been reasons why I think as

13   lawyers go, I mean I think they were perhaps caught in a

14   rundown, so to speak, between two bases.  They didn't know

15   which way to go with it.  On the one hand, you want to

16   have the indictment remain under seal on the hope that it

17   will make it easier to apprehend these individuals at the

18   same time they had this other issue.

19           So if they were to say and I think they have

20   said in their papers that whether they knew that these

21   were scheduled, they thought there might be a way to wait

22   a little longer just to see if it was really going to

23   happen, I accept that.  I don't think that's an excuse.

24   But I accept that that may have been part of the thought

25   process.  But I agree with you in terms of when they knew

1    that this was -- they should have known this was going to

2    happen, it would be when the order was issued.

3            MR. POLLACK:  Okay.  Thank you, Your Honor.  In

4    terms of that one base and that rundown, I guess I have

5    trouble buying the rationale that we didn't want to unseal

6    the indictments for fear that we would tip off these

7    defendants because they had made no effort to detain these

8    defendants in the many months since then.  This was all

9    driven by the fact that they were going to be witnesses.

10   There was no indication --

11           THE COURT:  Well, wasn't the indictment before

12   you filed your motion?

13           MR. POLLACK:  Correct.  Correct.

14           THE COURT:  So you're saying the indictment

15   wasn't because of them becoming witnesses.  It's just

16   everything that happened after that.

17           MR. POLLACK:  Any effort to act on that

18   indictment --

19           THE COURT:  Okay.

20           MR. POLLACK:  -- was purely as a result of the

21   fact that these were going to be witnesses in this case.

22   There was no effort to pursue detaining the defendants in

23   United States versus Herzog until the prosecution team in

24   United States versus Elbaz realized the implications for

25   the Elbaz case.  That's my point.

1          THE COURT:  Okay.  No.  I understand.

2          MR. POLLACK:  And going back to sort of the

3    fundamental issues, first of all, in order to be

4    misconduct under the law as it relates to defense

5    immunity, it does not need to be intentional conduct.  It

6    simply means to be -- it means conduct that is

7    inappropriate because it has a prejudicial effect without

8    a legitimate rationale for it.

9          Secondly, there doesn't even need to be

10   misconduct in order for there to be defense immunity.  In

11   the McCloskey case, I think the court finds that there was

12   misconduct, but I think it's pretty clear that the court

13   was going to grant the immunity regardless.  It announces

14   that it's granting the immunity and then it says, oh, by

15   the way, we think what the government did was improper.

16   And its basis for granting the immunity is the fact that

17   the defense witness there was very material to the

18   defense.  And that there weren't other witnesses that the

19   defense could call for the same proposition.  So that

20   person -- in fairness to the defense, it was unfair to

21   deprive the defense of that testimony.

22          And in McCloskey, that ruling was despite the

23   fact -- the defense wasn't completely deprived of that

24   witness' testimony because there was an out-of-court

25   proceeding before the witness changed their mind about

1    testifying in which they gave testimony and the trial

2    court admitted those prior statements into evidence.

3           So despite the fact that the defense wasn't

4    completely deprived of the statements, the fact that the

5    defense was partially deprived of this witness meant the

6    defense immunity should have been granted because of the

7    significance of that witness to the defense case.

8           Here, Your Honor, we're not dealing with a

9    single witness.  We're dealing with four witnesses and the

10   Court has already made findings.  I've already made a

11   proffer ex parte regarding the materiality of these

12   witnesses to the defense case.  I don't think the Court

13   had any trouble finding that these witnesses were

14   material --

15          THE COURT:  Well, based on the limited

16   submission.  I mean I agree with you that I thought there

17   was enough to have a deposition.  I don't know if that

18   necessarily means it meets the standard.  But I agree it

19   takes you part of the way there.

20          Let me ask you this.  Why isn't --

21          MR. POLLACK:  And I would certainly be happy to

22   make a more detailed submission --

23          THE COURT:  No.  I understand.

24          MR. POLLACK:  -- if the Court thinks the

25   standard is any different here in terms of materiality.

1       I'd be happy to make a very detailed proffer.

2                   THE COURT:  Okay.

3                   MR. POLLACK:  There are --

4                   THE COURT:  Well, let me ask you a different

5       question though because how is this situation different

6       whether it's in terms of immunizing or just -- I mean,

7       first off, we have two different cases here.  But they

8       could have been added to this case as a superseding I

9       think.  I haven't read the third indictment.  But there

10      are different ways to do that.  So I don't think that's a

11      material distinction.

12                  The real issue here seems to be that they're in

13      another country.  I mean if they were in the United States

14      and they were either charged in the same indictment or in

15      a different indictment, when would anyone assume that they

16      could just say, hey, somebody else indicted for basically

17      the same conduct if someone that I want to have as my

18      witness and I need the government to immunize that person

19      when in fact as you know as a very experienced attorney,

20      that person is not going to be testifying in your trial if

21      they are indicted in either the same case or a parallel

22      case and they obviously would have, you know, Fifth

23      Amendment warnings given.

24                  So obviously, the extraterritorial nature of

25      this makes some difference.  But how does it make enough

1    of a difference to take it out of that situation where

2    there really would be no expectation that anyone would

3    compel the government to immunize someone in that

4    situation?  In many of the cases they immunize witnesses,

5    someone who hasn't been charged and may never be charged.

6    Whereas here, they were charged even before this whole

7    episode began.

8              MR. POLLACK:  Well, there are a number of

9    distinctions, Your Honor.  Let me see if I can get through

10   all of them.  First of all, they obviously weren't charged

11   together.

12             Secondly, what we're not talking about is

13   whether or not they are potential co-conspirators.  What

14   we are talking about is whether or not they are going to

15   be informed of the indictment in a time and in a way that

16   it is predictable that will affect their decision whether

17   or not to give testimony in this case.

18             Third of all, even if they had been indicted

19   together, that might well be a motion for severance, the

20   fact that you would be deprived of testimony of your

21   co-defendant if you are tried together.

22             And lastly, Your Honor, this is not the

23   run-of-the-mill case where a defendant has simply decided

24   on their own accord not to testify because they have a

25   Fifth Amendment right.  This is a case where the

1    government made no effort whatsoever to secure their

2    presence for this indictment, made no effort whatsoever to

3    inform them of the fact of their indictment, chose to

4    inform them of the indictment immediately before they were

5    going to give testimony in this case, did so I think in

6    advance of even having the Court's permission to do so and

7    all of that served no legitimate purpose.

8             Under Israeli law, the defendants are informed

9    that they have a right not to testify.  They had already

10   been informed of that by their counsel as they are

11   required to be by Israeli law.  It is quite different to

12   be informed that by United States federal prosecutor who

13   is informing you that he has indicted you and that he is

14   pursuing charges against you and, oh, by the way, in the

15   United States, defendants don't typically testify.

16            So there are any number of distinctions between

17   this case and a run-of-the-mill case where you have

18   multiple defendants and a defendant decides of their own

19   volition to exercise their Fifth Amendment rights --

20            THE COURT:  So let me ask you this.

21            MR. POLLACK:  Can I finish because I --

22            THE COURT:  Okay.  Go ahead.

23            MR. POLLACK:  There's another significant

24   distinction, which is in that joint trial situation that

25   the Court posited, that other defendant has a Fifth

1    Amendment right.

2              Here, the Fifth Amendment wasn't implicated at

3    all.  The government was not compelling this testimony.

4    These were witnesses who were voluntarily giving

5    testimony.  So again, it is a very different situation

6    then the run-of-the-mill situation where you've got

7    indicted co-conspirators in the same trial and one of them

8    chooses to assert his Fifth Amendment rights.

9              THE COURT:  So let me just ask you a

10   hypothetical.  If you were Mr. Herzog's attorney --

11             MR. POLLACK:  Um-hum.

12             THE COURT:  -- throughout this episode and the

13   government had come in and sat there and said nothing and

14   cross-examined them, Mr. Herzog or maybe even said this

15   thing that Judge Xinis rejected that, well, you know, you

16   may or may not have some exposure at some point, would you

17   have no problem if he somehow was brought to the United

18   States to face the charges saying that everything in the

19   deposition comes into that case or would you have an

20   argument as to why it would be improper to or the

21   government acted improperly in cross-examining without

22   giving any kind of warnings to an indicted defendant?

23             MR. POLLACK:  I would certainly have that

24   argument.  Frankly, I don't know if that argument would

25   prevail.  But I would have that argument.  Either it

1   doesn't prevail in which case there's no harm from having

2   not proceeded in the way that the government proceeded

3   here or it does prevail which simply means that the

4   government can't use that testimony in the Herzog

5   prosecution.  How is the government prejudiced by that?

6   They wouldn't have had this testimony to use in the Herzog

7   prosecution anyway.  And so that's precisely the point.

8   That's exactly how it should have proceeded.

9         THE COURT:  But would you then argue some sort

10  of derivative use problem and say, well, they need to show

11  that they didn't learn anything in that deposition, now

12  they then used for other leads?  I mean where would this

13  end?

14        MR. POLLACK:  Even if I argued that as

15  Mr. Herzog's counsel and even if I were successful in that

16  argument, which I'm not convinced that I would be, the

17  government here, you're talking about somebody they have

18  already indicted.  Presumably they already have developed

19  evidence against this individual --

20        THE COURT:  Fair point.

21        MR. POLLACK:  -- and they will have no trouble

22  showing that they had that evidence before this deposition

23  ever took place and so, therefore, it can't be derivative

24  of this investigation.

25        So there's nothing about the way that this would

1    have proceeded had the government simply not taken this

2    action that in any way prejudices the government's rights

3    in United States versus Herzog.  But, frankly, even if it

4    had, you can't sacrifice Ms. Elbaz's rights because there

5    might be some remedy available to Mr. Herzog in Mr.

6    Herzog's case, a case that the government had taken no

7    effort to pursue until they thought it had implications in

8    Ms. Elbaz's case.

9            THE COURT:  Okay.  Well, anything else you want

10   to add?

11           MR. POLLACK:  No, Your Honor.  Thank you.

12           THE COURT:  Okay.  Thank you.

13           MS. COTTINGHAM:  Your Honor, could I just

14   briefly address some factual points there?

15           THE COURT:  Okay.

16           MS. COTTINGHAM:  First, I think Mr. Pollack said

17   a number of times that the government hadn't taken any

18   action to pursue the Herzog case --

19           THE COURT:  Yes.

20           MS. COTTINGHAM:  -- between the time of

21   indictment.  That is fundamentally not true.  The United

22   States government had -- we had been in consultation with

23   OIA, in consultation with the Israeli authorities.  The

24   fact that formal extradition papers had not yet been filed

25   is not suggestive that the United States hadn't taken any

1    action.  We were under efforts to locate a number of these

2    individuals to get extradition paperwork underway.

3           So I think the idea that Mr. Pollack is

4    suggesting that somehow pursuing the Herzog indictment

5    didn't begin --

6           THE COURT:  As a practical matter, did -- for

7    Ms. Elbaz and other defendants in this whole episode, I

8    believe most of them just unwittingly came to the United

9    States.  I mean none of them were extradited.  Is that

10   correct?

11          MS. COTTINGHAM:  No, Your Honor.  None of them

12   had been extradited.

13          THE COURT:  Were there processes in play or

14   moving in the same direction that you are discussing for

15   them to or did you just kind of wait to see if they would

16   show up, which worked.

17          MS. COTTINGHAM:  I believe, Your Honor, and I

18   can confirm this.  But I believe -- I mean there were

19   notices up.  I mean we were alerted when all of these

20   individuals came to the United States and that's when the

21   processes started.

22          I do not know about sort of formal extradition

23   requests for any of them, I will say, you know, the

24   indictment is partially unsealed.  We are working on

25   hopefully very shortly getting extradition efforts --

1              THE COURT:  No.  I'm talking about just the

2     defendants who are already charged or who have already

3     appeared in this court.  Ms. Elbaz and others, related

4     defendants.

5              MS. COTTINGHAM:  You're exactly right.  That all

6     of them as you said appeared in the United States and that

7     were arrested thereafter.

8              THE COURT:  But you're representing that

9     although nothing was filed, that there were internal

10    discussions at OIA and diplomatic channels.

11             MS. COTTINGHAM:  Yes, Your Honor.  And extensive

12    discussions with the Israeli authorities as well.

13             THE COURT:  Is that done by you or by OIA or by

14    the state department?

15             MS. COTTINGHAM:  It is done by us and by OIA.

16    OIA involves the state department, but we don't have a

17    great deal of direct contact with the Israeli authorities.

18             THE COURT:  Okay.

19             MS. COTTINGHAM:  And the Israeli authorities

20    were in fact notified of this indictment and were

21    assisting and will continue to assist us in moving this

22    forward.

23             The second factual point I wanted to make is

24    that, Your Honor, you suggested that the fact that these

25    and Ms. Elbaz, Mr. Herzog and his co-conspirators weren't

1    charged together.  They certainly could have been.  And I
2    want to be clear that that is the United States position.
3    I mean this is the same conspiracy.  These are her
4    co-conspirators.  So there's no question in the mind of
5    the United States and what the evidence is going to show
6    pretty clearly at trial is that they absolutely were.
7              THE COURT:  I mean is there anything you can
8    tell us now as to why they were not charged together?
9              MS. COTTINGHAM:  Your Honor, I think it frankly
10   goes to sort of the timing point that you just alluded to
11   and the fact that Ms. Elbaz -- this case had already
12   proceeded.  It had already been indicted.  It was already
13   proceeding to trial and the case had developed
14   substantially.  I mean the investigation remained ongoing.
15   So charging those individuals in a separate indictment we
16   decided was the best course.
17             THE COURT:  Okay.  Could I just ask one other
18   thing and maybe Mr. Pollack needs to answer this, too.  I
19   think we've lost track a little bit of the fourth witness.
20   We have three indicted witnesses.  And the fourth one,
21   what is that witness' status in terms of -- that person
22   was not charged in the indictment.  So what was the --
23   should I think of that person differently in terms of what
24   was said to that person or that person's attorney?  Remind
25   me again what was said to that person's attorney.

1          MS. COTTINGHAM:  Your Honor, yeah.  Because he

2   wasn't indicted and I don't know exactly his exact role.

3   I believe it was potentially H.R. or I.T.  He was not

4   charged in the Herzog indictment.  We didn't have any

5   communications with counsel for that individual.  So maybe

6   Mr. Pollack did.

7          THE COURT:  Okay.  So the idea or your

8   understanding is that you had communications with the

9   three indicted defendants' counsel and presumably this

10  fourth witness heard about that and decided not to

11  testify, but there's no contact between you and his

12  representatives.

13         MS. COTTINGHAM:  That's my understanding, Your

14  Honor.  And in fact when Mr. Pollack notified us that the

15  witnesses had decided not to sit, he first notified us

16  that he had heard from counsel for Mr. Herzog and counsel

17  for the other two indicted defendants.  And then

18  afterwards, I think it was maybe the next day he said the

19  fourth defendant has now decided to testified.

20         THE COURT:  Is that correct, Mr. Pollack, that

21  there was no -- you're not aware of any government

22  communication with the fourth witness' representatives,

23  but your argument is that the whole thing -- this tainted

24  the whole situation and they got wind of it and got cold

25  feet?

1          MR. POLLACK:  Yes, Your Honor.  I mean obviously

2     I don't know what communication, if any, government

3     counsel --

4          THE COURT:  But you have no information about

5     that?

6          MR. POLLACK:  I have no information on that.

7     What I was informed in very short order and I can't

8     remember if I informed the government that -- later that

9     same day or the next morning, but I was informed by

10    counsel for the fourth witness that the fourth witness had

11    decided, changed his mind, was no longer willing to

12    testify voluntarily and tied that directly to the fact

13    that he had learned of the indictments of the others and

14    now had more concern about his own jeopardy than he would

15    have had he not learned that information.  So there was no

16    question from the communication that it was not just a

17    coincidence of timing.  It was specifically because he had

18    learned that information.

19         THE COURT:  So we didn't -- you didn't really

20    make a separate argument on this and I don't think there's

21    a factual situation in any of the cases that is analogous,

22    but isn't the argument for compelling immunity weaker in

23    that case where there's no government contact with him at

24    all?  And, frankly, at this point, I don't know the

25    circumstances, but I don't see any reason why that person

1   couldn't be persuaded to decide to testify after all

2   whether it's to come here and testify or to do a

3   deposition.  So I mean isn't that a different situation

4   than the other three?

5          MR. POLLACK:  Well, let me address the last

6   point.  The Court can be assured that I have made and will

7   make every effort to persuade that individual to testify.

8          THE COURT:  I'm sure you have.

9          MR. POLLACK:  I'm not that persuasive.  I think

10  it is quite apparent that that individual having learned

11  of the indictment of his colleagues is not going to be

12  traveling to the United States to testify in this trial,

13  absent a promise of safe passage from the Department of

14  Justice, which I've asked for previously --

15         THE COURT:  Which is what this motion is about

16  basically.  Basically, that's what this motion is about.

17         MR. POLLACK:  Well, no, no, no.

18         THE COURT:  If this person gets immunity, then

19  perhaps he would testify.

20         MR. POLLACK:  No, no.  So I think there's two

21  different issues, Your Honor.  One is would any of these

22  individuals or I should say would any of these individuals

23  prior to being informed by the government about the

24  indictment, would they have been willing voluntarily to

25  testify at trial without immunity if they were guaranteed

1    safe passage and I think the answer to that would have

2    been yes.  And I raised with the government whether they

3    would provide them safe passage, not immunity.  Simply say

4    that they wouldn't arrest them while they were on U.S.

5    soil and they did not agree to do that.

6           Then separately there's the issue now having

7    been informed of the indictments, would they travel to the

8    United States with safe passage to testify at trial?  And

9    then the separate issue of whether they would testify with

10   immunity by way of deposition in Israel, but without

11   traveling to the United States.  All of these individuals

12   had indicated that they were willing to testify, but they

13   were not willing to come to the United States.  And of

14   course, I have no ability to compel them to come to the

15   United States, which was the very reason I was seeking to

16   take the testimony in Israel.

17          So to put us back where we would have been, we

18   would require defense immunity and then Rule 15

19   depositions would need to be taken in Israel for those who

20   are unwilling to travel here, which I suspect would be all

21   of them again unless the government were to provide them

22   safe passage.  If they had court-ordered immunity and had

23   safe passage, I suspect that they would travel here.

24          THE COURT:  Okay.  Thank you.

25          MR. POLLACK:  And then I guess the last -- may I

1     confer with the government for just one moment?

2          THE COURT:  Okay.

3          (Counsel conferred.  After which the following

4     ensued in open court:)

5          MR. POLLACK:  Your Honor, may we approach to

6     have a sealed bench conference?

7          THE COURT:  Okay.  Make sure that Ms. Elbaz can

8     hear us or actually, she can just listen in.  I think

9     that's our usual protocol.

10         (Bench conference:)

11         THE COURT:  Okay.

12         MR. POLLACK:  So the government in response to

13    the Court's question about whether or not there had been

14    some activity with respect to the Herzog indictment prior

15    to these depositions coming up, I said, well, we had had

16    these discussions, we talked to these people.  To me,

17    that's very different than taking concrete steps that is

18    within the government's power to take very quickly.  For

19    example, issuing the red notice.

20         THE COURT:  I understand.

21         MR. POLLACK:  I have seen information that --

22    under the agreement under which I sought I cannot share in

23    open court -- that suggests to me that red notices were

24    issued, but only after the government recognized that

25    these depositions were going to occur, which to me

1    demonstrates that the government could have moved at any

2    time very quickly to issue red notices for any of these

3    and didn't until it became significant in the context of

4    the Elbaz case.

5          Admittedly, I don't have full insight into what

6    the government has done in that regard.  And I assume the

7    government does not want to share with me what it has done

8    in that regard and so it may require an ex parte proffer

9    or not depending on the Court's view of its relevancy.

10         But I just wanted to make the point that while

11   it may be true that the government had some general

12   discussions with Israeli authorities about the Herzog

13   indictment, that is very different from taking the kind of

14   concrete steps that they took only when it became apparent

15   that there was --

16         THE COURT:  Well, I think that's what Ms.

17   Cottingham was saying was that -- she wasn't saying that

18   there was any concrete steps taken before this.  Is that

19   what I'm hearing?

20         MR. ATKINSON:  Judge, just to make the record --

21         THE COURT:  Whose issue is this?  It's one

22   lawyer per issue.  I just want to make sure that --

23         MS. COTTINGHAM:  Yes.  That's what I -- yes.

24   I'm saying I wasn't representing in open court that red

25   notices had gone up before the depositions were noticed

1    certainly.  But the Israeli authorities were made aware

2    and that we have been in discussions in candor finding --

3    locating all nine of these defendants and getting process

4    underway for them.

5              THE COURT:  I think we're largely in agreement

6    on the timeline it seems.  Do you agree with that, Mr.

7    Pollack?  I mean they are not saying that anything

8    official was done.  You're saying they should have or

9    could have and I don't think they are disagreeing with

10   that.  Although they are saying that they started a

11   process, but they didn't do anything official.

12             MR. POLLACK:  I think sort of the last point,

13   which is that they could have and didn't until it became

14   relevant --

15             THE COURT:  I understand the argument.  Okay.

16   Thank you.

17             MS. COTTINGHAM:  There were red notices up for

18   some of the non-Israeli nationals.  But they weren't -- of

19   the nine who were indicted.

20             THE COURT:  Okay.

21             MS. COTTINGHAM:  But they weren't up for

22   everybody yet.

23             THE COURT:  Okay.  Thank you.  We'll go back to

24   the open session.

25             MR. POLLACK:  Thank you, Your Honor.

1        (In open court:)

2        THE COURT:  Okay.  Well, having reviewed the

3    briefs and the submissions and having heard argument, I'm

4    ready to rule on this motion, which is ECF Number 220, the

5    motion to compel immunity of defense witnesses or for a

6    missing witness instruction.  Ms. Elbaz is seeking a court

7    order compelling the government to provide immunity to her

8    defense witnesses.  She claims that the government

9    interfered with her ability to present witnesses in her

10   defense and with the witnesses' decisions to testify at

11   depositions and when the government informed three of the

12   four witnesses whom she planned to depose in Israel that

13   they had been indicted in this district in February 2019.

14        In the alternative, she is seeking a missing

15   witness instruction that would inform jurors that they can

16   infer the testimony of these witnesses would have been

17   favorable to Ms. Elbaz.

18        The government's response generally is that it

19   acted after consulting with the court in case number

20   19-077, the case in which these witnesses had been

21   indicted or at least three of them had and that a missing

22   witness instruction is not warranted because the witnesses

23   are not within the government's control.

24        Now under U.S. versus Washington, 398 F.3rd. 306

25   (Fourth Circuit 2005), a district court is without

1    authority to confer immunity on a witness sua sponte.  As

2    stated in U.S. versus Moussaoui, 382 F.3rd. 453 (Fourth

3    Circuit 2004), because a district court has no power to

4    grant immunity to compel the testimony of a potential

5    witness who has invoked the privilege against

6    self-incrimination, a defendant has no Sixth Amendment

7    right to such testimony.

8         However, a court may order immunity where the

9    defendant makes a decisive showing of prosecutorial

10   misconduct or overreaching and the proffered evidence

11   would be material, exculpatory and unavailable from all

12   other sources.  In U.S. versus Vaughan, 254 Federal

13   Appendix 175 (Fourth Circuit 2007), the court noted that

14   this authority should be exercised in very limited

15   circumstances.

16        Now in Vaughan, the Fourth Circuit held that the

17   defendant had not made the required showing of misconduct

18   or overreaching where the prosecutor informed the

19   defendant on the day before trial that a defense witness

20   was about to be indicted and that witness invoked the

21   Fifth Amendment.

22        In U.S. versus Mitchell, 886 F.2nd. 667 (Fourth

23   Circuit 1989), the court held that a prosecutor does not

24   engage in prosecutorial misconduct or overreaching when it

25   refuses to grant immunity to a person who is under

1    criminal investigation.

2            Similarly, in U.S. v. Abbas, 784 F.3rd. 506

3    (Fourth Circuit 1996), the court held that the government

4    did not engage in misconduct by denying immunity to a

5    foreign co-defendant, who was also the subject of

6    impending prosecution and alleged to be an orchestrator of

7    international drug smuggling even when the defendant

8    asserted that the government had threatened to use the

9    witness' testimony against him in his own trial.

10           Here, the Court finds that the government did

11   not engage in prosecutorial misconduct or overreaching.

12   When it learned that Ms. Elbaz intended to depose the

13   three witnesses who are under indictment, the government

14   had already indicted them at that point.  At that time,

15   the indictment was under seal and the government preferred

16   to keep it that way because notifying the witnesses they

17   had been indicted would make it less likely that they

18   would voluntarily travel to the United States as other

19   similar defendants had in this investigation.

20           Nevertheless, the government recognized that

21   having the witnesses testify and face cross-examination by

22   the government about the subject matter of the offense

23   with which they had been charged, when the government was

24   aware that they had been charged would be inappropriate

25   without some notice to the defendants.

1        Even then rather than unilaterally reaching out

2    to the witnesses, the government consulted with the court,

3    specifically, the judge presiding over the criminal case

4    involving the witnesses.  And while the government

5    initially proposed giving general warnings to the

6    witnesses that they may or may not be indicted, the court

7    declined to sign off on that approach as inadequate to

8    protect the rights of these witnesses.

9        The government then sought a limited unsealing

10   of the indictment in order to fully apprise the witnesses

11   of their status and the potential for self-incrimination

12   and the court granted that request.

13       Where this action was against the government's

14   interest in apprehending these newly-indicted defendants

15   and was taken in consultation with the court, the Court

16   finds that this did not constitute misconduct or

17   overreaching and in fact was appropriate action and

18   prudent action in informing the witnesses of the pending

19   charges against them.  And in particular, the consultation

20   with the court shows that this was not an overreach, but

21   was taken with prudence and with the appropriate

22   consideration of all parties' interest.

23       And as I stated earlier, to some degree this was

24   a Catch 22, whatever analogy you want to use, a rundown

25   between two different bases where on the one hand, there

1    is some obligation even though perhaps it's a little bit

2    unclear when you're talking about someone in a foreign

3    country to not unwittingly question them when they don't

4    know they have been charged with an offense.  At the same

5    time the government had been successful in getting

6    defendants here simply by having indictments under seal

7    and waiting for them to make regular travel or just travel

8    to the United States, at which they could be apprehend.

9            So although I accept the notion that the

10   government can't -- could have done more perhaps or moved

11   more quickly to try to take steps to compel these

12   defendants to come to the United States, the history of

13   this case had shown that it wasn't always necessary.  That

14   in fact leaving the indictment under seal and giving no

15   information about it had been a successful strategy to

16   procure the appearance of many defendants in this

17   investigation.

18           So it's clear to me that unsealing was against

19   the government's interest in trying to get these

20   individuals here.  And yet, they took that course again

21   after the court refused to sign off on a more limited

22   approach.  And so again I think that shows a lack of

23   misconduct and a lack of overreaching here.

24           To the extent that one of the prosecutors may

25   have told the witness' attorney that the defendants in the

United States typically do not testify as attested to by
Dr. Gabbay's declaration, the Court finds that in context
that does not constitute misconduct or overreaching.
First, the attorney with whom the prosecutor was speaking
was an Israeli attorney, not an American attorney.  So
some discussion of the way things work in the United
States would be expected, perhaps was not necessary to say
that, but the statement was essentially true and not
misleading.  And most importantly, the statement was made
to the attorney outside the presence of the witness or the
charged defendant.  So it cannot fairly be considered to
be coercive towards the defendant.

The statement was nowhere near as threatening or
improper as in U.S. versus Thomas, 488 F.2nd. 334, (Sixth
Circuit 1973) where after the court had advised a witness
of potential legal jeopardy, a Secret Service agent
approached the witness directly during a recess without
counsel present and told the witness that he would be
prosecuted for misprision of a felony if he testified.
Here, the notification or the discussion occurred again
outside the presence of the witness where the attorney
could certainly filter that information and it was not
misconduct or overreaching.

Finally, the Court notes that as in other cases
that have been discussed where the witnesses were not only

1    under criminal investigation or were already indicted

2    before this issue arose as in Mitchell and Khan, the

3    government's refusal to immunize these witnesses was

4    appropriate.

5           So where there's no misconduct or overreaching,

6    the Court need not reach the second prong other than to

7    state that in granting the motion seeking depositions, the

8    Court found that Elbaz had made a sufficient proffer of

9    the material nature of the witnesses' proposed testimony

10   to justify permitting the depositions.  I explicitly did

11   not rule on the admissibility of their testimony and thus

12   made no specific finding on whether their actual testimony

13   would be material, exculpatory or not available from other

14   sources.  And although I know the defense has offered to

15   provide more information in that regard because the first

16   prong is not met, I don't find the need to receive that

17   additional information.  So the motion to compel immunity

18   will be denied.

19          As for the request for a missing witness

20   instruction under U.S. versus Graves, 545 Federal Appendix

21   230 (Fourth Circuit 2013), a missing witness instruction

22   is warranted where the party failing to call the witness

23   has it peculiarly within its power to produce the witness

24   and the witness' testimony would elucidate issues

25   important to the trial as opposed to being irrelevant or

1    cumulative.

2              The first prong is met on a showing either that

3    the witness is physically available only to the other

4    party or because the witness' relationship with the other

5    party -- because of that relationship, the witness is

6    pragmatically only available to that party.

7              It is not peculiarly within the government's

8    power to call these witnesses at trial.  Where these

9    witnesses are located in Israel, they are not physically

10   available to the government.

11             In her motion for depositions, Ms. Elbaz stated

12   that all four witnesses were not willing to come to the

13   United States to testify and the government is currently

14   in the process of seeking extradition of some of these

15   witnesses and they have yet to succeed.

16             The witnesses have no relationship with the

17   government.  And if anything, they are pragmatically only

18   available to Ms. Elbaz, who was a former business

19   associate of theirs with whom she may have a joint defense

20   agreement with some of them.  So the government does not

21   have control of these witnesses.  So the first prong is

22   not satisfied.

23             Now Ms. Elbaz argues that by notifying these

24   witnesses of their status as indicted defendants, the

25   government effectively rendered them unavailable.  But as

1    I already stated, the government's actions were necessary,

2    limited and appropriate.  The fact that giving such

3    notices, these witness choose not to come to the United

4    States while understandable is not the equivalent of the

5    government having unique control over them.  In that

6    sense, the case is not analogous to the cases cited by

7    Ms. Elbaz including U.S. versus Leal-Del Carmen, 697

8    F.3rd. 964 (Ninth Circuit 2012) where the government

9    deported a witness whom they knew would testify favorably

10   for the defendant.  The government did not indict these

11   witnesses in order to keep them from testifying for Ms.

12   Elbaz because these witnesses were indicted in February

13   more than two months before Ms. Elbaz filed her motion

14   seeking their testimony by deposition.  Because the

15   showing required for a missing witness instruction has not

16   been made, I will deny that motion.

17          So let's move now to the motion in limine.

18   There's two parts to it.  The hypothetical question issue

19   and then the issue regarding the attorney communications I

20   guess which maybe rolls into the motion to compel.  Is

21   there anything else to be said about the hypothetical

22   question issue?

23          MS. COTTINGHAM:  Yes, Your Honor.  So what I

24   would say about the hypothetical question issue is, first,

25   we are all in agreement that there is an objective

1    standard.  It's in the proposed jury instructions.

2    There's no question that the jury will be instructed even

3    by the Court's proposed instructions on that element of

4    wire fraud.

5          What the government is asking and plans to do at

6    trial is to use hypothetical questions, which is a

7    practice accepted in every circuit.  And the defense has

8    failed to cite a single case that actually stands for the

9    proposition that these questions are inappropriate.  The

10   questions the government would intend to ask are, frankly,

11   exactly the questions that the Fourth Circuit approved of

12   in the Dukes case and it would go along the lines of were

13   you ever told X and if you had been told that, would that

14   have affected your decision to invest?

15         So those questions squarely go to government's

16   ability to establish materiality.  Of course, the

17   individual witnesses' perceptions of what they were told

18   and what they would have wanted to be told show the

19   individual witness' assessment of materiality and that

20   goes to the overall whether the jury -- that goes to

21   overall how the jury will assess materiality in an

22   objective standpoint.

23         So what we would say is courts frequently both

24   in security fraud, wire fraud and in other context, of

25   course, subjective evidence is admissible to go to

1    establishing an objective fact.  What these witnesses are

2    going to testify is what they would have done, which will

3    help the jury understand and assess what a reasonable

4    person would have done in those circumstances.

5            Nothing about these hypothetical questions

6    would -- I think this is in the Cuti case in the Second

7    Circuit -- in any way impact the defense from arguing as

8    they may well want to do that the objectively reasonable

9    person wouldn't have found this material.  In fact the

10   defense has indicated they may wish to call a potential

11   expert, who is potentially going to testify that certain

12   facts weren't material.

13           So all this goes to say, Your Honor, I think

14   that these hypothetical questions are well within the kin

15   of the Federal Rules of Evidence.  They were established

16   under the law of this circuit that they're permissible.

17   That's all we would add on that.

18           THE COURT:  Do you have an expert on the

19   materiality or some other witness whether it's an expert

20   or otherwise who would just give evidence on materiality

21   other than these investor -- the victims themselves?

22           MS. COTTINGHAM:  Your Honor, we don't have an

23   expert.  Typically, in these cases that's exactly why we

24   call victims of the scheme so they can explain what was

25   material to them and the jury can then make an informed

1     decision based on that testimony.

2             THE COURT:  Okay.  Thank you.  Mr. Pollack, I've

3     reviewed the papers on this.  Is there anything you want

4     to add?

5             MR. POLLACK:  It's actually Ms. Ettinger's

6     issue.

7             MS. ETTINGER:  Yes, Your Honor.  And briefly, I

8     think since materiality is the only reason that the

9     government has offered as to why these questions are

10    relevant, I would point the Court specifically to cases we

11    did cite in our papers.  Raza and Gaver, the District of

12    Maryland case from 2018, which discusses Colton, the

13    Fourth Circuit case from a few years prior.

14            And if I may, the one sentence that I find most

15    helpful in Gaver that I'd like to draw attention to is a

16    quote from Colton, which says "the susceptibility of the

17    victim of fraud is irrelevant to the analysis.  If a

18    scheme to defraud has been or is intended to be devised,

19    it makes no difference whether the persons the schemers

20    intended to defraud are gullible or susceptible."  So the

21    individual predilections of a particular witness don't

22    help the jury assess whether materiality is satisfied --

23            THE COURT:  Well, gullibility is one thing.  I

24    think the issue here is less about whether they were

25    fooled, but whether this information is of importance to

1    them.  Aren't those two different questions?

2            MS. ETTINGER:  I think the way the government

3    frames its question can speak to whether or not a

4    misrepresentation was made in a way that may be

5    permissible under 401.  But when you go one step further

6    to frame it as a hypothetical, it's no longer a

7    development of facts as to what happened, which the jury

8    can use in assessing materiality and it steps beyond that

9    into subjective behaviors of a particular witness, which

10    the Fourth Circuit has said are not relevant.

11            THE COURT:  Okay.  Thank you.

12            So on this issue, the government is asking for

13    the Court to allow the use of hypothetical questions with

14    victim witnesses to establish materiality of

15    representations made to clients by the defendant.  The

16    government is seeking to ask victims whether knowing

17    certain facts such as the success of investors and the

18    qualifications of representatives would have influenced

19    their decision to invest in Binary Book and Big Option.

20    And the defense is arguing that the standard for

21    materiality is objective and the subjective considerations

22    of the victims are irrelevant because they have no bearing

23    on whether a reasonable person -- what a reasonable person

24    would do and also inadmissible under Rule 403.

25            As we've heard both sides agree that materiality

1    is an element of the wire fraud offense.  Also under U.S.

2    versus Raza, 876 F.3rd. 604 (Fourth Circuit 2017), the

3    standard is an objective one as both sides agree that if a

4    particular fact is material, that it may be of importance

5    to a reasonable person in making a decision about a

6    particular matter or transaction.

7          I do note though that even under this objective

8    standard, courts have permitted the kinds of questions

9    proposed by the government.  Although admittedly as the

10   defense has noted not necessarily where that particular

11   question has been put exactly as it's been put here.

12         In U.S. versus Dukes, 242 Federal Appendix 337

13   (Fourth Circuit 2007) a mail fraud case, the government

14   asked a witness if the defendant had told him that none of

15   the companies under discussion had a chance of going

16   public, whether that would have affected the witness'

17   decision to invest, the court held that the hypothetical

18   question was admissible because it was focused on the

19   materiality of the defendant's representations.  Although

20   the issue in that case was more about whether it

21   impermissibly got into the guilt of the defendant, it did

22   find a connection to materiality.

23         And in U.S. versus Orr, 692 F.3rd. 1079 (Tenth

24   Circuit 2012), the court likewise ruled that hypothetical

25   questions to investors such as what effect would it have

1    on you as an investor if you had learned that all tests

2    the defendant caused on his own showed no advantages, it's

3    questions such as though were admissible because they were

4    relevant to materiality.

5         And as the government's noted, the Cuti case,

6    720 F.3rd. 453 (Second Circuit 2013) dealt with a slightly

7    different question.  But the court held that witnesses'

8    responses to hypothetical questions about whether certain

9    information would have affected accounting treatment were

10   also deemed admissible because they were narrow questions

11   on direct examination designed to assess the impact of the

12   fraudulent omissions on their accounting treatment.

13        These statements were admissible despite the

14   objective standard on materiality because to the extent

15   the jury considers a witness to be a reasonable investor,

16   which is a jury question, the response would be relevant,

17   even though not dispositive, on how overall a reasonable

18   objective investor would be affected by the false

19   statement or material omission.  So under Rule 401 and

20   402, I do find that the information is relevant.

21        Now the fact that these questions are

22   hypothetical and seek in one sense an opinion from a

23   witness on his or her own perception of significance -- of

24   the significance of a fact does not render them

25   inadmissible.  In U.S. versus Offill, 666 F.3rd. 168

1    (Fourth Circuit 2011), the court held that testimony

2    relating to a hypothetical mental state can be admitted as

3    lay opinion testimony under Rule 701.

4           In Cuti, for example, the court held that the

5    responses of witnesses to hypothetical questions were

6    admissible as lay opinions because in addressing whether a

7    witness would have acted differently if he had been aware

8    of additional information, the witness was testifying or

9    is engaged in a process of reasoning familiar in everyday

10   life.

11          Likewise, in U.S. versus Hill, 643 F.3rd. 807,

12   (Eleventh Circuit 2011), the court also found that

13   witnesses who had personally dealt with the fraudulent

14   loan transactions at issue could respond to the

15   government's hypothetical questions because their

16   testimony constituted admissible lay opinion based on

17   personal experiences.  So the opinion nature of the

18   testimony does not provide a basis to exclude it.

19          Finally, as for whether this would be unduly

20   prejudicial under Rule 403, testimony merely represents

21   one investor's perspective on the significance of a false

22   statement or omission and does not assume the defendant's

23   guilt, assuming the questions are properly posed.

24          In U.S. versus Ranney, 719 F.2nd. 1183 (First

25   Circuit 1983), the court rejected a Rule 403 argument

1    against hypothetical questions to an investor about

2    whether he would have invested if he discovered certain

3    representations were false.  This situation is similar and

4    I don't find that a showing has been made that there was

5    undue prejudice from this type of questioning.

6              Obviously, I'm not approving any particular

7    question.  It's still open to objections as to form.  But

8    I will grant the motion to at least in a general sense

9    allow hypothetical questions relating to materiality of

10   false statements.

11             So let's then move to the third issue and

12   perhaps I need to get some clarification on what the third

13   issue is at this point.  There was the motion in limine

14   regarding effectively asking for a Rule 16 deadline for

15   disclosure of -- presumably what it was was documents that

16   the defense wanted to use in their case which were

17   communications from -- involving attorneys.

18             And then there was the motion to compel from the

19   government which seemed to imply that the government had

20   basically received the information it asked for in the

21   motion in limine where the defense had produced the

22   written opinions or other documents involving attorney

23   communications that it intended to use.  And then the

24   request seems now to be more of getting related documents

25   that over which the government believes there's been a

1    waiver of privilege.

2          So why don't I just hear first off on what the

3    request is now?

4          MS. COTTINGHAM:  Yes, Your Honor.  Fair

5    question.  So the government has since the motion in

6    limine as recently as last night, we have continued to

7    receive some additional documents from the defense that

8    some of which appear to be additional legal opinions,

9    communications about legal opinions.

10         So what the government is really seeking at this

11   point is for the defendant to clarify -- to first clarify

12   what opinions she intends to rely on.  These are opinions

13   of course, that -- as the Court is aware, the prosecution

14   team but for disclosure by defense counsel doesn't have

15   access to any of these legal opinions.  So the first is --

16         THE COURT:  Do you have an understanding whether

17   these opinions and the related documents you're talking

18   about, are they as uniquely in the possession of the

19   defense or are they in the possession of the filter team

20   or both?

21         MS. COTTINGHAM:  So my understanding, Your

22   Honor, these are primarily documents that were produced by

23   the filter team to the defendant and I'm basing that on

24   the fact that they have D.O.J. Filter Bates numbers.

25         THE COURT:  Um-hum.

1          MS. COTTINGHAM:  But they are not documents by
2   and large that we have received.  We have received
3   additional documents from defense that I'm not sure were
4   ever produced to them in discovery.  But I would leave
5   that as sort of a separate bucket.

6          But what the United States is seeking is first
7   clarification on what actually the defense is intending to
8   seek and rely on in this -- what is essentially an advice
9   of counsel defense.  It's a good faith defense about her
10  reliance on attorney advice, which is an advice of counsel
11  defense.  So first clarification of that.

12         Second, disclosure of all of, not just the legal
13  opinions that defense chooses to selectively provide to
14  us, but disclosure of all of the other legal opinions.
15  There could be conflicting legal opinions on these issues.
16  We're not aware of what that is.

17         I mean by using -- by choosing to cherrypick and
18  send us a dozen of what Mr. Pollack has repeatedly
19  referred to as the thousands of potentially privileged
20  documents on there, the government is at a tremendous
21  disadvantage in not knowing, of course, what there is.

22         But also Mr. Pollack has selectively waived --
23  we learned this morning from Mr. Pollack that he has
24  obtained the -- he has obtained the privilege holder's
25  permission to waive as to certain of these documents.

1    It's the first time Mr. Pollack has confirmed that.  But

2    that in a sense -- I mean that selectively waives this

3    as -- waives the privilege as to documents at issue.  So

4    we're seeking both clarification and disclosure of the

5    relevant documents here.

6         THE COURT:  So when you say the relevant

7    documents, you are getting the documents Ms. Elbaz intends

8    to use.  It sounds like you still want some sort of

9    closure on that question.  You want to get all of the ones

10   he is planning to use on this topic by some point in time.

11        MS. COTTINGHAM:  Yes, Your Honor.  I mean that's

12   our --

13        THE COURT:  And then you also want --

14   effectively you want whatever documents are surrounding

15   this.  So you want a finding that these have been

16   waived -- that privilege has been waived and that these

17   other documents need to be disclosed.

18        MS. COTTINGHAM:  Yes, Your Honor.  I think

19   that's exactly the chronology is first for Mr. Pollack to

20   clarify what exactly he's going to rely on to provide that

21   and then if there are a factual basis for these legal

22   opinions, if there are additional legal opinions.  I think

23   there may be some suggestion that if they weren't emailed

24   to Ms. Elbaz that there's not some sort of disclosure to

25   provide them.

1           Ms. Elbaz was C.E.O. of the company.  As we
2    understand it, they were -- she and her co-conspirators
3    including Mr. Herzog were engaged in regular discussions
4    and so if there are additional legal opinions or
5    discussions she's having about these legal opinions, we
6    are entitled to those.
7           THE COURT:  So you are asking for the defense to
8    produce back to you documents that the filter team has or
9    are you asking for access to the filter team's documents?
10          MS. COTTINGHAM:  Your Honor, I think that would
11   first be a question for Mr. Pollack because I don't fully
12   know what the filter team has and I don't know if the
13   scope of what Mr. Pollack might plan to use or the scope
14   of the documents that would potentially -- there may be
15   documents, for example, that form the basis for these
16   opinions that are not in the possession of the filter team
17   or the government.  We are aware that the defense has
18   additional emails, additional documents that we've never
19   seen.  So I think the first is a question of the scope of
20   what this defense is, the second is where those additional
21   documents are and then the third is the question of
22   waiver.
23          THE COURT:  So what is your position on waiver
24   as to both has there been a waiver and why?  And what is
25   the scope of the waiver?

1        MS. COTTINGHAM:  So I think the -- yes, there

2   has been -- I think we would take the position, yes, there

3   likely has been a waiver, but we do not have enough

4   information at this point.  We only learned, frankly, this

5   morning that this is -- that Ms. Elbaz is taking the

6   position now that she has waived the privilege as to

7   certain documents.

8        So what has happened to date is we, the

9   prosecution team, have been provided with this subset.  So

10  on the first point, I think we just need to understand the

11  scope of what the legal issues she's addressing actually

12  are.

13       THE COURT:  Okay.  Well, before -- maybe I would

14  have additional questions for you.  But it seems as if

15  hearing from Mr. Pollack first might be more productive.

16  And I saw you shaking your head over various things that

17  were said.  So let me get some clarification from you.

18       So what I'm trying to understand is what have

19  you produced, are there other things you're planning to

20  produce?  I think it certainly appears that these are

21  attorney/client communications.  So what is the theory

22  under which you get to use them?  I believe you've taken

23  the position there is a joint defense or common interest

24  privilege.  I don't know if these documents are part of

25  that.  They don't appear as if the -- they are from Ms.

1    Elbaz's personal attorneys.  So it seems as if these are
2    within that.  So ordinarily, it sounds like maybe if you
3    started to do this, you would -- to really be able to use
4    these things, you need the members of the joint defense
5    agreement to consent.
6         But then if there is a waiver or if these are
7    being used, why wouldn't there be a waiver or if you agree
8    there's a waiver, what do you think the scope of it is and
9    then we can get into some of the niceties about what needs
10   to be done after that.
11        MR. POLLACK:  Sure.  So first of all, Your
12   Honor, let me -- legally, there are two distinct issues.
13   One is what is the government entitled to by the way of
14   Rule 16 or other criminal rules of discovery and the other
15   is to the extent they are entitled -- would otherwise be
16   entitled to something, is there some privilege that would
17   preclude the production of it and if so, has that
18   privilege been waived?  So to me, you don't even get to
19   the privilege waiver until you decide that it's something
20   that the government is entitled to.
21        THE COURT:  Okay.
22        MR. POLLACK:  Having said that, when I
23   produce -- let me start with what I've produced so the
24   Court is aware.
25        THE COURT:  Okay.

1               MR. POLLACK:  I've produced three -- I've

2     produced communications with counsel on three different

3     topics.  And I have produced the communications that Ms.

4     Elbaz was a part of.  Either a communication from Ms.

5     Elbaz to counsel, from counsel to Ms. Elbaz or counsel to

6     somebody else on which Ms. Elbaz was copied.  And the

7     reason that these materials are relevant and the reason

8     that they are admissible and I intend to introduce them in

9     my case in chief which is the sole reason that they are

10    subject to production under Rule 16 is because they go to

11    her state of mind.

12               If she were given an opinion that says -- and

13    I'm sorry.  I guess I erred myself.  The three issues are,

14    one, the use of stage names.  That it is permissible to

15    use stage names.  The second is that Yukom is not required

16    to be regulated in Israel.  It's not an entity that needs

17    to be a regulated entity.  And that three is that they are

18    allowed to do business with customers in the United

19    States.  So those are the three topics.

20               The fact that Ms. Elbaz was told that is

21    obviously relevant to her state mind.  It is not a

22    complete advice of counsel defense.  There are other

23    issues in this case.  I'm not asking for an instruction

24    that she relied solely on counsel.  But it is certainly

25    relevant to some of the things the government is going to

1     say that are indicative of an intent to defraud that I

2     think demonstrate a lack of intent to defraud --

3             THE COURT:  Just so I understand what you are

4     saying, you've identified three topics and these seem to

5     relate to the three documents that are attached to the

6     motion.  It sounds like there may be more.  Do the other

7     documents relate to the same three topics or do they go

8     beyond that?

9             MR. POLLACK:  Yes.  Yes.  So, for example, the

10    thing that I produced last night I think was an earlier

11    version, a draft of what I had already produced to the

12    government.  At this point --

13            THE COURT:  So what you're saying then is -- I'm

14    not totally sure why it's relevant that -- I mean I don't

15    know if the government is disputing that they were allowed

16    to do business with the United States or whether that's an

17    element of their fraud claim.  It seems as if they are

18    concerned about other statements, not that whether they

19    are subject to Israeli law or whether they are allowed to

20    do business with Americans.  Is that an issue in dispute

21    here?  Do you know?

22            MR. POLLACK:  Obviously, we won't get to this

23    until the defense case.  I've heard nothing in the

24    government's case that suggests that Ms. Elbaz did

25    something improper because she was dealing with U.S.

1    customers --

2            THE COURT:  Right.  I haven't heard that either.

3            MR. POLLACK:  Right.  Then that won't be.  From

4    reading the Jencks, there's a lot of discussion about

5    whether or not they were "allowed" -- witnesses talking

6    about whether or not they were "allowed to do business

7    with the United States."  So we'll see.  If it's not, it's

8    not.  Obviously, you're not ruling now on the

9    admissibility.

10           THE COURT:  Right.

11           MR. POLLACK:  But, Your Honor, I have -- so

12   assuming that these issues come into play in the

13   government's case, then it will be relevant to Ms. Elbaz's

14   state of mind on these issues that she had been told

15   either directly from counsel or indirectly from her

16   employer, that, hey, we've consulted with counsel and

17   they've said this is perfectly okay.

18           The government sort of posits this hypothetical,

19   what if there is some other opinion out there that the

20   company had procured that said it's not okay?  Well, if

21   that other hypothetical opinion was never shared with Ms.

22   Elbaz, it's irrelevant.  And what I have told -- to her

23   state of mind.

24           What I have told the government is I have

25   produced to them every communication that I am aware of

1    between Ms. Elbaz and counsel or between Ms. Elbaz and

2    somebody else relaying the legal opinion on these topics.

3    In other words, no one ever told Ms. Elbaz that it was

4    impermissible to use a stage name.  Nobody ever told Ms.

5    Elbaz that Yukom needed to regulated.  Nobody ever told

6    Ms. Elbaz --

7              THE COURT:  In Israel.  Right?

8              MR. POLLACK:  Correct.

9              THE COURT:  That's how you are defining it.

10   Okay.

11             MR. POLLACK:  Correct.

12             THE COURT:  It seemed to me from the document

13   you submitted, I don't know, maybe -- when you say

14   regulated, the impression I got from that was at least one

15   could read that as saying the Israeli lawyer was saying

16   that basically we're not subject to Israeli law for

17   purposes of whatever your dealings are with these

18   foreigners.  Is that roughly what you're talking about

19   when saying not regulated?  And I'm not totally sure why

20   that matters here exactly because the issue here is -- but

21   to the extent it's an issue, that's generally what we're

22   talking about is compliance with Israeli -- whether they

23   are subjected to Israeli laws for purposes of their

24   interactions with the Americans or other foreigners.

25             MR. POLLACK:  Again, we'll see on relevance

1    whether it's relevant or not.  But there's a lot of

2    discussion in the 302's about, you know, that they knew

3    that they weren't regulated.  But so what?  They didn't

4    need to be regulated.  Right?

5            THE COURT:  So you're saying if they want to

6    make an issue of it, you want to be able to use these

7    things?

8            MR. POLLACK:  Absolutely.

9            THE COURT:  Okay.

10           MR. POLLACK:  Absolutely.  And so, Your Honor, I

11   have provided the government already everything that I

12   have on this topic, everything that is relevant,

13   documentary to her state of mind on these issues.  There

14   is no cherrypicking.  I haven't done it selectively.

15   There are no other documents out there.  So I --

16           THE COURT:  So on that topic, the government's

17   request in their papers was for other legal opinions not

18   previously disclosed.  And again, what the scope of those

19   opinions is is a little unclear.  But you are saying you

20   have produced all opinions that you have on those topics.

21           MR. POLLACK:  Correct.

22           THE COURT:  Any documents that show the factual

23   basis for these opinions including communications by the

24   defendant or other employees with the attorneys.  So, for

25   example, if Ms. Elbaz took this and then went to another

1    employee and said, hey, the lawyer said this is fine or

2    some followup conversation, have you produced all of those

3    if you have them?

4              MR. POLLACK:  Well, I think from my discussions

5    with the government, what the government has in mind there

6    is -- let's assume that -- and this is purely

7    hypothetical.  Let's assume that Mr. Herzog made any

8    number of misrepresentations to the counsel about the

9    nature of Yukom's business.

10             THE COURT:  Right.  Something like that.

11             MR. POLLACK:  And so the opinion was rendered

12   based on his representations.  Again if Ms. Elbaz was a

13   party to the representations that were made to counsel, I

14   would have produced it.  She wasn't.

15             If hypothetically unbeknownst to Ms. Elbaz,

16   Mr. Herzog gave false information to counsel and then just

17   showed her the opinion letter saying it's okay and didn't

18   tell her, oh, by the way, I procured this through fraud,

19   it's not relevant to her state of mind.

20             THE COURT:  Okay.  At least in theory that may

21   be the case.  Obviously, it depends on -- so but you're

22   saying that any -- not just the opinions themselves that

23   went to Ms. Elbaz, but communications regarding these --

24             MR. POLLACK:  Correct.

25             THE COURT:  -- this legal advice either before,

1    on the way in where Mr. Herzog may have said to Ms. Elbaz

2    again hypothetically, well, let's tell the lawyers this

3    and see what kind of opinion they give us or documents on

4    the way afterwards where the people in the company are

5    assessing this legal opinion and they say, well, it's a

6    good thing that we didn't tell them such and such or we

7    are going to use this opinion in this way.  If she's

8    involved, you've produced that.

9              MR. POLLACK:  I have made good faith efforts to

10   find anything along those lines and I haven't found it.

11             THE COURT:  Okay.  So now when you say good

12   faith efforts, are you referring to -- are all these

13   documents that you do have from the filter team's

14   production or do you have other independent documents that

15   were not available to the government writ large?

16             MR. POLLACK:  Certainly, the filter team

17   documents.  I would -- if the Court wants to go into

18   detail about what other documents I have from what other

19   sources and what searches I've done, I would prefer to do

20   that ex parte.

21             THE COURT:  Okay.  But you are basically saying

22   for purposes of documents that only you have, you're

23   saying you are doing what the government is asking you to

24   do.

25             MR. POLLACK:  I'm saying it's already been done.

1           THE COURT:  Assuming that we view the scope of

2      this issue as the three topics you've defined, it sounds

3      like those three categories the government has asked for,

4      opinions, documents showing the factual basis for the

5      opinions, including communications by the defendant and

6      other employees with attorneys and then also

7      communications about the legal opinions involving the

8      defendant and other employees, you're saying you produced

9      those things.

10          MR. POLLACK:  Yeah.  Well --

11          THE COURT:  And then the other question I want

12     to ask is on the filter team, if you're taking the

13     position that you've gone through those and found what's

14     relevant on these topics and given them to the government,

15     what would be the problem, if any, with authorizing the

16     filter team to look for these same documents themselves as

17     basically being waived and producing them to the

18     prosecution team with or without a review by the Court?

19     What would be wrong with them doing that in case you

20     missed something since these are the government's

21     documents.  They're just -- up to now, they can't get to

22     them because of a waiver issue, but you'd have to agree,

23     you're at least waiving on these topics.  Right?

24          MR. POLLACK:  Well, again separate question.

25     Waiver is a separate question and I'd like to address that

1    separately.

2              In terms of Rule 16, I think I've produced what

3    I'm required to produce.  I understand the government's

4    point about cherrypicking.  I understand, well, you know

5    sort of for sake of completeness, you can't say I want to

6    use this document and so I'm going to produce it, but I'm

7    not going to use this exact -- but that's already

8    happened.

9              If what the filter team would be instructed is

10   to do the same search, in other words, the same

11   parameters, you're only looking for communications to

12   which Ms. Elbaz was a party, about what counsel had to say

13   or what you said to counsel to get these opinions on these

14   topics, I would have no objection to the filter team doing

15   that search.  I think I would want to see -- to the extent

16   they identify anything that I've not already produced, I

17   think I would want to see it before it's produced to the

18   trial team so I can raise any objections I might have.

19   But I have no objection to that process.

20             To be clear, I have produced to the government

21   things from the filter team.  When they told me that

22   they --

23             THE COURT:  I agree with that.  I accept the

24   representation and I accept the representation you tried

25   to do this thoroughly.  But again, this is a situation

1    where -- I mean your own documents is a different

2    question.  But since the government has these documents --

3    I'm not sure intellectually why they can't have the filter

4    team do that now that you've raised this issue --

5             MR. POLLACK:  Again I've got no objection to the

6    filter team doing it along the parameters that we've just

7    discussed.  I would like to see before they're produced to

8    the government what they're proposing to produce so if I

9    have objections, I can raise them with the Court before

10   they're given to --

11            THE COURT:  That's a fair point.  We'll see

12   where that goes.

13            So then -- okay.  So under Rule 16, you're

14   saying you've produced what you are planning to use and

15   you've gone beyond that.  You've produced --

16            MR. POLLACK:  Related.

17            THE COURT:  -- related documents.  What would be

18   wrong with saying, again as a matter of Rule 16, just for

19   orderly -- for purposes of the trial and not having anyone

20   asking for a continuance at some point, just setting a

21   clear deadline saying -- it sounds like you've already

22   done this.

23            MR. POLLACK:  You could set the deadline

24   yesterday.  It's been done.

25            THE COURT:  You know, if we said by the first

1    day of trial, you've produced everything in these

2    categories.  If you in the middle of the trial show up

3    with something new, they can at least say, hey, that

4    violated the rule and you should have found it earlier.

5    Would you be comfortable with something like that?

6              MR. POLLACK:  Look, I'm going to want the same

7    caveat and wiggle room that the government has given

8    itself.

9              THE COURT:  I agree.  I mean I think Rule 16

10   only kicks in for you if they've complied.

11             MR. POLLACK:  Yes.

12             THE COURT:  So that sort of requirement would

13   also apply to them in the sense that for their Rule 16

14   disclosures, if they show up with a document, you know,

15   mid trial, then I'll have the same concerns.

16             MR. POLLACK:  And I meant it -- I sort of meant

17   it both ways.  Look, I am very comfortable with a

18   deadline, you know, everything that you have identified in

19   good faith, deadline, first day of trial.  Frankly, I

20   would be comfortable with the deadline being yesterday

21   because I've already done it.

22             THE COURT:  Okay.

23             MR. POLLACK:  If something comes up, by

24   definition, it's unexpected, it's not something I'm

25   presently aware of, I don't want to waive it.  I'd like to

1    have the opportunity to be able to explain to the Court

2    why it hasn't been identified earlier and then the Court

3    will make whatever decision the Court is going to make.

4          The government has left itself that wiggle room

5    even though the government has produced somewhere in the

6    neighborhood of a thousand exhibits, they've still said

7    this is good faith what we think we're going to use, of

8    course, something might come up, we might decide we want

9    to use something else.  And I understand that.  I mean

10   that's legitimate in getting ready for a trial of this

11   magnitude, perfection is a pretty illusive goal.

12          THE COURT:  I mean on both sides --

13          MR. POLLACK:  Yes.

14          THE COURT:  -- if we set a deadline, then Rule

15   16(d) kicks in and then whether it's excluded or whether

16   there is some other sanction or whether it's excused,

17   that's all subject to discussion from both sides

18   generally.  So I think that would always be available.

19   You could argue there was a good reason for this and it

20   would be considered.

21          MR. POLLACK:  I'm perfectly comfortable with

22   that and probably I will accept whatever deadline the

23   Court wants to impose because again as far as I am

24   concerned, we've already met this obligation.

25          THE COURT:  And then as far as the related

1    documents issue, you're willing to include that within

2    this order even if maybe there's some -- you might be able

3    to draw a distinction between the actual legal opinions

4    and the related documents.  But either way, even if you

5    are not planning to use them, you are willing to commit to

6    produce anything you have from whatever source that deals

7    with these three topics.

8              MR. POLLACK:  That's correct.  If I were to

9    subsequently discover that there is some document that is

10   a communication to or from Ms. Elbaz on these topics that

11   somehow I wasn't -- I'm not aware of at the moment, I

12   would agree that my Rule 16 obligation would require me to

13   produce it even if I don't plan on introducing that

14   particular document.

15             THE COURT:  Okay.  And then from the

16   government's side then -- well, so then you said that you

17   want to talk about Rule 16 first and then waiver second.

18   Now I don't know whether the discussion is different on

19   the waiver front.  It sounds like -- I'm not sure why

20   you're not acknowledging at least waiver on these three

21   topics.

22             MR. POLLACK:  Okay.

23             THE COURT:  Am I missing something or is that

24   your position?

25             MR. POLLACK:  Well, first of all, I don't think

1    waiver is relevant because I think they've gotten

2    everything they're entitled to.  So there is no question

3    of -- I'm not holding something back.  I don't have

4    something that is a related communication that I'm

5    refusing to disclose because I'm asserting privilege.

6              THE COURT:  Well, here is where it might be

7    relevant which is -- and I'm not sure this makes any

8    difference because you've got a pretty good argument that

9    if Ms. Elbaz never saw it, it's not going to matter.

10             But if you have waived on a topic -- just take

11   the stage name issue as an example.  It would seem to me

12   that you're using this in the course of litigation to your

13   advantage.  So it's a pretty clear subject matter waiver

14   on that topic.

15             If they were to find or the filter team had a

16   document where the lawyers are talking about stage names

17   even if it doesn't go to Ms. Elbaz, it seems as if the

18   privilege has been waived on that.  That may mean it's

19   irrelevant.  It can't be used in the trial.  But in terms

20   of them having access to it, it would seem that they

21   should have access to it.

22             MR. POLLACK:  I agree.  I think that they would

23   have an argument at that point on waiver.  I would say

24   that the argument is irrelevant because they're not

25   entitled to the document.

 1                   THE COURT:  Well, those are two different

 2      issues.  They are in possession -- the government has

 3      these filter team documents.  The only reason they are not

 4      getting them is because of the privilege.  But if there's

 5      no longer a privilege associated with stage name issues,

 6      for example, then shouldn't they -- that's where it's not

 7      exactly the same as relevance --

 8                   MR. POLLACK:  I understand that.

 9                   THE COURT:  It may not mean that we're going to

10      use it.  But maybe they have a right to see it at that

11      point.

12                   MR. POLLACK:  Yeah.  So this may be a wholly

13      hypothetical issue because I'm not aware that such things

14      exist.  But if they did, I guess here is the complexity.

15      Hypothetically, if this document that is discovered that

16      is related is a document over which there is a joint

17      defense privilege, Ms. Elbaz cannot waive the privilege on

18      behalf of others who have a joint privilege.  There may be

19      an argument that those others have waived.  But it's

20      really not Ms. Elbaz's place to litigate.  That's

21      something that would have to be litigated with --

22                   THE COURT:  Well, let me just get some

23      clarification on that.  So the documents you're producing

24      to the government, is there a waiver of those from the

25      members of the joint defense agreement because I'm not

1       sure how you get to use them if you don't have that.

2               MR. POLLACK:  I have represented to the

3       government and not for the first time this morning, in

4       writing I have previously represented to the government

5       that, of course, I would not have produced to them --

6       forget about put into evidence --

7               THE COURT:  Right.  Exactly.

8               MR. POLLACK:  I would not have produced to them

9       a document over which there is currently a privilege

10      asserted by some other privilege --

11              THE COURT:  That hasn't been waived already or

12      they haven't agreed to waive.

13              MR. POLLACK:  Correct.  So without sharing with

14      the government, the prosecution team, which has been

15      walled off from such discussions whether I consider it was

16      ever privileged, whether I considered there was a joint

17      defense privilege, who the other privilege holders are who

18      has waived -- without sharing that information, I have

19      made it very clear, which, frankly, I wouldn't have

20      thought that I would need to, that I would not have

21      provided it to her -- to the government if I thought that

22      it was a breach of my ethical obligations to keep that

23      document confidential --

24              THE COURT:  So what you are saying is that the

25      joint defense team or common interest, whatever you want

 1    to call it, everyone there and I think it's -- well,

 2    there's a number of cases.  I think In Re: Grand Jury

 3    Subpoenas from the Fourth Circuit 1990.  I mean you do

 4    need to get everyone's input on this topic.  You've done

 5    that.  But the way to perhaps -- perhaps what might be

 6    helpful is a clear understanding as to what that waiver is

 7    because it sounds like it's a waiver as to these three

 8    topics, all documents associated -- that involve

 9    Ms. Elbaz --

10                MR. POLLACK:  Your Honor --

11                THE COURT:  -- or at least these specific

12    documents.

13                MR. POLLACK:  Your Honor, I'd be happy to

14    address this ex parte.

15                THE COURT:  Okay.  Well, before we do that, just

16    so -- where I'm going with this is I agree with you maybe

17    there's a slightly different question as to if there were

18    documents on these topics not involving Ms. Elbaz,

19    whether -- there may not have been a waiver of those yet.

20    Although I could find, whether it's now or after giving an

21    opportunity to be heard that the subject matter has been

22    waived on those topics.

23                MR. POLLACK:  Certainly.

24                THE COURT:  So but in order to sort of again

25    create an efficient trial here, it may be helpful just to

1    have an understanding of what's been waived on, what

2    hasn't been waived on and then maybe I either need to

3    either make a ruling on that now or at least be prepared

4    to if as you said, we don't know if there are any

5    documents in that category, but at least be ready to

6    address the question if it arises.  So I think there may

7    be some value in laying some ground work for that if

8    nothing else.

9         MR. POLLACK:  I have -- well, what I have

10   represented to the government both prior to today, today

11   again in court orally before the proceedings started and

12   now again at the podium is as much as I am willing to

13   represent to the prosecution team and it is again as

14   follows:  I have given them specific documents.  I would

15   not have done that if I did not have the authority to give

16   them those specific documents.

17        If there is an argument that by doing so, there

18   has been a waiver and if there is an argument that that

19   then becomes relevant because there's some document that

20   the prosecution team is entitled to see if privilege has

21   been waived, but not if it hasn't, then I agree.  Then the

22   Court would have to make a ruling as to whether my

23   production of these particular documents evoked a broader

24   waiver and that potentially could affect not only Ms.

25   Elbaz.  There might be others who have standing who would

1    want to be heard on that issue.

2              THE COURT:  Right.  Okay.  So I think it might

3    be helpful now to hear from the government just because

4    you've laid out your what you've done, what you're willing

5    to do and let's see what the government's continuing

6    objections are, if any.

7              So, Ms. Cottingham, in terms of what you've

8    heard or what are already knew, what are you asking for

9    with either the motion in limine or the motion to compel

10   given what you've heard?

11             MS. COTTINGHAM:  Yeah.  Thank you, Your Honor.

12   So I think first, the first issue is just to address the

13   scope of this waiver.  And I think we disagree with Mr.

14   Pollack on two really main points there.

15             The first is he's identified these sort of three

16   buckets.  But we would define all of -- and all of this

17   goes to advice that Yukom and its affiliates received as

18   to whether the business was operating in compliance with

19   the laws.  I mean all three --

20             THE COURT:  Laws of any particular country or?

21             MS. COTTINGHAM:  I think the laws of -- just

22   laws generally.  But he's mentioned both the laws of

23   Israel and the laws of the United States.  But I think

24   anything that Yukom received saying you are in compliance,

25   any discussions they had with lawyers, are you in

1    compliance, that's sort of the subject matter, I think

2    scope of what has actually been waived here.

3              THE COURT:  Um-hum.

4              MS. COTTINGHAM:  I think the cherrypicking point

5    goes to exactly we don't know if there are legal opinions

6    on Topics 4, 5 and 6 saying you may -- you know, you may

7    be able to contact customers in the U.S., but, of course,

8    you can't contact customers in the U.S. and sell them

9    investment products.

10             So again by sort of narrowing it to those three

11   buckets, I think it's an artificially narrow distinction

12   and it's not really -- what the good faith defense as I

13   understand Mr. Pollack to be making it is Ms. Elbaz was

14   acting in good faith and therefore, if there are other

15   subsets of this was Yukom acting in compliance with the

16   laws, if there are other parts of that, that would, of

17   course, go to his good faith.  I think it's really an

18   advice of counsel defense.

19             The second point I would make on scope is the

20   scope of the waiver, it's not just as to legal opinions

21   that touch Ms. Elbaz that she received.  I think, for

22   example, if there were conflicting legal opinions, if, for

23   example, against our hypothetical, there was an opinion

24   saying you can't use stage numbers when you're contacting

25   U.S. customers --

1          THE COURT:  He's saying he's produced that if he

2     has it.

3          MS. COTTINGHAM:  As I understood him, Your

4     Honor, he was saying he had produced that if Ms. Elbaz saw

5     it.  And the distinction I am making is that if there are

6     conflicting legal opinions, we're entitled to have those

7     because that undermines her good faith defense.

8          We also don't know what metrics Mr. Pollack has

9     used to define what Ms. Elbaz saw or what she didn't see.

10    If, for example, there are communications between Kolby

11    Cohen and Yosef Herzog discussing, okay, I talked about

12    this with Lee, now we can go to the lawyers.  Is that

13    covered?  We don't know.

14         THE COURT:  Well, so here's the issue is you

15    defined three categories in your motion.  I went over

16    those with Mr. Pollack.  He said he's produced that

17    material.  If you don't believe that or trust that or

18    think he might have missed something, the suggestion I had

19    was at least with respect to the vast majority of the

20    documents we're talking about, why not just have the

21    filter team go through and identify things for which there

22    might be a waiver and then either Mr. Pollack can look at

23    them or I can look -- we can figure out whether there's

24    been a waiver and then you would have that assurance.  Why

25    isn't that sufficient?

1              MS. COTTINGHAM:  Your Honor, the question I

2     have -- the question I'm having trouble with there is as I

3     understood Mr. Pollack's answer, he was saying he has

4     provided all three categories of these documents insofar

5     as Ms. Elbaz received them.

6              THE COURT:  I agree and that's what I -- I noted

7     that that's a distinction and he's saying they're not

8     relevant and that may or may not be the case.  I think

9     we'd have to look at the context.

10             It certainly seems to me since he doesn't want

11    to say exactly there's been a waiver, he kind of implies

12    that there was, that at least on these three topics, he's

13    basically acknowledging that there's been a waiver and I

14    think although he said that others may want to weigh in, I

15    think it's a pretty hard argument to say that at least

16    with respect to the three topics -- I understand you think

17    the waiver is broader -- but at least with respect to the

18    three topics, that there are other opinions or other

19    documents regarding the legal advice on those topics that

20    at least there may well be a waiver and so I think I'm

21    prepared to authorize some disclosure of those documents

22    whether through Mr. Pollack which he's said he's already

23    done or through the filter team.  I think if we go beyond

24    those topics, we'll have to discuss that further.  But

25    just as to those three topics, it seems as if there's a

1     way to address that question.

2          MS. COTTINGHAM:  I agree, Your Honor.  I think

3     my only clarification was as to those three topics, it

4     would be all of the documents in those three buckets, not

5     just the ones that were received by Ms. Elbaz.  That's

6     what we're asking for.

7          THE COURT:  And what I'm saying is that I think

8     that's probably right.  That if the filter team has such

9     documents whether they overlap exactly or there's more

10    than what Mr. Pollack has provided perhaps because of this

11    distinction regarding communication with Ms. Elbaz, then I

12    would at least provisionally be prepared to take the view

13    that those are -- privilege has been waived over those and

14    they should be produced.  But I agree with Mr. Pollack

15    because of not being able to un-ring the bell, it would

16    make sense if the filter team pulls those documents

17    together to either give the defense a chance to object to

18    them or some other process involving the court.  But not

19    just to have them just give them to you without anyone

20    looking at them.  But I'm not sure that that's --

21         MS. COTTINGHAM:  That process makes sense to us,

22    Your Honor.  I just wanted to add that distinction because

23    I think there was some discrepancy between what Mr.

24    Pollack was saying he had already provided and what you

25    are describing as these categories of documents.

1           THE COURT:  And you are comfortable with sort of

2     a Rule 16 deadline whether it's first day of trial or

3     otherwise for both sides with you having your Rule 16

4     obligations presumably already met and Mr. Pollack viewing

5     his as having been met at least with respect to his view

6     that what he is saying he's going to use in the trial

7     would be either opinions or documents involving these

8     topics that Ms. Elbaz saw which I understand you think

9     there's more to that than that.  But that's all he's

10    planning to use it seems.  And that he's willing to go

11    beyond not just the documents that she saw that -- not

12    just the documents he plans to use, but also related

13    documents for completeness on those topics.  You're

14    comfortable with something like that?

15          MS. COTTINGHAM:  Yes, Your Honor.

16          THE COURT:  So then what about this broader

17    question, I don't know if it's really teed up in the

18    motions at this point because it's been a moving target

19    of -- I mean I am not sure, maybe you can tell me if you

20    think there is something we're missing in terms of at

21    least dealing with that level of the information.  But

22    then you are saying now you want more than just those

23    three topics?

24          MS. COTTINGHAM:  Your Honor, we still want the

25    same three topics -- the same three buckets of documents

1    we have requested here.  My only point was that we wanted

2    to make sure that they we weren't limited to I think what

3    is a narrower subset of these three that went directly to

4    Ms. Elbaz, which I think is what we've currently got.

5              THE COURT:  Okay.  So what you are presently

6    asking me to address the question of whether there's been

7    a waiver of anything beyond those three topics as we've

8    defined as including things that -- whether they went to

9    Ms. Elbaz or not.

10             But you initially talked about some sort of

11   overall waiver on the general concept of compliance with

12   laws anywhere in the world and I don't think you've teed

13   that up in the motions yet.  So whether I can rule on it

14   now, whether you are even asking me to rule on that or

15   whether it's something you are going to pursue later on,

16   although later on is getting kind of late now, do you have

17   an argument there you went to assert or not at this time?

18             MS. COTTINGHAM:  Your Honor, I think our

19   argument is that the waiver is broader than the three

20   specific legal topics that he's raised, legal compliance

21   topics.  We think those would more appropriately be under

22   the scope of again a waiver as to any legal opinions about

23   whether or not Yukom was in compliance with any laws.

24             We think a provisional finding that there was a

25   waiver that could then be made final after this assessment

1      by the filter team, this is perhaps another issue that the

2      filter team could look at and review.

3              I'm in the world of hypotheticals here when I

4      talk about potential conflicting opinions, potential

5      opinions about not being allowed to do business in certain

6      entities, in certain jurisdictions, but I think those

7      would all be covered by the waiver as we've defined it.

8      But perhaps the filter team can assess that for the Court.

9              THE COURT:  Well, so as a factual matter, Mr.

10     Pollack seems to be concerned -- I understand where he's

11     trying to use these opinions about stage names and that's

12     a very discreet but clear issue.

13             He's also raising this question regarding the

14     other opinions where it seemed like the main issue,

15     although I think there are some general language in these

16     opinions, but the main thrust of those opinions was can

17     they do business in the United States and other countries

18     and are they subject to the laws of Israel.  And what I'm

19     trying to get at is whether part of your case is going to

20     be addressing those specific issues such as somehow the

21     fraud is -- it's relevant to the fraud whether or not Ms.

22     Elbaz thought that -- not that she could make certain

23     representations, but just whether she even can do business

24     with Americans in the first place.  Is that an issue in

25     the case?

1          MS. COTTINGHAM:  So, Your Honor, I don't

2     anticipate that that's going to be a substantial issue in

3     the case at all.  But I will say I think that whether or

4     not Mr. Pollack by disclosing these to us and choosing to

5     make them an issue has waived it is frankly separate from

6     their relevance.  I think that many of the documents he's

7     provided aren't relevant.  They probably aren't

8     necessarily admissible.  I mean they're hearsay.  There's

9     a number of other sort of admissibility problems that we

10    would identify.

11         THE COURT:  Of course.  We'll deal with those as

12    we get to them.  But I understand.

13         MS. COTTINGHAM:  But I think what I would say is

14    I don't anticipate those being sort of our primary issues.

15    But I still think that by putting was Yukom -- defendant

16    was C.E.O. -- was her company acting in compliance with

17    laws and regulations in Israel, in the United States,

18    wherever, she's put that at issue and that's her good

19    faith defense and she's essentially choosing subsets of

20    the compliance portion to say, okay, we might have been in

21    compliance with this, but not that.  So what we're saying

22    is if she's raising a good faith defense that Yukom was

23    operating within the bounds of all applicable laws, then

24    that's the scope of the waiver.

25         THE COURT:  Doesn't it -- well, it may be a

1    different question, but at least it would be of interest

2    to me to know whether the way these documents are going to

3    be used is -- well, how they are going to be used.  But I

4    guess the question is I don't think I am prepared today to

5    rule on the scope of the waiver in part because until just

6    now, I didn't know what your argument -- I didn't know

7    what you thought the scope was.  So it may be something

8    that the parties would need to brief.

9            There's also the question of whether it's -- is

10   it something that needs to be decided as a practical

11   matter and that's where you said you don't know what you

12   don't know.  You don't know what documents exist that go

13   beyond these topics and whether they are of value to you

14   or not.

15           But the issue here is I do agree with you

16   generally that when you get into these advice of counsel

17   issues even if we're not calling it that, we are using --

18   since you haven't had access to those documents, it would

19   be a problem if we were two weeks into trial and we're at

20   a point where we're now saying, okay, well, now you can

21   start looking for these documents, but you haven't done so

22   already and you ask for more time.  So I think we should

23   try to deal with this as early as possible, even though

24   not all the facts are known.

25           But for purposes of today, would it be

1    appropriate to say there will be a Rule 16 order requiring

2    both sides to comply by a certain date, say, the first day

3    of trial that by agreement the defense's obligation

4    includes producing all -- well, it certainty includes

5    producing all documents that the defendant plans to use in

6    his case in chief, which would include all these legal

7    opinions and related documents he's planning to use.  But

8    by agreement, he's also agreeing to produce any documents

9    related to those topics in his possession whether through

10   the filter team or otherwise, again to complete the

11   picture on this legal opinion issue, which some of the

12   cases say is an appropriate thing to have done earlier

13   just for the efficiency of the case.

14          And then that the filter team may review their

15   documents to see if there are any documents that relate to

16   any of -- well, we can do it in two parts.  Certainly,

17   they can review any documents related to any of these

18   three topics as defined by Mr. Pollack and then either

19   have him review them -- I guess have him review them and

20   let us know if there is any objections before they go to

21   you and try to have that done by a certain date.

22          And then on the question of whether the filter

23   team or Mr. Pollack needs to produce anything else and

24   that includes, of course, documents that would be -- even

25   if they don't involve Ms. Elbaz.  But then if we are

1   talking about legal advice beyond these three topics,

2   whether that's something that the parties might brief what

3   the scope is, how you want to define it and what your

4   argument legal is to why it should be that broad and Mr.

5   Pollack can oppose that.  How would that sound as a course

6   of action?

7           MS. COTTINGHAM:  Your Honor, that sounds fine

8   with the government.  We are happy to do additional

9   briefing.  I will say on the question of what -- we're

10  happy to do the additional briefing certainly and define

11  the scope.  And to the extent the Court would like

12  additional information from what other opinions, of

13  course, may be out there in the filter universe that fall

14  within the broader scope as we've defined it as compliance

15  with Yukom's laws and regulations in addition to the three

16  specific topics Mr. Pollack has raised, that may be

17  something that the filter team can also address with the

18  Court as well.

19          THE COURT:  So you want them to be able to file

20  something on that topic in terms of what they have?

21          MS. COTTINGHAM:  Yes, Your Honor.

22          THE COURT:  Okay.  Mr. Pollack, what do you

23  think of this?

24          MR. POLLACK:  I don't have any objection to the

25  filter team filing with the Court something saying what

1    the filter team has.

2             THE COURT:  Right.

3             MR. POLLACK:  So I don't see a concern.

4             THE COURT:  And you're comfortable with the Rule

5    16 issue I just described because I think I went over that

6    with you.  Right?

7             MR. POLLACK:  Correct.

8             THE COURT:  And you have no objection to the

9    filter team checking to see what documents they have that

10   fit within your three topics and we can -- I would want to

11   set a relatively tight schedule for this.  I know this is

12   not great for the filter team.  It's never good to not be

13   here when we're making decisions on schedules.  But that

14   would then at least give you a very limited period of time

15   to object just because of the calendar, but you would have

16   an opportunity.  And then perhaps produce things to the

17   government -- the prosecution team that may include -- may

18   include some documents that Ms. Elbaz didn't see, but are

19   related to these three topics.

20             And on this question, the broader question of

21   whether the waiver goes beyond these three topics, I

22   assume you want to be heard on that topic in a -- once

23   they have defined what they are asking for, you can -- I

24   assume you have an objection to anything beyond these

25   three topics?

1          MR. POLLACK:  I do.  And I would want to be

2     heard on it.  I guess I'm having a little trouble

3     understanding what the context of that decision would be.

4     In other words, would this be for the purposes of

5     determining other categories that the filter team can

6     search for?  And if it finds on these other categories,

7     again subject to my ability to raise any objections, they

8     would then produce them to the government?  I don't think

9     I have -- if that's what we're talking about, I think that

10    that would be fine.  The government wants to say I think

11    we're entitled to every legal opinion delivered on any

12    topic regardless of whether or not Ms. Elbaz ever saw it

13    and the privilege has been waived in that regard and I

14    guess I could brief that and then the Court could decide

15    that.  And then if the Court agrees, the filter team could

16    look for that.  It doesn't seem to me to be a very

17    efficient way to go about it because we're briefing

18    something that may or may not exist.  I mean it just --

19          THE COURT:  Well, Ms. Cottingham was saying

20    perhaps we should let the filter team start looking and so

21    if they don't find anything of any significance -- the

22    problem is they can't obviously necessarily know what the

23    prosecution team thinks is sufficient.  But like you said,

24    it may be a null set.  I doubt it is.  I mean I know from

25    the other motion, there are other privilege documents that

1    may not be relevant.  But they are probably things

2    involving legal advice.  So there are other documents.

3    But the --

4            MR. POLLACK:  Look, the filter team, of course,

5    is always free to look through the materials.  There's

6    never been any restrictions on the filter team's ability

7    to go through the materials.

8            I guess what I'm trying to avoid are two things.

9    One spending time on the eve of trial briefing

10   hypothetical issues that never are actually going to come

11   into play and, two, fighting a two-front war where I'm

12   litigating both against the filter team and litigating

13   against the prosecution team.

14           THE COURT:  Well, I mean, Mr. Pollack, you

15   brought this issue on yourself by raising these documents

16   at this point.

17           MR. POLLACK:  No, Your Honor.  I don't think I

18   did.

19           THE COURT:  Well, I mean you spent a long time

20   arguing about how bad it was that the government got

21   anything privileged and now all of a sudden, you are

22   producing -- I mean this is an issue that you could have

23   known about a while ago.

24           MR. POLLACK:  Your Honor --

25           THE COURT:  But again, my point is just that

1    these things happen late in the game and even if there's a

2    good reason why you didn't produce these until now, I

3    think we do have to deal with it and I think there's a

4    real question as to whether the waiver is limited to the

5    three topics as you've defined them.  I'm not saying that

6    it goes as far as what the government said, but maybe it's

7    somewhere in between.  And part of the problem is I can't

8    decide that now because although I have the three

9    documents that were submitted, I mean it sounds like there

10   is more than three documents you've produced.  So I don't

11   know what other documents might help define the scope.  So

12   that's part of the problem.

13          MR. POLLACK:  There's very little.  There's kind

14   of cover emails related to the documents that you've seen.

15          But in any event, I really think that we're

16   mixing issues.  No, the prosecution team is not entitled

17   to unfettered access of every privileged document that has

18   ever existed.  That was the issue that we were litigating

19   before.  There is absolutely nothing inconsistent with

20   that proposition.  Let's assume that that wall had never

21   been --

22          THE COURT:  I don't mean to -- I don't think we

23   need to discuss the difference.  I agree.  There's a

24   distinction.  But I also agree that just as you are -- I

25   mean I don't see why they can't now say given the timing

1    of your disclosure that they want to explore whether

2    there's been a broader waiver.  And I think that's -- it's

3    unfair to say that, you know, it's hard to do at this

4    point in the calendar when the trigger for that was your

5    actions and maybe you had good reason to wait until now

6    and I'm not saying you didn't.  But we are on a schedule

7    that we're on now --

8         MR. POLLACK:  I produced Rule 16 at the

9    appropriate time to produce Rule 16.

10        THE COURT:  So anyways, where we are is that

11   I'll issue a Rule 16 order stating what needs to be

12   produced and I'll make it the first day of trial, Tuesday.

13   Mr. Pollack says he's already complied with that.

14        And then in terms of -- and I'll authorize the

15   filter team to review.  And I'm finding a waiver on these

16   three topics as defined by Mr. Pollack at least and that

17   the filter team may produce documents falling into those

18   categories.  But it's going to go first to Mr. Pollack and

19   then to the government if there's no objection or to me if

20   there is.

21        And from a timing standpoint, I mean I guess

22   it's in your interest to do this quickly, but should we

23   set a date for the filter team to do that review or I mean

24   it can be a rolling thing, but again it works to your

25   disadvantage.  So I mean --

1          MS. COTTINGHAM:  Your Honor, we will do it as

2     quickly as possible.  I would be hesitant to commit to a,

3     you know, a very tight -- to a specific timeline right

4     here without talking to them.  I think we should be able

5     to get -- I also don't know the volume of what's on the

6     other side.  I could think we could get this done by

7     Monday the latest.

8          THE COURT:  Okay.  Well, how much time should we

9     give Mr. Pollack then, Mr. Pollack, to respond to any

10    documents produced by the filter team?

11         MR. POLLACK:  It obviously depends on the volume

12    of the documents.

13         THE COURT:  True.

14         MS. COTTINGHAM:  Your Honor, I think we could

15    get this -- we'll try and get it done over the -- I mean

16    we can try to get it done over the weekend.  Maybe by

17    Saturday, end of the day Saturday.

18         THE COURT:  Okay.

19         MS. COTTINGHAM:  And Mr. Pollack will have them

20    before we're actually all in court all day.

21         THE COURT:  Well, I mean I think in theory at

22    least --

23         MR. POLLACK:  Can I make --

24         THE COURT:  I mean this isn't necessarily going

25    to come up in the first day of trial I think.  This is

1   again perhaps rebuttal evidence or whathaveyou.  So we

2   have a little time.  But go ahead.

3           MR. POLLACK:  I was just going to make a

4   suggestion, which is if the filter team is going to do

5   some sort of a search, if maybe when they've completed

6   that search and they know the number of documents that

7   they have identified, maybe they could alert both myself

8   and the Court.  For that matter, if we're not talking

9   about the content, the prosecution team as well.  And then

10  the Court can set an appropriate deadline depending on

11  from my review of them to raise any objections depending

12  on what the volume is.  I mean obviously if they identify

13  a thousand documents, you are going to set a different

14  deadline --

15          THE COURT:  No.  I agree.  That's fair.  We can

16  do that.  So you're planning to get those by the end of

17  the weekend I guess?

18          MS. COTTINGHAM:  Yes, Your Honor.

19          THE COURT:  So then on this broader question of

20  the waiver question, nobody here, including me, wants to

21  have a lot of briefing and motions at this stage.  But

22  it's not clear to me exactly what the government would be

23  asking for.  And even if they defined their scope now, we

24  also don't know what we're dealing with.  As Mr. Pollack

25  said, there's nothing that stops the filter team from

1   going through those documents and putting them into

2   categories of things that may be -- I don't hear you

3   saying that you want every privileged document.

4          It sounds like -- you know, we saw some

5   documents in the prior motions that were -- at least I

6   did -- that were about individual transactions.  It sounds

7   like you're looking more for broader opinions about the

8   legality of either the entire operation or certain

9   specific aspects of the operation.  So it's probably not

10   as big a universe as one might think.

11          But how about we say that if you want to seek

12   more than what you're getting at this exact moment, you

13   should file something by Monday morning --

14          MS. COTTINGHAM:  Your Honor, that's --

15          THE COURT:  -- and you can tell us exactly what

16   you're asking for and have the legal justification for it

17   and then based on what I see, we'll have Mr. Pollack

18   respond.  Ideally, you could give him as much of a heads

19   up as possible even before Monday morning as to what

20   you're asking for.  So he can start thinking about how to

21   respond to it.

22          MS. COTTINGHAM:  Your Honor, I actually -- we

23   will absolutely do that.  I will say that what the request

24   will be is the same that what was in the motion to compel

25   in the sense that we're asking for any legal opinions not

1    previously disclosed that address Yukom's compliance with

2    laws and regulations.  That would include Yukom, its

3    affiliated entities.  So we will file a briefing to sort

4    of further flesh that out, but --

5             THE COURT:  Well, I don't think the briefs up to

6    now really focus on the question of scope of the waiver.

7    And I understand from having looked at it a little bit in

8    preparation for today that there's no bright line rules

9    here and it's very fact based.  Some of it depends not

10   just on -- I mean some of it depends on how it's going to

11   be used.

12            And I think part of this, Mr. Pollack, I think

13   the concern is which I don't know and I'm not sure you're

14   really in a position to tell me exactly is it is a

15   different story if what you're saying is the way these

16   documents are going to be used is someone is going to say,

17   well, to the extent the government thinks I did something

18   wrong by interacting with U.S. customers, there was this

19   opinion saying that we can interact with U.S. customers

20   and that's the only thing this opinion meant to me.

21            But if Ms. Elbaz is going to say I'm not a

22   lawyer, I looked at these documents and it -- there's a

23   line in there here and there that talks about we're in

24   compliance so I just assumed everything I was doing was in

25   compliance because I don't know the ins and outs of these

1    opinions and it just seemed to me the lawyer said our

2    business is good and so I was acting in good faith.

3            If that's going to be her testimony, I think

4    it's a very different question as to -- if these are going

5    to be used for the purpose of saying that everything we

6    did was fine in my own mind, then that's a very different

7    question.  So --

8            MR. POLLACK:  Your Honor, a couple of things.

9    First of all, if that's the scope of what the government

10   is seeking in terms of a waiver, can we ask the filter

11   team to tell us what if anything exists in that regard?  I

12   would rather not file a brief opposing their request for

13   waiver on that and then have the filter team tell us there

14   isn't anything or there are two documents and I can look

15   at the documents in five minutes and say I don't have a

16   privilege over those documents or I don't care if those

17   documents are going to be produced.

18           So if they -- whatever they articulate the scope

19   is, can we have the filter team look for anything that

20   would fall within that scope so we know whether or not

21   we're wasting time on a hypothetical --

22           THE COURT:  I think that's a good -- what do you

23   think about that, Ms. Cottingham?

24           MS. COTTINGHAM:  We are happy to do that, Your

25   Honor.

1           MR. POLLACK:  Okay.  And then the second point,

2      Your Honor, the last thing you said, I don't see how this

3      is any different than if I produce as Rule 16 an email

4      from one of her branch managers that says this transaction

5      is fine and there's nothing wrong with it, I've looked at

6      it very carefully, this is a perfectly good transaction

7      and then she gets up on the stand and she says, well, I

8      took from that that every transaction we had ever done was

9      okay and so I was acting in good faith.

10           There's no additional Rule 16 obligation on my

11      part because I produced that one email that I now have to

12      produce every email that she ever got, including one

13      saying, you know, this transaction is a bad one.  She has

14      a Fifth Amendment right.  I don't have to produce every

15      document.  So I don't understand the concept that somehow

16      it's different because it started out as a privilege

17      document.

18           THE COURT:  Well, I think part of it is how do I

19      read these opinions and so I have to look at them

20      carefully and decide whether this opinion relates purely

21      to these narrow issues as you've defined them or whether

22      there's a way to read them that they are actually giving

23      advice that goes beyond that, which could then support

24      some sort of argument or claim that this gave her the

25      impression that everything was fine.  And if they can be

1    read that way, that may mean a broader waiver.

2          I mean I think the general notion as I

3    understand it is that on the one hand, it's not -- one

4    does not jump automatically from a single waiver to

5    everything that was privilege is waived.  I think that's

6    pretty clear under Rule 502.  The issue is should they be

7    fairly considered together.  And I do think that if

8    there's a way to read this as saying that the defendant

9    could say that this legal advice was broad enough that I

10   thought everything was fine, then that in fairness should

11   allow for consideration of other opinions.  Whereas if one

12   can only read it as saying the only advice here is about

13   this very narrow topic, then it may not be in fairness the

14   case that all other opinions should be produced.

15         So it doesn't go as far as everything.  But the

16   case is also very clear that there's a difference between

17   a document inadvertently being left on a table or if even

18   something that was given to someone outside the company

19   for other purposes.

20         The strongest argument for a waiver and a

21   broader subject matter is when the defense seeks to use

22   them in the case, which is exactly what you're trying to

23   do.  So I think those are sort of the guideposts I'm

24   thinking about right now.  But I agree with you.  Let's

25   get --

1          MR. POLLACK:  I certainly agree with the latter

2    point.  I guess I take a little bit of issue with the

3    notion that the -- how one defines the subject matter of

4    the waiver can expand to other subjects.  I mean the

5    opinion is what the opinion is.  The subject matter of the

6    opinion is pretty discreet.

7          THE COURT:  I think it just depends on which

8    part of it you're looking at.  I think that's part of the

9    problem.  I think there's a lot of different pieces in

10   there and I'd have to untangle them.  I appreciate all of

11   your guidance on that topic.

12         But so we'll have these briefs filed, if any, or

13   the government's brief, if any, by Monday morning.  You

14   may decide that you have what you need.  We'll ask the

15   filter team to also identify items that fall within the

16   scope of what the government is now saying is what they

17   think has been waived and then -- I don't know how they're

18   supposed to communicate that to us, either ex parte to the

19   Court or whether it's -- I don't know the best way to deal

20   with that.

21         MR. POLLACK:  So I think there's really two

22   categories of things now that we're asking the filter team

23   to look for.  One would be the communications with Ms.

24   Elbaz on these subjects, which I believe there won't be

25   any that I haven't already produced, but maybe I missed

1    something.  And so a quantification of what the filter

2    team thinks that I have missed.

3            THE COURT:  Well, and again I'm including in

4    that things that didn't involve Ms. Elbaz, but are on the

5    same topics.  So maybe that's a third category.

6            MR. POLLACK:  Maybe it is a third category.  So

7    with the first category, I don't have any problems with

8    the filter team communicating publicly.  You know, we

9    found five documents that we think fall within that

10   category.  I don't think that's something that the

11   prosecution team can't know.  I just want to be able to

12   see those five documents and raise any objections I have

13   before they're actually turned over.

14           If we're talking about the existence or

15   nonexistence of miscommunications on other topics --

16           THE COURT:  Right.

17           MR. POLLACK:  -- or with other parties, I think

18   that that should not be communicated to the prosecution

19   team and I think can be communicated to myself and the

20   Court.

21           THE COURT:  Are these documents that you all

22   have?  I mean you already have these documents.  Right?

23           MR. POLLACK:  To some extent, yes.  To some

24   extent, no.  Remember, the filter team designated

25   thousands of documents that it wanted to "claw back" from

1    us.

2              THE COURT:  Okay.  Why don't we just start by

3    having them tell me what they have and then I will -- the

4    next step may be, Mr. Pollack, before the prosecution

5    team, but we'll take it in steps.

6              MR. POLLACK:  That's fine, Your Honor.

7              THE COURT:  And again just for the record, just

8    so we can at least move the ball forward on this, I am

9    finding that based on the disclosure of the three memos

10   we've received or opinions that there is a waiver as to

11   the topics which are legal advice on the stage names,

12   legal advice on compliance with Israeli law or regulations

13   and/or whether Yukom was required to be or was regulated

14   in Israel and then also the issue of whether Yukom is

15   allowed to do business in the United States although I

16   think I would say, although I don't think it matters, it's

17   very clear from the opinions that it's not just the United

18   States.  It's also the United Kingdom and I think Germany.

19   But and then beyond that, the government will have to make

20   arguments beyond that.

21              And the waiver is based in part on U.S. versus

22   Bilzerian, 926 F.2nd. 1285 (Second Circuit 1991) where the

23   defendant was pursuing a good faith defense, but was

24   seeking a ruling on the attorney/client privilege as not

25   being waived by the defense.

1          Also Nguyen versus Excel, 197 F.3rd. 200 (Fifth

2     Circuit 1999).  Again where a good faith defense was

3     effectively -- when it's bringing in legal opinions, there

4     is a waiver.

5          And certainly the broad principle is when a

6     party reveals part of a privileged communication in order

7     to gain an advantage in litigation, which is what's going

8     on here, it waives the privilege as to all other

9     communications relating to the same subject matter.  From

10    In Re: Sealed Case, 676 F.2nd. 793 (D.C. Circuit 1982).

11         And also U.S. versus Jones 696 F.2nd. 1069

12    (Fourth Circuit 1982) on the subject matter issue for

13    those three topics.  Obviously, going beyond that, we'll

14    address later.

15         Why don't we take a break now?  And we'll move

16    on to the voir dire and the jury instructions and see how

17    far we get.  I do -- I don't know about everyone else's

18    schedule.  I do need to wrap up by 12:30, maybe 12:45 at

19    the latest.  I think we can get pretty far on those

20    things, although nothing in this case has ever been easy.

21    But we'll see if we can make some things easy.  So we'll

22    see you in 15 minutes.

23         MS. COTTINGHAM:  Thank you, Your Honor.

24         MR. POLLACK:  Thank you, Your Honor.  I do need

25    to be in court in D.C. at 2.  But if we're going to wrap

1    up by 12:45, that won't be an issue.

2              THE COURT:  Okay.  Thank you.

3              (Recess.)

4              THE COURT:  So why don't we move to the voir

5    dire?  And before we get into the questions, let me just

6    lay out the procedure I'd like to follow and it may affect

7    sort of what we think about the questions.

8              So basically, with the questions, I regroup them

9    in a way that I usually like to approach it.  And the --

10   they're all framed in a particular way.  So the procedure

11   we generally follow is we have the panel come into the

12   courtroom and we seat them in numerical order, at least

13   the order they're going to be considered on the form.

14   Sometimes for whatever reason, the numbers go down instead

15   of up.

16             But the first twelve people to be considered or

17   fourteen sit in the front row behind the defense table

18   with the first person up against the wall and then we fill

19   the first row in and then do the same thing with each of

20   the rows on the left hand side.  Then the second half of

21   the group sits behind the government's side.

22             Just as a matter of ease, the lower numbers are

23   against the wall and then they fill in from my right to

24   left just so they don't have to go past each other.  But

25   you do -- we'll have on the form the sequence in which

1    they're being considered and that's the way they'll be

2    seated.  And what I do then is after introductory remarks

3    and having them sworn in, I go through all the questions

4    and I go through all -- is there an issue with the

5    interpretation or --

6              (Pause.)

7              THE COURT:  Everything okay?  Okay.  So I ask

8    all the questions in order and after each question, we ask

9    anyone who answers yes to the question to stand up and

10   then the clerk will direct them to give us their juror

11   numbers.  And it's just the yes or no answer that we're

12   taking at that point in time.  I have a grid and you all

13   can track this on your own, however you'd like, where we

14   identify which questions anyone says yes to and we go

15   through all 30-some questions, track what they said yes to

16   and we give them an index card so they can write down the

17   question number if they would like to.  And then for

18   anybody who has answered yes to a question, we call them

19   up here to the bench with the white noise machine and we

20   ask followup questions on those questions they answered

21   yes to.  And for any one juror we ask questions about

22   every question they answered yes to.

23              I ask the questions.  If the government or the

24   defense wants to have any followup questions, you can let

25   me know and I'll consider allowing that.  We do that all

1    here at the bench.  And any challenges for cause need to

2    be made after that person leaves and before we call the

3    next person up or they're waived.

4          Once we have enough jurors to have a full panel

5    after peremptory challenges, I won't do this secondary

6    questioning with anyone else who's at the back half or

7    back end of the list if we know we have enough.  So we'll

8    only go as far as we need to.

9          And after we have enough, which is usually 32,

10   which is twelve jurors, two alternates, sixteen

11   peremptories and then two peremptories for the alternates,

12   I will then have you do your strikes.  We typically do

13   those on paper.  So you will be at counsel table with the

14   list.  The clerk will give you a list that shows which of

15   the jurors were eligible for a strike both for the main

16   jury and then for the alternates.  It's simultaneous.  So

17   there is the possibility that both sides will strike the

18   same person.  But that doesn't give you an extra strike.

19   You'll provide the list to me or to the clerk and then

20   you'll have a chance to see the other side's strikes

21   before we seat the jury.  And once we seat the jury and

22   I'll entertain any issues at that point.  And then if

23   there are none, we'll swear the jury in.

24          And so the opportunity -- at that point they're

25   not going to be sitting in the box.  They're going to be

1      sitting in the spots that they've been in and we direct

2      them, of course, not to move out of their location

3      because, of course, the lower numbered ones are more

4      likely to be on the jury and you can factor that into your

5      analysis.

6                  So first off, any questions with that procedure?

7                  MS. COTTINGHAM:  We just wanted to clarify, Your

8      Honor.  So the lower number start on this side of the

9      wall.  On this side, are they also the lower number?

10                 THE COURT:  Right.  It's basically on the theory

11     that when they walk in, they go all the way in.  So they

12     walk in, they go all the way into the wall.  And then we

13     do that for the first -- all the rows on that side and

14     then when they get to this side, the lower numbers are

15     walking in.  So they're not walking past each other.

16                 MS. COTTINGHAM:  Understood.  Thank you, Your

17     Honor.

18                 THE COURT:  So what that means is all the

19     questions, some of them have been rephrased as I drafted

20     them here or edited them.  So that, A, that there are yes

21     or no question with yes meaning we might want followup and

22     no meaning we don't want followup.

23                 And then I also have combined some because it's

24     actually -- the more questions we have, it's a little more

25     unwieldy.  I think it's okay to have a compound question

1    because we will clarify up here what the yes answer was

2    about.  For example, we usually combine questions about

3    whether you've been a victim of a crime, witness to a

4    crime or charged with a crime so that it's not clear that

5    everybody standing up has actually been charged with a

6    crime and things like that for privacy reasons.  And so

7    and then, of course, sometimes there's followup questions

8    embedded in your submission.  I take those out because

9    we'll do that up here.

10          So with that, let's go through the questions and

11   perhaps the first thing is -- the first question is about

12   the schedule, which is a broader question, but just to

13   make sure we're all on the same page about that.  My

14   understanding is that we saw this as a three-week trial,

15   which in our parlance is basically a full day, 9 to 5, but

16   with only four days a week so that we have a day for other

17   matters.  So and I had asked you earlier if we could skip

18   next Wednesday.  But in lieu of that, we've added Monday,

19   July 22nd.  So that's 12 days.

20          The jury selection I would imagine, although

21   maybe you can tell me if you think otherwise, usually the

22   way it works here in a criminal case is if we're lucky, we

23   get through it by lunchtime.  But if not, we get through

24   it in the afternoon, usually with enough time for opening

25   statements and probably starting at least one witness or

1    at least part of one witness, but again that shifts back

2    and forth.

3            And then after that, again I don't know the

4    length of the government's case or what we know about the

5    defense case, but I wanted to just get clarification on

6    whether there's any concerns about when we finish the

7    trial in that regard.  And to clarify, I want to make sure

8    that we'll finish not just the evidence, but also the

9    instructions and the closing arguments and then I'd like

10   to be able to leave some time for the jurors to deliberate

11   because part of what we're telling the jury is when they

12   are going to be here.  And, of course, if there is no time

13   left for deliberations, that's not an accurate statement

14   to them about when they're going to be here.  So is the

15   three weeks as I've laid out in Question 1 an appropriate

16   instruction to the jury?

17           MS. COTTINGHAM:  Your Honor, we think it is.

18   We're estimating about seven days of testimony.  Our first

19   witness we do think would be a lengthier witness, but

20   would plan to, schedules allowing, start putting that

21   witness on after opening statements on Tuesday.  So with

22   that and going into then Thursday, Friday and the five

23   days following, we think that's what we're anticipating

24   our case in chief.

25           THE COURT:  So that would leave the third week

1    for Mr. Pollack, which is four days.  How does that sound

2    to you from what you know about what you're planning to

3    do?

4              MR. POLLACK:  I don't think the defense is going

5    to take four days, Your Honor.  So I think we have more

6    than enough time.

7              THE COURT:  Okay.  And you've built in

8    cross-examination to your assessment, Ms. Cottingham?

9              MS. COTTINGHAM:  To the best of our ability,

10   yes, we have built in cross-examination, Your Honor.

11             THE COURT:  Okay.  So we'll go with that.  I

12   would prefer to again not tell the jury we're going to go

13   into a week after that.  As a practical matter, I'm not

14   around the week after that.  So even if we're done with

15   the case, the deliberations would have to proceed with a

16   different judge which is not ideal.  I'd generally prefer

17   to avoid that.  So I'd like to finish ideally no later

18   than Thursday just so that they have at least a full day

19   with me here.  Ideally, perhaps closings Thursday morning

20   so they have the afternoon.  And obviously, if we finish

21   earlier, even better.

22             I have left July 29th open if we need it.  I

23   would prefer not to need it.  And I certainly don't want

24   the work to expand to fill the time.  So don't think of

25   extra things to do on that day if we don't need it.  But I

1      think I'm going to leave it here where we're leaving it as

2      a possibility for the jury.  But I think we're not

3      planning to sit that day unless we all agree we need to.

4      So let's think of it that way.  But I am putting it in the

5      calendar for when they are here and I definitely -- as

6      you'll see, I try to make sure that we take care of the

7      jury as best as possible.  So I'm not going to tell them

8      come on a day we didn't tell them the first day they might

9      come.  So that's what this is about.

10             So with that, any questions or issues with the

11     voir dire questions?  Why don't we just take them in

12     groups?  First is Questions 1 through 8, this general

13     question category and then we'll move to the next

14     category.

15             MS. COTTINGHAM:  Nothing from the government,

16     Your Honor.

17             MR. POLLACK:  Your Honor, as we do both voir

18     dire and the jury questions, I am maintaining my prior

19     requests and therefore, objecting to anything that the

20     Court did not include.  Having said that, I don't feel a

21     need to discuss every issue.  So I just want to make sure

22     in saying I have no issues with respect to 1 through 8,

23     but I want to make the record clear that I'm not waiving

24     any --

25             THE COURT:  Okay.  That's fair.  But if there is

1    an issue -- and I find that sort of giving you a track

2    changes on this made it actually harder to read.  So I

3    didn't do that.  But if there is something that's not --

4    what I largely did was -- I think in virtually all cases

5    the concept that was asked for is in here somewhere.  So

6    there's a question of form.  I think there's one or two

7    questions, which I took out which I basically thought were

8    redundant or not necessary.  But if you want clarification

9    on why I did something, this is a good time to do both for

10   your sake and for the record.

11          MR. POLLACK:  Absolutely.  And I think this will

12   be more of an issue for the jury instructions --

13          THE COURT:  Right.

14          MR. POLLACK:  -- than for the voir dire.  So I

15   just wanted to make sure that -- I will certainly discuss

16   anything that I think is significant that I have questions

17   about what the Court has done, but I just don't want any

18   failure to discuss something to suggest a waiver of a

19   prior request.

20          THE COURT:  Okay.  That's fair.  So then the

21   second category, knowledge of the case or parties and as

22   part of this just to clarify, I think when we get to

23   Number 14, I would like to get a witness list and it can

24   be longer than a witness list in the sense of key people

25   who are mentioned even if they're not actually going to

1    testify and that goes for both sides so that we can list

2    these names for the jury.

3            I would prefer to get either city and state of

4    where they reside or country and/or if they are really

5    there in their official capacity, what organization they

6    work for just to give the jury some sense of who these

7    people are particularly if it's a common name.  But we

8    certainly don't need to state why they are on this list at

9    all or highlight anybody or anything like that.  So I

10   don't see any risk of doing anything wrong if we include

11   names that prove not to be relevant in the case.

12           So can we get that -- well, certainly the

13   morning of trial, but if there is a way to get it the day

14   before that would be ideal.  Anything else on the second

15   group which is questions -- up to Question 14?

16           MS. COTTINGHAM:  Nothing from the government,

17   Your Honor.

18           MR. POLLACK:  Your Honor, I think that we had a

19   specific question about Lena Green and I think that what

20   the Court did was simply add that name to the list of

21   names in Number 14.  I would --

22           THE COURT:  Yeah.  I did that.  Is there a

23   reason why it needs to be treated differently?

24           MR. POLLACK:  I would, Your Honor.  So I don't

25   think there's going to be any debate that professionally

1    Ms. Elbaz used the name, Lena Green.  And so I think it's

2    significant to highlight for the jury whether or not

3    anybody has had any dealings with Lena Green.  And to just

4    have her on a list along with prosecutors that are no

5    longer involved in the case, I think may do a disservice.

6         My recommendation would be between Questions 10

7    and 11 or is it 10 -- in addition to sort of the compound

8    on 10-B.  Do you know of any interactions with the

9    defendant, Lee Elbaz, or any of her relatives, friends or

10   associates?  If you could say something there that

11   indicates Ms. Elbaz while at Yukom or professionally used

12   the stage name or however we want to refer to it, Lena

13   Green, if anybody had any interactions with an individual

14   known as Lena Green.

15        THE COURT:  So you're okay with noting in the

16   fact here that it's the same person?

17        MR. POLLACK:  Exactly.  Like I said, I don't

18   think there is going to be any debate about that.

19        THE COURT:  Okay.  So if we said something

20   like -- and this is the point as you would I'm sure know

21   from other cases, this is -- with all the folks on 11-A,

22   -B and -C since they are in the courtroom including the

23   defendant, I ask them to stand up and face the jury so

24   that they can see if they visually recognize them even if

25   the name doesn't mean anything.  So at this point, Ms.

1   Elbaz would be standing up.  So if we'd say -- what if we

2   said with the defendant, Lee Elbaz, who has also been

3   known as Lena Green?

4           MR. POLLACK:  I don't like the also known as.

5   It sounds kind of like a alias of a drug dealer.

6           THE COURT:  That's AKA.  We're not using that.

7   Does the government have any objection to including this

8   in this question in some fashion?

9           MS. COTTINGHAM:  No, Your Honor.

10          THE COURT:  Okay.

11          MR. POLLACK:  Ms. Elbaz, who at times

12  professionally used the name, Lena Green.  Does anybody

13  have any dealings with either Ms. Elbaz or with her known

14  as Lena Green?

15          MS. COTTINGHAM:  Your Honor, we would ask that

16  professionally probably wouldn't be appropriate there.

17  Who also used the name I think would be the most neutral

18  and appropriate phrasing of that question.

19          THE COURT:  What do you think of that?

20          MR. POLLACK:  I'm fine with that, Your Honor.

21          THE COURT:  Okay.  Who has also used the name,

22  Lena Green or any of her -- okay.  So we'll change that.

23  We'll move that up there.

24          Just to clarify, is Special Agent Fine the case

25  agent?  Is he going to be sitting with you or is he not?

1          MS. COTTINGHAM:  Your Honor, Special Agent Fine

2     is one of the two case agents.  Special Agent Jeremy Desor

3     is also there.  So we may want to move him up to C --

4          THE COURT:  It's really more about -- the reason

5     why you're in 11 as opposed to 14 is whether you're in the

6     courtroom all the time.  So is someone going to be sitting

7     with you and it's usually got to be the same person or is

8     neither?

9          MS. COTTINGHAM:  So, actually, Your Honor, we

10    were going to ask if they could alternate out?  If both of

11    them could have permission to be in the -- both the case

12    agents?

13         THE COURT:  I see.  Are they both testifying

14    witnesses, one or the other or --

15         MS. COTTINGHAM:  Only Agent Fine we anticipate

16    will be testifying.

17         THE COURT:  Okay.  What do you think of that,

18    Mr. Pollack?

19         MR. POLLACK:  I guess I don't have any objection

20    to it.

21         THE COURT:  Okay.  Well, for your purposes I

22    think, it still seems to be the case that Agent Fine is

23    your government's representative.

24         MS. COTTINGHAM:  That's fine, Your Honor.

25         THE COURT:  And then Agent Desor is -- there

1    actually would be no prohibition on him being in the

2    courtroom if he's not a witness.  I suppose then the only

3    technical question is whether he can sit inside the bar or

4    not.  But I don't know if that's -- as you see we have

5    perhaps smaller than usual spaces here in our courthouse.

6    Given the shape of the building, you may have noticed that

7    and so I don't know if that's a distinction that matters

8    or not.  But Mr. Pollack is generously agreeing not to

9    make an issue of it.  So I think it's okay.

10              MS. COTTINGHAM:  Your Honor, Mr. Pollack raising

11   this about the name, Lena Green, I wanted to raise this

12   now rather than before we send in the witness list is as

13   the Court's aware, a number of Ms. Elbaz's co-conspirators

14   who will be on the witness list also used stage names.  I

15   think for purposes of a witness list to be read to the

16   jury, it would be appropriate for us to also include those

17   stage names when we send the witness list to you.  Just

18   making sure Mr. Pollack doesn't --

19              MR. POLLACK:  Two points.  I would call them

20   alleged co-conspirators.

21              THE COURT:  I'm not going to use the term on the

22   list anyways.  So that's fine.

23              MR. POLLACK:  Yeah.  And in all seriousness, I

24   don't know that I see a distinction.  I would agree.  To

25   the extent that there is any witness who has at times used

1    another name or other names, in the voir dire we should be

2    asking about their real name as well as the other names

3    that they've used.

4              THE COURT:  Okay.  And we'll just use this

5    parlance, who has also used the name, whatever it is.

6    Okay.  Very good.  So that was 8 through 14.

7              Once we move to Roman III, these are things that

8    are a little more specific to the case, although they

9    are -- some of them are pretty standard in a criminal

10   case.  But any issues with anything from 15 to 28?

11             MS. COTTINGHAM:  Not from the government, Your

12   Honor.

13             MR. POLLACK:  No, Your Honor.  And I apologize

14   for going back for a second.

15             THE COURT:  Okay.

16             MR. POLLACK:  This is a little tangential, but

17   it just reminded me.  So I understand Agent Fine may

18   testify, but he'll be a party representative and the rule

19   on witnesses will not apply to him.

20             There may be character witnesses on behalf of

21   Ms. Elbaz which may include a relative of Ms. Elbaz and I

22   wanted to find out if the rule on witnesses is going to

23   apply to character witnesses or if they can be in here to

24   support her even though they are going to be giving

25   testimony?

1          THE COURT:  Any concern for that, Ms.

2    Cottingham?

3          MS. COTTINGHAM:  Your Honor, provided they would

4    just be testifying, of course, as to Ms. Elbaz's character

5    and not as to anything that they may or may not have heard

6    in the course of trial and other testimony, we wouldn't

7    have any objection.

8          THE COURT:  Okay.  Well, so that's the

9    restriction.  If for some reason they think of something

10   in the past, they may be barred from testifying to that

11   later on, something that's relevant to the case.  And

12   obviously, if they are here, then I suppose it's fair game

13   for someone to ask about whether anything they heard here

14   impacts their character, but that's a choice you can make.

15   So it may just be helpful for you as we're going through

16   this just to identify for us who these folks are when

17   they're here just so we know who's in what category.

18          MR. POLLACK:  Yes, Your Honor.

19          THE COURT:  Okay.  And then so 15 through 28,

20   any issues from your side, Mr. Pollack?

21          MR. POLLACK:  No.

22          THE COURT:  Okay.  And then the last category is

23   more of the catch-all on these things, 29 through 34.  Any

24   issues there?

25          MS. COTTINGHAM:  None from the government, Your

1   Honor.

2              MR. POLLACK:  No, Your Honor.

3              THE COURT:  Okay.  And then I meant to ask when

4   we were talking about the jurors, are we comfortable with

5   two alternates in this case?

6              MS. COTTINGHAM:  Yes, Your Honor.

7              THE COURT:  Okay.  Any issue?

8              MR. POLLACK:  For a trial this length, two

9   sounds appropriate.

10             THE COURT:  Okay.  Great.  So then we can move

11  on to the jury instructions and again some preliminaries

12  are helpful perhaps for those who haven't tried a case

13  here.  Specifically, the preliminary instructions, what

14  these are is -- I like to give these instructions

15  immediately following the swearing in of the jury and as

16  just as a procedural matter, what that will mean is even

17  if we're at an inconvenient time such as 1:15 or something

18  when we all want to have lunch, I still feel the need to

19  give these instructions before the jury goes out mainly

20  because one of the main parts of the instructions is

21  warning them that they should not be doing research on

22  their phones in the break.  Some may not realize that's

23  something they shouldn't be doing.  So we need to make

24  sure they know that.  In fact I sometimes will give that

25  kind of instruction to the venire if we for some reason

1     need to take a break in the middle of the morning just so

2     they don't start Googling names that they've heard.

3          But most of this is standard just to give them

4     some orientation on what we're doing here in the trial.

5     The only part I think that is of any particular substance

6     is the summary of the applicable law.  I found that it's

7     helpful to just let the jury know what the charges are.

8     We don't get into any detail of the sub-instructions on

9     these elements, but just to make sure that they have some

10    sense of what they are looking for.  And as you see here,

11    I do tell them that the instructions that they are really

12    suppose to follow in particular are the ones that they get

13    at the end.  So I wanted to see if anyone had any issues

14    with the preliminary instructions as drafted?

15          MS. COTTINGHAM:  The United States does not,

16    Your Honor.

17          MR. POLLACK:  No, Your Honor.

18          THE COURT:  Okay.  So then we can move on to the

19    overall instructions.  And again here I think most of what

20    I've suggested are cosmetic edits, although there are some

21    substantive issues to iron out.  There are again groupings

22    here.  The first group is just general issues.

23          I will say at the outset because we haven't --

24    it comes up over and over again in the parties' joint

25    submission.  Generally speaking, you will see that whether

1    it's with briefs or opinions or in court, I usually try to

2    refer to parties by name rather than by title or

3    designation.  So I'm generally going to accept Mr.

4    Pollack's suggestion that we refer to the defendant as Ms.

5    Elbaz where appropriate.

6             I haven't taken the time to go through this and

7    be very specific about that.  I think there are sometimes

8    when the term of the defendant is appropriate because

9    we're really talking more about a generic situation than

10   this particular defendant.  So to avoid any confusion,

11   that may be the case.  But that's generally how I will

12   approach that and to the extent that the current draft

13   doesn't reflect that, we'll clean that up one way or the

14   other.

15            So then in terms of the instructions, perhaps we

16   can just again go by section and then we'll address issues

17   that arise.  The first one is the standard instructions,

18   most of which I gave to you.  So that's role of the court.

19   That's 1 through 5.  Any issues there?

20            MS. COTTINGHAM:  None from the government, Your

21   Honor.

22            THE COURT:  Okay.  And then 6 through -- this is

23   a larger group so we may have to stop in the middle.

24   But -- let me see.  Why don't we just page through and

25   just stop me when you get to something you want to talk

1    about?  I'm at 6, 7 and 8 which are pretty standard.  9

2    and 10.  And then 11 is evidence.  12 and 13 are

3    stipulations.  I might ask you on 13, the stipulation

4    question, what do you have in mind if anything on

5    stipulation of testimony?

6         MS. COTTINGHAM:  Your Honor, at this point we're

7    still working with defense on stipulations, but I think it

8    would be to custodial testimony.

9         THE COURT:  Okay.  I mean I don't know in the

10   end whether that will matter too much in the sense that

11   whether we need a separate instruction or not.  I mean we

12   might be able to just combine 12 and 13 into something,

13   but we can see if it becomes relevant or not.

14        14 and 15 deal with charts.  These are standard

15   instructions we use sometimes.  But do we know whether

16   we're going to be dealing with these issues in this case?

17        MS. COTTINGHAM:  Your Honor, we anticipate

18   having a few 1006 exhibits, mostly related to financial

19   and also some demonstrative exhibits.

20        THE COURT:  So you think these are both going to

21   be relevant?

22        MS. COTTINGHAM:  Yes, Your Honor.

23        THE COURT:  Okay.  Well, I think it will be

24   important as we're going through the trial just to make

25   clear what we're dealing with.  If it's 1006, then

1    obviously there had to be advance notice and those will be

2    admitted if they're admissible.  But for 15, I think we or

3    the demonstrative aids, if you're not planning to offer it

4    as evidence, you should let me know and we can

5    appropriately categorize them.  And then --

6          MR. POLLACK:  On that point there are some

7    documents that I've received in discovery that look like

8    they might be demonstrative exhibits and might be

9    summaries for which I either don't have the backup or I

10   haven't figured out what the backup is.

11         THE COURT:  Right.

12         MR. POLLACK:  And I don't know if the government

13   is intending to use any of those in its opening statement,

14   but I would certainly want to get the backup in advance of

15   opening statement for anything they are going to use in

16   opening statement so that I have the opportunity to review

17   it in advance.

18         THE COURT:  Fair point.

19         MS. COTTINGHAM:  Absolutely.  Of course, we will

20   provide all of the backup for those and we do not plan to

21   use any of them in opening statement.

22         THE COURT:  Okay.

23         MR. POLLACK:  Thank you.

24         THE COURT:  Okay.  So then 16 and 17 deal with

25   transcripts and I think I saw in the trial brief that you

1    have two categories of things.  You've got standard

2    transcripts where it's being used as an aid.  These are

3    transcripts of English language recordings.  And then for

4    17, you want to be able to introduce the English version

5    as the evidence.  Is that correct?

6              MS. COTTINGHAM:  Yes, Your Honor.  And I think

7    because there's audio, video and written evidence here,

8    both in Hebrew and English.  With respect to first taking

9    just transcripts, so audio or video to the written word.

10   With respect to those exhibits, there's a number of those

11   that do contain Hebrew.  So the transcript is both a

12   transcript and translation and -- of Hebrew into English

13   and we would --

14             THE COURT:  So you are saying the original is

15   mixed?  It's part English, part Hebrew?

16             MS. COTTINGHAM:  Yes.  So there are some videos

17   and audio files where it's back and forth between Hebrew

18   and English and so there would be a transcript that would

19   contain both English-to-English transcription and

20   translation.

21             THE COURT:  Okay.  This isn't really about

22   evidence.  But while we're on the topic, do you have any

23   issues with that approach?

24             MR. POLLACK:  So Your Honor, my position is that

25   if there is an audio or a video recording, regardless of

1    the language that it is in, that is the evidence.  And I

2    have no objection to providing the jury a transcript in

3    English for the jury to follow along as the recording is

4    being played.  But to me, that is simply to aid the jury.

5    It's not evidence and it doesn't go back to the jury.  If

6    the jury has a question about something that was said,

7    they can ask for it to be replayed and they can ask to see

8    the transcript again.

9           With respect to the translations, I think what

10   we've agreed, what the government and I have agreed, each

11   party has a certified translator.  And what we're going to

12   do is simply do a stipulation that says, you know, these

13   documents, these exhibits, whathaveyou, were done by a

14   certified translator competent to translate Hebrew into

15   English and what you are seeing are those certified

16   translations.

17          So I can't take issue with what the government

18   translations say, no, that's not a certified translation

19   and vice versa.  But we're not binding the witness.  If a

20   witness sees something and says, no, I don't think that's

21   inaccurate, I was using an ADEA-matic phrase and it wasn't

22   translated correctly, the witnesses, of course, are free

23   to say that.  But so what we are envisioning would be

24   simply a stipulation saying these are certified

25   transactions.

1          And if we are talking about a document, a

2     document is translated into English in a certified

3     translation and the document has been introduced into

4     evidence, that would be in evidence.  So I don't have an

5     objection to the English translation of a document going

6     back.

7          In other words, I'm trying to mirror what would

8     happen if this trial were in English.  If the trial were

9     in English, if it's a document that goes into evidence, it

10    goes back with the jury.  If it's an audio recording, a

11    transcript of that does not go back with the jury.

12         THE COURT:  Well, I mean I understand the

13    principle and I agree with it in the general sense.  But

14    as a practical matter, that means, you know, in a normal

15    case, the English recording is available.  At least in our

16    court, we usually give the recordings to the jury so they

17    can listen to them at their leisure and so that really

18    wouldn't be a practical option for them with the Hebrew

19    recordings.  Would it?  As you said, they would have to

20    come out and ask for it to be re -- actually, the

21    replaying may or may not matter.  They would have to come

22    back and be allowed to read the transcript again, which

23    seems somewhat unwieldy.  So even though I understand the

24    point, I'm not sure why we couldn't let them have the

25    transcripts of the Hebrew translations.

1          MR. POLLACK:  I think the whole reason for that

2     rule is not to elevate the transcript into evidence and

3     for the jury to understand that that transcript is not

4     gospel.  I think there's even more of a danger when the

5     transcript is a translation.  You know, now the jury is

6     taking the translation as evidence.  It's being treated

7     like evidence is going back to the jury room like evidence

8     when we wouldn't do that with an English translator --

9          THE COURT:  Well, but again we're dealing with

10    the practicalities here and also I mean, you know, we do

11    not use foreign language materials for the jury generally.

12    And in theory at least under this scenario, if there was a

13    discrepancy in terms of what one side thought that the

14    recording said versus the other, then that side could

15    either offer a full transcript or a partial transcript to

16    give the alternative version of what something meant.  So

17    why couldn't we just do that if that becomes an issue?

18         MR. POLLACK:  Well, again, Your Honor, to me,

19    it's not necessarily a battle of the translator.  The

20    witness is going to be in the courtroom.  The witness who

21    speaks Hebrew is going to hear the Hebrew.  The witness is

22    going to testify about the audio or the video that we're

23    seeing.  All of that is the evidence.  A certified

24    translation that purports to be a transcript of that is

25    not evidence.

1              And I think it is when you talk about

2    practicalities wholly unrealistic given the volume of

3    recordings that the government has designated that between

4    when they have been produced as exhibits and trial that

5    I'm going to be able to get certified translations of

6    every single one of those --

7              THE COURT:  Okay.  Well, let me ask you this,

8    Ms. Cottingham.  How many recordings are we talking about

9    that we're going to be -- that you are proposing to have a

10   transcript of a recording in a foreign language going to

11   the jury?

12             MS. COTTINGHAM:  Your Honor, off the top of my

13   head, I don't have a full number.  But many of these are

14   smaller, shorter clips of statements that, of course --

15             THE COURT:  Are we talking about five things or

16   fifty?  Or more?

17             MS. COTTINGHAM:  Somewhere in between there,

18   Your Honor.  I think we're probably -- when we include

19   clips and again some of these videos are one, two minutes

20   long.  Some of the clips are sort of under two minutes

21   long, that kind of range.  I think we're probably in the

22   25 range.  And I do think, Your Honor, rather than

23   thinking about these, you mentioned, of course, that we

24   don't use foreign language materials as evidence here and

25   that's exactly --

1          THE COURT:  I mean that may not be strictly

2     accurate in terms of allowing it to be admitted.  But in

3     terms of having the jury rely solely on that, we would

4     never do that.

5          MS. COTTINGHAM:  Yeah.  And as I think the case

6     law and as we laid this out in our trial brief, the case

7     law including within the Fourth Circuit has pretty

8     squarely said that when there are foreign language

9     recordings, the translations of those recordings are

10    admissible as substantive evidence just like translations

11    of any written work.

12         THE COURT:  Okay.  Well, as again we're not

13    dealing with the evidentiary issue right now.  I'll take a

14    look at the cases you've cited and if Mr. Pollack wants to

15    offer anything as a counter, we can do that before this

16    gets to that point.  And so it's just good to know we have

17    a dispute on that issue and I'll look at it.

18         So subject to any changes because of any ruling

19    on that one way or the other, any issues with 16 or 17?

20         MR. POLLACK:  No, Your Honor.

21         MS. COTTINGHAM:  No, Your Honor.

22         THE COURT:  So let's move on to 18, 19, 20.

23    Anything to raise there?

24         MS. COTTINGHAM:  No, Your Honor.

25         MR. POLLACK:  Your Honor, I don't know that 18

1    is going to end up being relevant because I don't know

2    that there will be such an argument.

3              THE COURT:  I agree.

4              MR. POLLACK:  But obviously, we can pull that

5    one if it ends up not applying.

6              THE COURT:  Yes.  We'll just see where it

7    stands.  This is one where we sometimes tweak the language

8    a little bit or either dispense with it or -- so we'll

9    leave that as something to take a look at.

10             And then 21 is where we start talking about

11   various witness issues.  We have 21.  22, I moved from

12   earlier because I though it fit better here and there are

13   some editing in part because I thought there were some

14   redundancies with 21.  But I think the substance of it is

15   still there.  23 is just moved.  And then 24, what do we

16   know about experts in this case.  Do we have any?

17             MS. COTTINGHAM:  The government does not, Your

18   Honor.  We understand that Mr. Pollack may.

19             THE COURT:  And this is on the materiality

20   question or something else or --

21             MR. POLLACK:  No, Your Honor.  I think that was

22   a mischaracterization of what that expert witness is going

23   to testify to.  And the government knows.  It was given

24   the Rule 16 disclosure.  He is somebody who has tremendous

25   industry experience with call centers.  Yukom was a call

1    center.  And things like the use of stage names, he will

2    testify that is a common industry practice.  So it has to

3    do with sort of what industry standard is or what common

4    practices are, not whether any particular representation

5    is material or immaterial in the expert's opinion.  He's

6    not going to render an opinion on that.

7              THE COURT:  Okay.  So we might need this

8    instruction.  And I take it, Ms. Cottingham, that by the

9    government's silence up to this point, there's not going

10   to be any objection to his testimony writ large.

11             MS. COTTINGHAM:  Your Honor, at this point --

12             THE COURT:  Except on relevance grounds perhaps.

13             MS. COTTINGHAM:  At this point, we have not

14   received what we would view as adequate disclosures from

15   Mr. Pollack on this point.  We have been continuing to go

16   back and forth with Mr. Pollack on that.  For example, we

17   don't have any information at all relating to what this

18   expert may have based his opinion on.  We're not aware of

19   him looking at any documents.  We're not aware of him

20   being provided any information.  So that's the first.

21             The second is the relevant industry that Mr.

22   Pollack just referenced.  We are not aware of what the

23   definition or scope of that relevant industry is.  So at

24   this point, Your Honor, we think we are -- we've not

25   formally objected to this on notice grounds, but we do

1    have concerns about the adequacy --

2              THE COURT:  Well, but if you were thinking at

3    all about making a notice objection, a Rule 16 objection,

4    why wasn't that a motion in limine that was already filed?

5              MS. COTTINGHAM:  Your Honor, given the timing of

6    when we got the disclosure, we have continued to

7    correspond with Mr. Pollack by letter.  We've had --

8              THE COURT:  So you've got something, but not

9    everything you think you want?

10             MS. COTTINGHAM:  Yes, Your Honor.  We were

11   trying to resolve it with the parties without -- before we

12   figured out whether we needed to raise it to the Court's

13   attention.

14             THE COURT:  Okay.  Well, Mr. Pollack, you seem

15   to know that you have this witness.  Is there any reason

16   why we can't try to run that issue to ground so we can

17   avoid any disputes later?

18             MR. POLLACK:  Your Honor, I have made a Rule, a

19   timely Rule 16 disclosure on this witness.  My Rule 16

20   disclosure is more than adequate.  The government has said

21   we want more information.  In some respects, I've given

22   them more information.  In other respects, I haven't.

23   They haven't filed a motion to say that they think that

24   the Rule 16 disclosure is inadequate.  They have given

25   examples.

1          So they said, for example, you know, I don't

2     know if the witness is going to define the industry as

3     including financial institutions and I'd like to know

4     that.  I don't think that's part of a Rule 16 disclosure.

5     That sounds to me like cross-examination.  If they want to

6     say, well, sure, you have a lot of familiarity with

7     non-financial institution call centers, but you really

8     don't know what they do in financial, again the government

9     can do that.  That's cross-examination.

10          I have given his qualifications.  I've given his

11    opinions.  I've given the basis for those opinions and I

12    have told the government he is not relying on documents.

13    He is relying on his knowledge of the industry.  And I've

14    said what his knowledge of the industry is.  I've given

15    him a detailed CV --

16          THE COURT:  Where he worked?

17          MR. POLLACK:  Where he worked --

18          THE COURT:  What countries he's worked in, for

19    example?

20          MR. POLLACK:  A detailed CV that shows exactly

21    what his experience is.  So if they want to say that

22    somehow that experience isn't on point or isn't relevant,

23    that goes to the weight of his testimony.  It's not a Rule

24    16 disclosure.

25          THE COURT:  Okay.  Well, again now is not the

1   time to debate it.  I will note -- well, when we get to

2   the end, I'll tell you again, you know, I'm not interested

3   in having the jury sitting in the jury room while we're

4   having some sort of a Daubert hearing.  So it's a

5   interesting question whether the government should have

6   raised this earlier or whether that's a good idea that

7   they didn't.  But certainly, if it gets raised late in the

8   game, that's not good for anybody.

9           Okay.  So let's keep going with the

10  instructions.  We'll leave 24 where it is.  When I put

11  things in italics, that's usually things that to just flag

12  for us to come back to at some point.

13          25, 26, 27 and let's stop there for now.  I

14  think these were largely not controversial I don't

15  believe.

16          MR. POLLACK:  26, Your Honor, I think is not

17  applicable to the facts here.

18          THE COURT:  Okay.  Well, we'll put that in

19  italics because I do think it's somewhat fact dependent.

20  I think we'll sort of see by the end of the trial whether

21  this is an issue or not.

22          MR. POLLACK:  Okay.

23          THE COURT:  Some of it depends on what we hear.

24  I know you're saying this is a standard thing in the

25  industry.  They have a different theory.  We can revisit

1    this at the end of the trial.

2              MR. POLLACK:  Well, it's not just that.  This is

3    not somebody who used a different name to avoid detection.

4    It's not as if she was changing her name every other week.

5    This instruction is typically used for if somebody were

6    using a different name in and of itself would be evidence

7    of guilt.

8              Here, you are going to hear from a number of

9    witnesses, some of whom the government designates as

10   co-conspirators.  Some of whom it doesn't.  They used

11   stage names.  You're going to hear that everybody in the

12   industry used stage names.  So it just doesn't strike me

13   as what this instruction has in mind.

14             THE COURT:  I understand the point.  I think

15   it's potentially relevant enough that we should leave it

16   in the packet now, put it in italics as something we'll

17   revisit at the end once we see the full scope of evidence.

18   And I guess the government is on notice that Mr. Pollack

19   objects to this.  So that in addition to arguing the

20   facts, if there is any law or cases you want to throw at

21   me from either side, that may be something to prepare for

22   the end of the case.

23             MR. POLLACK:  Thank you, Your Honor.

24             THE COURT:  So 27.  28, I know was one where I

25   did some tinkering.  Accomplices called by the government.

1      So basically, what happened here is it seems as if the

2      parties generally agreed on this accomplice instruction

3      from Sand.  But the defense wanted to include things that

4      come from the similar, but different instruction regarding

5      individuals with plea agreements.

6               So at a first step, I wanted to ask factually

7      what we're dealing with here?  Are there witnesses who are

8      going to testify who had plea agreements and are there

9      ones who didn't?  Are these two different categories or

10     does everyone fall into one category or the other?

11              MS. COTTINGHAM:  Your Honor, we anticipate that

12     they will all -- all of the witnesses who are testifying

13     had agreements.  They may not have all been plea

14     agreements.  So --

15              THE COURT:  Proffer letters, immunity something?

16              MS. COTTINGHAM:  Exactly, Your Honor.  So we

17     don't have any objection to 28 as you've revised it.

18              THE COURT:  How about you, Mr. Pollack?  There's

19     some revisions, but I think it kept that most important

20     difference in there which is references to the plea

21     agreements and so forth.

22              MR. POLLACK:  Can I have a moment, Your Honor?

23              THE COURT:  Um-hum.

24              (Pause.)

25              MR. POLLACK:  I think, Your Honor, in the last

1    sentence, I would say witnesses who believe that they may

2    be able to obtain their own freedom, receive a lighter

3    sentence, or avoid a prosecution.  Because we have

4    witnesses who didn't enter a plea agreement, but entered a

5    proffer agreement, then were not prosecuted.

6              MS. COTTINGHAM:  Your Honor, first, I don't

7    think that would be factually accurate if you're talking

8    about a witness testifying so he can avoid prosecution.  I

9    don't think chronologically that's not consistent with

10   somebody who is testifying who may want to receive a

11   lighter sentence.  I don't think that inclusion makes

12   sense.

13             THE COURT:  Well, who are we talking about here

14   or what are we talking about here?  Are there witnesses

15   who will testify who have not been charged, but who are

16   viewed as accomplices or co-conspirators?

17             MS. COTTINGHAM:  There is one individual who may

18   testify who is a co-conspirator who has a non-prosecution

19   agreement, which is essentially I mean it's a cooperation

20   agreement and he has agreed to testify.

21             THE COURT:  Non-prosecution agreement.  That's

22   not something that the government gives out every day.

23   It's not a deferred prosecution agreement?

24             MS. COTTINGHAM:  It's a non-prosecution

25   agreement.

1           THE COURT:  That's different from immunity?

2           MS. COTTINGHAM:  It's effectively the same

3    thing.  It's sort of the methodology through which we --

4           THE COURT:  So why isn't that what Mr. Pollack

5    said, avoiding prosecution?  I mean because he's not

6    getting a lighter sentence because there is no sentence.

7           MS. COTTINGHAM:  I think --

8           THE COURT:  The freedom thing is -- that's from

9    the standard instruction.  I'm not sure I love that

10   language, but that implies that they have been in prison

11   at some point, which may or may not be the case for these

12   individuals.  So why isn't a non-prosecution agreement

13   covered by the question or fairly addressed by saying

14   avoiding prosecution?

15          MS. COTTINGHAM:  Well, I think it's in part it's

16   sort of a temporal issue, Your Honor.  So I think the

17   suggestion is witnesses who believe they may be able to in

18   the future gain one of these benefits, for example, their

19   own freedom, a lighter sentence by giving testimony.

20   That's sort of one factual situation.  Where the

21   individual has an NPA has agreed to cooperate fully with

22   the government to testify truthfully.  The penalty if he

23   were not to testify truthfully, just like somebody who had

24   a plea agreement, would be -- the NPA would be torn up.

25   He could potentially be prosecuted for perjury.  So I

1    don't think it's accurate to say that he believes that he

2    may avoid prosecution by testifying favorably to the

3    United States.

4              THE COURT:  Okay.  Well, I mean it seems as

5    if -- the problem we have here is the accomplice

6    instruction doesn't really get into this stuff.  The plea

7    agreement instruction does, but only from the perspective

8    of a scenario where someone has a plea agreement.  So if

9    you're talking about sequence of events, maybe it belongs

10   higher up where it says as part of such agreements, the

11   government agreed to bring the witness' cooperation to the

12   attention of the sentencing court or agreed not to

13   prosecute him entirely or something like that.  So --

14             MS. COTTINGHAM:  Your Honor, I would also

15   suggest that this is covered, this point is covered by

16   Instruction 29, which is the next instruction.  Of course,

17   someone who has a non-prosecution agreement is an

18   un-indicted co-conspirator.

19             THE COURT:  I'm not sure I agree with that

20   because that is really more -- I mean that would be --

21   this is -- I mean that doesn't deal with someone getting

22   the benefit of an actual non-prosecution -- here's what I

23   would suggest we do on this.  You mentioned that beyond

24   the plea agreements, there is this non-prosecution

25   agreement.  There may be other types of agreements,

1    immunity or otherwise.  I think it makes sense -- well, we

2    can do this a number of different ways.  The model

3    instructions put the plea agreement out as a separate

4    thing, although I'm never a fan of doing it exactly that

5    way because there's a lot of redundancies there.  So what

6    I would suggest is maybe we can have the parties look at

7    28 and go back and consider the scope of the various

8    witnesses we're dealing with and try to reach an agreement

9    on some language somewhere that addresses the issue Mr.

10   Pollack is identifying and any others that we haven't

11   thought about that deal with the fact that not everybody

12   just has a standard plea agreement.  They may have some

13   other type of agreement.

14          And whether we can reach an agreement on either,

15   A, it's not significant enough to address separately or if

16   it is, then how we're going to do it and you can come back

17   with a proposal on that because I think -- my impression

18   is that the way you've described it is not a prosecution

19   agreement.  We should have some language that addresses

20   that issue without -- but how we do it, I would perhaps

21   ask the parties to take a first crack at it.  Is that

22   okay?

23          MR. POLLACK:  I'm fine with that.  If I can

24   raise a different issue with this instruction and this

25   admittedly is right out of Sand, but to quote the court,

1      "I don't love it."

2              THE COURT:  Um-hum.

3              MR. POLLACK:  The part about the government

4      argues that.  It just doesn't seem to me ever appropriate

5      to include in an instruction the government's argument.

6      And then it goes on and says for these very reasons, the

7      law allows it.  I think what the jury should be told is

8      that the law allows it, not what the government's argument

9      is.  There's no instruction that says the defendant thinks

10     this is a stupid instruction because, however, I'm going

11     to give it.  I mean the government's argument, it just

12     doesn't --

13             THE COURT:  Have you ever proposed that to the

14     Sand folks to see if they will include that in the model

15     instructions?

16             MR. POLLACK:  I have even less influence with

17     Judge Sand than I do with this Court, Your Honor.

18             THE COURT:  Anyway so --

19             MR. POLLACK:  So I'm proposing to strike -- keep

20     the first sentence and then strike the next three lines

21     for these very reasons and just go on to the law allows

22     the use of accomplice testimony.

23             MS. COTTINGHAM:  Your Honor, we would object to

24     that, but what might achieve some of Mr. Pollack's

25     objective would be to say the government must take the

```
 1    witnesses as it finds them.  It sounds like his objection
 2    may primarily be to the government argues.  So we're happy
 3    to take argues as it is permitted to do out of it.
 4               THE COURT:  Any thoughts on that?
 5               MR. POLLACK:  It's better.  Again I recognize
 6    this is in Sand.  So I'm fighting an uphill battle here.
 7               But the government doesn't have to use these
 8    witnesses.  The government chooses to use these witnesses.
 9    And so to tell them that -- you know, to give this some
10    imprimatur that there are -- these are the reasons why
11    this is appropriate, I don't think in other instructions
12    the Court talks about why this is such a good instruction
13    and why it's such an important instruction.  It just
14    singles out this instruction in a way that I don't think
15    is appropriate.  I think like any instruction, it should
16    be telling the jury what the law is, not trying to explain
17    to the jury why the law is that way.
18               THE COURT:  Well, there are other model
19    instructions that do this and I actually on other
20    occasions and other issues have not included the why
21    language just because -- for the reason you are stating,
22    but --
23               MR. POLLACK:  And the government -- to be very
24    fair, the government has not requested the purpose
25    instructions which I always object to.  The government
```

1    didn't even ask for them.  So I acknowledge that.  But it

2    just strikes me that that same thing creeps into this

3    instruction, even though it's not a separate purpose of

4    the statute instruction.

5              THE COURT:  How about -- what was your

6    suggestion again, Ms. Cottingham?

7              MS. COTTINGHAM:  Your Honor, we would just

8    omit -- after the government, we would say the government

9    must take the witnesses as it finds them, which we think

10   would accomplish this sort of appropriate balancing that's

11   in this instruction of explaining the nature of these

12   agreements and the government's relationship with these

13   witnesses.

14             MR. POLLACK:  And to say it to me proves that

15   it's incorrect.  The government doesn't have to extend

16   these agreements.  That's the government's choice.  So to

17   say must and then say that describes these agreements,

18   that's the problem.  I think you could say that people who

19   themselves take part in criminal activity may have the

20   knowledge required to show the criminal activity --

21   behavior by others.  The law allows the use of accomplice

22   testimony.  I think that would do it without either of the

23   two lines of government argument that are built into this

24   instruction.

25             THE COURT:  Okay.  I think something like that

```
 1    is a good balance.  So let's say after the first sentence,
 2    we say only people who themselves take part in criminal
 3    activity have the knowledge required to show criminal
 4    behavior by others.  The law allows the use of accomplice
 5    testimony.  So it takes the government's argument out of
 6    it.  I suppose it in some ways makes it a more generic
 7    statement.  But I think that's a fair balance.
 8              I generally don't like these purpose-type
 9    things.  But I think there are times and that's why the
10    instructions have them where the jury may just be
11    wondering about something and I think that's something we
12    try to do is give them some explanation.  But by taking
13    out the for these very reasons, we're not necessarily
14    endorsing that as an issue.  We're just saying the law
15    allows it.  But so let's do that for now.
16              MR. POLLACK:  And, Your Honor, in my iteration,
17    I had inserted the word "may."
18              THE COURT:  Oh, right.
19              MS. COTTINGHAM:  Your Honor, we would also ask
20    that sometimes go at the beginning of that sentence.  It
21    sounds awkward, but sometimes only people who themselves
22    take part in criminal activity.  I don't think we don't
23    want to blanketly say --
24              MR. POLLACK:  I don't have a problem with that.
25    Sometimes only people may have the knowledge.
```

1          MS. COTTINGHAM:  And I think we may be talking

2     about two different places in the sentence.  I think I'm

3     saying sometimes only people who themselves take part in

4     criminal activity have the knowledge required to show

5     criminal behavior by others.  It accomplishes it a little

6     more cleanly.

7          MR. POLLACK:  And I'm accepting that sentence

8     with only one modification which would be to put the word

9     "may".  Sometimes only people who themselves take part in

10     criminal activity may have the knowledge required.

11          THE COURT:  I mean it feels to me like it's an

12     either or.  They are both qualifiers and I think once we

13     throw them both in, it's kind of unwieldy.

14          MR. POLLACK:  Well, the government is not even

15     arguing in this case that the only people who have

16     knowledge about Ms. Elbaz's criminal behavior are people

17     who themselves are accomplices.  But yet, that statement

18     is saying that only people who are accomplices have the

19     knowledge required to show criminal behavior by others.

20     An eyewitness can --

21          THE COURT:  Well, I'm going to go with the

22     government's version.  Sometimes only people who

23     themselves take part in criminal activity have the

24     knowledge required to show criminal behavior by others.

25     I think the sometimes qualifies it in a way similar, but

1    not exactly what you're saying, Mr. Pollack.  I think that

2    putting them both in there is sort of a double qualifier,

3    which is confusing.

4            And I think the version without the sometimes

5    actually is not necessarily true.  Only people who take

6    part in the criminal activity may have the knowledge

7    meaning that no one else would have this knowledge, which

8    I don't think is true.  It could be an undercover or

9    something like that.  So I think we'll go with that.

10            Okay.  Anything else on 28?

11            MS. COTTINGHAM:  No, Your Honor.

12            MR. POLLACK:  No, Your Honor.  Thank you.

13            THE COURT:  29, you say they are people in this

14    category and --

15            MS. COTTINGHAM:  Your Honor, in light of the

16    revisions to 28, I don't think there will be anybody else

17    in this category.

18            THE COURT:  Once you come up with this other

19    thing?  Okay.  Well, make that part of your discussions

20    together.  See if there's a way to make 29 unnecessary.

21            30, I think the defendant wanted.  The

22    government didn't.  I've left it in for now.  But can you

23    just -- anybody can give me background on who we're

24    talking about here or what the context is for this

25    instruction?

1          MS. COTTINGHAM:  Your Honor, I think this is one

2     that we don't think this is going to be applicable here.

3     So I think this is one that we would ask just to be put in

4     italics and table until the end to see if this is

5     necessary or appropriate.

6          THE COURT:  I mean I do think it's fact based.

7     Is there anything right now you can tell me, Mr. Pollack,

8     about this?

9          MR. POLLACK:  There are two different witnesses

10    whose 302's indicate that they were addicted to drugs

11    including one who I think specifically says was using

12    drugs during the time that he was working at Yukom.  Now I

13    don't have the government's witness list.  Maybe the

14    government is not intending to call that witness.  So if

15    they don't call either of the witnesses for whom this

16    applies, obviously, I wouldn't request the instruction.

17         THE COURT:  Okay.  Well, we'll wait and see and

18    I think part of it is as the instruction indicates that

19    the relevant factors would be, you know, is there some

20    sense that they are addicted now as they are testifying or

21    were at the time of the events.  And if it's only one or

22    the other, we might narrow it to just one or the other and

23    if it's neither, then the fact they were addicted at some

24    point in the past probably doesn't rise to the level of

25    having the instruction.  So we'll see how it comes out

1    with the evidence.

2            Okay.  So 31, 32.  32, do we know we're going to

3    need that or not?  This is again the same idea.  Some

4    witness who has a criminal record.

5            MS. COTTINGHAM:  Your Honor, I don't think we're

6    aware that this would be needed here.

7            THE COURT:  Because there is no such witness

8    or --

9            MS. COTTINGHAM:  I don't believe that any of

10   them have convictions that would become relevant or there

11   will be any testimony regarding them, but --

12           THE COURT:  Well, I mean is there anybody who

13   has a Rule 609 conviction that it could be used in

14   impeachment?

15           MS. COTTINGHAM:  Not that we're aware of at this

16   point, Your Honor.

17           THE COURT:  Does Mr. Pollack know something you

18   don't know or --

19           MR. POLLACK:  There is at least one government

20   witness, maybe two, but one that I can think of offhand

21   who has been convicted of committing insurance fraud and

22   other offenses that relate to veracity.

23           THE COURT:  Okay.  Well, we'll just see who this

24   is at the end and we'll decide whether we need it.  I

25   don't hear any objections to the form.  But again we can

1    leave that to the end.

2              Then we get to 33 and 34 about the defendant.

3    And any concerns about those?  Obviously, 34 is an either

4    or unless Mr. Pollack knows for sure which category the

5    defendant falls into in terms of testimony.

6              MS. COTTINGHAM:  No objections from the

7    government, Your Honor.

8              MR. POLLACK:  Nothing further on any of these

9    instructions and no, I'm not prepared at this point to say

10   which will apply.

11             THE COURT:  Okay.  Of course.  So then now we're

12   getting to the charges here.  First, there is sort of some

13   preliminary issues.  35, 36, 37, 38, 39, 40 are all just

14   preliminary issues.  Any concerns with those?

15             MS. COTTINGHAM:  No, Your Honor.

16             MR. POLLACK:  I'm sorry, Your Honor.  Which one

17   are we going through at this point?

18             THE COURT:  Just all the ones up until we get to

19   the elements.  So 35 through 40.

20             MR. POLLACK:  No additional issues there, Your

21   Honor.

22             THE COURT:  Okay.  So then we get to 41.  It

23   sounds as if the parties are agreeing that we will read

24   certain portions of the indictment, but we won't give the

25   jury the indictment itself and I think we do need to at

1      least read portions because there are some specific wires

2      that they have to be aware of what we're talking about.

3      Is that where we are on that question?

4              MS. COTTINGHAM:  Yes, Your Honor.

5              THE COURT:  Okay.  So then elements.  Let's look

6      at 42, 43, 44.  42, 43, I don't see any real issues with.

7      We can talk about 44 if there's anything there.  That

8      really gets into this question of the good faith defense.

9      Anything up until we get to 44?

10             MS. COTTINGHAM:  Nothing before 44, Your Honor.

11     But --

12             THE COURT:  Okay.  So on 44, again what we get

13     into is -- well, there's two things that are going on

14     here.  One is I think the defense had suggested separate

15     instructions on knowingly and willfully and things like

16     that.  I prefer to avoid that because I think it gets

17     confusing because not every statute has the exact same

18     mens rea.  So what I propose to do as you can see is to

19     have those knowledge or those mens rea definitions both in

20     this here and then also separately in the conspiracy area.

21     And I did move some language from the standard instruction

22     on willfully over here.

23             And then the good faith defense, it seems as if

24     both sides have agreed that it should be referenced.  The

25     government just wants the general language from the Sand

1    instruction on this element.  The defense wanted more

2    based on a case.

3                I agree with the defense that -- to the extent

4    this is going to be the defense theory and obviously, we

5    can shift if this -- if it turns out not to be the theory,

6    something more than what's in the standard instruction is

7    needed.  But I didn't necessarily accept the notion that

8    the proposal was -- thought there was either more than

9    necessary or some of it was not really supported by

10   anything in particular.  But I tried to synthesize this,

11   included some language from the standard good faith

12   instruction in Sand, some language from the case that was

13   cited and tried to match that language a little bit

14   better, recognizing that it's not the exact same

15   situation.  It was a tax case.  But I think the principle

16   is the same and then tried to put that together.

17               And then in particular, this example from the

18   standard instruction, I find very confusing and I tried to

19   reword that, but with the same meaning.  This is the one

20   on page 55 regarding the impact of believing that no one

21   would lose money and things like that.  So there may be

22   things that the parties want to discuss about this.  But

23   that's what I was thinking about in putting together this

24   revision.

25               MS. COTTINGHAM:  Your Honor, I think first with

1    respect -- assuming there is a fact -- there is in fact a

2    factual basis for the good faith defense.  I think our

3    preference would still be to go to the pattern which I

4    think doesn't go as far into explaining the sentence.  I

5    can refer to it by footnote.  The sentence with the

6    Footnotes 123 and 124.  I think those are the ones that

7    the government has sort of the most concern with.  I think

8    they go a good bit further then the standard pattern does

9    in terms of defining good faith.  I don't have proposed

10    language right in front of me, but would be happy to take

11    this back and propose some because I know this is sort of

12    a hybridization of case law and Sand.

13           THE COURT:  Well, I mean I think as you can see,

14    it relates both to the wire fraud instruction 44-5, but

15    also the general good faith instruction, which is 8-1 and

16    then something from this Hirschfeld case.

17           But I do think that just saying you can -- if

18    you act in good faith, you're fine is not enough.  I do

19    think there needs to be some definition of what good faith

20    would be.  And, you know, "honest belief representations

21    were truthful" I think comes from one of the instructions.

22    The other, "acting properly" I think comes from the other

23    instruction.  The incorrect or wrong may be from the case,

24    but --

25           MS. COTTINGHAM:  Yeah.  Your Honor --

1          THE COURT:  I mean I don't see any reason not to

2     include it.  If you want to propose something different,

3     you can at some point.  But I think the concept of giving

4     something more than just saying a good faith defense

5     exists and figure out what it means is necessary.

6          MS. COTTINGHAM:  I think even if we could end

7     that sentence after "turned out to be incorrect" so

8     there's not sort of this -- so removing starting "or wrong

9     and even if others were injured by her conduct."

10          THE COURT:  Okay.  Well, Mr. Pollack, what's

11    your view on this overall thing on 44?

12          MR. POLLACK:  Your Honor, I don't -- well, so I

13    guess I'm the one who introduced rather than it be a

14    free-standing instruction trying to work it into this

15    instruction and I still think that that can be done.  I

16    guess I'm largely comfortable with the way the Court has

17    done it.

18          There are a couple of concepts that I don't

19    think are in there that should be and I may have missed

20    it.  So, for example, the standard instruction, 8-1 says

21    that good faith is a complete defense to the charges in

22    this case.  I didn't see and again maybe I missed it, but

23    I didn't see anything in this instruction saying that it's

24    a complete defense.

25          THE COURT:  It's there.  It's in Footnote 119.

1    So I think that addresses that issue.

2              MR. POLLACK:  I see.  And this may be a reason

3    to make it a free-standing instruction --

4              THE COURT:  You want to apply the other

5    instruction?

6              MR. POLLACK:  It applies to conspiracy as well,

7    yeah, because it's conspiracy to commit wire fraud.

8              THE COURT:  Well, I agree with that.  That it's

9    hard to do that in this instruction because this only

10   deals with the other count and rather than restating it,

11   maybe it should be free-standing.  I thought about that

12   because it's a little unwieldy.  But that's a form issue.

13   I mean if we can agree on the substance, we can figure out

14   how to do that.  But I agree.  I mean we have that

15   concept.  What's the other concept you were concerned

16   about not having?

17             MR. POLLACK:  Sure, Your Honor.  So the other

18   concept is you have a statement at the end of page 54 that

19   says "so if Ms. Elbaz had an honest belief that her

20   representations were truthful and that she was acting

21   properly."  If you look at 8-1?  If fraud is charged, if

22   the defendant believed in good faith that he was acting

23   properly, even if he is mistaken in that belief and even

24   others were injured by his conduct, there would be no

25   crime.  It's not "and truthfully."

1          And my concern here is, you know, the jury might

2    find, for example, that she lied in saying her name was

3    Lena Green.  She wasn't acting truthfully, but she thought

4    it was totally proper.  To me, that fits squarely within

5    the good faith defense.  But as you read this instruction,

6    in order to take advantage of the good faith defense, she

7    has to both be truthful and acting properly.

8          THE COURT:  Okay.  That's a fair point.  I mean

9    I think the truthful language may actually come from -- I

10   think it comes from 44-5 which is the more specific

11   instruction here, but I understand your point.  There's

12   different -- I think depending on what source you're going

13   to, they all kind of frame this differently.

14         You don't have any issue with that part, Ms.

15   Cottingham.  Is that right?

16         MS. COTTINGHAM:  Your Honor, I actually do think

17   I mean because it's part of the pattern for -- the pattern

18   for 44.5 says "an honest belief in the truth of the

19   representations made by the defendant is a good defense,

20   however inaccurate the statements may turn out to be."  So

21   I think the concept that encompassed in good faith is that

22   they believe the representations were truthful, I think is

23   important to be included in this instruction.

24         THE COURT:  I have to think through the

25   scenarios that we're dealing with here.

1          MR. POLLACK:  And, you know, we can certainly

2     come back to this, Your Honor.  I guess if you are going

3     to want to build that into this substantive instruction, I

4     would then ask for the good faith instruction to be given

5     separately as Sand gives it because regardless of what the

6     substance instruction is for 44-5, the good faith

7     instruction says that if the defendant believed in good

8     faith that he was acting properly even if he was mistaken

9     in that belief and even if others were injured, there

10    would be no crime.  And so I think the jury does need to

11    know that that is a defense regardless of whether there

12    may have been statements along the way that were made that

13    were not truthful.

14          THE COURT:  Okay.  So I think that this is one

15    where partly because of time, but also because I think we

16    all need to think this through a little bit, 44 is another

17    one that I would ask the parties to jointly take a look

18    at, partly because I do think if you're trying to get the

19    good faith instruction in on the conspiracy issue, too,

20    then it probably does make sense to make it separate.  But

21    then where one excises and how one introduces that would

22    be different and perhaps the parties giving me a joint

23    proposal would make more sense.

24          And then this issue that we see on the line with

25    Footnote 123 and 124, I think everyone makes a good point

1    on that.  I think to some degree the question is, you

2    know, are we looking at this from the standpoint of the

3    wire fraud only or also the conspiracy, and I do think

4    there's a -- there is a fair point to be made because you

5    get into very complicated questions of, you know, is there

6    a statement that was not truthful, but that was not

7    material and things like that.  And again whether that

8    means good faith or not, I don't know.

9         I think perhaps the better way is to try to

10    think of a way to write around that question and just come

11    up with an agreement on what good faith means in this

12    context and defining that jointly and then coming back to

13    me with something.

14         MR. POLLACK:  Yeah.  I mean I think those are

15    separate concepts.  As we've talked about, materiality is

16    judged objectively.  The point is if Ms. Elbaz

17    subjectively believed that she was acting properly even if

18    objectively she was wrong, that's a defense and so it's

19    not --

20         THE COURT:  Yeah.  No.  I think we're saying the

21    same thing.  It goes to the same point of some innocent or

22    nonsignificant, not a 100% truthful statement.  Whether

23    that by itself would be an issue or not.

24         So this is a complicated one, particularly given

25    that I made some not insignificant changes to it.  So I

1    would ask the parties to take a look at that together.

2            Let's move onto 45.  Use of the wires.  I don't

3    think there was anything really complicated here.  The one

4    thing I did want to ask was -- and again I look at it

5    again from the standpoint of the jury hears these

6    instructions and thinks I wrote them myself and as does

7    the appeals court.

8            And so even though neither side has suggested

9    this, it doesn't really say -- it says what's an

10   interstate wire.  It doesn't really say what a wire is or

11   what could be a wire or what might not be a wire.  So is

12   an email a wire?  Is a phone call a wire?  It does say a

13   wire transfer is a wire.  But in this case, I'm not sure

14   it's all about wire transfers.

15           So if there is anything else, I think the jury

16   may have a question as to whether certain types of

17   communications are wires or not.  That may not even be

18   disputed.  But I think we should add something perhaps at

19   the beginning of the second paragraph that defines that.

20   And so maybe that's something I would ask the parties to

21   take back and let us know what that is.  If they can reach

22   agreement on how to give a little more detail on what

23   types of things are wires and what types of things are not

24   with authority.

25           Anything else on 45?

1              MS. COTTINGHAM:  No, Your Honor.

2              MR. POLLACK:  Separate from the definition of

3    what a wire is, I think that the Court's edits again

4    candidly may more closely track Sand, but I think removed

5    the balance that I was trying to introduce in the proposed

6    instruction.

7              So this is really in the last two paragraphs

8    where you say, you know, it's sufficient to just find this

9    and if you find this, that's enough.  It never says but if

10   you don't find that, the element hasn't been met.  And so

11   it seems to sort of lower the bar a little bit and really

12   just be giving a road map to a decision in one direction.

13             THE COURT:  What language did I take out that

14   you wanted me to put back in that gives you that issue?

15             MS. COTTINGHAM:  Your Honor, it actually looks

16   like you have incorporated the reasonable doubt standard

17   that I think the defense requested.  In the last

18   paragraph, I see it two separate times.  So I don't think

19   there's any suggestion that this somehow alleviates the

20   burden of establishing this element beyond a reasonable

21   doubt.  It's in the paragraph twice.

22             THE COURT:  So the first line of the last

23   paragraph, Mr. Pollack, does say that the government has

24   to prove this beyond a reasonable doubt.  Each wire.

25             MR. POLLACK:  So I guess it's the "it is

1    sufficient" language which is repeated several times that

2    bothers me and I'm not -- I may have missed it, Your

3    Honor, and maybe I didn't have an edit for it.  But in

4    that last paragraph, last partial paragraph on 57,

5    "accordingly, this element is established if the evidence

6    supports a finding that the defendant caused the wire to

7    be used by others.  The defendant need not have

8    specifically authorized."

9           And then, you know, in the next paragraph where

10   it says government does not have to prove the exact date,

11   again I would strike "it is sufficient if the evidence

12   establishes beyond a reasonable doubt that the wire --"

13          THE COURT:  Okay.  What if we just said -- I

14   mean the reality is as you know -- I mean this isn't a

15   particularly high bar for this particular instruction.

16   But if you want me to, I will add a -- I'm trying to think

17   where to put it.  How about this?  We'll strike "however."

18   Move the last two lines to the end of the previous

19   paragraph and then end with "for each count of the wire

20   fraud charged in the indictment to establish the element

21   of use of a wire, the government must establish beyond a

22   reasonable doubt the particular use charged in the

23   indictment.  If the government fails to do so, you must

24   find the defendant not guilty on that count."  How about

25   that?

1          MS. COTTINGHAM:  Your Honor, the government --

2     I mean I don't think that's necessary.  I think as it's

3     drafted --

4          THE COURT:  I'm not saying it's necessary.  I'm

5     just saying that it might be a way to bridge the gap.

6          MR. POLLACK:  Your Honor, I would be satisfied

7     with that.  Thank you.

8          THE COURT:  Okay.  Thank you.

9          So then 46 is aiding and abetting.  The one

10    question I wanted to ask on this and I haven't dug into

11    this, but it does say in order to aid and bet another to

12    commit a crime, it's necessary that the defendant

13    knowingly and willfully associated herself in some way

14    with the crime.  And if I'm not mistaken, I mean I think

15    the model instructions talk about how the standard on

16    whether willfully is required is different in different

17    circuits.  Although I think my general understanding is

18    the mens rea is basically the same as for the substantive

19    offense.  So since both of our crimes require willfulness,

20    I think that's the theory under which we need that

21    language.  Is that where everyone was in putting this

22    together?

23          MS. COTTINGHAM:  Yes, Your Honor.

24          THE COURT:  Okay.  Any other objections or any

25    issues with Instruction 46?

1        MS. COTTINGHAM:  No, Your Honor.  I think we

2   would have the same -- I mean the ultimate paragraph, "if

3   you determine that Ms. Elbaz neither aided or abetted,"

4   again we don't think it's necessary, but --

5        THE COURT:  Okay.  I mean I do sometimes once we

6   see this whole thing, I'll look at things and try to take

7   redundancies out.  But I don't think that's an unfair

8   thing to include right here given that the prior sentence

9   does basically say -- well --

10       MS. COTTINGHAM:  It seems to me that the prior

11  sentence sort of addresses --

12       THE COURT:  Well, it's really the question of

13  there's two different theories here and maybe we don't

14  need it.  I'll take a look at it and let you know if I

15  don't think we need it.  But it's because of the two

16  different theories.  Maybe we've already covered that.

17  Anything else on 46?

18       MS. COTTINGHAM:  No, Your Honor.

19       THE COURT:  Okay.  I think we're running out of

20  time, but let's just take a quick thought as to whether

21  there's any issues with the conspiracy piece.  I thought

22  there were fewer issues there.

23       The multiple conspiracy instruction my thought

24  was to again wait and see.  I get a general sense of how

25  Mr. Pollack might want this, but I also understand that

1    the evidence hasn't come in and I don't know if it's

2    justified or not.  So I want to just leave that off to the

3    side, assuming the language is generally okay.  Is that

4    okay with everybody?

5            MS. COTTINGHAM:  Yes.  We're fine with the

6    language, but don't think we'll ultimately need it.

7            THE COURT:  And then 51 is the membership one.

8    52 is the Pinkerton instruction.

9            And again here, Mr. Pollack, I did leave in some

10   lines here about the reason for this just because I think

11   the jury just may be confused.  I think I may have taken

12   some of it out.  But I definitely -- I understand the

13   point there, but I think this is a quirky enough

14   instruction that letting them get some sense of that we're

15   not crazy is a good thing.

16           MR. POLLACK:  Well, I'm certainly not going to

17   concede that the Pinkerton instruction is not crazy.  I

18   think it is.

19           THE COURT:  I understand.  53, acts and

20   declarations of alleged conspirators.  Any issue with

21   that?

22           MS. COTTINGHAM:  No, Your Honor.

23           THE COURT:  And then the venue I moved here and

24   I'm not totally sold on putting it here.  It occurred to

25   me that this deals with all counts.  But it also is such

1    that having it earlier on, I thought it was just going to

2    leave them a little bit at sea until they had a better

3    sense of what these charges were about and basically

4    seeing at the end, there's this one additional thing that

5    needs to be found.  So that's why I suggest moving it to

6    the end.  Hearing no concerns about that.

7            And then the only other -- the jury deliberation

8    part, Roman IV is something that I -- so the way I do it

9    which I think is consistent with the other judges in the

10   district, although not necessarily the way it is

11   everywhere is that I've been convinced that doing the jury

12   instructions before the closing arguments makes more

13   sense.  So that's what we do.  After the close of

14   evidence, we do the instructions, but I save this last

15   one, deliberations and verdict form, for after the closing

16   arguments because it's more relevant at that point.

17           But it does -- by giving all the instructions up

18   front, it goes give you some clarity as to exactly what

19   you're dealing with as to instructions and then -- okay.

20           So there's -- I think there's three things I

21   asked you to take back.  One was participation in the

22   scheme, Number 44, and then also -- well, no.  I think we

23   addressed 45 and then --

24           MS. COTTINGHAM:  Your Honor, I think on 45, did

25   we owe you something on the definition of international --

1    on the wire.

2            THE COURT:  Right.  Okay.  That as well.  And

3    then what was the other one?  I think I asked you for a --

4    28, the accomplice issue.  And 20 and 29, whether they can

5    be combined.  And obviously, on 44, that also includes the

6    question of whether good faith should be broken out.  And

7    then I will take a look at this issue on the translations

8    in Instruction 17 and I'll get back to you on that.

9            I did want to just talk about logistics,

10   particularly since I don't think we've all done a trial

11   together.  First of all, the verdict form I didn't touch

12   at this point.  So and again that I think is fine.

13           But then in terms of the logistics, way back

14   when I think I did whenever we scheduled a trial, I had an

15   attachment that had some general guidelines that go beyond

16   the local rules on how we would do trials here.  The

17   highlights that you should just make sure that you're --

18   well, first of all, I'd ask you to review that again.  And

19   in the government's case, you may want to consult with

20   your colleagues at the U.S. Attorney's Office, although

21   I'm sure most of them will tell you that there is always

22   something that comes up in the trial that I have that they

23   didn't expect me to cover.  So don't hold it against them

24   if they don't tell you everything that you need to know.

25   But I would check in with them.

1          But among the issues that I think are most of

2    interest to me and that you should know about in advance.

3    One is that our local rule does not require you to move

4    exhibits into evidence and I did that for a while and

5    decided I don't think it's a good idea and I think at

6    least one other judge agrees with me here.  So you do need

7    to move the exhibits into evidence.  But I understand you

8    have many exhibits.  And the goal here is really just to

9    have a clean record and it's not to make extra work.  It's

10   not also to be a gotcha situation where one side forgets

11   to introduce an exhibit and then it's out.

12          So you'll see that I will likely at the end of a

13   witness or certainly at the end of your case give you an

14   opportunity to come back and put exhibits in that you

15   forgot to because again I know the local rule is such that

16   you don't usually have to do that.

17          And also it is the case that the better way to

18   do this to save time is to reach an agreement with the

19   other side on certain things and then just say -- you can

20   even say orally before a witness, we're going to move in

21   without objection Exhibits 1 through 100 or something like

22   that just so the record shows it's in even if it's not

23   necessarily the case you have to lay a foundation for

24   every exhibit.

25          Obviously, one problem with the local rule is

1    sometimes parties forget.  That laying some foundation is

2    a useful thing both for the jury to understand why this is

3    even here or why it might be reliable and perhaps for

4    others who might be reading the record later.  So I don't

5    think that means you never lay a foundation, but you

6    certainly don't have to do it for everything.

7              And I would prefer the parties work together so

8    you can do some bulk moving into admission rather than not

9    because I do find sometimes it gets confusing because

10   parties mention exhibits used for impeachment or otherwise

11   and under the local rule, they would be in evidence and

12   that's very confusing.  So that's the purpose of that.

13             Related to that is the numbering scheme and

14   hopefully, the parties have either followed it or haven't

15   done this yet.  You'll hear from your colleagues at the

16   U.S. Attorney's Office, I get a little into the idea of

17   having the right numbering system.  So one is to have

18   unique numbers, not having a defense exhibit and a

19   government exhibit.  I understand there's a lot of

20   government's exhibits.  So if anyone wants a suggestion on

21   how to do that?  But I would just prefer that we don't

22   have a record that has Exhibit 2 -- two different Exhibit

23   2's because again it's not always referred to that way by

24   not just counsel, but by witnesses.  So I'd like to have

25   those separate.  Usually, it's just giving everybody a

1    different set of numbers to work with.

2          And then relatedly, if there is something that's

3    going to be marked for identification, I ask you to treat

4    that as a letter rather than a number.  As you can see in

5    the instructions, either A or double A or something like

6    that.  If you unexpectedly later decide that it needs to

7    be offered and it is admissible, then we would give it a

8    number again so the record is clear on what's in evidence

9    and what's not in evidence.

10         MR. POLLACK:  In that regard, Your Honor, if a

11   document is used solely for the purpose of refreshing a

12   witness' recollection, do you want that marked for

13   identification?

14         THE COURT:  I would prefer that.  Have I stopped

15   the trial and forced everybody to fix that?  Not

16   necessarily.  But I think that's just a cleaner record.

17   So if you know you are going to use it, I would prefer you

18   do that.  And if you don't, even if you -- I'd ask you to

19   try to do that again so the record is clean from both

20   sides.  But I think my greater concern is certainly things

21   that are impeachment material, demonstrative aids, things

22   like that, it gets confusing.

23         MR. POLLACK:  Right.  No.  I understand.  I just

24   wasn't sure if it applied --

25         THE COURT:  If you can, I would appreciate that.

1          MR. POLLACK:  Sure.

2          THE COURT:  I also have told the government in

3   other cases and this is a paper case perhaps that my view

4   is that everything should have a unique number which could

5   be if they are related, you can do something like 10-A,

6   -B, -C, -D, et cetera.  But we've had cases where the

7   government has lumped together five different documents

8   together as one exhibit with or without page numbers and

9   then just tried to refer to it as Exhibit 10, page 8 and

10  sometimes they don't even put the page numbers on them.  I

11  find that again confusing for me, the jury and the record.

12          And so the rule of thumb I would follow is if

13  it's a paginated document already like a contract and it's

14  a 50-page document, then, of course, it can be one number

15  and you can in discussing it can refer to page 10 of that

16  contract.  But if these are like 25 photographs, they

17  should all have their own unique number even if it's a sub

18  thing like a 10-A, 10-B type thing and not try to build in

19  your own pagination just to save numbers.  I think someone

20  told me that it would take a lot of numbers and I said

21  we've never run out of numbers so far at least in math.

22  So no problems there.

23          And then we will -- I mean I know there's a lot

24  of exhibits.  But am I going to get copies of these

25  exhibits and are they -- how are they going to be

1    presented and you will probably use some electronic

2    system.  But in terms of me getting copies, can I get a

3    hard copy of the set?

4              MS. COTTINGHAM:  Absolutely, Your Honor.  We got

5    the instructions from your courtroom deputy and what we

6    were planning to do was prepare a hard copy set and

7    anywhere there is an audio or video attachment, there will

8    just be a slip sheet in there and then for your set, we

9    had understood that we would then give you and additional

10   copies, there would be a CD.  So you could have a CD that

11   would have all of those audio and video exhibits on it.

12             We understand for the jury that we are going to

13   create separate CDs for each audio and video exhibit so

14   that there's not an issue if one video is admitted and the

15   other is not admitted into evidence.

16             THE COURT:  Okay.  I would ask if you can give

17   us a second set of the exhibits.  I know that's a little

18   bit of an ask.  But the clerk and the law clerk need to

19   use that as well.

20             MS. COTTINGHAM:  Absolutely.  Your Honor, is

21   that format okay --

22             THE COURT:  Yes.  I think so.  And I would ask

23   the defense to do the same if you have anything in

24   addition to that.

25             On witnesses, I would ask each side to notify

1   the other side of who is coming the next day or who could

2   come the next day.  And again that's a courtesy I'd ask

3   both sides to do for each other.  It's again for the

4   efficiency of the process.  I think we are going to follow

5   the rule on witnesses with the exception of experts and

6   the parties or government's representative.

7          MR. POLLACK:  And character witnesses I think --

8          THE COURT:  Yes.  As we've discussed.

9          Mr. Pollack, I don't think you need to tell me

10  now.  But the government filed a trial brief with some

11  evidentiary issues and if you have concerns about or if

12  you object to any of their positions in that, it would be

13  helpful to know that and again I don't think we have time

14  today, but certainly before the evidence is being offered

15  on the stand.  Perhaps let me know Tuesday morning at

16  least what you have concerns about.  Whether we have time

17  to discuss them or not, I'm not sure.  If you want to file

18  something, you are welcome to as well if you can do that

19  before Tuesday.

20         Generally speaking, you will find that as you

21  all have your own clients, my view of this process is the

22  client I have is the jury.  So I'm very concerned about

23  protecting their ability to do their job.  So we generally

24  sit from 9 to 5.  We have a 15-minute break morning and

25  afternoon at an appropriate time.  We have a one hour

1    lunch break usually, it's not until at least 12:30 because

2    the Court has more meetings than I would like that always

3    start at 1:00.  So I try to time it so I can do that

4    during the lunch break.

5            I don't let us go past 5 generally because the

6    jury is not told that they are supposed to stay past 5 as

7    well as the staff has issues.  And so prepare your witness

8    order such that if you really want to finish somebody that

9    day, you order them in a way that they will be finished

10   that day because I'm not inclined to go an extra ten

11   minutes just because a witness -- it would be inconvenient

12   to the witness.  I think you should try to plan ahead to

13   avoid that situation.

14           And same thing about starting, I'd like us to at

15   least as a notional concept be prepared to have everybody

16   here at 8:30 in case we need to discuss anything.  If we

17   know the night before there's really nothing and nothing

18   gets disclosed overnight, then we can come a little bit

19   later.  But we'll talk about that at the end of each day.

20   But my theory is that if there's things to discuss outside

21   the presence of the jury and I imagine there will be, we

22   should do that when the jury is not in the building.  I

23   would prefer to keep things going to do that at 8:30 and

24   possibly at 5:00.  But if there is something really

25   extensive, we might to tell the jury to come in late or

1    leave early, which again I don't want to eat into their

2    time too much.  But if they are not in the building, I'm

3    not as concerned about them.  But we should plan that in

4    advance.

5           And so for the same reason, I want to avoid

6    bench conferences if at all possible.  If you can

7    anticipate an issue whether it's issues to the trial brief

8    or otherwise, you should alert me as soon as you know and

9    we'll try to figure out when we're going to talk about it,

10   whether it's before the day, after the day, during lunch

11   or something else.  So the last resort should be in the

12   middle of the trial, again to save the jury's or be

13   respectful of their time.

14          And as part of that then, the objections need to

15   be just the numerical or a brief description of what the

16   rule is and not a speaking objection.  Depending on the

17   district you're in, there may be different rules about

18   other things.  I ask you to stand for anything, including

19   an objection both for the jury, but also so I can visually

20   identify what's going on.  Although there is no need to

21   stand when you're not objecting or when you're not

22   speaking.  I think that can be unnerving to the jury to

23   have multiple people standing there as if they are going

24   to do something.

25          Because of the microphones, please use the

1    podium when you can.  If you need to give the witness a

2    document, we can have you do that.  But for efficiency,

3    try to use the document camera when it's possible.  And if

4    you are going to give the witness a document whether to

5    refresh recollection or otherwise, try to make sure that

6    in advance, everybody has a copy so you don't need to

7    stand next to them and talk to them and opposing counsel

8    knows what you're dealing with.

9            We talked earlier about one lawyer for every

10   issue or every witness basically.

11           And the only other thing I wanted to make sure

12   we all were on the same page about was the opening

13   statements.  Mr. Pollack alluded to earlier about whether

14   or not there would be certain types of demonstrative aids.

15   Does either side have a sense of what they might use and

16   if there's any issues with those?

17           MS. COTTINGHAM:  We do not plan to use any

18   demonstratives, Your Honor.

19           THE COURT:  Mr. Pollack?

20           MR. POLLACK:  I don't have any in mind at the

21   moment, but I will certainly share with the government if

22   there's anything I intend to use in advance.

23           THE COURT:  Okay.  Try to -- if there are any

24   disputes, please let me know before we are ready to start

25   on that.

1           Just to forecast for you even though it's way

2     off, but since they always tell you you should write your

3     closing argument before the trial, I'm sure you've all

4     done that completely.  Some thoughts on that are again

5     demonstrative aids, either show them to the other side or

6     if you are unwilling to do that for strategic reasons, I

7     won't require it, but I would suggest you perhaps share

8     them with me to avoid objections in the middle and also if

9     there's some issue I see that's really a problem, I might

10    tell you in the middle of the closings.  You would

11    probably want me to know that.

12          You can talk to your colleagues in the U.S.

13    Attorney's Office about jury instructions.  I don't mind

14    you referring to them.  But I ask you not to recap or

15    characterize them.  So to say the instruction is X, but

16    what that really means is Y is not helpful and I might sua

17    sponte object to that.

18          If you were going to use portions of a jury

19    instruction on a slide of some kind, I ask you to directly

20    quote and not to put in ellipsis, put words in bold or in

21    red or anything like that because the instruction

22    generally is that you would look at the instructions as a

23    whole.  So I ask you to not -- obviously, by -- you're

24    going to have to choose -- pick and choose if you're going

25    to do that.  But I ask you not to take words out or add

 1    words or brackets or highlight certain words specifically.

 2    Just quote a portion that you can fully quote and not

 3    emphasize anything in any particular way.

 4          And visual aids, obviously, any admitted exhibit

 5    would be presumptively okay.  But if you are going to do

 6    some sort of Power Point or something again, either

 7    clearing it with the other side or giving me an

 8    opportunity to give you some feedback might be a good way

 9    to avoid any confusion later.

10          Is there anything else that you want to know

11    about before we start?

12          MS. COTTINGHAM:  Your Honor, we just had one

13    logistical question.  Given that there are audio and video

14    exhibits, does the government -- should we provide a

15    laptop to go back with the jury when they deliberate or

16    will they have those sorts of capabilities?

17          THE COURT:  Well, I mean I think generally, I

18    think our approach is that letting one side provide the

19    equipment is dicey and so we provide our own.  But we

20    should have coordination among the parties and our staff

21    on giving us the electronic file in a format that would

22    work on our device.  So you should plan to meet with the

23    clerk on that and the I.T. staff just to make sure that we

24    get something in advance that they can test and make sure

25    it will for the jury.

1          On that note, of course, between now and

2     Tuesday, if you haven't already done so, it's probably a

3     good idea to familiarize yourself with the equipment we

4     have and I believe out I.T. staff can be made available

5     during normal business hours if you make an appointment to

6     show you how it works so that everything runs smoothly

7     during the trial.

8          The number one comment when you talk to jurors

9     afterwards is why can't the lawyers figure out how to use

10    the equipment.  So it would be useful to have done that.

11         MR. POLLACK:  In that regard, as a lawyer who

12    has not figured out how to use the equipment --

13         THE COURT:  They say it never prejudices their

14    decision, by the way, just so you know.

15         MR. POLLACK:  I plan on having an I.T. person in

16    the courtroom.  I don't know sort of logistically -- I

17    mean he's not a lawyer.  So I, you know, in terms of where

18    he sits, but somebody that can cull up exhibits on the

19    electronic equipment.  I just wanted to alert the Court --

20         THE COURT:  I don't have any objection since

21    there's only one defendant if he wants to sit at your

22    table or if there's a problem with that, we've had people

23    in that role sit in the front row.  But does the

24    government have any concern about that?

25         MS. COTTINGHAM:  No, Your Honor.  And I think we

1  would also ask that we be allowed to have a paralegal up

2  here.  We may get in tight quarters over here, but to do

3  the exact same, to run the electronic presentation.

4         THE COURT:  Okay.  So you all have outsourced

5  this.  That's excellent.  Okay.  We'll then have them work

6  with our I.T. staff on how to make this work.  Okay.

7  Anything else for today?

8         MS. COTTINGHAM:  Not from the government, Your

9  Honor.

10        THE COURT:  Okay.

11        MR. POLLACK:  No, Your Honor.  Thank you.

12        THE COURT:  And the last thing and I have no

13  idea if this is even relevant, but we sometimes have cases

14  resolve before trial and I would ask you to if for some

15  reason that is even a possibility, please keep us

16  apprised, not only of any final answer.  But if there is

17  something that looks at least promising, let us know

18  because between now and then there's work that would be

19  done otherwise.  So just give us an update if there is

20  anything like that.  Thank you very much.

21         (Proceedings concluded.)

22

23

24

25

1                    <u>CERTIFICATE OF REPORTER</u>

2

3          I, Lisa K. Bankins, an Official Court Reporter

4   for the United States District Court for the District of

5   Maryland, do hereby certify that I reported, by machine

6   shorthand, in my official capacity, the proceedings had

7   and testimony adduced upon the pretrial conference in the

8   case of the United States of America versus Lee Elbaz,

9   Criminal Action Number TDC-18-00157, in said court on the

10  11th day of July, 2019.

11          I further certify that the foregoing 171 pages

12  constitute the official transcript of said proceedings, as

13  taken from my machine shorthand notes, together with the

14  backup tape of said proceedings to the best of my ability.

15          In witness whereof, I have hereto subscribed my

16  name, this 12th day of July, 2019.

17

18

19                              Lisa K. Bankins

20                              Lisa K. Bankins
                                Official Court Reporter
21

22

23

24

25

MR. ATKINSON: [18] 1...

MR. POLLACK: [169]  2/10 6/19 8/2
8/12 8/16 8/19 9/1 10/20 10/23 11/2
12/7 13/20 13/22 14/10 14/22 15/13
15/20 16/10 20/25 21/5 22/4 22/8 22/16
22/19 23/24 24/4 24/11 24/20 26/11
26/24 38/4 49/10 49/21 49/25 51/8
51/21 52/2 52/10 53/7 53/10 53/24 54/7
54/9 54/20 55/3 55/10 55/23 56/8 56/15
56/24 57/9 57/23 59/4 59/15 59/22 60/5
60/10 60/15 60/22 61/12 61/20 62/7
62/21 62/24 63/21 64/7 64/11 65/1 65/7
65/12 66/9 66/12 66/22 67/8 79/23 80/2
80/6 80/25 82/3 82/16 82/23 83/12 84/7
85/10 85/22 86/2 89/7 89/25 91/25
92/20 93/5 93/16 93/22 94/5 95/23
102/3 103/16 104/10 104/13 105/17
105/23 106/16 107/3 107/10 107/19
108/18 109/18 109/22 110/12 110/15
111/17 111/20 112/1 112/7 113/16
116/5 115/1 116/22 117/23 119/25
120/17 122/19 122/24 123/3 123/20
125/17 126/16 126/19 127/15 127/21
128/1 128/22 129/21 129/24 133/22
134/2 134/15 134/18 135/4 135/22
136/13 137/15 137/23 138/6 138/13
139/11 140/8 141/18 142/7 142/15
142/19 146/11 147/1 147/5 147/16
148/25 150/13 152/1 152/24 154/5
156/15 161/9 161/22 161/25 164/6
167/19 170/10 170/14 171/10

MS. COTTINGHAM: [131]  2/6 5/1 5/14
5/20 5/25 6/6 6/15 16/12 16/15 16/19
17/10 17/16 18/4 18/10 18/14 18/18
19/8 19/25 20/12 25/22 26/16 26/20
35/22 37/1 44/3 44/20 44/25 46/10
46/17 47/9 47/25 68/10 68/20 69/3 70/2
70/25 72/1 72/20 73/14 73/23 74/17
75/25 76/12 79/6 79/20 84/25 85/13
85/18 86/17 87/13 87/21 89/23 95/22
99/6 99/15 101/16 102/8 103/14 105/15
107/8 107/14 107/25 108/8 108/14
108/23 109/9 110/10 111/2 111/24
112/5 113/14 114/19 115/5 115/16
115/21 116/18 117/5 117/15 121/11
121/16 122/4 122/20 122/23 123/16
124/10 124/12 125/4 125/9 129/10
129/15 130/5 130/16 130/23 131/1
131/6 131/14 132/13 134/22 136/6
137/18 137/25 139/10 139/14 139/25
141/4 141/8 141/14 142/5 142/14 143/3
143/9 144/24 145/24 146/5 148/15
151/25 152/14 153/25 154/22 154/25
155/9 155/17 156/4 156/21 157/23
163/3 163/19 167/16 169/11 170/24
171/7

MS. ETTINGER: [2]  38/6 39/1
THE CLERK: [4]  2/15 2/18 2/20 2/23
THE COURT: [287]
THE INTERPRETER: [1]  2/22

**-**

-B [2]  106/22 162/6
-C [2]  106/22 162/6
-D [1]  162/6

**0**

00157 [2]  1/3 172/9
0157 [1]  2/3

---

077 [1]  27/20

**1**

10 [5]  106/6 106/7 115/2 162/9 162/15
10-A [2]  162/5 162/18
10-B [2]  106/8 162/18
100 [2]  150/22 159/21
1006 [2]  115/18 115/25
1069 [1]  95/11
1079 [1]  40/23
11 [4]  1/5 106/7 108/5 115/2
11-A [1]  106/21
1183 [1]  42/24
119 [1]  146/25
11th [1]  172/10
12 [3]  100/19 115/2 115/12
123 [2]  145/6 149/25
124 [2]  145/6 149/25
1285 [1]  94/22
12:30 [2]  95/18 165/1
12:45 [2]  95/18 96/1
12th [1]  172/16
13 [3]  115/2 115/3 115/12
14 [6]  104/23 105/15 105/21 108/5
110/6 115/14
1400 [1]  1/13
15 [6]  23/18 95/22 110/10 111/19
115/14 116/2
15-minute [1]  164/24
16 [29]  43/14 49/14 50/10 58/2 59/13
59/18 60/9 60/13 61/15 62/12 62/17
73/2 73/3 78/1 80/5 84/8 84/9 84/11
90/3 90/10 116/24 122/19 123/24 125/3
125/19 125/19 125/24 126/4 126/24
168 [1]  41/25
17 [4]  116/24 117/4 122/19 158/8
171 [1]  172/11
175 [1]  28/13
18 [2]  122/22 122/25
19 [1]  122/22
19-077 [1]  27/20
197 [1]  95/1
1973 [1]  32/15
1982 [2]  95/10 95/12
1983 [1]  42/25
1989 [1]  28/23
1990 [1]  66/3
1991 [1]  94/22
1996 [1]  29/3
1999 [1]  95/2
1:00 [1]  165/3
1:15 [1]  112/17

---

**2**

2's [1]  160/23
20 [2]  122/22 158/4
200 [1]  95/1
2000 [1]  1/17
20005 [1]  1/13
20006 [1]  1/18
2004 [1]  28/3
2005 [1]  27/25
2007 [2]  28/13 40/13
2011 [2]  42/1 42/12
2012 [2]  35/8 40/24
2013 [2]  33/21 41/6
2017 [1]  40/2
2018 [1]  38/12
2019 [4]  1/5 27/13 172/10 172/16
20770 [1]  1/22

---

21 [3]  123/10 123/11 123/14
22 [2]  30/24 123/11
220 [1]  57/4
22nd [1]  100/19
23 [1]  123/15
230 [1]  33/21
24 [2]  123/15 127/10
242 [1]  40/12
25 [3]  121/22 127/13 162/16
254 [1]  28/12
26 [2]  127/13 127/16
27 [2]  127/13 128/22
28 [8]  110/10 111/19 128/24 129/17
133/7 139/10 139/16 158/4
29 [5]  111/23 132/16 139/13 139/20
158/4
29th [1]  102/22

---

**3**

30 [1]  139/21
30-some [1]  97/15
302's [2]  54/2 140/10
306 [1]  27/24
31 [1]  141/2
32 [3]  98/9 141/2 141/2
33 [1]  142/2
334 [1]  32/14
337 [1]  40/12
34 [3]  111/23 142/2 142/3
35 [2]  142/13 142/19
36 [1]  142/13
37 [1]  142/13
38 [1]  142/13
382 [1]  28/2
39 [1]  142/13
398 [1]  27/24

---

**4**

40 [2]  142/13 142/19
401 [2]  39/5 41/19
402 [1]  41/20
403 [3]  39/24 42/20 42/25
41 [1]  142/22
42 [2]  143/6 143/6
43 [2]  143/6 143/6
44 [9]  143/6 143/7 143/9 143/10 143/12
146/11 149/16 157/22 158/5
44-5 [3]  145/14 148/10 149/6
44.5 [1]  148/18
45 [4]  151/2 151/25 157/23 157/24
453 [2]  28/2 41/6
46 [3]  154/9 154/25 155/17
488 [1]  32/14

---

**5**

50-page [1]  162/14
502 [1]  91/6
506 [1]  29/2
51 [1]  156/7
52 [1]  156/8
53 [1]  156/19
54 [1]  147/18
545 [1]  33/20
55 [1]  144/20
57 [1]  153/4
5:00 [1]  165/24

---

**6**

604 [1]  40/2
609 [1]  141/13

**6**

643 [1] 42/14
6500 [1] 1/21
666 [1] 41/25
667 [1] 28/22
676 [1] 95/10
692 [1] 40/23
696 [1] 95/11
697 [1] 35/7

**7**

701 [1] 42/3
719 [1] 42/24
720 [1] 41/6
784 [1] 29/2
793 [1] 95/10

**8**

8-1 [3] 145/15 146/20 147/21
807 [1] 42/11
876 [1] 40/2
886 [1] 28/22
8:30 [2] 165/16 165/23

**9**

926 [1] 94/22
964 [1] 35/8
9:00 [1] 1/6

**A**

a.m [1] 1/6
Abbas [1] 29/2
abetted [1] 155/3
abetting [1] 154/9
ability [8] 23/14 27/9 36/16 81/7 82/6 102/9 164/23 172/14
able [16] 4/20 49/3 54/6 61/1 62/2 69/7 72/15 79/19 85/4 93/11 101/10 115/12 117/4 121/5 130/2 131/17
about [157] 3/22 5/16 6/21 6/22 6/25 7/4 9/25 12/12 12/14 15/17 15/25 17/22 18/1 20/10 21/4 21/14 22/15 22/16 22/23 24/13 25/12 28/20 29/22 31/2 31/15 35/21 35/24 37/5 38/24 40/5 40/20 41/8 43/1 44/9 44/15 45/9 47/5 49/9 51/18 52/4 52/6 53/18 53/22 54/2 55/8 56/18 57/7 58/4 58/12 62/17 63/16 65/6 70/11 70/20 73/16 74/10 74/22 75/4 75/5 75/11 79/1 81/9 81/17 82/20 82/23 86/9 87/6 87/7 87/11 87/20 88/23 89/23 91/12 91/24 93/14 95/17 96/7 97/21 100/2 100/2 100/11 100/13 101/4 101/6 101/14 101/18 102/2 103/9 104/17 105/19 106/18 108/4 109/11 110/2 111/13 112/4 114/7 114/9 115/1 117/21 118/6 119/1 120/22 121/1 121/8 121/15 121/23 122/3 123/10 123/16 125/1 125/3 129/18 130/8 130/13 130/14 132/9 133/11 134/3 135/12 136/5 137/11 138/2 138/16 139/24 140/8 142/2 142/3 143/2 143/7 144/22 144/23 147/11 147/16 150/15 151/14 153/17 153/24 154/15 156/10 157/3 157/6 158/9 159/2 164/11 164/16 164/22 165/14 165/19 166/3 166/9 166/17 167/9 167/12 167/13 168/13 169/11 170/24
absent [1] 22/13
absolutely [10] 6/24 19/6 54/8 54/10 83/19 87/23 104/11 116/19 163/4

163/20
accepted [8] 7/23 7/24 31/9 58/23 58/24 61/23 141/3 141/4
accepting [1] 138/7
access [6] 44/15 47/9 63/20 63/21 77/18 83/17
accomplice [6] 129/2 132/5 134/22 136/21 137/4 158/4
accomplices [4] 128/25 130/16 138/17 138/18
accomplish [1] 136/10
accomplishes [1] 138/5
accord [1] 12/24
accordingly [1] 153/5
accounting [2] 41/9 41/12
accurate [4] 101/13 122/2 130/7 132/1
achieve [1] 134/24
acknowledge [1] 136/1
acknowledging [2] 62/20 71/13
act [2] 8/17 145/18
acted [3] 14/21 27/19 42/7
acting [12] 69/14 69/15 76/16 89/2 90/9 145/22 147/20 147/22 148/3 148/7 149/8 150/17
action [9] 6/24 16/2 16/18 17/1 30/13 30/17 30/18 79/6 172/9
actions [2] 35/1 84/5
activity [9] 24/14 136/19 136/20 137/3 137/22 138/4 138/10 138/23 139/6
acts [1] 156/19
actual [3] 33/12 62/3 132/22
actually [26] 4/24 6/10 6/11 24/8 36/8 38/5 45/7 48/11 69/2 82/10 85/20 87/22 90/22 93/13 99/24 100/5 104/2 104/25 108/9 109/1 119/20 135/19 139/5 148/9 148/16 152/15
add [11] 5/1 6/14 6/18 16/10 37/17 38/4 72/22 105/20 151/18 153/16 168/25
added [2] 11/8 100/18
addicted [3] 140/10 140/20 140/23
addition [4] 79/15 106/7 128/19 163/24
additional [19] 6/11 33/17 42/8 44/7 44/8 45/3 46/22 47/4 47/18 47/18 47/20 48/14 79/8 79/10 79/12 90/10 142/20 157/4 163/9
address [14] 3/25 16/14 22/5 57/25 71/14 67/6 68/12 72/1 74/6 79/17 88/1 95/14 114/16 133/15
addressed [2] 131/13 157/23
addresses [4] 133/9 133/19 147/1 155/11
addressing [2] 42/6 48/11 75/20
adduced [1] 172/7
ADEA [1] 118/21
ADEA-matic [1] 118/21
adequacy [1] 125/1
adequate [3] 6/9 124/14 125/20
administer [1] 2/17
admissibility [3] 33/11 52/9 76/9
admissible [12] 36/25 40/18 41/3 41/10 41/13 42/6 42/16 50/8 76/8 116/2 122/10 161/7
admission [1] 160/8
admitted [7] 10/2 42/2 116/2 122/2 163/14 163/15 169/4
admittedly [3] 25/5 40/9 133/25
advance [9] 13/6 116/1 116/14 116/17 159/2 166/4 167/6 167/22 169/24
advantage [3] 63/13 95/7 148/6

advantages [1] 41/2
advise [16] 45/8 45/10 45/10 50/22 55/23 66/11 69/18 71/9 77/16 79/1 82/2 90/23 91/9 91/12 94/11 94/12
advised [1] 32/15
affect [3] 12/16 67/24 96/6
affected [4] 36/14 40/16 41/9 41/18
affiliated [1] 88/3
affiliates [1] 68/17
after [28] 5/3 6/4 6/8 8/16 22/1 24/3 24/24 27/19 31/21 32/15 49/10 66/20 74/25 97/2 97/8 98/2 98/5 98/9 101/3 101/21 102/13 102/14 136/8 137/1 146/7 157/13 157/15 166/10
afternoon [3] 100/24 102/20 164/25
afterwards [3] 20/18 56/4 170/9
again [75] 3/15 14/5 19/25 23/21 31/20 31/22 32/20 53/25 54/18 55/12 56/2 57/24 58/25 59/5 59/18 61/23 66/24 67/11 67/12 67/13 69/10 74/22 78/10 81/7 82/25 84/24 86/1 93/3 94/7 95/2 101/1 101/3 102/12 112/11 113/19 113/21 113/24 114/16 118/8 119/22 120/9 120/18 121/19 122/12 126/8 126/25 127/2 135/5 136/6 141/3 141/25 143/12 146/22 150/7 151/4 151/5 152/3 153/11 155/4 155/24 156/9 158/12 158/18 159/15 160/23 161/8 161/19 162/11 164/2 164/3 164/13 166/1 166/12 168/4 169/6
against [14] 13/14 15/19 28/5 29/9 30/13 30/19 31/18 43/1 69/23 82/12 82/13 96/18 96/23 158/23
agent [9] 32/16 107/24 107/25 108/1 108/2 108/15 108/22 108/25 110/17
agents [2] 108/2 108/12
ago [1] 82/23
agree [34] 7/7 7/25 10/16 10/18 23/5 26/6 39/25 40/3 49/7 57/22 58/23 60/9 62/12 63/22 66/21 71/6 72/2 72/14 77/15 83/23 83/24 86/15 91/24 92/1 103/3 109/24 119/13 123/3 132/19 144/3 147/8 147/13 147/14
agreed [9] 65/12 118/10 118/10 129/2 130/20 131/21 132/11 132/12 143/24
agreeing [3] 78/8 109/8 142/23
agreement [30] 24/22 26/5 34/20 35/25 49/5 64/25 78/3 78/8 130/4 130/5 130/19 130/20 130/21 130/23 130/25 131/12 131/24 132/7 132/8 132/17 132/25 133/3 133/8 133/12 133/13 133/14 133/19 150/11 151/22 159/18
agreements [11] 129/5 129/8 129/13 129/14 129/21 132/10 132/24 132/25 136/12 136/16 136/18
agrees [2] 81/15 159/6
ahead [4] 6/12 13/22 86/2 165/12
aid [3] 117/2 118/4 154/11
aided [1] 155/3
aiding [1] 154/9
aids [5] 116/3 161/21 167/14 168/5 169/4
AKA [1] 107/6
alert [3] 86/7 166/8 170/19
alerted [1] 17/19
alias [1] 107/5
all [98] 4/6 6/21 8/8 9/3 12/10 12/10 12/18 13/7 14/3 17/19 18/5 21/24 22/1 23/11 23/20 26/3 28/11 30/22 34/12 35/25 37/13 37/17 41/1 45/12 45/14

A

all... [73] 6/4 9/11 14/10 50/17 57/1
61/17 62/25 66/8 68/16 68/16 68/19
71/4 72/4 73/9 75/7 76/3 76/23 77/24
78/4 78/5 78/6 82/21 85/20 85/20 89/9
91/14 92/10 93/21 95/8 96/10 97/3 97/4
97/8 97/12 97/15 97/25 99/11 99/12
99/13 99/18 100/13 103/3 104/4 105/9
106/21 108/6 109/23 111/23 112/18
116/20 120/23 124/17 125/3 129/12
129/12 129/13 142/13 142/18 148/13
149/16 151/14 156/25 157/17 158/10
158/11 158/18 162/17 163/11 164/21
166/6 167/12 168/3 171/4
alleged [3] 29/6 109/20 156/20
alleviates [1] 152/19
allow [3] 39/13 43/9 91/11
allowed [9] 50/18 51/15 51/19 52/5 52/6
75/5 94/15 119/22 171/1
allowing [3] 97/25 101/20 122/2
allows [6] 134/7 134/8 134/21 136/21
137/4 137/15
alluded [2] 19/10 167/13
along [7] 3/22 36/12 56/10 59/6 106/4
118/3 149/12
already [35] 6/14 10/10 10/10 13/9
15/18 15/18 18/22 19/11 19/12
19/12 29/14 33/1 35/1 51/11 54/11
56/25 58/7 58/8 59/21 60/21 61/24
65/11 68/8 71/22 72/24 73/4 77/22
84/13 92/25 93/22 125/4 155/16 162/13
170/2
also [55] 2/12 3/8 29/5 39/24 40/1 41/10
42/12 45/22 46/13 57/6 60/13 70/8
73/12 75/13 77/9 78/8 79/17 83/24 85/5
86/24 91/16 92/15 94/14 94/18 95/1
95/11 99/9 99/23 101/8 107/2 107/4
107/17 107/21 108/3 109/14 109/16
110/5 115/19 120/10 132/14 137/19
143/20 145/15 149/15 150/3 155/25
156/25 157/22 158/5 159/10 159/17
162/2 166/19 168/8 171/1
alternate [1] 108/10
alternates [4] 98/10 98/11 98/16 112/5
alternative [2] 27/14 120/16
although [24] 4/23 5/10 18/9 26/10 31/9
33/14 40/9 40/19 66/20 71/4 74/16
75/15 83/8 94/15 94/16 95/20 100/20
110/8 113/20 133/4 154/17 157/10
158/20 166/20
always [8] 31/13 61/18 82/5 135/25
158/21 160/23 165/2 168/2
am [12] 52/25 60/17 61/23 62/23 67/12
70/5 73/19 77/4 94/8 103/4 103/18
162/24
Amendment [9] 11/23 12/25 13/19 14/1
14/2 14/8 28/6 28/21 90/14
AMERICA [3] 1/3 2/4 172/8
American [1] 32/5
Americans [3] 51/20 53/24 75/24
among [2] 159/1 169/20
analogous [2] 21/21 35/6
analogy [1] 30/24
analysis [2] 38/17 99/5
and/or [2] 94/13 105/4
announces [1] 9/13
another [7] 11/13 13/23 54/25 75/1
110/1 149/16 154/11
answer [6] 19/18 23/1 71/3 97/11 100/1
171/16

answered [3] 97/18 97/20 97/22
answers [1] 97/9
anticipate [8] 76/2 78/14 108/1 115/17
129/11 166/7
anticipating [1] 101/23
any [135] 3/24 5/5 6/7 8/17 10/13 10/25
13/16 14/22 16/2 16/17 16/25 17/23
20/4 20/21 21/2 21/21 21/25 22/21
22/22 25/1 25/2 25/18 37/7 43/6 44/15
54/22 55/7 55/22 57/15 58/18 63/7 67/4
68/6 68/20 68/25 74/22 74/23 78/8
78/15 78/16 78/17 78/17 78/20 79/24
81/7 81/11 81/21 82/6 83/15 85/9 86/11
87/25 90/3 92/12 92/13 92/25 93/7
93/12 97/21 97/24 98/1 98/22 99/6
101/6 103/10 103/24 104/17 105/10
105/25 106/3 106/8 106/9 106/13
106/18 107/7 107/13 107/22 108/19
109/25 110/10 111/1 111/7 111/20
111/23 112/7 113/5 113/8 113/13
114/10 114/19 116/13 116/21 117/22
122/11 122/18 122/18 122/19 123/16
124/4 124/10 124/17 124/19 124/20
125/15 125/17 128/20 129/17 133/10
135/4 135/15 141/9 141/11 141/25
142/3 142/8 142/14 143/6 146/1 148/14
152/19 154/24 154/24 155/21 156/20
164/12 167/16 167/17 167/20 167/23
169/3 169/4 169/9 170/20 170/24
171/16
anybody [9] 97/18 105/9 106/3 106/13
107/12 127/8 139/16 139/23 141/12
anyone [9] 11/15 12/2 59/19 72/19 97/9
97/14 98/6 113/13 160/20
anything [57] 4/3 4/25 6/14 6/17 6/24
15/11 16/9 19/7 26/7 26/11 34/17 35/21
38/3 56/10 58/16 62/6 68/24 74/7 78/23
80/24 81/21 82/21 89/11 89/14 89/19
103/19 104/16 105/9 105/10 105/14
106/25 110/10 111/5 111/13 115/4
116/15 122/15 122/23 139/10 140/7
143/7 143/9 144/10 146/23 151/3
151/15 151/25 155/17 163/23 165/16
166/18 167/22 168/21 169/3 169/10
171/7 171/20
anyway [2] 15/7 134/18
anyways [2] 84/10 109/22
anywhere [2] 74/12 163/7
apologize [1] 110/13
apparent [2] 22/10 25/14
appeals [1] 151/7
appear [2] 44/8 48/25
appearance [1] 31/16
APPEARANCES [1] 1/10
appeared [2] 18/3 18/6
appears [1] 48/20
Appendix [3] 28/13 33/20 40/12
applicable [4] 76/23 113/6 127/17 140/2
applied [1] 161/24
applies [2] 140/16 147/6
apply [5] 60/13 110/19 110/23 142/10
147/4
applying [2] 3/17 123/5
appointment [1] 170/5
appreciate [2] 92/10 161/25
apprehend [2] 7/17 31/8
apprehending [1] 30/14
apprise [1] 30/10
apprised [1] 171/16
approach [7] 24/5 30/7 31/22 96/9

114/12 117/23 169/18
approached [1] 32/17
appropriate [12] 30/17 30/21 33/4 35/2
78/1 78/12 84/9 86/10 101/15 107/16
107/18 109/16 112/9 114/5 114/8 134/4
135/11 135/15 136/10 140/5 164/25
appropriately [2] 74/21 116/5
approval [1] 4/13
approve [1] 4/17
approved [2] 4/22 36/11
approving [1] 43/6
April [1] 7/2
are [268]
area [1] 143/20
aren't [3] 39/1 76/7 76/7
argue [2] 15/9 61/19
argued [1] 15/14
argues [4] 34/23 134/4 135/2 135/3
arguing [5] 37/7 39/20 82/20 128/19
138/15
argument [31] 14/20 14/24 14/24 14/25
15/16 20/23 21/20 21/22 26/15 27/3
42/25 63/8 63/23 63/24 64/19 67/17
67/18 71/15 74/17 74/19 77/6 79/4
90/24 91/20 123/2 134/5 134/8 134/11
136/23 137/5 168/3
arguments [4] 94/20 101/9 157/12
157/16
arise [1] 114/17
arises [1] 67/6
arose [1] 33/2
around [2] 102/14 150/10
arrest [1] 23/4
arrested [1] 18/7
articulate [1] 89/18
artificially [1] 69/11
as [250]
ask [52] 10/20 11/4 13/20 14/9 19/17
36/10 39/16 57/12 77/22 89/10 92/14
97/7 97/8 97/20 97/21 97/23 106/23
107/15 108/10 111/13 112/3 115/3
118/7 118/7 119/20 121/7 129/6 133/21
136/1 137/19 140/3 149/4 149/17 151/1
151/4 151/20 154/10 158/18 161/3
161/18 163/16 163/18 163/22 163/25
164/2 166/18 168/14 168/19 168/23
168/25 171/1 171/14
asked [11] 3/12 4/13 6/21 22/14 40/14
43/20 57/3 100/17 104/5 157/21 158/3
asking [19] 36/5 39/12 43/14 47/7 47/9
50/23 56/23 59/20 68/8 72/6 74/6 74/14
80/23 86/23 87/16 87/20 87/25 92/22
110/2
aspects [1] 87/9
assert [2] 14/8 74/17
asserted [2] 29/8 65/10
asserting [1] 63/5
assess [5] 36/1 37/3 38/22 41/11 75/8
assessing [2] 39/8 56/5
assessment [3] 36/19 74/25 102/8
assist [1] 18/21
assisting [1] 18/21
associate [1] 34/19
associated [3] 64/5 66/8 154/13
associates [1] 106/10
assume [10] 4/6 7/10 11/15 25/6 42/22
55/6 55/7 80/22 80/24 83/20
assumed [1] 88/24
assuming [5] 42/23 52/12 57/1 145/1
156/3

## A

assurance [1] 7/6
assure [1] 7/6
assured [1] 22/6
ATKINSON [2] 1/12 2/9
attached [1] 51/5
attachment [2] 158/15 163/7
attention [3] 38/15 125/13 132/12
attested [1] 32/1
attorney [15] 11/19 14/10 19/24 19/25
31/25 32/4 32/5 32/5 32/10 32/21 35/19
43/22 45/10 48/21 94/24
Attorney's [3] 158/20 160/16 168/13
attorney/client [2] 48/21 94/24
attorneys [4] 43/17 49/1 54/24 57/6
audio [10] 117/7 117/9 117/17 117/25
119/10 120/22 163/7 163/11 163/13
169/13
authorities [6] 16/23 18/12 18/17 18/19
25/12 26/1
authority [4] 28/1 28/14 67/15 151/24
authorize [2] 71/21 84/14
authorized [1] 153/8
authorizing [1] 57/15
automatically [1] 91/4
available [10] 16/5 33/13 34/3 34/6
34/10 34/18 56/15 61/18 119/15 170/4
Avenue [1] 1/13
avoid [13] 82/8 102/17 114/10 125/17
128/3 130/3 130/8 132/2 143/16 165/13
166/5 168/8 169/9
avoiding [2] 131/5 131/14
aware [19] 20/1 26/1 29/24 42/7 44/13
45/16 47/17 49/24 52/25 60/25 62/11
64/13 109/13 124/18 124/19 124/22
141/6 141/15 143/2
awkward [1] 137/21

## B

back [32] 6/22 9/2 23/17 26/23 47/8
63/3 93/25 98/6 98/7 101/1 110/14
117/17 118/5 119/6 119/10 119/11
119/22 120/7 124/16 127/12 133/7
133/16 145/11 149/2 150/12 151/21
152/14 157/21 158/8 158/13 159/14
169/15
background [1] 139/23
backup [5] 116/9 116/10 116/14 116/20
172/14
bad [2] 82/20 90/13
balance [3] 137/1 137/7 152/5
balancing [1] 136/10
ball [1] 94/8
Bankins [4] 1/20 172/3 172/19 172/20
bar [3] 109/3 152/11 153/15
barred [1] 111/10
BARRY [2] 1/16 2/11
base [1] 8/4
based [11] 10/15 38/1 42/16 55/12
87/17 88/9 94/9 94/21 124/18 140/6
144/2
bases [2] 7/14 30/25
basically [18] 4/13 11/16 22/16 22/16
43/20 53/16 56/21 57/17 71/13 96/8
99/10 100/15 104/7 129/1 154/18 155/9
157/3 167/10
basing [1] 44/23
basis [8] 9/16 42/18 46/21 47/15 54/23
57/4 126/11 145/2
Bates [1] 44/24

battle [2] 120/19 135/6
be [331]
bearing [1] 89/22
became [4] 6/1 25/3 25/14 26/13
because [106] 8/7 8/15 9/7 9/24 10/6
11/5 12/24 13/21 16/4 20/1 21/17 27/22
28/3 29/16 33/15 34/4 34/5 35/12 35/14
39/22 40/18 41/3 41/10 41/14 42/6
42/15 47/11 50/10 51/25 53/20 57/22
60/21 61/23 63/1 63/5 63/8 63/24 64/4
64/13 64/25 66/7 67/19 68/3 70/7 72/10
72/15 72/22 73/18 77/5 80/5 80/15
81/17 83/8 88/25 90/11 90/16 99/3
99/23 100/1 100/8 101/11 112/20
113/23 114/8 117/7 122/18 123/1
123/12 123/13 127/19 130/3 131/5
131/6 132/20 133/5 133/17 134/10
135/21 141/7 143/1 143/16 143/7
145/11 147/7 147/9 147/12 148/17
149/5 149/15 149/15 149/18 150/4
155/15 156/10 157/16 159/15 160/9
160/9 160/23 165/1 165/5 165/10
165/11 166/25 168/21 171/18
become [1] 141/10
becomes [3] 67/19 115/13 120/17
becoming [1] 8/15
been [91] 4/2 4/6 4/9 4/21 4/23 7/12
7/24 10/6 11/8 12/5 12/18 13/10 16/22
16/24 17/12 19/1 19/12 22/24 23/2 23/7
23/17 24/13 26/2 27/13 27/16 27/20
29/17 29/23 29/24 31/4 31/15 31/15
32/25 35/16 36/13 38/18 40/11 40/11
42/7 43/4 43/25 46/15 46/16 47/24 48/2
48/3 48/9 49/18 52/14 56/25 59/24 61/2
63/18 65/11 65/14 66/19 66/21 67/1
67/2 67/18 67/21 69/2 70/24 71/11
71/13 72/13 73/5 73/18 74/6 76/20
81/13 82/6 83/21 84/2 92/17 95/20 99/1
99/19 100/3 100/5 107/2 119/3 121/4
124/15 129/13 130/15 131/10 141/21
149/12 152/10 157/11
before [47] 1/8 2/2 2/18 3/16 4/24 8/11
9/25 12/6 13/4 15/22 25/18 25/25 28/19
33/2 35/13 48/13 55/25 58/17 59/7 59/9
66/15 67/11 78/20 83/19 85/20 87/19
93/13 94/4 96/5 98/2 98/21 105/14
109/12 112/19 122/15 125/11 143/10
157/12 159/20 164/14 164/19 165/17
166/10 167/24 168/3 169/11 171/14
began [1] 12/7
begin [2] 2/18 17/5
beginning [2] 137/20 151/19
behalf [4] 2/12 2/12 64/18 110/20
behavior [6] 136/21 137/4 138/5 138/16
138/19 138/24
behaviors [1] 39/9
behind [2] 96/17 96/21
being [18] 22/23 33/25 49/7 57/17 60/20
72/15 75/5 76/14 91/17 94/25 97/1
109/1 117/2 118/4 120/6 123/1 124/20
164/14
belief [5] 145/20 147/19 147/23 148/18
149/9
believe [13] 17/8 17/17 17/18 20/3
48/22 70/17 92/24 127/15 130/1 131/17
141/9 148/22 170/4
believed [3] 147/22 149/7 150/17
believes [2] 43/25 132/1
believing [1] 144/20
bell [1] 72/15

belongs [1] 132/9
bench [5] 24/6 24/10 97/19 98/1 166/6
benefit [1] 132/21
benefits [1] 131/18
best [5] 19/16 92/19 102/9 103/7 172/14
150/9 157/2 159/17
bet [1] 154/11
better [7] 102/21 123/12 135/5 144/14
150/9 157/2 159/17
between [19] 5/6 7/14 13/16 16/20
20/11 30/25 53/1 53/1 62/3 70/10 72/23
83/7 91/16 106/6 117/17 121/3 121/17
170/1 171/18
beyond [20] 39/8 51/8 59/15 71/23
73/11 74/7 77/13 79/1 80/21 80/24
90/23 92/19 94/20 95/13 132/23 152/20
152/24 153/12 153/21 158/15
big [2] 39/19 87/10
Bilzerian [1] 94/22
Binary [1] 39/19
binding [1] 118/19
bit [12] 19/19 31/1 88/7 92/2 123/8
144/13 145/8 149/16 152/11 157/2
163/18 165/18
blanketly [1] 137/23
bold [1] 168/20
Book [1] 39/19
both [40] 3/13 36/23 39/25 40/3 44/20
46/4 47/24 60/17 61/12 61/17 67/10
68/22 73/3 78/2 82/12 86/7 98/15 98/17
103/17 104/9 105/1 108/10 108/11
108/13 115/20 117/8 117/11 117/19
138/12 138/13 139/2 143/19 143/24
145/14 148/7 154/19 160/2 161/19
164/3 166/19
bothers [1] 153/2
bounds [1] 76/23
box [1] 98/25
brackets [1] 169/1
branch [1] 90/4
breach [1] 65/22
break [6] 95/15 112/22 113/1 164/24
165/1 165/4
bridge [1] 154/5
brief [10] 77/8 79/2 81/14 89/12 92/13
116/25 122/6 164/10 166/7 166/15
briefed [1] 4/2
briefing [6] 79/9 79/10 81/17 82/9 86/21
88/3
briefly [2] 16/14 38/7
briefs [4] 27/3 88/5 92/12 114/1
bright [1] 88/8
bring [1] 132/11
bringing [1] 95/3
broad [3] 79/4 91/9 95/5
broader [12] 67/23 71/7 73/16 74/19
79/14 80/20 84/2 86/19 87/7 91/1 91/21
100/12
broken [1] 158/6
brought [2] 14/17 82/15
bucket [1] 45/5
buckets [4] 68/16 69/11 72/4 73/25
build [2] 149/3 162/18
building [3] 109/6 165/22 166/2
built [3] 102/7 102/10 136/23
bulk [1] 160/8
burden [1] 152/20
business [16] 7/4 7/5 34/18 50/18 51/16
51/20 52/6 55/9 68/18 75/5 75/17 75/23
89/2 94/15 170/5
buying [1] 8/5

# C

C.E.O [2] 1/11 2/8
CAITLIN [2] 1/11 2/8
calendar [3] 80/15 84/4 103/5
call [15] 9/19 33/22 34/8 37/10 37/24
66/1 97/18 98/2 109/19 123/25 123/25
126/7 140/14 140/15 151/12
called [1] 128/25
calling [1] 77/17
came [2] 17/8 17/20
camera [1] 167/3
can [131] 3/12 3/15 3/20 6/24 6/25 12/9
13/21 17/18 19/7 22/6 24/7 24/8 27/15
37/24 37/25 39/3 39/8 42/2 49/9 58/18
59/9 60/3 70/12 70/22 70/23 70/23
73/19 74/13 75/8 75/16 75/23 77/20
78/16 78/17 79/5 79/17 80/10 80/23
81/5 84/24 85/16 85/23 86/10 86/15
87/15 87/20 88/19 89/10 89/14 89/19
90/25 91/12 92/4 93/19 94/8 95/19
95/21 97/13 97/16 97/24 99/4 100/21
104/23 105/1 105/12 106/24 109/3
110/23 111/14 112/10 113/18 114/16
115/13 116/4 118/7 118/7 119/17
122/15 123/4 125/16 126/9 127/25
129/22 130/8 133/2 133/6 133/14
133/16 133/23 138/20 139/22 139/23
140/7 141/20 141/25 143/7 143/18
144/5 145/5 145/13 145/17 146/3
146/15 147/13 147/13 149/1 151/21
158/4 159/19 160/8 161/4 161/25 162/5
162/14 162/15 162/15 163/2 163/16
164/18 165/3 165/18 166/6 166/19
166/22 167/1 167/2 168/12 169/2
169/24 170/4 170/18
can look [1] 70/23
can't [18] 15/4 15/23 16/4 21/7 31/10
57/21 58/5 59/3 63/19 69/8 69/24 81/22
83/7 83/25 93/11 118/17 125/16 170/9
candidly [2] 5/17 152/4
candor [1] 26/2
cannot [3] 24/22 32/11 64/17
capabilities [1] 169/16
capacity [1] 105/5 172/6
card [1] 97/16
care [2] 89/16 103/6
carefully [2] 90/6 90/20
Carmen [1] 35/7
case [100] 2/3 4/12 6/2 8/21 8/25 9/11
10/7 10/12 11/8 11/21 11/22 12/17
12/23 12/25 13/5 13/17 13/17 14/19
15/1 16/6 16/6 16/8 16/18 19/11 19/13
21/23 25/4 27/19 27/20 30/3 31/13 35/6
36/8 36/12 37/6 38/12 38/13 40/13
40/20 41/5 43/16 50/9 50/23 51/23
51/24 52/13 55/21 57/19 71/8 75/19
75/25 76/3 78/6 78/13 91/14 91/16
91/22 95/10 95/20 100/22 101/4 101/5
101/24 102/15 104/21 105/11 106/5
107/24 108/2 108/11 108/22 110/8
110/10 111/11 112/5 112/12 114/11
115/16 119/15 122/6 122/16 123/6
128/22 131/11 138/15 144/2 144/12
144/15 145/12 145/16 145/23 146/22
151/13 158/19 159/13 159/17 159/23
162/3 165/16 172/8
cases [16] 11/7 12/14 21/21 32/24 35/6
37/23 38/10 66/2 78/12 104/4 106/21
122/14 128/20 162/3 162/6 171/13
catch [1] 30/24 111/23

catch-all [1] 111/23
categories [12] 57/3 60/2 70/15 73/4
72/25 87/5 87/6 87/18 87/22 92/22 117/11
129/9
categorize [1] 116/5
category [14] 67/5 93/5 93/6 93/7 93/10
103/13 103/14 104/21 111/17 111/22
129/10 139/14 139/17 142/4
caught [1] 7/13
cause [1] 98/1
caused [2] 41/2 153/6
caveat [1] 60/7
CD [2] 163/10 163/10
CDs [1] 163/13
center [1] 124/1
centers [2] 123/25 126/7
certain [17] 37/11 39/17 41/8 43/2 45/25
48/7 75/5 75/6 75/22 78/2 78/21 87/8
142/24 151/16 159/19 167/14 169/1
certainly [27] 10/21 14/23 19/1 26/1
32/22 48/20 50/24 56/16 66/23 71/10
78/16 79/10 92/1 95/5 102/23 104/15
105/8 105/12 116/14 127/7 149/1
156/16 159/13 160/6 161/20 164/14
167/21
certainty [1] 78/4
CERTIFICATE [1] 172/1
certified [8] 118/11 118/14 118/15
118/18 118/24 119/2 120/23 121/5
certify [2] 172/5 172/11
cetera [1] 162/6
challenges [2] 98/1 98/5
chambers [3] 5/19 5/23 6/2
chance [3] 40/15 72/17 98/20
change [1] 107/22
changed [2] 9/25 21/11
changes [3] 104/2 122/18 150/25
changing [1] 128/4
channels [1] 18/10
character [5] 110/20 110/23 111/4
111/14 164/7
characterize [1] 168/15
charge [1] 3/16
charged [20] 11/14 12/5 12/5 12/6 12/10
18/2 19/1 19/8 19/22 20/4 29/23 29/24
31/4 32/11 100/4 100/5 130/15 147/21
153/20 153/22
charges [7] 13/14 14/18 30/19 113/7
142/12 146/21 157/3
charging [1] 19/15
charts [1] 115/14
check [1] 158/25
checking [1] 80/9
cherrypick [1] 45/17
cherrypicking [5] 54/14 58/4 69/4
Cherrywood [1] 1/21
chief [3] 50/9 78/6 101/24
choice [2] 111/14 136/16
choose [5] 35/3 168/24 168/24
chooses [3] 14/8 45/13 135/8
choosing [3] 45/17 76/4 76/19
chose [1] 13/3
chronologically [1] 130/9
chronology [1] 46/19
CHUANG [1] 1/8
circuit [28] 27/25 28/3 28/13 28/16
28/23 29/3 30/2 31/21 35/8 36/7 36/11
37/7 37/16 38/13 39/10 40/2 40/13
40/24 41/6 42/1 42/12 42/25 66/3 94/22
95/2 95/10 95/12 122/7

circuits [1] 154/17
circumstances [3] 21/25 28/15 37/4
cite [2] 96/8 98/17
cited [3] 35/6 122/14 144/13
city [1] 105/3
claim [2] 51/17 90/24
claims [1] 27/8
clarification [9] 43/12 45/7 45/11 46/4
48/17 64/23 72/3 101/5 104/8
clarify [9] 4/4 44/11 44/11 46/20 99/7
100/1 101/7 104/22 107/24
clarity [1] 157/18
claw [1] 93/25
clean [3] 114/13 159/9 161/19
cleaner [1] 161/16
cleanly [1] 138/6
clear [17] 9/12 19/2 31/18 58/20 59/21
63/13 65/19 66/6 75/12 86/22 91/6
91/16 94/17 100/4 103/23 115/25 161/8
clearing [1] 169/7
clearly [1] 19/6
clerk [6] 97/10 98/14 98/19 163/18
163/18 169/23
clerk's [3] 5/16 5/22 5/24
client [3] 48/21 94/24 164/22
clients [2] 39/15 164/21
clips [3] 121/14 121/19 121/20
close [1] 157/13
closely [1] 152/4
closing [4] 101/9 157/12 157/15 168/3
closings [2] 102/19 168/10
closure [1] 46/9
co [13] 12/13 12/21 14/7 18/25 19/4
29/5 47/2 109/13 109/20 128/10 130/16
130/18 132/18
co-conspirator [2] 130/18 132/18
co-conspirators [9] 12/13 14/7 18/25
19/4 47/2 109/13 109/20 128/10 130/16
co-defendant [2] 12/21 29/5
coercive [1] 32/12
Cohen [1] 70/11
coincidence [1] 21/17
cold [1] 20/24
colleagues [4] 22/11 158/20 160/15
168/12
Colton [2] 38/12 38/16
combine [2] 100/2 115/12
combined [2] 99/23 158/5
come [28] 14/13 22/2 23/13 23/14 31/12
34/12 35/3 52/12 61/8 82/10 85/25
96/11 103/8 103/9 119/20 119/21
127/12 129/4 133/16 139/18 148/9
149/2 150/10 156/1 159/14 164/2
165/18 165/25
comes [8] 14/19 60/23 113/24 140/25
145/21 145/22 148/10 158/22
comfortable [6] 60/5 60/17 60/20 61/21
73/1 73/14 80/4 112/4 146/16
coming [3] 24/15 150/12 164/1
comment [1] 170/8
commit [4] 62/5 85/2 147/7 154/12
committing [1] 141/21
common [5] 48/23 65/25 105/7 124/2
124/3
communicate [1] 92/18
communicated [2] 93/18 93/19
communicating [1] 93/8
communication [9] 20/22 21/2 21/16
50/4 52/25 62/10 63/4 72/11 95/6
communications [18] 20/5 20/8 35/19

## C

communication [10] 5/5 29/6
48/21 50/2 50/3 54/23 55/23 57/5 57/7
58/11 70/10 92/23 95/9 151/17
companies [1] 40/15
company [5] 47/1 52/20 56/4 76/16
91/18
compel [12] 3/7 4/2 12/3 23/14 27/5
28/4 31/11 33/17 35/20 43/18 68/9
87/24
compelling [3] 14/3 21/22 27/7
competent [1] 118/14
complete [4] 50/22 78/10 146/21 146/24
completed [1] 86/5
completely [3] 9/23 10/4 168/4
completeness [2] 58/5 73/13
complexity [1] 64/14
compliance [16] 53/22 68/18 68/24 69/1
69/15 74/11 74/20 74/23 76/16 76/20
76/21 79/14 88/1 88/24 88/25 94/12
complicated [3] 150/5 150/24 151/3
complied [2] 60/10 84/13
comply [1] 78/2
compound [2] 99/25 106/7
concede [1] 156/17
concept [9] 74/11 90/15 104/5 146/3
147/15 147/15 147/18 148/21 165/15
concepts [2] 146/18 150/15
concern [9] 6/8 21/14 80/3 88/13 111/1
145/7 148/1 161/20 170/24
concerned [6] 51/18 61/24 75/10 147/15
164/22 166/3
concerns [8] 60/15 101/6 125/1 142/3
142/14 157/6 164/11 164/16
concluded [1] 171/21
concrete [3] 24/17 25/14 25/18
conduct [5] 9/5 9/6 11/17 146/9 147/24
confer [2] 24/1 28/1
conference [7] 1/8 2/5 3/1 3/16 24/6
24/10 172/7
conferences [1] 166/6
conferred [1] 24/3
confidential [1] 65/23
confirm [1] 17/18
confirmed [1] 46/1
conflicting [4] 45/15 69/22 70/6 75/4
confused [1] 156/11
confusing [7] 139/3 143/17 144/18
160/9 160/12 161/22 162/11
confusion [2] 114/10 169/9
connection [1] 40/22
consent [1] 49/5
consider [3] 65/15 97/25 133/7
consideration [2] 30/22 91/11
considerations [1] 39/21
considered [7] 32/11 61/20 65/16 91/7
96/13 96/16 97/1
considers [1] 41/15
consistent [2] 130/9 157/9
conspiracy [8] 19/3 143/20 147/6 147/7
149/19 150/3 155/21 155/23
conspirator [2] 130/18 132/6
conspirators [10] 12/13 14/7 18/25 19/4
47/2 109/13 109/20 128/10 130/16
156/20
constitute [3] 30/16 32/3 172/12
constituted [1] 42/16
consult [1] 158/19
consultation [4] 16/22 16/23 30/15
30/19

consulted [2] 30/2 52/16
consulting [1] 27/19
contact [5] 18/4 20/11 21/23 69/7 69/8
contacted [1] 6/2
contacting [1] 69/24
contain [2] 117/11 117/19
content [1] 86/9
context [7] 25/3 32/2 36/24 71/9 81/3
139/24 150/12
continuance [1] 59/20
continue [1] 18/21
continued [2] 44/6 125/6
continuing [2] 68/5 124/15
contract [2] 162/13 162/16
control [3] 27/23 34/21 35/5
controversial [2] 127/14
conversation [2] 5/12 55/2
conversations [1] 5/16
convicted [1] 141/21
conviction [1] 141/13
convictions [1] 141/10
convinced [2] 15/16 157/11
cooperate [1] 131/21
cooperation [2] 130/19 132/11
coordination [1] 169/20
copied [1] 50/6
copies [3] 162/24 163/2 163/10
copy [3] 163/3 163/6 167/6
correct [15] 2/15 4/25 5/3 8/13 8/13
17/10 20/20 53/8 53/11 54/21 55/24
62/8 65/13 80/7 117/5
correctly [1] 118/22
correspond [1] 125/7
cosmetic [1] 113/20
COTTINGHAM [12] 1/11 2/8 25/17 68/7
81/19 89/23 102/8 111/2 121/8 124/8
136/6 148/15
could [47] 9/19 11/8 11/16 16/13 19/1
19/17 25/1 26/9 26/13 31/8 31/10 32/22
42/14 45/15 53/15 59/23 61/19 66/20
67/24 74/25 75/2 75/22 81/14 81/14
81/15 82/22 85/6 85/6 85/14 86/7 87/18
90/23 91/9 100/17 106/10 108/10
108/11 120/14 131/25 136/18 139/8
141/13 146/6 151/11 162/4 163/10
164/1
couldn't [3] 22/1 119/24 120/17
counsel [38] 2/5 3/2 4/12 5/7 5/10 6/19
13/10 15/15 20/5 20/9 20/16 20/16 21/3
21/10 24/3 32/18 44/14 45/9 45/10 50/2
50/5 50/5 50/5 50/22 50/24 52/15 52/16
53/1 55/8 55/13 55/16 58/12 58/13
69/18 77/16 98/13 160/24 167/7
counsel's [1] 2/9
count [3] 147/10 153/19 153/24
counter [1] 122/15
countries [2] 75/17 126/18
country [4] 11/13 31/3 68/20 105/4
counts [1] 156/25
couple [3] 6/20 89/8 146/18
course [31] 19/16 23/14 31/20 36/16
36/25 44/13 45/21 61/8 63/12 65/5 69/7
69/17 76/11 78/24 79/5 79/13 82/4 99/2
99/3 100/7 101/12 111/4 111/6 116/19
118/22 121/14 121/23 132/16 142/11
162/14 170/1
court [91] 1/1 1/20 1/21 2/3 9/11 9/12
9/24 10/2 10/10 10/12 10/24 13/25 18/3
22/6 23/22 24/4 24/23 25/24 27/1 27/6
27/19 27/25 28/3 28/8 28/13 28/23 29/3

29/10 30/2 30/6 30/12 30/15 30/15
30/20 31/21 32/2 32/15 32/24 33/6 33/8
38/1 39/15 40/7 40/24 41/7 42/1 42/4
42/12 42/25 44/13 49/24 56/17 57/18
59/9 61/1 61/2 61/3 61/23 67/11 67/22
72/18 75/8 79/1 79/18 79/25 81/14
81/15 85/20 86/8 86/10 92/19 93/20
95/25 103/20 104/17 105/20 114/1
114/18 119/16 132/12 133/25 134/17
135/12 146/16 151/7 165/2 170/19
172/3 172/4 172/9 172/20
Court's [7] 13/6 24/13 25/9 36/3 109/13
125/12 152/3
court-ordered [1] 23/22
courtesy [1] 164/2
courthouse [1] 109/5
courtroom [7] 96/12 106/22 108/6 109/2
120/20 163/5 170/16
courts [2] 36/23 40/8
cover [2] 83/14 158/23
covered [6] 70/13 75/7 131/13 132/15
132/15 155/16
crack [1] 133/21
crazy [2] 156/15 156/17
create [2] 66/25 163/13
creeps [1] 136/2
crime [8] 100/3 100/4 100/4 100/6
147/25 149/10 154/12 154/14
crimes [1] 154/19
criminal [23] 1/3 2/3 29/1 30/3 33/1
49/14 100/22 110/9 136/19 136/20
137/2 137/3 137/22 138/4 138/5 138/10
138/16 138/19 138/23 138/24 139/6
141/4 172/9
cross [7] 14/14 14/21 29/21 102/8
102/10 126/5 126/9
cross-examination [5] 29/21 102/8
102/10 126/5 126/9
cross-examined [1] 14/14
cross-examining [1] 14/21
cull [1] 170/18
cumulative [1] 34/1
current [1] 114/12
currently [3] 34/13 65/9 74/4
custodial [1] 115/8
customers [5] 50/18 52/1 69/7 69/8
69/25 88/18 88/19
Cuti [3] 37/6 41/5 42/4
CV [2] 126/15 126/20

## D

D.C [4] 1/13 1/18 95/10 95/25
D.O.J [1] 44/24
danger [1] 120/4
date [5] 48/8 78/2 78/21 84/23 153/10
Daubert [1] 127/4
day [29] 20/18 21/9 28/19 60/1 60/19
73/2 78/2 84/12 85/17 85/20 85/25
100/15 100/16 102/18 102/25 103/3
103/8 103/8 105/13 130/22 164/1 164/2
165/9 165/10 165/19 166/10 166/10
172/10 172/6
days [6] 100/16 100/19 101/18 101/23
102/1 102/5
deadline [11] 43/14 59/21 59/23 60/18
60/19 60/20 61/14 61/22 73/2 86/10
86/14
deal [9] 18/17 76/11 77/23 83/3 92/19
115/14 116/24 132/21 133/11
dealer [1] 107/5

dealing [10] 28/18 51/21 81/7
86/24 115/16 115/25 120/9 122/13
129/7 133/8 148/25 157/19 167/8
dealings [3] 53/17 106/3 107/13
deals [3] 62/6 147/10 156/25
dealt [2] 41/6 42/13
debate [3] 105/25 106/18 127/1
decide [9] 22/1 49/19 61/8 81/14 83/8
90/20 92/14 141/24 161/6
decided [8] 12/23 19/16 20/10 20/15
20/19 21/11 77/10 159/5
decides [1] 13/18
decision [10] 12/16 36/14 38/1 39/19
40/5 40/17 61/3 81/3 152/12 170/14
decisions [2] 27/10 80/13
decisive [1] 28/9
declaration [1] 32/2
declarations [1] 156/20
declined [1] 30/7
deemed [1] 41/10
defendant [48] 1/6 1/15 12/21 12/23
13/18 13/25 14/22 20/19 28/6 28/9
28/17 28/19 29/5 29/7 32/11 32/12
35/10 39/15 40/14 40/21 41/2 44/11
44/23 54/24 57/5 57/8 76/15 78/5 91/8
94/23 106/9 106/23 107/2 114/4 114/8
114/10 134/9 139/21 142/2 142/5
147/22 148/19 149/7 153/6 153/7
153/24 154/12 170/21
defendant's [4] 40/19 42/22
defendants [19] 8/7 8/8 8/22 13/8 13/15
13/18 17/7 18/2 18/4 20/17 26/3 29/19
29/25 30/14 31/6 31/12 31/16 31/25
34/24
defendants' [1] 20/9
defense [81] 9/4 9/10 9/17 9/18 9/19
9/20 9/21 9/23 10/3 10/5 10/6 10/7
10/12 23/18 27/5 27/8 27/10 28/19
33/14 34/19 36/7 37/7 37/10 39/20
40/10 43/16 43/21 44/7 44/14 44/19
45/3 45/7 45/9 45/9 45/11 45/13 47/7
47/17 47/20 48/23 49/4 50/22 51/23
64/17 64/25 65/17 65/25 69/12 69/18
70/7 72/17 76/19 76/22 91/21 94/23
94/25 95/2 96/17 97/24 101/5 102/4
115/7 129/3 143/8 143/14 143/23 144/1
144/3 144/4 145/2 146/4 146/21 146/24
148/5 148/6 148/19 149/11 150/18
152/17 160/18 163/23
defense's [1] 78/3
deferred [1] 130/23
define [6] 68/16 70/9 79/3 79/10 83/11
126/2
defined [11] 57/2 70/15 74/8 75/7 78/18
79/14 80/23 83/5 84/16 86/23 90/21
defines [2] 92/3 151/19
defining [3] 53/9 145/9 150/12
definitely [1] 103/5 156/12
definition [5] 60/24 124/23 145/19 152/2
157/25
definitions [1] 143/19
defraud [4] 38/18 38/20 51/1 51/2
degree [2] 30/23 150/1
Del [1] 35/7
deliberate [2] 101/10 169/15
deliberation [1] 157/7
deliberations [3] 101/13 102/15 157/15
delivered [2] 5/22 81/11
demonstrate [1] 51/2
demonstrates [1] 25/1
demonstrative [6] 115/19 116/3 116/8
167/21 167/24 168/5
demonstratives [1] 167/18
denied [1] 33/18
deny [1] 35/16
denying [1] 29/4
department [4] 1/11 18/14 18/16 22/13
dependent [1] 127/19
depending [5] 25/9 86/10 86/11 148/12
166/16
depends [6] 55/21 85/11 88/9 88/10
92/7 127/23
depends on [1] 55/21
deported [1] 35/9
depose [2] 27/12 29/12
deposition [8] 4/16 10/17 14/19 15/11
15/22 22/3 23/10 35/14
depositions [15] 4/10 5/4 5/5 5/8 6/10
7/3 7/10 23/19 24/15 24/25 25/25 27/11
33/7 33/10 34/11
deprive [1] 9/21
deprived [4] 9/23 10/4 10/5 12/20
deputy [1] 163/5
derivative [2] 15/10 15/23
described [2] 80/5 133/18
describes [1] 136/17
describing [1] 72/25
description [1] 166/15
designated [2] 93/24 121/3
designates [1] 128/9
designation [1] 114/3
designed [1] 41/11
Desor [2] 108/2 108/25
despite [3] 9/22 10/3 41/13
detail [3] 56/18 113/8 151/22
detailed [4] 10/22 11/1 126/15 126/20
detain [1] 8/7
detaining [1] 8/22
detection [1] 128/3
determine [1] 155/3
determining [1] 81/5
developed [2] 15/18 19/13
development [1] 39/7
device [1] 169/22
devised [1] 38/18
dicey [1] 169/19
did [35] 4/3 9/15 13/5 17/6 17/15 20/6
23/5 29/4 29/10 30/16 33/10 35/10
38/11 40/21 51/24 64/14 67/15 82/18
87/6 88/17 89/6 103/20 104/4 104/9
105/20 105/22 128/25 143/21 151/4
152/13 156/9 157/24 158/9 158/14
159/4
didn't [33] 7/14 8/5 15/11 17/5 20/4
21/19 21/19 25/3 26/11 26/13 54/3
55/17 56/6 70/9 77/6 77/6 80/18 83/2
84/6 93/4 103/8 104/3 127/7 129/9
130/4 136/1 139/22 144/7 146/22
146/23 153/3 158/11 158/23
difference [7] 11/25 12/1 38/19 63/8
83/23 91/16 129/20
different [50] 10/25 11/4 11/5 11/7 11/10
11/15 13/11 14/5 22/3 22/21 24/17
25/13 30/25 39/1 41/7 50/2 59/1 62/18
64/1 66/17 77/1 86/13 88/15 89/4 89/6
90/3 90/16 92/9 102/16 127/25 128/3
128/6 129/4 129/9 131/1 133/2 133/24
138/2 140/9 146/2 148/12 149/22
154/14 154/16 155/13 155/16 160/22

demonstrates [1] 25/1
demonstrative [6] 115/19 116/3 116/8

161/1 162/7 166/17
differently [4] 19/23 42/7 105/23 148/13
diplomatic [1] 78/10
dire [8] 3/10 3/23 95/16 96/5 103/11
103/18 104/14 110/1
direct [4] 18/17 41/11 97/10 99/1
direction [2] 17/14 152/12
directly [5] 21/12 32/17 52/15 74/3
168/19
disadvantage [2] 45/21 84/25
disagree [1] 68/13
disagreeing [1] 26/9
disclose [1] 63/5
disclosed [4] 46/17 54/18 88/1 165/18
disclosing [1] 76/4
disclosure [16] 43/15 44/14 45/12 45/14
46/4 46/24 71/21 84/1 94/9 123/24
125/6 125/19 125/20 125/24 126/4
126/24
disclosures [3] 4/14 60/14 124/14
discover [1] 62/9
discovered [2] 43/2 64/15
discovery [3] 45/4 49/14 116/7
discreet [2] 75/12 92/6
discrepancy [2] 72/23 120/13
discuss [9] 71/24 83/23 103/21 104/15
104/18 144/22 164/17 165/16 165/20
discussed [4] 6/18 32/25 59/7 164/8
discusses [1] 38/12
discussing [3] 17/14 70/11 162/15
discussion [7] 32/6 32/20 40/15 52/4
54/2 61/17 62/18
discussions [12] 5/6 18/10 18/12 24/16
25/12 26/2 47/3 47/5 55/4 65/15 68/25
139/19
dispense [1] 123/8
dispositive [1] 41/17
dispute [2] 51/20 122/17
disputed [1] 151/18
disputes [2] 125/17 167/24
disputing [1] 51/15
disservice [1] 106/5
distinct [1] 49/12
distinction [11] 11/11 13/24 62/3 69/11
70/5 71/7 72/11 72/22 83/24 109/7
109/24
distinctions [2] 12/9 13/16
district [12] 1/1 1/1 1/9 1/21 27/13 27/25
28/3 38/11 157/10 166/17 172/4 172/4
DIVISION [1] 1/2
do [159] 3/25 4/25 6/24 11/10 13/6
17/22 22/2 23/5 26/6 26/11 32/1 36/5
37/8 37/18 39/24 40/7 41/20 44/16 48/3
49/3 49/8 50/18 51/6 51/7 51/16 51/20
51/21 52/6 56/13 56/14 56/19 56/24
58/10 58/25 59/4 66/3 66/15 68/5 74/16
75/5 75/17 75/23 77/15 78/16 79/8 79/8
79/10 79/22 81/1 83/3 84/3 84/22 84/23
85/1 86/4 86/16 87/23 89/22 89/24
90/18 91/7 91/23 94/15 95/17 95/18
95/24 96/19 96/25 97/2 97/25 98/5
98/12 98/12 99/13 100/9 101/19 102/3
102/25 103/17 104/3 104/9 106/5 106/8
107/19 108/17 113/11 115/4 115/15
116/20 117/11 117/22 118/12 118/12
120/8 120/10 120/17 121/22 122/4
122/15 123/15 123/16 124/3 124/25
126/8 126/9 127/19 132/23 133/2
133/16 133/20 134/17 135/3 135/19
136/22 137/13 137/15 140/6 141/2

D

do... [42] 146/18 147/2 147/6
147/9 147/14 148/16 149/18 150/3
153/23 155/5 157/8 157/13 157/14
158/16 159/6 159/16 159/18 160/6
160/8 160/9 160/21 161/12 161/18
161/19 162/5 163/6 163/23 164/3
164/18 164/23 165/3 165/22 165/23
166/24 167/2 167/17 168/6 168/25
169/5 171/2 172/5
docket [1] 6/4
docketed [3] 5/11 5/13 5/24
document [28] 53/12 58/6 60/14 62/9
62/14 63/16 63/25 64/15 64/16 65/9
65/23 67/19 83/17 87/3 90/15 90/17
91/17 119/1 119/2 119/3 119/5 119/9
161/11 162/13 162/14 167/2 167/3
167/4
documentary [1] 54/13
documents [108] 43/15 43/22 43/24
44/7 44/17 44/22 45/1 45/3 45/20 45/25
46/3 46/5 46/7 46/7 46/14 46/17 47/8
47/9 47/14 47/15 47/18 47/21 48/7
48/24 51/5 51/7 54/15 54/22 56/3 56/13
56/14 56/17 56/18 56/22 57/4 57/16
57/21 59/1 59/2 59/17 62/1 62/4 64/3
64/23 66/8 66/12 66/18 67/5 67/14
67/16 67/23 70/20 71/4 71/19 71/21
72/4 72/9 72/16 72/25 73/7 73/11 73/12
73/13 73/25 76/6 77/2 77/12 77/18
77/21 78/5 78/7 78/8 78/15 78/15 78/17
78/24 80/9 80/18 81/25 82/2 82/15 83/9
83/10 83/11 83/14 84/17 85/10 85/12
86/6 86/13 87/1 87/5 88/16 88/22 89/14
89/15 89/16 89/17 93/9 93/12 93/21
93/22 93/25 116/7 118/13 124/19
126/12 162/7
does [34] 9/5 11/25 15/3 25/7 28/23
32/3 34/20 41/24 42/18 42/22 91/4
102/1 107/7 107/12 113/15 119/11
123/17 129/10 132/7 141/17 145/8
149/10 149/20 151/6 151/12 152/23
153/10 154/11 155/9 157/17 159/3
167/15 169/14 170/23
doesn't [25] 9/9 15/1 44/14 63/17 71/10
76/25 81/16 91/15 98/18 106/25 109/18
114/13 118/5 128/10 128/12 132/6
132/21 134/4 134/12 135/7 136/15
140/24 145/4 151/9 151/10
doing [12] 56/23 57/19 58/14 59/6 67/17
88/24 105/10 112/21 112/23 113/4
133/4 157/11
don't [174]
done [37] 18/13 18/15 25/6 25/7 26/8
31/10 37/2 37/4 49/10 54/14 56/19
56/25 59/22 59/24 60/21 66/4 67/15
68/4 71/23 77/21 78/12 78/21 85/6
85/15 85/16 90/8 102/14 104/17 118/13
146/15 146/17 158/10 160/15 168/4
170/2 170/10 171/19
double [2] 139/2 161/5
doubt [6] 81/24 152/16 152/21 152/24
153/12 153/22
down [2] 96/14 97/16
dozen [1] 45/18
Dr. [1] 32/2
Dr. Gabbay's [1] 32/2
draft [2] 51/11 114/12
drafted [3] 99/19 113/14 154/3
draw [2] 38/15 62/3

driven [1] 8/9
drug [2] 29/7 107/5
drugs [2] 140/10 146/12
dug [1] 154/10
Dukes [2] 36/12 40/12
during [6] 32/17 140/12 165/4 166/10
170/5 170/7
DYCK [2] 1/12 2/9

E

each [11] 96/19 96/24 97/8 99/15
118/10 152/24 153/19 163/13 163/25
164/3 165/19
earlier [12] 30/23 51/10 60/4 61/2 78/12
100/17 102/21 123/12 127/6 157/1
167/9 167/13
early [1] 77/23 166/1
ease [1] 96/22
easier [1] 7/17
easy [2] 95/20 95/21
eat [1] 166/1
ECF [2] 5/19 27/4
edit [1] 153/3
edited [1] 99/20
editing [1] 123/13
edits [2] 113/20 152/3
effect [2] 9/7 40/25
effectively [6] 3/15 34/25 43/14 46/14
95/3 131/2
efficiency [3] 78/13 164/4 167/2
efficient [2] 66/25 81/17
effort [7] 8/7 8/17 8/22 13/1 13/2 16/7
22/7
efforts [4] 17/1 17/25 56/9 56/12
either [36] 6/18 11/14 11/21 14/25 34/2
50/4 52/2 52/15 55/25 62/4 67/2 67/3
68/9 70/22 72/17 73/7 78/18 87/8 92/18
105/3 107/13 116/9 120/15 123/8
128/21 133/14 136/22 138/12 140/15
142/3 144/8 160/14 161/5 167/15 168/5
169/6
ELBAZ [82] 1/5 2/4 2/12 2/13 8/24 8/25
17/7 18/3 18/25 19/11 24/7 25/4 27/6
27/17 29/12 33/8 34/11 34/18 34/23
35/7 35/12 35/13 46/7 46/24 47/1 48/5
50/4 50/5 50/5 50/6 50/20 51/24 52/22
53/1 53/1 53/3 53/5 53/6 54/25 55/12
55/15 55/23 56/1 58/12 62/10 63/9
63/17 64/17 66/9 66/18 67/25 69/13
69/21 70/4 70/9 71/5 72/5 72/11 73/8
74/4 74/9 75/22 78/25 80/18 81/12
88/21 92/24 93/4 106/1 106/9 106/11
107/1 107/2 107/11 107/13 110/21
110/21 114/5 147/19 150/16 155/3
172/8
Elbaz's [8] 16/4 16/8 49/1 52/13 64/20
109/13 111/4 138/16
electronic [4] 163/1 169/21 170/19
171/1
element [8] 36/3 40/1 51/17 144/1
152/10 152/20 153/5 153/20
elements [3] 139/3 142/19 143/5
elevate [1] 120/2
Eleventh [1] 42/12
eligible [1] 98/15
ellipsis [1] 168/20
else [22] 4/3 6/14 11/16 16/9 35/21 50/6
53/2 61/9 67/8 78/23 98/6 105/14
123/20 139/7 139/10 139/16 151/15
151/25 155/17 166/11 169/10 171/7

else's [1] 95/17
elucidate [1] 33/24
email [14] 96/8 96/11 96/12 151/12
emailed [2] 5/19 46/23
emails [2] 47/18 83/14
embedded [1] 100/8
emphasize [1] 169/3
employee [1] 55/1
employees [3] 54/24 57/6 57/8
employer [1] 52/16
encompassed [1] 148/21
end [25] 3/25 15/13 85/17 86/16 98/7
113/13 115/10 123/1 127/2 127/20
128/1 128/17 128/22 140/4 141/24
142/1 146/6 147/18 153/18 153/19
157/4 157/6 159/12 159/13 165/19
endorsing [1] 137/14
ends [1] 123/5
engage [3] 28/24 29/4 29/11
engaged [2] 42/9 47/3
Englert [1] 1/15
English [16] 117/3 117/4 117/8 117/12
117/15 117/18 117/19 117/19 118/3
118/15 119/2 119/5 119/8 119/9 119/15
120/8
English-to-English [1] 117/19
enough [14] 10/17 11/25 48/3 91/9 98/4
98/7 98/9 100/24 102/6 128/15 133/15
145/18 152/9 156/13
ensued [1] 24/4
enter [1] 130/4
entered [1] 130/4
entertain [1] 98/22
entire [1] 87/8
entirely [2] 5/17 132/13
entities [2] 75/6 88/3
entitled [11] 47/6 49/13 49/15 49/16
49/20 63/2 63/25 67/20 70/6 81/11
83/16
entity [2] 50/16 50/17
envisioning [1] 118/23
episode [3] 12/7 14/12 17/7
equipment [5] 169/19 170/3 170/10
170/12 170/19
equivalent [1] 35/4
erred [1] 50/13
ESQUIRE [5] 1/11 1/12 1/12 1/16 1/16
essentially [5] 6/4 32/8 45/8 76/19
130/19
establish [4] 36/16 39/14 153/20 153/21
established [2] 37/15 153/5
establishes [1] 153/12
establishing [2] 37/1 152/20
estimating [1] 101/18
et [1] 162/6
ethical [1] 65/22
ETTINGER [2] 1/16 2/13
Ettinger's [1] 38/5
eve [1] 82/9
even [60] 5/19 9/9 12/6 12/18 13/6
14/14 15/14 15/15 16/3 29/7 30/1 31/1
36/2 40/7 41/17 49/18 61/5 62/2 62/4
62/13 63/17 74/14 75/23 77/17 77/23
78/24 83/1 86/23 87/19 91/17 102/14
102/21 104/25 106/24 110/24 112/16
119/23 120/4 134/16 136/1 136/3
138/14 146/6 146/9 147/23 147/23
149/8 149/9 150/17 151/8 151/17
159/20 159/22 160/3 161/18 162/10
162/17 168/1 171/13 171/15

**E**

event [2] 63/3 85/18
events [3] 4/8 132/9 140/21
ever [14] 15/23 36/13 45/4 53/3 53/4
53/5 65/16 81/12 83/18 90/8 90/12
95/20 134/4 134/13
every [18] 22/7 36/7 52/25 81/11 83/17
87/3 90/8 90/12 90/14 97/22 103/21
121/6 128/4 130/22 143/17 159/24
167/9 167/10
everybody [9] 26/22 100/5 128/11
133/11 156/4 160/25 161/15 165/15
167/6
everyday [1] 42/9
everyone [6] 3/16 66/1 95/17 129/10
149/25 154/21
everyone's [1] 66/4
everything [19] 8/16 14/18 54/11 54/12
60/1 60/18 63/2 88/24 89/5 90/25 91/5
91/10 91/15 97/7 125/9 158/24 160/6
162/4 170/6
everywhere [1] 157/11
evidence [43] 10/2 15/19 15/22 19/5
28/10 36/25 37/15 37/20 65/6 86/1
101/8 115/2 116/4 117/5 117/7 117/22
118/1 118/5 119/4 119/4 119/9 120/2
120/6 120/7 120/7 120/23 120/25
121/24 122/10 128/6 128/17 141/1
153/5 153/11 156/1 157/14 159/4 159/7
160/11 161/8 161/9 163/15 164/14
evidentiary [2] 122/13 164/11
evoked [1] 67/23
ex [6] 5/12 10/11 25/8 56/20 66/14
92/18
exact [7] 20/2 58/7 87/12 143/17 144/14
153/10 171/3
exactly [25] 15/8 18/5 20/2 36/11 37/23
40/11 46/19 46/20 53/20 64/7 65/7 69/5
71/11 72/9 86/22 87/15 88/14 91/22
106/17 121/25 126/20 129/16 133/4
139/1 157/18
examination [6] 29/21 41/11 102/8
102/10 126/5 126/9
examined [1] 14/14
examining [1] 14/21
example [18] 24/19 42/4 47/15 51/9
54/25 63/11 64/6 69/22 69/23 70/10
100/2 124/16 126/1 126/19 131/18
144/17 146/20 148/2
examples [1] 125/25
Excel [1] 95/1
excellent [1] 171/5
Except [1] 124/12
exception [1] 164/5
excises [1] 149/21
exclude [1] 42/18
excluded [1] 61/15
exculpatory [2] 28/11 33/13
excuse [1] 7/23
excused [1] 61/16
exercise [1] 13/19
exercised [1] 28/14
exhibit [10] 159/11 159/24 160/18
160/19 160/22 160/22 162/8 162/9
163/13 169/4
exhibits [20] 61/6 115/18 115/19 116/8
117/10 118/13 121/4 159/4 159/7 159/8
159/14 159/21 160/10 160/20 162/24
162/25 163/11 163/17 169/14 170/18
exist [3] 64/14 77/12 81/18

existed [1] 83/18
existence [11] 93/14
exists [2] 35/11 46/5
expand [2] 92/4 102/24
expect [1] 158/23
expectation [1] 12/2
expected [2] 7/10 32/7
experience [3] 123/25 126/21 126/22
experienced [1] 11/19
experiences [1] 42/17
expert [6] 37/11 37/18 37/19 37/23
123/22 124/18
expert's [1] 124/5
experts [2] 123/16 164/5
explain [3] 37/24 61/1 135/16
explaining [2] 136/11 145/4
explanation [1] 137/12
explicitly [1] 33/10
explore [1] 84/1
exposure [1] 14/16
expressed [1] 6/8
extend [1] 136/15
extensive [2] 18/11 165/25
extent [13] 7/7 31/24 41/14 49/15 53/21
58/15 79/11 88/17 93/23 93/24 109/25
114/12 144/3
extra [4] 98/18 102/25 159/9 165/10
extradited [2] 17/9 17/12
extradition [6] 7/1 16/24 17/2 17/22
17/25 34/14
extraterritorial [1] 11/24
eyewitness [1] 138/20

**F**

F.2nd [6] 28/22 32/14 42/24 94/22
95/10 95/11
F.3rd [10] 27/24 28/2 29/2 35/8 40/2
40/23 41/6 41/25 42/11 95/1
face [3] 14/18 29/21 106/23
fact [36] 5/10 6/5 8/9 8/21 9/16 9/23
10/3 10/4 11/19 12/20 13/3 16/24 18/20
18/24 19/11 20/14 21/12 30/17 31/14
35/2 37/1 37/9 40/4 41/21 41/24 44/24
50/20 88/9 106/16 112/24 127/19
133/11 140/6 140/23 145/1 145/1
factor [1] 99/4
factors [1] 140/19
facts [7] 3/18 37/12 39/7 39/17 77/24
127/17 128/20
factual [9] 16/14 18/23 21/21 46/21
54/22 57/4 75/9 131/20 145/2
factually [2] 129/6 130/7
failed [1] 36/8
failing [1] 33/22
fails [1] 153/23
failure [1] 104/18
fair [12] 15/20 44/4 59/11 86/15 103/25
104/20 111/12 116/18 135/24 137/7
148/8 150/4
fairly [3] 32/11 91/7 131/13
fairness [3] 9/20 91/10 91/13
faith [36] 45/9 56/9 56/12 60/19 61/7
69/12 69/14 69/17 70/7 76/19 76/22
89/2 90/9 94/23 95/2 143/8 143/23
144/11 145/2 145/9 145/15 145/18
145/19 146/4 146/21 147/22 148/5
148/6 148/21 149/4 149/6 149/8 149/19
150/8 150/11 158/6
fall [5] 79/13 89/20 92/15 93/9 129/10
falling [1] 84/17

falls [1] 142/5
false [5] 41/18 42/21 43/3 43/10 55/16
familiar [1] 42/9
familiarity [1] 126/6
familiarize [1] 170/3
fan [1] 133/4
far [11] 6/24 6/25 61/23 61/25 83/6
91/15 95/17 95/19 98/8 145/4 162/21
fashion [1] 107/8
favorable [1] 27/17
favorably [2] 35/9 132/2
FCRR [1] 1/20
fear [1] 8/6
February [3] 6/22 27/13 35/12
federal [5] 13/12 28/12 33/20 37/15
40/12
feedback [1] 169/8
feel [2] 103/20 112/18
feels [1] 138/11
feet [1] 20/25
felony [1] 32/19
few [2] 38/13 115/18
fewer [1] 155/22
Fifth [9] 11/22 12/25 13/19 13/25 14/2
14/8 28/21 90/14 95/1
fifty [1] 121/16
fighting [2] 82/11 135/6
figure [5] 70/23 146/5 147/13 166/9
170/9
figured [3] 116/10 125/12 170/12
file [6] 79/19 87/13 88/3 89/12 164/17
169/21
filed [11] 4/12 5/10 7/2 8/12 16/24 18/9
35/13 92/12 125/4 125/23 164/10
files [1] 117/17
filing [2] 7/5 79/25
fill [3] 96/18 96/23 102/24
filter [55] 32/22 44/19 44/23 44/24 47/8
47/9 47/12 47/16 56/13 56/16 57/12
57/16 58/9 58/14 58/21 59/3 59/6 63/15
64/3 70/21 71/23 72/8 72/16 75/1 75/2
75/8 78/10 78/14 78/22 79/13 79/17
79/25 80/1 80/9 80/12 81/5 81/15 81/20
82/4 82/6 82/12 84/15 84/17 84/23
85/10 86/4 86/25 89/10 89/13 89/19
92/15 92/22 93/1 93/8 93/24
final [3] 3/11 74/25 171/16
Finally [2] 32/24 42/19
financial [4] 115/18 126/3 126/7 126/8
find [20] 33/16 38/14 40/22 41/20 43/4
56/10 63/15 66/20 81/21 104/1 110/22
144/18 148/2 152/8 152/9 152/10
153/24 160/9 162/11 164/20
finding [8] 10/13 26/2 33/12 46/15 74/24
84/15 94/9 153/6
findings [1] 10/10
finds [7] 9/11 29/10 30/16 32/2 81/6
135/1 136/9
fine [20] 55/1 79/7 81/10 89/6 90/5
90/25 91/10 94/6 107/20 107/24 108/1
108/15 108/22 108/24 109/22 110/17
133/23 145/18 156/5 158/12
finish [6] 13/21 101/6 101/8 102/17
102/20 165/8
finished [1] 165/9
first [67] 2/21 3/2 4/4 6/21 9/3 11/7
11/16 11/22 12/16 20/15 32/4 33/15 34/2
34/21 35/24 42/24 44/2 44/11 44/15
45/6 45/11 46/1 46/19 47/11 47/19
48/10 48/15 49/11 59/25 60/19 62/17

**F**

first... [37] 62/25 65/16 66/10 67/24
73/2 75/24 78/2 84/12 84/18 85/25 89/9
93/7 96/16 96/18 96/19 99/6 99/13
100/11 100/11 101/18 103/8 103/12
113/22 114/17 117/8 124/20 129/6
130/6 133/21 134/20 137/1 142/12
144/25 152/22 158/11 158/18
fit [2] 80/10 123/12
fits [1] 148/4
five [6] 89/15 93/9 93/12 101/22 121/15
162/7
fix [1] 161/15
flag [1] 127/11
flesh [1] 88/4
Floor [1] 1/17
focus [1] 88/6
focused [1] 40/18
folks [3] 106/21 111/16 134/14
follow [7] 3/5 96/6 96/11 113/12 118/3
162/12 164/4
followed [1] 160/14
following [3] 24/3 101/23 112/15
follows [1] 67/14
followup [7] 5/12 55/2 97/20 97/24
99/21 99/22 100/7
fooled [1] 38/25
footnote [3] 145/5 146/25 149/25
Footnotes [1] 145/6
forced [1] 161/15
forecast [1] 161/1
foregoing [1] 172/11
foreign [6] 29/5 31/2 120/11 121/10
121/24 122/8
foreigners [2] 53/18 53/24
forget [2] 65/6 160/1
forgets [1] 159/10
forgot [1] 159/15
form [9] 43/7 47/15 96/13 96/25 104/6
141/25 147/12 157/15 158/11
formal [3] 5/5 16/24 17/22
formally [2] 5/19 124/25
format [2] 163/21 169/21
former [1] 34/18
forth [4] 101/2 117/17 124/16 129/21
forward [3] 7/5 18/22 94/8
found [9] 33/8 37/9 42/12 56/10 57/13
60/4 93/9 113/6 157/5
foundation [3] 159/23 160/1 160/5
four [6] 10/9 27/12 34/12 100/16 102/1
102/5
fourteen [1] 96/17
fourth [24] 1/17 19/19 19/20 20/10
20/19 20/22 21/10 21/10 27/25 28/2
28/13 28/16 28/22 29/3 33/21 36/11
38/13 39/10 40/2 40/13 42/1 66/3 95/12
122/7
frame [2] 39/6 148/13
framed [1] 96/10
frames [1] 39/3
frankly [9] 14/24 16/3 19/9 21/24 36/10
48/4 60/19 65/19 76/5
fraud [16] 36/4 36/24 36/24 38/17 40/1
40/13 51/17 55/18 75/21 75/21 141/21
145/14 147/7 147/21 150/3 153/20
fraudulent [2] 41/12 42/13
free [5] 82/5 118/22 146/14 147/3
147/11
free-standing [3] 146/14 147/3 147/11
freedom [3] 130/2 131/8 131/19

frequently [1] 36/23
Friday [1] 101/22
friends [1] 166/9
front [6] 62/19 82/11 96/17 145/10
157/18 170/23
full [7] 25/5 98/4 100/15 102/18 120/15
121/13 128/17
fully [5] 4/2 30/10 47/11 131/21 169/2
fundamental [1] 9/3
fundamentally [1] 16/21
further [6] 39/5 71/24 88/4 142/8 145/8
172/11
future [1] 131/18

**G**

Gabbay's [1] 32/2
gain [2] 95/7 131/18
game [3] 83/1 111/12 127/8
gap [1] 154/5
gave [4] 10/1 55/16 90/24 114/18
Gaver [2] 38/11 38/15
general [14] 25/11 30/5 43/8 74/11
75/15 91/2 103/12 113/22 119/13
143/25 145/15 154/17 155/24 158/15
generally [19] 27/18 53/21 61/18 68/22
77/16 96/11 102/16 113/25 114/3
114/11 120/11 129/2 137/8 156/3
164/20 164/23 165/5 168/22 169/17
generic [2] 114/9 137/6
generously [1] 109/8
Germany [1] 94/18
get [59] 12/9 17/2 31/19 43/12 46/9
48/17 48/22 49/9 49/18 51/22 57/21
58/13 64/22 65/1 66/4 75/19 76/12
77/16 85/5 85/6 85/15 85/15 85/16
86/16 91/25 95/17 95/19 96/5 99/14
100/23 100/23 101/5 104/22 104/23
105/3 105/12 105/13 113/8 113/12
114/25 116/14 121/5 127/1 132/6 142/2
142/18 142/22 143/9 143/12 149/18
150/5 155/24 156/14 158/8 160/16
162/24 163/2 169/24 171/2
gets [9] 22/18 90/7 122/16 127/7 143/8
143/16 160/9 161/22 165/18
getting [13] 17/25 26/3 31/5 43/24 46/7
61/10 64/4 74/16 87/12 131/6 132/21
142/12 163/2
give [36] 12/17 13/5 37/20 56/3 67/15
72/17 72/19 80/14 85/9 87/18 97/10
97/16 98/14 98/18 105/6 112/14 112/19
112/24 113/3 119/16 120/16 134/11
135/9 137/12 139/23 142/24 151/22
157/18 159/13 161/7 163/9 163/16
167/1 167/4 169/8 171/19
given [23] 11/23 50/12 57/14 59/10 60/7
67/14 68/10 83/25 91/18 109/6 121/2
123/23 125/5 125/21 125/24 126/10
126/10 126/11 126/14 149/4 150/24
155/8 169/13
gives [3] 130/22 149/5 152/14
giving [17] 14/4 14/22 30/5 31/14 35/2
66/20 90/22 104/1 110/24 131/19 146/3
149/22 152/12 157/17 160/25 169/7
169/21
go [54] 3/12 7/4 7/13 7/15 13/22 26/23
36/12 36/15 36/25 39/5 50/10 51/7
56/17 63/17 69/17 70/12 70/21 71/23
73/10 77/12 78/20 81/17 82/7 84/18
86/2 91/15 96/14 96/24 97/3 97/4 97/14
97/25 98/19 100/16 100/22 101/11 102/12

114/6 114/16 118/5 119/11 124/15
124/19 126/21 128/21 139/9
145/306 148/19 158/15 165/5 165/10
169/15
goal [2] 61/11 159/8
goes [18] 19/10 36/20 36/20 37/13
59/12 68/17 69/5 80/21 83/6 90/23
105/1 112/19 119/9 119/10 126/23
134/6 150/21 157/18
going [125] 4/11 5/5 5/9 7/4 7/22 8/1 8/9
8/21 9/2 9/13 11/20 12/14 13/5 19/5
22/11 24/25 37/2 37/11 41/6 46/20
50/25 56/7 58/6 58/7 60/6 61/3 61/7
63/9 64/9 66/16 73/6 74/15 75/19 76/2
77/2 77/3 82/10 84/18 85/24 86/3 86/4
86/13 87/1 88/10 88/16 88/16 88/21
89/3 89/4 89/17 95/7 95/13 95/25 96/13
98/25 98/25 101/12 101/14 101/22
102/4 102/12 103/1 103/7 104/25
105/25 106/18 107/25 108/6 108/10
109/21 110/14 110/22 110/24 111/15
114/3 115/16 115/20 115/24 116/15
118/11 119/5 120/7 120/20 120/21
120/22 121/5 121/9 121/10 123/1
123/22 124/6 124/9 126/2 127/9 128/8
128/11 129/8 133/16 134/10 138/21
140/2 141/2 142/17 143/13 144/4
148/12 149/22 156/16 157/1 159/20
161/3 161/17 162/24 162/25 163/12
164/4 165/23 166/9 166/20 166/23
167/4 168/18 168/24 168/24 169/5
gone [3] 25/25 57/13 59/15
good [63] 2/7 2/10 2/11 2/14 45/9 56/6
56/9 56/11 60/19 61/7 61/19 63/8 69/12
69/14 69/17 70/7 76/18 76/22 80/12
83/2 84/5 89/2 89/2 89/22 90/6 90/9
94/23 95/2 104/9 110/6 122/16 127/6
127/8 135/12 137/1 143/8 143/23
144/11 145/2 145/8 145/9 145/15
145/18 145/19 146/4 146/21 147/22
148/5 148/6 148/19 148/21 149/4 149/6
149/7 149/19 149/25 150/8 150/11
150/16 150/18 159/5 169/8 170/3
Googling [1] 113/2
gospel [1] 120/4
got [15] 14/6 20/24 20/24 40/21 53/14
59/5 63/8 74/4 82/20 90/12 108/7 117/1
125/6 125/8 163/4
gotcha [1] 159/10
gotten [2] 4/6 63/1
government [171] 1/11 3/2 4/4 4/11 4/19
5/4 6/19 6/23 9/15 11/18 12/3 13/1 14/3
14/13 14/21 15/2 15/4 15/5 15/17 16/1
16/6 16/17 16/22 20/21 21/2 21/8 21/23
22/23 23/2 23/21 24/1 24/12 24/24 25/1
25/6 25/7 25/11 27/7 27/8 27/11 29/3
29/8 29/10 29/13 29/15 29/20 29/22
29/23 30/2 30/4 30/9 31/5 31/10 34/10
34/13 34/17 34/20 34/25 35/5 35/8
35/10 36/5 36/10 38/9 39/2 39/12 39/16
40/9 40/13 43/19 43/19 43/25 44/5
44/10 45/20 47/17 49/13 49/20 50/25
51/12 51/15 52/18 52/24 54/11 55/5
55/5 56/15 56/23 57/3 57/14 58/20 59/2
59/8 60/7 61/4 61/5 64/2 64/24 65/3
65/4 65/14 65/21 67/10 68/3 79/8 80/17
81/8 81/10 82/20 83/6 84/19 86/22
88/17 89/9 92/16 94/19 97/23 103/15
105/16 107/7 110/11 111/25 114/20
116/12 118/10 118/17 121/3 123/17

## G

government [66] 6/6 124/11 126/1
126/12 127/5 128/9 128/18 128/25
130/22 131/22 132/11 134/3 134/25
135/2 135/7 135/8 135/23 135/24
135/25 136/8 136/8 136/15 136/23
138/14 139/22 140/14 141/19 142/7
143/25 145/7 152/23 153/10 153/21
153/23 154/1 160/19 162/2 162/7
164/10 167/21 169/14 170/24 171/8
government's [37] 3/8 4/8 16/2 24/18
27/18 27/23 30/13 31/19 33/3 34/7 35/1
36/15 41/5 42/15 51/24 52/13 54/16
57/20 58/3 62/16 68/5 92/13 96/21
101/4 108/23 124/9 134/5 134/8 134/11
136/12 136/16 137/5 138/22 140/13
158/19 160/20 164/6
Grand [1] 66/2
grant [4] 9/13 28/4 28/25 43/8
granted [3] 7/9 10/6 30/12
granting [3] 9/14 9/16 33/7
Graves [1] 33/20
great [3] 18/17 80/12 112/10
greater [1] 161/20
Green [11] 105/19 106/1 106/3 106/13
106/14 107/3 107/12 107/14 107/22
109/11 148/3
Greenbelt [2] 1/4 1/22
grid [1] 97/12
ground [2] 67/7 125/16
grounds [2] 124/12 124/25
group [4] 96/21 105/15 113/22 114/23
groupings [1] 113/21
groups [1] 103/12
guaranteed [1] 22/25
guess [19] 8/4 23/25 35/20 50/13 64/14
77/4 78/19 81/2 81/14 82/8 84/21 86/17
92/2 108/19 128/18 146/13 146/16
149/2 152/25
guidance [1] 92/11
guidelines [1] 158/15
guideposts [1] 91/23
guilt [3] 40/21 42/23 128/7
guilty [1] 153/24
gullibility [1] 38/23
gullible [1] 38/20

## H

H.R [1] 20/3
had [100] 4/9 4/9 4/21 5/12 5/15 6/2 6/3
6/10 7/18 8/7 10/13 12/18 13/9 14/13
15/6 15/22 16/1 16/4 16/6 16/7 16/22
16/22 16/24 17/12 19/11 19/12 19/13
20/8 20/15 20/16 21/10 21/13 21/14
21/15 21/17 23/12 23/22 23/22 24/13
24/15 24/15 25/11 25/25 27/13 27/20
27/21 28/17 29/8 29/14 29/17 29/19
29/23 29/24 31/5 31/13 31/15 32/15
33/8 36/13 40/14 40/15 41/1 42/7 42/13
43/19 43/21 51/11 52/14 52/20 57/18
63/15 68/25 70/4 70/18 72/24 77/18
83/20 84/5 90/8 100/17 105/18 106/3
106/13 113/13 116/1 125/7 129/8
129/13 131/23 137/17 143/14 147/19
157/2 158/14 158/15 162/6 163/9
169/12 170/22 172/6
hadn't [2] 16/17 16/25
half [2] 96/20 98/6
hand [5] 2/19 7/15 30/25 91/3 96/20
happen [5] 4/11 7/23 8/2 83/1 119/8

happened [6] 5/17 8/16 39/7 48/8 58/8
129/1
happy [8] 16/21 66/15 75/8 79/8 79/10
89/24 135/2 145/10
hard [5] 71/15 84/3 147/9 163/3 163/6
harder [1] 104/2
harm [1] 15/1
has [107] 3/9 9/7 10/10 12/23 13/13
13/25 20/19 25/6 25/7 28/3 28/5 28/6
33/14 33/23 35/15 36/7 37/10 38/9
38/18 39/10 40/10 40/11 43/4 44/5
45/18 45/22 45/23 45/24 46/1 46/16
47/8 47/12 47/17 47/24 48/2 48/3 48/6
48/8 49/17 55/5 57/3 59/2 60/7 61/4
61/5 63/18 64/2 65/14 65/18 66/21
67/18 67/20 69/2 70/2 70/8 71/3 72/8
72/10 72/13 76/5 79/16 80/1 81/13
83/17 90/13 92/17 95/20 97/18 100/5
104/17 106/3 107/2 107/21 109/25
110/5 118/6 118/11 119/3 121/3 122/7
123/24 124/2 125/20 128/13 130/18
130/20 131/21 131/21 132/8 132/17
133/12 135/24 141/4 141/13 141/21
143/17 145/7 146/16 148/7 151/8
152/23 160/22 162/7 165/2 165/7 167/6
170/12
hasn't [7] 12/5 61/2 65/11 67/2 67/21
152/10 156/1
have [351]
haven't [18] 11/9 52/2 54/14 56/10
65/12 77/18 77/21 92/25 112/12 113/23
114/6 116/10 125/22 125/23 133/10
154/10 160/14 170/2
having [32] 6/3 13/6 15/1 22/10 23/6
27/2 27/3 29/21 31/6 35/5 47/5 49/22
59/19 63/20 71/2 73/3 73/5 81/2 88/7
94/3 97/3 103/20 115/18 122/3 127/3
127/4 140/25 147/16 157/1 160/17
160/18 170/15
he [57] 13/13 13/13 14/17 20/1 20/3
20/15 20/16 20/18 21/13 21/14 21/15
21/17 22/19 32/18 32/19 42/7 43/2 43/2
45/23 45/24 46/10 70/1 70/4 70/4 70/16
70/18 71/3 71/3 71/10 71/11 71/14
72/24 73/6 73/12 87/20 107/25 107/25
109/3 123/24 124/1 126/12 126/13
126/16 126/17 130/8 130/20 131/22
131/25 132/1 132/1 140/12 147/22
147/23 149/8 149/8 170/18 170/21
he'll [1] 110/18
he's [25] 46/20 68/15 68/22 70/1 70/1
70/16 71/7 71/12 71/22 71/22 73/9
73/10 74/20 75/10 75/13 76/6 78/7 78/8
84/13 109/2 124/5 126/18 131/5 170/17
head [2] 48/16 121/13
heads [1] 87/18
hear [11] 4/3 24/8 44/2 68/3 87/2
120/21 127/23 128/8 128/11 141/25
160/15
heard [15] 20/10 20/16 27/3 39/25
51/23 52/2 66/21 68/1 68/8 68/10 80/22
81/2 111/5 111/13 113/2
hearing [4] 25/19 48/15 127/4 157/6
hears [1] 151/5
hearsay [1] 76/8
Hebrew [10] 117/8 117/11 117/12
117/15 117/17 118/14 119/18 119/25
120/21 120/21
held [7] 28/16 28/23 29/3 40/17 41/7
41/1 42/4

help [3] 37/3 38/22 83/11
helpful [10] 3/21 38/15 66/6 66/25 68/3
117/19 121/15 168/4 168/13 168/16
HENRY [2] 1/12 2/9
her [33] 19/3 27/7 27/9 27/9 34/11
35/13 41/23 45/9 47/2 50/11 50/21
52/15 52/22 54/13 55/17 55/18 55/19
65/21 70/7 76/16 76/18 89/3 90/4 90/24
106/4 106/9 107/13 107/22 110/24
128/4 146/9 147/19 148/2
here [101] 2/4 2/8 2/25 4/7 6/13 7/7
10/8 10/25 11/7 11/12 12/6 14/2 15/3
15/17 22/2 23/20 23/23 29/10 31/6
31/20 31/23 32/20 38/24 40/11 46/5
51/21 53/20 53/20 63/6 64/14 66/25
69/2 74/1 75/3 77/15 80/13 85/4 86/20
88/9 88/23 91/12 95/8 97/19 98/1 99/20
100/1 100/9 100/22 101/12 101/14
102/19 103/1 103/5 104/5 106/16 109/5
110/23 111/12 111/13 111/17 112/13
113/4 113/10 113/19 113/22 117/7
120/10 121/24 123/12 127/17 128/8
129/1 129/7 130/13 130/14 132/5 135/6
139/24 140/2 141/6 142/12 143/14
143/20 143/22 148/1 148/11 148/25
151/3 155/8 155/13 156/9 156/10
156/23 156/24 158/16 159/6 159/8
160/3 165/16 171/2 171/2
here's [2] 70/14 132/22
hereby [1] 172/5
hereto [1] 172/15
herself [1] 154/13
Herzog [18] 8/23 14/14 15/4 15/6 16/3
16/5 16/18 17/4 18/25 20/4 20/16 24/14
25/12 47/3 55/7 55/16 56/1 70/11
Herzog's [3] 14/10 15/15 16/6
hesitant [1] 85/2
hey [4] 11/16 52/16 55/1 60/3
high [1] 153/15
higher [1] 132/10
highlight [3] 105/9 106/2 169/1
highlights [1] 158/17
Hill [1] 42/11
him [14] 21/23 29/9 40/14 70/3 78/19
78/19 87/18 108/3 109/1 110/19 124/19
124/19 126/15 132/13
Hirschfeld [1] 145/16
his [26] 14/8 18/25 20/2 20/11 21/11
21/14 22/11 29/9 41/2 41/23 55/12
69/17 73/5 73/5 78/6 78/9 124/10
124/18 126/10 126/10 126/13 126/14
126/21 126/23 135/1 147/24
history [1] 31/12
hold [1] 158/23
holder's [1] 45/24
holders [1] 65/17
holding [1] 63/3
honest [3] 145/20 147/19 148/18
Honor [158] 2/7 2/11 5/2 5/15 6/16 6/20
8/3 10/8 12/9 12/22 16/11 16/13 17/11
17/17 18/11 18/24 19/9 20/1 20/14 21/1
22/21 24/5 26/25 35/23 37/13 37/22
38/7 44/4 44/22 46/11 46/18 47/10
49/12 52/11 54/10 66/10 66/13 68/11
70/4 71/1 72/2 72/22 73/15 73/24 74/18
76/1 79/7 79/21 82/17 82/24 85/1 85/14
86/18 87/14 87/22 89/8 89/25 90/2 94/6
95/23 95/24 99/8 99/17 101/17 102/5
102/10 103/16 103/17 105/17 105/18
105/24 107/9 107/15 107/20 108/1

**H**

Honor... [1] 109/3
110/12 110/13 111/3 111/18 112/1
112/2 112/6 113/16 113/17 114/21
116/5 115/17 115/22 117/6 117/24
120/18 121/12 121/18 121/22 122/20
122/21 122/24 122/25 123/18 123/21
124/11 124/24 125/5 125/10 125/18
127/16 128/23 129/11 129/16 129/22
129/25 130/6 131/16 132/14 134/17
134/23 136/7 137/16 137/19 139/11
139/12 139/15 140/1 141/5 141/16
142/7 142/15 142/16 142/21 143/4
143/10 144/25 145/25 146/12 147/17
148/16 149/2 152/1 152/15 153/3 154/1
154/6 154/23 155/1 155/18 156/22
157/24 161/10 163/4 163/20 167/18
169/12 170/25 171/9 171/11
HONORABLE [1] 1/8
hope [1] 7/16
hopefully [3] 3/3 17/25 160/14
hour [1] 164/25
hours [1] 170/5
housekeeping [1] 3/24
how [45] 5/13 5/17 11/5 11/25 15/5 15/8
36/21 41/17 53/9 65/1 77/3 79/3 79/5
82/20 85/8 87/11 87/20 88/10 90/2
90/18 92/3 92/17 95/16 102/1 114/11
121/8 129/18 133/16 133/20 136/5
140/25 147/14 149/21 151/22 153/17
153/24 154/15 155/24 158/16 160/21
162/25 170/6 170/9 170/12 171/6
however [6] 28/8 97/13 106/12 134/10
148/20 153/17
hum [7] 5/25 6/6 14/11 44/25 69/3
129/23 134/2
hybridization [1] 145/12
hypothetical [25] 14/10 35/18 35/21
35/24 36/6 37/5 37/14 39/6 39/13 40/17
40/24 41/8 41/22 42/2 42/5 42/15 43/1
43/9 52/18 52/21 55/7 64/13 69/23
82/10 89/21
hypothetically [1] 55/15 56/2 64/15
hypotheticals [1] 75/3

**I**

I'd [18] 3/5 3/15 11/1 38/15 57/25 60/25
66/13 92/10 96/6 101/9 102/16 102/17
126/3 158/18 160/24 161/18 164/2
165/14
I'll [12] 60/15 84/11 84/12 84/14 97/25
98/22 122/13 122/17 127/2 155/6
155/14 158/8
I'm [91] 4/2 7/5 15/16 18/1 22/8 22/9
25/19 25/24 27/3 43/6 44/23 45/3 48/18
50/13 50/23 51/13 53/9 56/25 58/3
58/6 58/6 59/3 60/6 60/24 61/21 62/11
62/19 63/3 63/4 63/5 63/7 64/13 64/25
66/16 71/2 71/20 72/7 72/20 75/3 75/18
81/2 82/8 82/11 83/5 84/6 84/15 88/13
88/21 91/23 93/3 102/13 103/1 103/7
103/23 106/20 107/20 109/21 114/3
115/1 119/7 119/24 121/5 127/2 131/9
132/19 133/4 133/23 134/10 134/19
135/6 138/2 138/7 138/21 142/9 142/16
146/13 146/16 151/13 153/2 153/16
154/4 154/4 154/14 156/16 156/24
158/21 164/17 164/22 165/10 166/2
168/3
I've [23] 10/10 22/14 38/2 49/23 50/1

50/1 51/23 56/19 58/2 58/16 59/5 60/21
90/5 101/15 113/20 116/7 125/21
126/10 128/11 130/13 128/14 133/22
157/11
I.T [5] 20/3 169/23 170/4 170/15 171/6
idea [8] 17/3 20/7 127/6 141/3 159/5
160/16 170/3 171/13
ideal [2] 102/16 105/14
ideally [3] 87/18 102/17 102/19
identification [2] 161/3 161/13
identified [5] 51/4 60/18 61/2 68/15 86/7
identify [9] 2/6 58/16 70/21 76/10 86/12
92/15 97/14 111/16 166/20
identifying [1] 133/10
III [1] 110/7
illusive [1] 61/11
imagine [2] 100/20 165/21
immaterial [1] 124/5
immediately [2] 13/4 112/15
immunity [26] 3/7 4/2 9/5 9/10 9/13 9/14
9/16 10/6 21/22 22/18 22/25 23/3 23/10
23/18 23/22 27/5 27/7 28/1 28/4 28/8
28/25 29/4 33/17 129/15 131/1 133/1
immunize [4] 11/18 12/3 12/4 33/3
immunizing [1] 11/6
impact [3] 37/7 41/11 144/20
impacts [1] 111/14
impeachment [3] 141/14 160/10 161/21
impending [1] 29/6
impermissible [1] 53/4
impermissibly [1] 40/21
implicated [1] 14/2
implications [2] 8/24 16/7
implies [2] 71/11 131/10
imply [1] 43/19
importance [2] 38/25 40/4
important [6] 4/15 33/25 115/24 129/19
135/13 148/23
importantly [1] 32/9
impose [1] 61/23
impression [3] 53/14 90/25 133/17
imprimatur [1] 135/10
improper [4] 9/15 14/20 32/14 51/25
improperly [1] 14/21
inaccurate [2] 118/21 148/20
inadequate [3] 4/18 30/7 125/24
inadmissible [2] 39/24 41/25
inadvertently [1] 91/17
inappropriate [3] 9/7 29/24 36/9
inclined [1] 165/10
include [15] 62/1 78/6 80/17 80/18 88/2
103/20 105/10 109/16 110/21 121/18
129/3 134/5 134/14 146/2 155/8
included [3] 135/20 144/11 148/23
includes [4] 78/4 78/4 78/24 158/5
including [14] 35/7 47/3 54/23 57/5 74/8
86/20 90/12 93/3 106/22 107/7 122/7
126/3 140/11 166/18
inclusion [1] 130/11
inconsistent [1] 83/19
inconvenient [2] 112/17 165/11
incorporated [1] 152/16
incorrect [3] 136/15 145/23 146/7
incrimination [2] 28/6 30/11
independent [1] 56/14
index [1] 97/16
indicate [1] 140/10
indicated [2] 23/12 37/10
indicates [2] 106/11 140/18
indication [1] 8/10

indicative [1] 51/1
indicia [1] 35/10
indicted [26] 4/22 5/23 11/16 11/21
12/18 13/13 14/7 14/22 15/18 19/12
19/20 20/2 20/9 20/17 26/19 27/13
27/21 28/20 29/14 29/17 30/6 30/14
33/1 34/24 35/12 132/18
indictment [33] 4/20 4/22 6/25 7/16 8/11
8/14 8/18 11/9 11/14 11/15 12/15 13/2
13/3 13/4 16/21 17/4 17/24 18/20 19/15
19/22 20/4 22/11 22/24 24/14 25/13
29/13 29/15 30/10 31/14 142/24 142/25
153/20 153/23
indictments [4] 8/6 21/13 23/7 31/6
indirectly [1] 52/15
individual [11] 15/19 20/5 22/7 30/17
36/17 36/19 38/21 87/6 106/13 130/17
131/21
individuals [11] 6/23 7/17 17/2 17/20
19/15 22/22 22/22 23/11 31/20 129/5
131/12
industry [10] 123/25 124/2 124/3 124/21
124/23 126/2 126/13 126/14 127/25
128/12
infer [1] 27/16
influence [1] 134/16
influenced [1] 39/18
inform [3] 13/3 13/4 27/15
informal [1] 4/23
information [26] 4/7 4/15 6/11 21/4 21/6
21/15 21/18 24/21 31/15 32/22 33/15
33/17 38/25 41/9 41/20 42/8 43/20 48/4
55/16 65/18 73/21 79/12 124/17 124/20
125/21 125/22
informed [12] 12/15 13/8 13/10 13/12
21/7 21/8 21/9 22/23 23/7 27/11 28/18
37/25
informing [2] 13/13 30/18
initially [3] 4/9 30/5 74/10
injured [3] 146/9 147/24 149/9
innocent [1] 150/21
input [1] 66/4
ins [1] 88/25
inserted [1] 137/17
inside [1] 109/3
insight [1] 25/5
insignificant [1] 150/25
insofar [1] 71/4
instead [2] 4/19 96/14
institution [1] 126/7
institutions [1] 126/3
instructed [2] 36/2 58/9
instruction [70] 27/6 27/15 27/22 33/20
33/21 35/15 50/23 101/16 112/25
115/11 124/8 128/5 128/13 129/2 129/4
131/9 132/6 132/7 132/16 132/16
133/24 134/5 134/9 134/10 135/12
135/13 135/14 135/15 136/3 136/4
136/11 136/24 139/25 140/16 140/18
140/25 143/21 144/1 144/6 144/12
144/18 145/14 145/15 145/23 146/14
146/15 146/20 146/23 147/3 147/5
147/9 148/5 148/11 148/23 149/3 149/4
149/6 149/7 149/19 152/6 153/15
154/25 155/23 156/8 156/14 156/17
158/8 168/15 168/19 168/21
instructions [40] 3/13 3/13 3/14 36/1
36/3 95/16 101/9 104/12 112/11 112/13
112/14 112/19 112/20 113/8 113/11
113/14 113/19 114/15 114/17 115/15

I

instruction [14] 49/13 135/4 TSC
135/11 135/19 135/25 137/10 142/9
143/15 145/21 151/6 154/15 157/12
157/14 157/17 157/19 161/5 163/5
168/13 168/22
insurance [1] 141/21
intellectually [1] 59/3
intend [3] 36/10 50/8 167/22
intended [4] 29/12 38/18 38/20 43/23
intending [3] 45/7 116/13 140/14
intends [2] 44/12 46/7
intent [2] 51/1 51/2
intentional [1] 9/5
interact [1] 88/19
interacting [1] 88/18
interactions [3] 53/24 106/8 106/13
interest [8] 30/14 30/22 31/19 48/23
65/25 77/1 84/22 159/2
interested [1] 127/2
interesting [1] 127/5
interfered [1] 27/9
interim [1] 6/9
internal [1] 18/9
international [2] 29/7 157/25
interpretation [1] 97/5
interpreter [2] 2/15 2/18 2/20
interstate [1] 151/10
into is [1] 143/13
introduce [4] 50/8 117/4 152/5 159/11
introduced [2] 119/3 146/13
introduces [1] 149/21
introducing [1] 62/13
introductory [1] 97/2
invest [3] 36/14 39/19 40/17
invested [1] 43/2
investigation [6] 15/24 19/14 29/1 29/19
31/17 33/1
investment [1] 69/9
investor [5] 37/21 41/1 41/15 41/18 43/1
investor's [1] 42/21
investors [2] 39/17 40/25
invoked [2] 28/5 28/20
involve [3] 66/8 78/25 93/4
involved [3] 6/1 56/8 106/5
involves [1] 18/16
involving [8] 30/4 43/17 43/22 57/7
66/18 72/18 73/7 82/2
iron [1] 113/21
irrelevant [6] 33/25 38/17 39/22 52/22
63/19 63/24
is [583]
isn't [12] 10/20 21/22 22/3 70/25 85/24
89/14 117/21 126/22 126/22 131/4
131/12 153/14
Israel [11] 23/10 23/16 23/19 27/12 34/9
50/16 53/7 68/23 75/18 76/17 94/14
Israeli [16] 13/8 13/11 16/23 18/12
18/17 18/19 25/12 26/1 26/18 32/5
51/19 53/15 53/16 53/22 53/23 94/12
issue [84] 7/7 7/18 11/12 23/6 23/9 25/2
25/21 25/22 33/8 35/19 35/20
35/24 38/6 38/24 39/12 40/20 42/14
43/11 43/13 46/3 51/20 53/20 53/21
54/6 57/2 57/22 59/4 62/1 63/11 64/13
68/1 68/12 70/14 75/1 75/12 75/14
75/24 76/2 76/5 76/18 77/15 78/11 80/5
82/15 82/22 83/18 84/11 91/6 92/2
94/14 95/12 96/1 97/4 103/21 104/1
104/12 109/9 112/7 118/17 120/17

122/13 122/17 125/16 127/21 131/16
133/9 133/20 133/24 137/14 147/7
147/21 148/1 149/19 149/24 150/23
152/14 156/20 158/4 158/7 163/14
166/7 167/10 168/9
issued [3] 4/9 8/2 24/24
issues [47] 9/3 22/21 33/24 45/15 48/11
49/12 50/13 50/23 52/12 52/14 54/13
64/2 64/5 75/20 76/14 77/17 82/10
83/16 90/21 98/22 103/10 103/22
110/10 111/20 111/24 113/13 113/21
113/22 114/16 114/19 115/16 117/23
122/19 123/11 135/20 142/13 142/14
142/20 143/6 154/25 155/21 155/22
159/1 164/11 165/7 166/7 167/16
issuing [1] 24/19
it [414]
it's [165] 3/19 4/2 8/15 9/12 9/14 11/6
22/2 25/21 31/1 31/18 36/1 37/19 38/5
39/6 40/11 41/2 43/7 45/9 46/1 49/19
50/16 51/14 52/7 52/7 52/20 52/22
53/21 54/1 55/17 55/19 56/5 56/25
58/17 59/24 60/24 60/24 61/15 61/16
63/9 63/13 63/18 64/6 64/19 66/1 66/7
66/20 69/11 69/12 69/17 69/20 71/15
73/2 73/17 73/18 74/15 75/21 77/9
80/12 83/6 84/2 84/3 84/18 84/22 86/22
87/9 88/9 88/10 89/4 90/16 91/3 92/19
94/16 94/17 94/18 95/3 97/11 98/16
99/10 99/23 99/24 99/25 100/4 105/7
106/1 106/16 108/4 108/7 109/9 111/12
113/6 114/1 115/25 117/2 117/15
117/17 118/5 119/9 119/10 120/6
120/19 122/16 126/23 127/4 127/19
128/2 128/4 128/15 130/19 130/23
130/24 131/2 131/3 131/15 131/15
132/1 133/15 135/5 135/13 136/3
136/15 138/11 138/13 140/6 140/21
140/23 144/14 146/23 146/25 146/25
147/7 147/8 147/12 147/25 148/17
147/18 151/14 152/8 152/21 152/25
154/2 154/4 154/12 155/4 155/12
155/15 156/1 157/16 159/5 159/9 159/9
159/11 159/22 159/22 160/23 160/25
162/13 162/13 162/17 164/3 165/1
166/7 166/10 167/3 168/1 170/2
italics [4] 127/11 127/19 128/16 140/4
items [1] 92/15
iteration [1] 137/16
its [7] 9/16 25/9 33/23 39/3 68/17 88/2
116/13
itself [5] 60/8 61/4 128/6 142/25 150/23
IV [1] 157/8

J

Jencks [1] 52/4
jeopardy [2] 21/14 32/16
Jeremy [1] 108/2
JESSICA [2] 1/16 2/13
job [1] 164/23
joint [11] 13/24 34/19 48/23 49/4 64/16
64/18 64/25 65/16 65/25 113/24 149/22
jointly [2] 149/17 150/12
Jones [1] 95/11
judge [14] 1/9 4/12 4/17 4/22 5/11 5/22
6/2 6/8 14/15 25/20 30/3 102/16 134/17
159/6
judged [1] 150/16
judges [1] 157/9
July [5] 1/5 100/19 102/22 172/10

172/16
July 22nd [1] 100/19
July 29th [1] 102/22
jump [1] 91/4
jurisdictions [1] 75/6
juror [2] 97/10 97/21
jurors [7] 27/15 98/4 98/10 98/15 101/10
112/4 170/8
jury [77] 3/13 36/1 36/2 36/20 36/21
37/3 37/25 38/22 39/7 41/15 41/16 66/2
95/16 98/16 98/21 98/21 98/23 99/4
100/20 101/11 101/16 102/12 102/2
103/7 103/18 104/12 105/2 105/6 106/2
106/23 109/16 112/11 112/15 112/19
113/7 118/2 118/3 118/4 118/5 118/6
119/10 119/11 119/16 120/3 120/5
120/7 120/11 121/11 122/3 127/3 127/3
134/7 135/16 135/17 137/10 142/25
148/1 149/10 151/5 151/15 156/11
157/7 157/11 160/2 162/11 163/12
164/22 165/6 165/21 165/22 165/25
166/19 166/22 168/13 168/18 169/15
169/25
jury's [1] 166/12
just [165] 4/3 4/5 5/18 6/18 7/22 8/15
11/6 11/16 14/9 16/13 17/8 17/18 17/15 18/1
19/10 19/17 21/16 24/1 24/8 25/10
25/20 25/22 31/7 37/20 44/2 45/12
48/10 51/3 55/16 55/22 57/21 59/6
59/18 59/20 63/10 64/22 66/15 66/25
68/3 68/12 68/21 69/20 70/20 71/25
72/5 72/19 72/19 72/22 73/11 73/12
73/22 75/23 77/5 78/13 80/5 80/15
81/18 82/25 83/24 86/3 88/10 88/24
89/1 92/7 93/11 94/2 94/7 94/7 94/17
96/5 96/22 96/24 97/11 99/7 100/12
101/5 101/8 102/18 103/11 103/21
104/15 104/17 104/22 105/6 106/3
107/24 109/17 110/4 110/17 111/4
111/15 111/16 111/17 112/16 113/1
113/3 113/7 113/9 113/22 114/16
114/24 114/25 115/12 115/24 117/9
120/17 122/10 122/16 123/6 123/15
124/22 127/11 128/2 128/12 131/23
133/12 134/4 134/11 134/21 135/13
135/21 136/2 136/7 137/10 137/14
139/23 140/3 140/22 141/23 142/13
142/18 143/25 145/17 146/4 150/10
152/8 152/12 153/13 154/5 155/20
156/2 156/10 156/11 157/1 158/9
158/17 159/8 159/19 159/22 160/21
160/24 160/25 161/16 161/23 162/9
162/19 163/8 165/11 166/15 168/1
169/2 169/12 169/23 170/14 170/19
171/19
Justice [2] 1/11 22/14
justification [1] 87/16
justified [1] 156/2
justify [1] 33/10

K

keep [7] 29/16 35/11 65/22 127/9
134/19 165/23 171/15
kept [1] 129/19
key [1] 104/24
Khan [1] 33/2
kicks [2] 60/10 61/15
kin [1] 37/14
kind [13] 14/22 17/15 25/13 56/3 71/11
74/16 83/13 107/5 112/25 121/21

## K

kind... [3] 38/3 41/1 60/5
kinds [1] 40/8
Kingdom [1] 94/18
knew [5] 7/20 7/25 35/9 54/2 68/8
know [128] 3/19 5/17 7/14 10/17 11/19
11/22 14/15 14/24 17/22 17/23 20/2
21/2 21/24 31/4 33/14 47/12 47/12
48/24 51/15 51/21 53/13 54/2 58/4
59/25 60/14 60/18 62/18 67/4 69/5 69/6
70/8 70/13 73/17 77/2 77/6 77/6 77/11
77/12 77/12 78/20 80/11 81/22 81/24
83/11 84/3 85/3 85/5 86/6 86/24 87/4
88/13 88/25 89/20 90/13 92/17 92/19
93/8 93/11 95/17 97/25 98/7 101/3
101/4 102/2 106/8 106/20 109/4 109/7
109/24 111/17 112/24 113/7 115/9
115/15 116/4 116/12 118/12 119/14
120/5 120/10 122/16 122/25 123/1
123/16 125/15 126/1 126/2 126/3 126/8
127/2 127/24 128/24 135/9 140/19
141/2 141/17 141/18 145/11 145/20
148/1 149/1 149/11 150/2 150/5 150/8
151/21 152/8 153/9 153/14 155/14
156/1 158/24 159/2 159/15 161/17
162/23 163/17 164/13 164/15 165/17
166/8 167/24 168/11 169/10 170/14
170/16 170/17 171/17
knowing [2] 39/16 45/21
knowingly [2] 143/15 154/13
knowledge [14] 104/21 126/13 126/14
136/20 137/3 137/25 138/4 138/10
138/16 138/19 138/24 139/6 139/7
143/19
known [7] 8/1 77/24 82/23 106/14 107/3
107/4 107/13
knows [4] 3/17 123/23 142/4 167/8
Kolby [1] 70/10

## L

lack [3] 31/22 31/23 51/2
laid [3] 68/4 101/15 122/6
Lane [1] 1/21
language [24] 75/15 117/3 118/1 120/1
121/10 121/24 122/8 123/7 131/10
133/9 133/19 135/21 143/21 143/25
144/11 144/12 144/13 145/10 148/9
152/13 153/1 154/21 156/3 156/6
laptop [1] 169/15
large [3] 45/2 56/15 124/10
largely [4] 26/5 104/4 127/14 146/16
larger [1] 114/23
last [18] 2/21 22/5 23/25 26/12 44/6
51/10 90/2 111/22 129/25 152/7 152/17
152/22 153/4 153/4 153/18 157/14
166/11 171/12
lastly [1] 12/22
late [4] 74/16 83/1 127/7 165/25
later [11] 21/8 74/15 74/16 95/14 102/17
111/11 125/17 160/4 161/6 165/19
169/9
latest [2] 85/7 95/19
latter [1] 92/1
law [22] 3/17 9/4 13/8 13/11 37/16
51/19 53/16 94/12 113/6 122/6 122/7
128/20 134/7 134/8 134/21 135/16
135/17 136/21 137/4 137/14 145/12
163/18
LAWRENCE [1] 1/12
laws [15] 53/23 68/19 68/20 68/21

68/22 68/22 68/23 69/16 74/12 74/23
75/18 76/17 76/23 79/15 88/2
lawyer [8] 26/23 39/5 35/18 88/22 89/1
167/9 170/11 170/17
lawyers [6] 7/13 56/2 63/16 68/25 70/12
170/9
lay [6] 42/3 42/6 42/16 96/6 159/23
160/5
laying [1] 67/7 160/1
leads [1] 15/12
Leal [1] 35/7
Leal-Del [1] 35/7
learn [1] 15/11
learned [8] 21/13 21/15 21/18 22/10
29/12 41/1 45/23 48/4
least [39] 7/8 27/21 43/8 53/14 55/20
57/23 60/3 62/20 66/11 67/3 67/5 70/19
71/12 71/15 71/17 71/20 72/12 73/5
73/21 77/1 80/14 84/16 85/22 87/5 94/8
96/12 100/25 101/1 102/18 119/15
120/12 141/19 143/1 159/6 162/21
164/16 165/1 165/15 171/17
leave [12] 45/4 101/10 101/25 103/1
123/9 127/10 128/15 142/1 156/2 156/9
157/2 166/1
leaves [1] 98/2
leaving [2] 31/14 103/1
LEE [6] 1/5 2/4 70/12 106/9 107/2 172/8
left [7] 61/4 91/17 96/20 96/24 101/13
102/22 139/22
legal [38] 32/16 44/8 44/9 44/15 45/12
45/14 45/15 46/21 46/22 47/4 47/5
48/11 53/2 54/17 55/25 56/5 57/7 62/3
69/5 69/20 69/22 70/6 71/19 74/20
74/20 74/22 78/6 78/11 79/1 79/4 81/11
82/2 87/16 87/25 91/9 94/11 94/12 95/3
legality [1] 87/8
legally [1] 49/12
legitimate [3] 9/8 13/7 61/10
leisure [1] 119/17
Lena [11] 105/19 106/1 106/3 106/12
106/14 107/3 107/12 107/14 107/22
109/11 148/3
length [2] 101/4 112/8
lengthier [1] 101/19
less [4] 5/3 29/17 38/24 134/16
let [25] 10/20 11/4 12/9 13/20 14/9 22/5
48/17 49/12 49/23 64/22 78/20 81/20
96/5 97/24 113/7 114/24 116/4 119/24
121/7 151/21 155/14 164/15 165/5
167/24 171/17
let's [19] 4/1 35/17 43/11 55/6 55/7 56/2
68/5 83/20 91/24 100/10 103/4 122/22
127/9 127/13 137/1 137/15 143/5 151/2
155/20
letter [3] 55/17 125/7 161/4
letters [1] 129/15
letting [2] 156/14 169/18
level [2] 73/21 140/24
lied [1] 148/2
lieu [1] 100/18
life [1] 42/10
light [1] 139/15
lighter [4] 130/2 130/11 131/6 131/19
like [72] 3/5 3/6 3/9 3/15 3/23 5/3 7/4
38/15 46/8 49/2 51/6 55/10 57/3 57/25
59/7 59/21 60/5 60/25 62/19 66/7 73/14
75/14 79/11 81/23 83/9 87/4 87/7 96/6
96/9 97/13 97/17 100/6 101/9 102/17
104/23 105/9 106/17 106/20 107/4

107/5 112/14 116/7 120/7 120/7 122/10
124/1 126/3 126/5 131/23 132/13 135/1
135/19 136/25 137/8 138/11 139/9
143/15 144/21 150/7 152/16 159/21
160/24 161/5 161/22 162/5 162/13
162/16 162/18 165/2 165/14 168/21
171/20
likely [5] 6/10 29/17 48/3 99/4 159/12
likewise [2] 40/24 42/11
limine [7] 3/9 35/17 43/13 43/21 44/6
68/9 125/4
limited [8] 10/15 28/14 30/9 31/21 35/2
74/2 80/14 83/4
line [4] 88/8 88/23 149/24 152/22
lines [6] 36/12 56/10 134/20 136/23
153/18 156/10
Lisa [4] 1/20 172/3 172/19 172/20
list [16] 98/7 98/14 98/14 98/19 104/23
104/24 105/1 105/8 105/20 106/4
109/12 109/14 109/15 109/17 109/22
140/13
listen [2] 24/8 119/17
litigate [1] 64/20
litigated [1] 64/21
litigating [3] 82/12 82/12 83/18
litigation [2] 63/12 95/7
little [23] 7/22 19/19 31/1 54/19 81/2
83/13 86/2 88/7 92/2 99/24 110/8
110/16 123/8 138/5 144/13 147/12
149/16 151/22 152/11 157/2 160/16
163/17 165/18
LLP [1] 1/15
loan [1] 42/14
local [5] 158/16 159/3 159/15 159/25
160/11
locate [1] 17/1
located [1] 34/9
locating [1] 26/3
location [1] 99/2
logistical [2] 3/24 169/13
logistically [1] 170/16
logistics [3] 3/23 158/9 158/13
long [3] 82/19 121/20 121/21
longer [6] 7/22 21/11 39/6 64/5 104/24
106/5
look [28] 57/16 60/6 60/17 70/22 70/23
71/9 75/2 81/16 82/4 82/5 89/14 89/19
90/19 92/23 116/7 122/14 122/17 123/9
133/6 143/5 147/21 149/17 151/1 151/4
155/6 155/14 158/7 168/22
looked [8] 4/11 5/3 5/8 6/9 7/4 88/7
88/22 90/5
looking [9] 58/11 72/20 77/21 81/20
87/7 92/8 113/10 124/19 150/2
looks [2] 152/15 171/17
lose [1] 144/21
lost [1] 19/19
lot [9] 52/4 54/1 86/21 92/9 126/6 133/5
160/19 162/20 162/23
love [2] 131/9 134/1
lower [6] 96/22 99/3 99/8 99/9 99/14
152/11
lucky [1] 100/22
lumped [1] 162/7
lunch [4] 112/18 165/1 165/4 166/10
lunchtime [1] 100/23

## M

machine [3] 97/19 172/5 172/13
made [29] 4/14 8/7 10/10 10/10 13/1

made... [2] 33/22 33/23
33/8 33/12 35/16 39/4 39/15 43/4 55/7
55/13 56/9 65/19 74/25 98/2 104/2
125/18 148/19 149/12 150/4 150/25
170/4

magnitude [1] 61/11

mail [1] 40/13

main [5] 68/14 75/14 75/16 98/15
112/20

mainly [1] 112/19

maintaining [1] 103/18

majority [1] 70/19

make [54] 7/17 10/22 11/1 11/25 18/23
21/20 22/7 24/7 25/10 25/20 25/22
29/17 31/7 37/25 54/6 61/3 61/3 67/3
67/22 69/19 72/16 74/2 75/22 76/5
84/12 85/23 86/3 94/19 95/21 100/13
101/7 103/6 103/21 103/23 104/15
109/9 111/14 112/23 113/9 115/24
139/19 139/20 147/3 149/20 149/20
149/23 158/17 159/9 167/5 167/11
169/23 169/24 170/5 171/6

makes [10] 11/25 28/9 38/19 63/7 72/21
130/11 133/1 137/6 149/25 157/12

making [6] 40/5 69/13 70/5 80/13
109/18 125/3

managers [1] 90/4

many [7] 8/8 12/4 31/16 76/6 121/8
121/13 159/8

map [1] 152/12

marked [2] 161/3 161/12

MARYLAND [5] 1/1 1/4 1/22 38/12
172/5

match [1] 144/13

material [15] 9/17 10/14 11/11 28/11
33/9 33/13 37/9 37/12 37/25 40/4 41/19
70/17 124/5 150/7 161/21

materiality [20] 10/11 10/25 36/16 36/19
36/21 37/19 37/20 38/8 38/22 39/8
39/14 39/21 39/25 40/19 40/22 41/4
41/14 43/9 123/19 150/15

materials [5] 50/7 82/5 82/7 120/11
121/24

math [1] 162/21

matic [1] 118/21

matter [24] 2/2 3/1 17/6 29/22 40/6
59/18 63/9 63/13 66/21 69/1 75/9 77/11
86/8 91/21 92/3 92/5 95/9 95/12 96/22
102/13 112/16 115/10 119/14 119/21

matters [5] 3/24 53/20 94/16 100/17
109/7

may [111] 4/5 4/23 7/12 7/24 12/5 14/16
14/16 23/25 24/5 25/8 25/11 28/8 30/6
30/6 31/24 34/19 37/8 37/10 38/14 39/4
40/4 46/23 47/14 51/6 55/20 56/1 63/18
64/9 64/12 64/18 66/19 66/25 67/6 69/6
69/6 71/8 71/8 71/14 71/20 76/25 77/7
78/14 79/13 79/16 80/17 80/17 81/18
81/18 81/24 82/1 84/17 87/2 91/1 91/13
92/14 94/4 96/6 106/5 108/3 109/6
110/7 110/20 110/21 111/5 111/5
111/10 111/15 112/22 114/11 114/23
119/21 119/21 122/1 123/18 124/18
128/21 129/13 130/1 130/10 130/17
131/11 131/11 131/17 132/2 132/25
133/12 135/2 136/19 137/10 137/17
137/25 138/1 138/9 138/10 139/6
144/21 145/23 146/19 147/2 148/9
148/20 149/12 151/16 151/17 152/4

153/2 156/11 156/11 158/19 166/17
171/2

maybe [5] 41/1 41/18 20/2 20/16
35/20 48/13 49/2 53/13 62/2 64/10
66/16 67/2 73/19 83/6 84/5 85/16 86/5
86/7 92/25 93/5 93/6 95/18 100/21
132/9 133/6 140/13 141/20 146/22
147/11 151/20 153/3 155/13 155/16

McCloskey [2] 9/11 9/22

me [78] 2/8 10/20 11/4 12/9 13/20 14/9
19/25 22/5 24/16 24/23 24/25 25/7
31/18 48/17 49/12 49/19 49/23 53/12
58/21 62/12 63/11 64/22 71/10 73/19
74/6 74/14 77/2 81/16 84/19 86/20
86/22 88/14 88/20 89/1 94/3 96/5 97/25
98/19 100/21 102/19 110/17 114/24
114/25 116/4 118/4 120/18 121/7 126/5
128/12 128/21 134/4 136/2 136/14
138/11 139/23 140/7 145/10 148/4
149/22 150/13 152/14 153/2 153/16
155/10 156/25 158/23 159/2 159/6
162/11 162/20 163/2 164/9 164/15
166/8 167/24 168/8 168/11 169/7

mean [81] 5/18 7/13 10/16 11/6 11/13
15/12 17/9 17/18 17/19 19/3 19/7 19/14
21/1 22/3 26/7 45/17 46/2 46/11 51/14
59/1 60/9 61/9 61/12 63/18 64/9 66/3
68/19 73/19 76/8 81/18 81/24 82/14
82/19 82/22 83/9 83/22 83/25 84/21
84/23 84/25 85/15 85/21 85/24 86/12
88/10 91/1 91/2 92/4 93/22 106/25
112/16 115/9 115/11 119/12 120/10
122/1 130/19 131/5 132/4 132/20
132/21 134/11 138/11 140/6 141/12
145/13 146/1 147/13 147/14 148/8
148/17 150/14 153/14 153/14 154/2
154/14 155/2 155/5 162/23 169/17
170/17

meaning [4] 99/21 99/22 139/7 144/19

means [11] 9/6 9/6 10/18 15/3 99/18
119/14 146/5 150/8 150/11 160/5
168/16

meant [6] 10/5 60/16 60/16 88/20 112/3
120/16

mechanical [1] 1/24

meet [1] 169/22

meetings [1] 165/2

meets [1] 10/18

members [2] 49/4 64/25

membership [1] 156/7

memos [1] 94/9

mens [3] 143/18 143/19 154/18

mental [1] 42/2

mention [1] 160/10

mentioned [4] 68/22 104/25 121/23
132/23

merely [1] 42/20

met [6] 33/16 34/2 61/24 73/4 73/5
152/10

methodology [1] 131/3

metrics [1] 70/8

microphones [1] 166/25

mid [1] 60/15

middle [7] 3/20 60/2 113/1 114/23
166/12 168/8 168/10

might [39] 7/21 12/19 16/5 47/13 48/15
58/18 61/8 61/8 62/2 63/6 66/5 67/25
68/2 70/18 70/22 76/20 79/2 83/11
87/10 99/21 103/8 115/3 115/12 116/8
118/8 124/7 134/24 140/22 148/1

151/11 154/5 155/25 160/3 160/4
165/25 167/25 168/9 168/16 169/8

mill [1] 161/15

mind [15] 9/25 19/4 21/11 50/11 50/21
52/14 52/23 54/13 55/5 55/19 89/6
115/4 128/13 167/20 168/13

minute [1] 164/24

minutes [5] 89/15 95/22 119/21 121/20
165/11

mirror [1] 119/7

mischaracterization [1] 123/22

miscommunications [1] 93/15

misconduct [13] 9/4 9/10 9/12 28/10
28/17 28/24 29/4 29/11 30/16 31/23
32/3 32/23 33/5

misleading [1] 32/9

misprision [1] 32/19

misrepresentation [1] 39/4

misrepresentations [1] 55/8

missed [7] 57/20 70/18 92/25 93/2
146/19 146/22 153/2

missing [8] 27/6 27/14 27/21 33/19
33/21 35/15 62/23 73/20

mistaken [3] 147/23 149/8 154/14

Mitchell [2] 28/22 33/2

mixed [1] 117/15

mixing [1] 83/16

model [4] 133/2 134/14 135/18 154/15

modification [1] 138/8

moment [5] 24/1 62/11 87/12 129/22
167/21

Monday [5] 85/7 87/13 87/19 92/13
100/18

money [1] 144/21

months [2] 8/8 35/13

more [50] 3/9 5/2 6/10 10/22 21/14
31/10 31/11 31/21 33/15 35/13 40/20
43/24 48/15 51/6 72/9 73/9 73/22 74/21
77/22 83/10 87/7 87/12 99/3 99/24
99/24 102/5 104/12 108/4 110/8 111/23
114/9 120/4 121/16 125/20 125/21
125/22 132/20 137/6 138/6 144/1 144/6
144/8 146/4 148/10 149/23 151/22
152/4 157/12 157/16 165/2

more productive [1] 48/15

morning [16] 2/7 2/10 2/11 2/14 21/9
45/23 48/5 65/3 87/13 87/19 92/13
102/19 105/13 113/1 164/15 164/24

most [11] 17/8 32/9 38/14 107/17 113/3
113/19 114/18 129/19 145/7 158/21
159/1

mostly [1] 115/18

motion [38] 3/7 3/8 3/8 4/1 4/12 4/23
5/10 5/12 5/13 5/20 6/3 7/9 8/12 12/19
22/15 22/16 27/4 27/5 33/7 33/17 34/11
35/13 35/16 35/17 35/20 43/8 43/13
43/18 43/21 44/5 51/6 68/9 68/9 70/15
81/25 87/24 125/4 125/23

motions [8] 3/7 4/1 7/2 7/5 73/18 74/13
86/21 87/5

Moussaoui [1] 28/2

move [19] 35/17 43/11 94/8 95/15 96/4
99/2 103/13 107/23 108/3 110/7 112/10
113/18 122/22 143/21 151/2 153/18
159/3 159/7 159/20

moved [6] 6/12 25/1 31/10 123/11
123/15 156/23

moving [5] 17/14 18/21 73/18 157/5
160/8

Mr [78] 5/7 6/11 6/17 7/6 16/5 16/16

**M**

Mr... [72] Case 8:13-cr-00167-TDC
26/6 38/2 45/18 45/22 45/23 46/1 46/19
47/11 47/13 48/15 68/13 69/13 70/8
70/16 70/20 71/3 71/22 72/10 72/14
72/23 73/4 75/9 76/4 78/18 78/23 79/4
79/16 79/22 82/14 84/13 84/16 84/18
85/9 85/9 85/19 86/24 87/17 88/12 94/4
108/18 109/8 109/10 109/18 111/20
114/3 122/14 123/18 124/15 124/16
124/21 125/7 125/14 128/18 129/18
131/4 133/9 134/24 139/1 140/7 141/17
142/4 146/10 152/23 155/25 156/9
167/13 167/19

Mr. [12]  14/10 14/14 15/15 16/5 18/25
20/16 47/3 55/7 55/16 56/1 102/1 164/9

Mr. Herzog [8]  14/14 16/5 18/25 20/16
47/3 55/7 55/16 56/1

Mr. Herzog's [2]  14/10 15/15

Mr. Pollack [2]  102/1 164/9

Ms [85]  2/12 2/12 16/4 16/8 17/7 18/3
18/25 19/11 25/16 27/17 29/12 35/11
35/13 38/5 46/7 46/24 47/1 48/5 48/25
50/3 50/4 50/5 50/6 50/20 51/24 52/13
52/21 53/1 53/1 53/3 53/4 53/6 54/25
55/12 55/15 55/23 56/1 58/12 62/10
63/9 63/17 64/17 64/20 66/18 67/24
68/7 69/13 69/21 70/4 70/9 71/5 72/5
72/11 73/8 74/4 74/9 75/21 78/25 80/18
81/12 81/19 88/21 89/23 92/23 93/4
102/8 106/1 106/11 106/25 107/11
107/13 109/13 110/21 110/21 111/1
111/4 114/4 121/8 124/8 136/6 138/16
147/19 148/14 150/16 155/3

Ms. [7]  24/7 27/6 34/11 34/18 34/23
35/7 66/9

Ms. Elbaz [7]  24/7 27/6 34/11 34/18
34/23 35/7 66/9

much [8]  3/12 32/1 67/12 85/8 87/18
115/10 166/2 171/20

multiple [3]  13/18 155/23 166/23

must [5]  134/25 136/9 136/17 153/21
153/23

my [40]  3/13 4/5 4/7 5/21 8/25 11/17
20/13 44/21 50/9 55/4 62/12 65/22
67/22 72/3 74/1 81/7 82/25 86/11 89/6
90/10 96/23 100/13 103/18 106/6
117/24 121/12 125/19 133/17 137/16
148/1 154/17 155/23 161/20 162/3
164/21 165/20 172/6 172/13 172/14
172/15

myself [4]  50/13 86/7 93/19 151/6

**N**

name [22]  2/22 53/4 63/11 64/5 105/7
105/20 106/1 106/12 106/25 107/12
107/17 107/21 109/11 110/1 110/2
110/5 114/2 128/3 128/4 128/6 148/2
172/16

names [16]  50/14 50/15 63/16 75/11
94/11 105/2 105/11 105/21 109/14
109/17 110/1 110/2 113/2 124/1 128/11
128/12

narrow [5]  41/10 69/11 90/21 91/13
140/22

narrower [1]  74/3

narrowing [1]  69/10

nationals [1]  26/18

nature [5]  11/24 33/9 42/17 55/9 136/11

near [1]  32/13

necessarily [12]  10/18 40/10 76/8 81/22
85/24 120/19 137/13 139/5 144/7
157/10 159/23 161/16

necessary [11]  31/13 32/7 35/1 104/8
140/5 144/9 146/5 154/2 154/4 154/12
155/4

need [54]  4/3 4/7 9/5 9/9 11/18 15/10
23/19 33/6 33/16 43/12 46/17 48/10
49/4 54/4 65/20 66/4 67/2 77/8 83/23
92/14 95/18 95/24 98/1 98/8 102/22
102/23 102/25 103/3 103/21 105/8
112/18 112/23 113/1 115/11 124/7
141/3 141/24 142/25 149/10 149/16
153/7 154/20 155/14 155/15 156/6
158/24 159/6 163/18 164/9 165/16
166/14 166/20 167/1 167/6

needed [4]  53/5 125/12 141/6 144/7

needs [10]  19/18 49/9 50/16 77/10
78/23 84/11 105/23 145/19 157/5 161/6

neighborhood [1]  61/6

neither [4]  108/8 140/23 151/8 155/3

neutral [1]  107/17

never [15]  5/4 12/5 47/18 52/21 63/9
80/12 82/6 82/10 83/20 122/4 133/4
152/9 160/5 162/21 170/13

Nevertheless [1]  29/20

new [3]  1/13 3/2 60/3

newly [1]  30/14

newly-indicted [1]  30/14

next [13]  3/12 20/18 21/9 94/4 98/3
100/18 103/13 132/16 134/20 153/9
164/1 164/2 167/7

Nguyen [1]  95/1

niceties [1]  49/9

night [3]  44/6 51/10 165/17

nine [2]  26/3 26/19

Ninth [1]  35/8

no [108]  1/3 6/16 6/24 6/25 7/1 8/7 8/10
8/22 9/1 10/23 12/2 13/1 13/2 13/7
14/17 15/1 15/21 16/6 16/11 17/11 18/1
19/4 20/11 20/21 21/4 21/6 21/11 21/15
21/23 22/17 22/17 22/17 22/20 22/20
23/14 28/3 28/6 31/14 33/5 33/12 34/16
36/2 38/19 39/6 39/22 41/2 53/3 54/14
54/15 58/14 58/19 59/5 63/2 64/5 80/8
82/17 83/16 84/19 86/15 88/8 90/10
93/24 97/11 99/21 99/22 101/12 102/17
103/22 106/4 107/9 109/1 110/13
111/21 112/2 113/17 118/2 118/18
118/20 122/20 122/21 122/24 123/21
131/6 134/9 139/7 139/11 139/12 141/7
142/6 142/9 142/15 142/20 144/20
147/24 149/10 150/20 152/1 155/1
155/18 156/22 157/6 157/22 161/23
162/22 166/20 170/25 171/11 171/12

nobody [3]  53/4 53/5 86/20

noise [1]  97/19

non [9]  26/18 126/7 130/18 130/21
130/24 131/12 132/17 132/22 132/24

non-financial [1]  126/7

non-Israeli [1]  26/18

non-prosecution [7]  130/18 130/21
130/24 131/12 132/17 132/22 132/24

none [6]  17/9 17/11 40/14 98/23 111/25
114/20

nonexistence [1]  93/15

nonsignificant [1]  150/22

normal [2]  119/14 170/5

not [358]

note [3]  40/7 127/1 170/1

noted [5]  5/11 28/13 40/10 41/5 71/6

nothing [16]  14/13 15/25 18/9 37/5
51/23 67/8 83/19 86/25 90/5 95/20
103/15 105/16 142/8 143/10 165/17
165/17

notice [9]  5/5 7/1 7/8 24/19 29/25 116/1
124/25 125/3 128/18

noticed [2]  25/25 109/6

notices [6]  17/19 24/23 25/2 25/25
26/17 35/3

notification [2]  4/24 32/20

notified [4]  4/9 18/20 20/14 20/15

notify [4]  4/18 163/25

notifying [2]  29/16 34/23

noting [1]  106/15

notion [4]  31/9 91/2 92/3 144/7

notional [1]  165/15

now [59]  2/2 7/12 15/11 19/8 20/19
21/14 23/6 27/24 28/16 34/23 35/17
41/21 43/24 44/3 48/6 52/8 56/11 57/21
59/4 62/18 66/20 67/3 67/12 68/3 70/12
73/22 74/14 74/16 77/6 77/20 77/20
82/21 83/2 83/8 83/25 84/5 84/7 86/23
88/6 90/11 91/24 92/16 92/22 95/15
109/12 120/5 122/13 126/25 127/13
128/16 137/15 139/22 140/7 140/12
140/20 142/11 164/10 170/1 171/18

nowhere [1]  32/13

NPA [2]  131/21 131/24

null [1]  81/24

number [30]  2/3 5/15 12/8 13/16 16/17
17/1 27/4 27/19 55/8 66/2 76/9 86/6
97/17 99/8 99/9 104/23 105/21 109/13
117/10 121/13 128/8 133/2 157/22
161/4 161/8 162/4 162/14 162/17 170/8
172/9

numbered [1]  99/3

numbering [2]  160/13 160/17

numbers [13]  44/24 69/24 96/14 96/22
97/11 99/14 160/18 161/1 162/8 162/10
162/19 162/20 162/21

numerical [2]  96/12 166/15

Nurit [1]  2/23

NW [2]  1/13 1/17

**O**

oath [1]  2/17

object [6]  72/17 80/15 134/23 135/25
164/12 168/17

objected [1]  124/25

objecting [2]  103/19 166/21

objection [21]  58/14 58/19 59/5 79/24
80/8 80/24 84/19 107/7 108/19 111/7
118/2 119/5 124/10 125/3 125/3 129/17
135/1 159/21 166/16 166/19 170/20

objections [13]  43/7 58/18 59/9 68/6
78/20 81/7 86/11 93/12 141/25 142/6
154/24 166/14 168/8

objective [9]  35/25 36/22 37/1 39/21
40/3 40/7 41/14 41/18 134/25

objectively [3]  37/8 150/16 150/18

objects [1]  128/19

obligation [5]  31/1 61/24 62/12 78/3
90/10

obligations [2]  65/22 73/4

obtain [1]  130/2

obtained [2]  45/24 45/24

obviously [24]  11/22 11/24 12/10 21/1

**O**

obviously [28] 8/13 8/21 9/25
55/21 81/22 85/11 86/12 95/13 102/20
111/12 116/1 123/4 140/16 142/3 144/4
158/5 159/25 168/23 169/4
occasions [1] 135/20
occur [2] 7/11 24/25
occurred [2] 32/20 156/24
off [11] 4/4 8/6 11/7 30/7 31/21 44/2
65/15 99/6 121/12 156/2 168/2
offense [4] 29/22 31/4 40/1 154/19
offenses [1] 141/22
offer [3] 116/3 120/15 122/15
offered [4] 33/14 38/9 161/7 164/14
offhand [1]
office [6] 5/16 5/22 5/24 158/20 160/16
168/13
official [7] 26/8 26/11 105/5 172/3 172/6
172/12 172/20
Offill [1] 41/25
oh [4] 9/14 13/14 55/18 137/18
OIA [5] 16/23 18/10 18/13 18/15 18/16
okay [126] 2/10 2/14 2/25 6/6 6/13 6/17
8/3 8/19 9/1 11/2 13/22 16/9 16/12
16/15 18/18 19/17 20/7 23/24 24/2 24/7
24/11 26/15 26/20 26/23 27/2 38/2
39/11 48/13 49/21 49/25 52/17 52/20
53/10 54/9 55/17 55/20 56/11 56/21
59/13 60/22 62/15 62/22 66/15 68/2
70/11 74/5 76/20 77/20 79/22 85/8
85/18 90/1 90/9 94/2 96/2 97/7 97/7
99/25 102/7 102/11 103/25 104/20
106/15 106/19 107/10 107/21 107/22
108/17 108/21 109/9 110/4 110/6
110/15 111/8 111/19 111/22 112/3
112/7 112/10 113/18 114/22 115/9
115/23 116/22 116/24 117/21 121/7
122/12 124/7 125/14 126/25 127/9
127/18 127/22 132/4 133/22 136/25
139/10 139/19 140/17 141/2 141/23
142/11 142/22 143/5 143/12 146/10
148/8 149/14 153/13 154/8 154/24
155/5 155/19 156/3 156/4 157/19 158/2
163/16 163/21 167/23 169/5 171/4
171/5 171/6 171/10
omission [2] 41/19 42/22
omissions [1] 41/12
omit [1] 136/8
once [8] 80/22 98/4 98/21 110/7 128/17
138/12 139/19 155/5
one [96] 3/9 4/4 7/10 7/15 8/4 14/7
19/17 19/20 22/21 24/1 25/21 30/25
31/24 38/14 38/23 39/5 40/3 41/22
42/21 49/13 50/14 53/3 53/14 82/9
87/10 90/4 90/11 90/12 90/13 91/3 91/3
91/11 92/3 92/23 97/21 100/25 101/1
104/6 108/2 108/14 112/20 114/13
114/17 120/13 121/6 121/19 122/19
123/5 123/7 128/24 129/10 130/17
131/18 131/20 138/8 139/7 140/1 140/3
140/11 140/21 140/22 141/19 141/20
142/16 143/14 144/19 144/20 145/21
146/13 149/14 149/17 149/21 149/21
150/24 151/3 152/12 154/9 156/7 157/4
157/15 157/21 158/3 159/3 159/6
159/10 159/25 160/17 162/8 162/14
163/14 164/25 167/9 169/12 169/18
170/8 170/21
ones [7] 46/9 72/5 99/3 113/12 129/9
142/18 145/6

ongoing [2] 5/6 19/14
only [41] 12/24 14/4 32/25 34/3 34/6
34/7 34/8 34/14 36/22 55/10 60/10 64/3
67/24 72/3 74/1 88/20 91/12 91/12 98/8
100/16 108/15 109/2 113/5 132/7 137/2
137/21 137/25 138/3 138/8 138/9
138/15 138/18 138/22 139/5 140/21
147/9 150/3 157/7 167/11 170/21
171/16
open [7] 24/4 24/23 25/24 26/24 27/1
43/7 102/22
opening [7] 100/24 101/21 116/13
116/15 116/16 116/21 167/12
operating [2] 68/18 76/23
operation [2] 87/8 87/9
opinion [25] 41/22 42/3 42/16 42/17
52/12 52/19 52/21 53/2 55/11 55/17
56/3 56/5 56/7 69/23 78/11 81/11 88/19
88/20 90/20 92/5 92/5 92/6 124/5 124/6
124/18
opinions [53] 42/6 43/22 44/8 44/9
44/12 44/12 44/15 44/17 45/13 45/14
45/15 46/22 46/22 47/4 47/5 47/16
54/17 54/19 54/20 54/23 55/22 57/4
57/5 57/7 58/13 62/3 69/5 69/20 69/22
70/6 71/18 73/7 74/22 75/4 75/5 75/11
75/14 75/16 75/16 78/7 79/12 87/7
87/25 89/10 90/19 91/11 91/14 94/10
94/17 95/3 114/1 126/11 126/11
opportunity [7] 61/1 66/21 80/16 98/24
116/16 159/14 169/8
oppose [1] 79/5
opposed [2] 33/25 108/5
opposing [2] 89/12 167/7
option [2] 39/19 119/18
orally [2] 67/11 159/20
orchestrator [1] 29/6
order [22] 4/9 4/24 8/2 9/3 9/10 21/7
27/7 28/8 30/10 35/11 62/2 66/24 78/1
84/11 95/6 96/12 96/13 97/8 148/6
154/11 165/8 165/9
ordered [1] 23/22
orderly [1] 59/19
ordinarily [1] 49/2
organization [1] 105/5
orientation [1] 113/4
original [1] 117/14
Orr [1] 40/23
Orseck [1] 1/15
other [115] 4/12 7/18 9/18 13/25 15/12
17/7 19/17 20/17 22/4 28/12 29/18
32/24 33/6 33/13 34/3 34/4 36/24 37/19
37/21 43/22 45/14 46/17 48/19 49/14
49/14 50/22 51/6 51/18 52/19 52/21
52/3 53/24 54/1 54/17 54/24 56/14
56/18 56/18 57/6 57/8 57/11 58/10
61/16 65/10 65/17 69/14 69/16 71/18
71/18 72/18 75/14 75/17 76/9 79/12
81/4 81/5 81/6 81/25 81/25 82/2 83/11
85/6 91/11 91/14 91/19 92/4 93/15
93/17 95/8 96/24 98/20 99/15 100/16
106/21 108/14 110/1 110/2 111/6
114/14 119/7 120/14 122/19 125/22
128/4 129/10 132/25 133/13 135/11
135/18 135/19 135/20 139/18 140/22
140/22 141/22 145/22 145/22 147/4
147/10 147/15 147/17 154/24 157/7
157/9 158/3 159/6 159/19 162/3 163/15
164/1 164/3 166/18 167/11 168/5 169/7
others [17] 18/3 21/13 64/18 64/19

67/25 71/14 133/10 136/21 137/4 138/5
135/19 138/24 146/9 147/24 149/9
153/7 160/4
otherwise [11] 6/19 37/20 49/15 73/3
78/10 100/21 133/1 160/10 166/8 167/5
171/19
our [24] 3/2 5/11 24/9 38/11 46/12
69/23 74/18 76/14 89/1 100/15 101/18
101/24 102/9 109/5 119/15 122/6 145/2
154/19 159/3 169/18 169/19 169/20
169/22 171/6
out [49] 6/4 9/24 12/1 30/1 52/19 54/15
68/4 70/23 79/13 88/4 90/16 96/6 99/2
100/8 101/15 104/7 108/10 110/22
112/19 113/21 116/10 119/20 122/6
125/12 130/22 133/3 133/25 135/3
135/14 137/5 137/13 140/25 144/5
146/5 146/7 147/13 148/20 152/13
155/7 155/19 156/12 158/6 159/11
162/21 166/9 168/25 170/4 170/9
170/12
out-of-court [1] 9/24
outs [1] 88/25
outset [1] 113/23
outside [4] 32/10 32/21 91/18 165/20
outsourced [1] 171/4
over [17] 30/3 35/5 43/25 48/16 64/16
65/9 70/15 72/13 80/5 85/15 85/16
89/16 93/13 113/24 113/24 143/22
171/2
overall [7] 3/14 36/20 36/21 41/17 74/11
113/19 146/11
overlap [1] 72/9
overnight [1] 165/18
overreach [1] 30/20
overreaching [9] 28/10 28/18 28/24
29/11 30/17 31/23 32/3 32/23 33/5
owe [1] 157/25
own [15] 12/24 13/18 21/14 29/9 41/2
41/23 59/1 89/6 97/13 130/2 131/19
127/17 162/19 164/21 169/19

**P**

packet [1] 128/16
page [10] 100/13 114/24 144/20 147/18
162/8 162/9 162/10 162/14 162/15
167/12
pages [1] 172/11
paginated [1] 162/13
pagination [1] 162/19
panel [2] 96/11 98/4
paper [2] 98/13 162/3
papers [5] 7/20 16/24 38/3 38/11 54/17
paperwork [1] 17/2
paragraph [9] 151/19 152/18 152/21
152/23 153/4 153/4 153/9 153/19 155/2
paragraphs [1] 152/7
paralegal [1] 171/1
parallel [1] 11/21
parameters [2] 58/11 59/6
parlance [2] 100/15 110/5
part [40] 3/9 7/24 10/19 48/24 50/4
75/19 77/5 83/7 83/12 88/12 90/11
90/18 92/8 92/8 94/21 95/6 101/1
101/11 104/22 113/5 117/15 117/15
123/13 126/4 131/15 132/10 134/3
136/19 137/2 137/22 138/3 138/9
138/23 139/6 139/19 140/18 148/14
148/17 157/8 166/14
parte [6] 5/12 10/11 25/8 56/20 66/14

# P

parte... [1] 68/8

partial [2] 120/15 153/4

partially [3] 4/20 10/5 17/24

participation [1] 157/21

particular [20] 30/19 38/21 39/9 40/4 40/6 40/10 43/6 62/14 67/23 68/20 96/10 113/5 113/12 114/10 124/4 144/10 144/17 153/15 153/22 169/3

particularly [5] 3/23 105/7 150/24 153/15 158/10

parties [21] 77/8 79/2 93/17 104/21 114/2 125/11 129/2 133/6 133/21 142/23 144/22 149/17 149/22 151/1 151/20 160/1 160/7 160/10 160/14 164/6 169/20

parties' [2] 30/22 113/24

partly [2] 149/15 149/18

parts [4] 35/18 69/16 78/16 112/20

party [9] 33/22 34/4 34/5 34/6 55/13 58/12 95/6 110/18 118/11

passage [6] 22/13 23/1 23/3 23/8 23/22 23/23

past [6] 96/24 99/15 111/10 140/24 165/5 165/6

pattern [4] 145/3 145/8 148/17 148/17

Pause [2] 97/6 129/24

peculiarly [2] 33/23 34/7

penalty [1] 131/22

pending [3] 2/2 3/6 30/18

people [19] 24/16 56/4 96/16 104/24 105/7 136/18 137/2 137/21 137/25 138/3 138/9 138/15 138/16 138/18 138/22 139/5 139/13 166/23 170/22

per [1] 25/22

perception [1] 41/23

perceptions [1] 36/17

peremptories [2] 98/11 98/11

peremptory [1] 98/5

perfection [1] 61/11

perfectly [3] 52/17 61/21 90/6

perhaps [28] 7/13 22/19 31/1 31/10 32/7 43/12 66/5 66/5 72/10 75/1 75/8 80/6 81/20 86/1 100/11 102/19 109/5 112/12 114/15 124/12 133/20 149/22 150/9 151/18 160/3 162/3 164/15 168/7

period [1] 80/14

perjury [1] 131/25

permissible [3] 37/16 39/5 50/14

permission [3] 13/6 45/25 108/11

permitted [2] 40/8 135/3

permitting [1] 33/10

person [21] 9/20 11/18 11/20 19/21 19/23 19/24 21/25 22/18 28/25 37/4 37/9 39/23 39/23 40/5 96/18 98/2 98/3 98/18 106/16 108/7 170/15

person's [2] 19/24 19/25

personal [2] 42/17 49/1

personally [1] 42/13

persons [1] 38/19

perspective [2] 42/21 132/7

persuade [1] 22/7

persuaded [1] 22/1

persuasive [1] 22/9

phone [1] 151/12

phones [1] 112/22

photographs [1] 162/16

phrase [1] 118/21

phrasing [1] 107/18

physically [2] 34/3 34/9

pick [1] 168/24

picture [1] 78/11

piece [1] 158/21

pieces [1] 92/9

Pinkerton [2] 156/8 156/17

place [6] 5/6 5/9 6/7 15/23 64/20 75/24

places [1] 138/2

plan [9] 47/13 62/13 101/20 116/20 165/12 166/3 167/17 169/22 170/15

planned [1] 27/12

planning [11] 46/10 48/19 59/14 62/5 73/10 78/7 86/16 102/2 103/3 116/3 163/6

plans [3] 36/5 73/12 78/5

play [3] 17/13 52/12 82/11

played [1] 118/4

plea [11] 129/5 129/8 129/13 129/20 130/4 131/24 132/6 132/8 132/24 133/3 133/12

please [6] 2/5 2/19 2/21 166/25 167/24 171/15

podium [2] 67/12 167/1

point [70] 4/10 7/9 8/25 14/16 15/7 15/20 18/23 19/10 21/24 22/6 25/10 26/12 29/14 38/10 43/13 44/11 46/10 48/4 48/10 51/12 58/4 59/11 59/20 63/23 64/11 69/4 69/19 73/18 74/1 77/20 82/16 82/25 84/4 90/1 92/2 97/12 98/22 98/24 106/20 106/25 115/6 116/6 116/18 119/24 122/16 124/9 124/11 124/13 124/15 124/24 126/22 127/12 128/14 131/11 132/15 140/24 141/16 142/9 142/17 146/3 148/8 148/11 149/25 150/4 150/16 150/21 156/13 157/16 158/12 169/6

points [5] 16/14 68/14 109/19

POLLACK [78] 1/16 2/12 5/7 6/11 6/17 7/6 16/16 17/3 19/18 20/6 20/14 20/20 26/7 38/2 45/18 45/22 45/23 46/1 46/19 47/11 47/13 48/15 58/19 61/3 70/8 70/16 70/22 71/22 72/10 72/14 72/24 73/4 75/10 76/4 78/18 78/23 79/5 79/16 79/22 82/14 84/13 84/16 84/18 85/9 85/9 85/19 86/24 87/17 88/12 94/4 100/17 108/18 109/8 109/10 109/18 111/20 122/14 123/18 124/15 124/16 124/22 125/7 125/14 128/18 129/18 131/4 133/10 139/1 140/7 141/17 142/4 146/10 152/23 155/25 156/9 164/9 167/13 167/19

Pollack's [3] 71/3 114/4 134/24

portion [2] 76/20 169/2

portions [3] 142/24 143/1 168/18

posed [1] 42/23

posited [1] 13/25

position [9] 19/2 47/23 48/2 48/6 48/23 57/13 62/24 88/14 117/24

positions [1] 164/12

posits [1] 52/18

possession [5] 44/18 44/19 47/16 64/2 78/9

possibility [3] 98/17 103/2 171/15

possible [8] 3/18 3/21 77/23 85/2 87/19 103/7 166/6 167/3

possibly [1] 165/24

potential [7] 12/13 28/4 30/11 32/16 37/10 75/4 75/4

potentially [8] 5/9 20/3 37/11 45/19 47/14 67/24 128/15 131/25

power [5] 24/18 28/3 33/23 34/8 169/6

practical [5] 17/6 77/10 102/13 119/14 119/18

practicalities [2] 120/10 121/2

practice [2] 36/7 124/2

practices [1] 124/4

pragmatically [2] 34/6 34/17

precisely [1] 15/7

preclude [1] 49/17

predictable [1] 12/16

predilections [1] 38/21

prefer [11] 56/19 102/12 102/16 102/23 105/3 143/16 160/7 160/21 161/14 161/17 165/23

preference [1] 145/3

preferred [1] 29/15

prejudice [1] 43/5

prejudiced [1] 15/5

prejudices [2] 16/2 170/13

prejudicial [2] 9/7 42/20

preliminaries [1] 112/11

preliminary [5] 3/13 112/13 113/14 142/13 142/14

preparation [1] 88/8

prepare [3] 128/21 163/6 165/7

prepared [6] 67/3 71/21 72/12 77/4 142/9 165/15

presence [4] 13/2 32/10 32/21 165/21

present [2] 27/9 32/18

presentation [1] 171/3

presented [1] 163/1

presently [2] 60/25 74/5

presiding [1] 30/3

presumably [4] 15/18 20/9 43/15 73/4

presumptively [1] 169/5

pretrial [4] 1/8 2/5 3/1 172/7

pretty [12] 9/12 19/6 61/11 63/8 63/13 71/15 91/6 92/6 95/19 110/9 115/1 122/7

prevail [3] 14/25 15/1 15/3

previous [1] 153/18

previously [4] 22/14 54/18 65/4 88/1

primarily [2] 44/22 135/2

primary [1] 76/14

principle [3] 95/5 119/13 144/15

prior [11] 5/9 10/2 22/23 24/14 38/13 67/10 87/5 103/18 104/19 155/8 155/10

prison [1] 131/10

privacy [1] 100/6

privilege [30] 28/5 44/1 45/24 46/3 46/16 48/6 48/24 49/16 49/18 49/19 63/5 63/18 64/4 64/5 64/17 64/17 64/18 65/9 65/10 65/17 65/17 67/20 72/13 81/13 81/25 89/16 90/16 91/5 94/24 95/8

privileged [6] 45/19 65/16 82/21 83/17 87/3 95/6

probably [14] 61/22 72/8 76/7 82/1 87/9 100/25 107/16 121/18 121/21 140/24 149/20 163/1 168/11 170/2

problem [14] 14/17 15/10 57/15 77/19 81/22 83/7 83/12 92/9 132/5 136/18 137/24 159/25 168/9 170/22

problems [3] 76/9 93/7 162/22

procedural [1] 112/16

procedure [4] 3/10 96/6 96/10 99/6

proceed [2] 6/10 102/15

proceeded [5] 15/2 15/2 15/8 16/1 19/12

proceeding [2] 9/25 19/13

proceedings [6] 1/24 67/11 171/21 172/6 172/12 172/14

P

process [12] 5/8 23/20 30/5 41/9
42/9 58/19 72/18 72/21 164/4 164/21
processes [2] 17/13 17/21
procure [1] 31/16
procured [2] 52/20 55/18
produce [19] 33/23 47/8 48/20 49/23
58/3 58/6 59/8 62/6 62/13 78/8 78/23
80/16 81/8 83/2 84/9 84/17 90/3 90/12
90/14
produced [41] 1/24 43/21 44/22 45/4
48/19 49/23 50/1 50/2 50/3 51/10 51/11
52/25 54/20 55/2 55/14 56/8 57/8 58/2
58/16 58/17 58/20 59/7 59/14 59/15
60/1 61/5 65/5 65/8 70/1 70/4 70/16
72/14 83/10 84/8 84/12 85/10 89/17
90/11 91/14 92/25 121/4
producing [5] 57/17 64/23 78/4 78/5
82/22
production [4] 49/17 50/10 56/14 67/23
productive [1] 48/15
products [1] 69/9
professionally [4] 105/25 106/11 107/12
107/16
proffer [6] 10/11 11/1 25/8 33/8 129/15
130/5
proffered [1] 28/10
prohibition [1] 109/1
promise [1] 22/13
promising [1] 171/17
prong [1] 33/6 33/16 34/2 34/21
proper [1] 148/4
properly [7] 42/23 145/22 147/21 147/23
148/7 149/8 150/17
proposal [3] 133/17 144/8 149/23
propose [3] 143/18 145/11 146/2
proposed [9] 4/19 30/5 33/9 36/1 36/3
40/9 134/13 145/9 152/5
proposing [3] 59/8 121/9 134/19
proposition [3] 9/19 36/9 83/20
prosecute [1] 132/13
prosecuted [3] 32/19 130/5 131/25
prosecution [32] 8/23 15/5 15/7 29/6
44/13 48/9 57/18 65/14 67/13 67/20
80/17 81/23 82/13 83/16 86/9 93/11
93/18 94/4 130/3 130/8 130/18 130/21
130/23 130/24 131/5 131/12 131/14
132/2 132/17 132/22 132/24 133/18
prosecutor [4] 13/12 28/18 28/23 32/4
prosecutorial [3] 28/9 28/24 29/11
prosecutors [2] 31/24 106/4
protect [1] 30/8
protecting [1] 164/23
protocol [1] 24/9
prove [3] 105/11 152/24 153/10
proves [1] 136/14
provide [13] 23/3 23/21 27/7 33/15
42/18 45/13 46/20 46/25 98/19 116/20
169/14 169/18 169/19
provided [9] 48/9 54/11 65/21 71/4
72/10 72/24 76/7 111/3 124/20
providing [1] 118/2
provisional [1] 74/24
provisionally [1] 72/12
prudence [1] 30/21
prudent [1] 30/18
public [1] 40/16
publicly [1] 93/8
pull [1] 123/4
pulls [1] 72/16

purely [3] 8/20 55/6 90/20
purports [1] 120/24
purpose [13] 13/7 89/5 135/24 136/3
137/8 160/12 161/11
purpose-type [1] 137/8
purposes [9] 53/17 53/23 56/22 59/19
77/25 81/4 91/19 108/21 109/15
pursue [4] 8/22 16/7 16/18 74/15
pursuing [3] 13/14 17/4 94/23
put [19] 5/19 23/17 40/11 40/11 65/6
76/18 127/10 127/18 128/16 133/3
138/8 140/3 144/16 152/14 153/17
159/14 162/10 168/20 168/20
putting [8] 76/15 87/1 101/20 103/4
139/2 144/23 154/21 156/24

Q

qualifications [2] 39/18 126/10
qualifier [1] 139/2
qualifiers [1] 138/12
qualifies [1] 138/25
quantification [1] 93/1
quarters [1] 171/2
question [77] 11/5 19/4 21/16 24/13
31/3 35/18 35/22 35/24 36/2 39/3 40/11
40/18 41/7 41/16 43/7 44/5 46/9 47/11
47/19 47/21 57/11 57/24 57/25 59/2
63/2 66/17 67/6 71/1 71/2 72/1 73/17
74/6 75/13 77/1 77/4 77/9 78/22 79/9
80/20 80/20 83/4 86/19 86/20 88/6 89/4
89/7 97/8 97/9 97/17 97/18 97/22 99/21
99/25 100/11 100/12 101/15 103/13
104/6 105/15 105/19 107/8 107/18
109/3 115/4 118/6 123/20 127/5 131/13
143/3 143/8 150/1 150/10 151/16
154/10 155/12 158/6 169/13
questioning [2] 43/5 98/6
questions [52] 3/10 3/11 3/24 36/6 36/9
36/10 36/11 36/15 37/5 37/14 38/9 39/1
39/13 40/8 40/25 41/3 41/8 41/10 41/21
42/5 42/15 42/23 43/1 43/9 48/14 96/5
96/7 96/8 97/3 97/8 97/14 97/15 97/20
97/20 97/21 97/23 97/24 99/6 99/19
99/24 100/2 100/7 100/10 103/10
103/11 103/12 103/18 104/7 104/16
105/15 106/6 150/5
quick [1] 155/20
quickly [5] 24/18 25/2 31/11 84/22 85/2
quirky [1] 156/13
quite [2] 13/11 22/10
quote [5] 38/16 133/25 168/20 169/2
169/2

R

raise [10] 2/19 58/18 59/9 81/7 86/11
93/12 109/11 122/23 125/12 133/24
raised [6] 23/2 59/4 74/20 79/16 127/6
127/7
raising [4] 75/13 76/22 82/15 109/10
range [2] 121/21 121/22
Ranney [1] 42/24
rather [9] 30/1 89/12 109/12 114/2
121/22 146/13 147/10 160/8 161/4
rationale [2] 8/5 9/8
Raza [2] 38/11 40/2
RDR [1] 1/20
re [3] 66/2 95/10 119/20
rea [3] 143/18 143/19 154/18
reach [6] 3/11 33/6 133/8 133/14 151/21
159/18

reaching [1] 30/1
read [13] 11/9 53/15 90/19 90/22 91/1
91/8 91/2 104/2 109/15 119/22 142/23
143/1 148/5
reading [2] 52/4 160/4
ready [4] 27/4 61/10 67/5 167/24
real [4] 11/12 83/4 110/2 143/6
reality [1] 153/14
realize [1] 112/22
realized [1] 8/24
really [40] 4/11 6/22 7/3 7/22 12/2 21/19
44/10 49/3 64/20 68/14 69/12 69/17
73/17 83/15 88/6 88/14 92/21 105/4
108/4 113/11 114/9 117/21 119/17
126/7 132/6 132/20 143/8 144/9 151/3
151/9 151/10 152/7 152/11 155/12
159/8 165/8 165/17 165/24 168/9
168/16
reason [23] 21/25 23/15 38/8 50/7 50/7
50/9 61/19 64/3 83/2 84/5 96/14 105/23
108/4 111/9 112/25 120/1 125/15
135/21 146/1 147/2 156/10 166/5
171/15
reasonable [12] 37/3 37/8 39/23 39/23
40/5 41/15 41/17 152/16 152/20 152/24
153/12 153/22
reasoning [1] 42/9
reasons [7] 7/12 100/6 134/6 134/21
135/10 137/13 168/6
rebuttal [1] 86/1
recap [1] 168/14
receive [4] 33/16 44/7 130/2 130/10
received [16] 5/4 5/23 6/3 6/5 7/8 43/20
45/2 45/2 68/17 68/24 69/21 71/5 72/5
94/10 116/7 124/14
recently [1] 44/6
recess [2] 32/17 96/3
recognize [2] 106/24 135/5
recognized [2] 24/24 29/20
recognizing [1] 144/14
recollection [2] 161/12 167/5
recommendation [1] 106/6
record [16] 2/6 2/22 6/3 25/20 94/7
103/23 104/10 141/4 159/9 159/22
160/4 160/22 161/8 161/16 161/19
162/11
recorded [1] 1/24
recording [6] 117/25 118/3 119/10
119/15 120/14 121/10
recordings [7] 117/3 119/16 119/19
121/3 121/8 122/9 122/9
red [7] 7/1 24/19 24/23 25/2 25/24
26/17 168/21
redundancies [3] 123/14 133/5 155/7
redundant [1] 104/8
refer [6] 106/12 114/2 114/4 145/5
162/9 162/15
referenced [2] 124/22 143/24
references [1] 129/20
referred [2] 45/19 160/23
referring [2] 56/12 168/14
reflect [2] 6/5 114/13
refresh [1] 167/5
refreshing [1] 161/11
refusal [1] 33/3
refused [2] 4/17 31/21
refuses [1] 28/25
refusing [1] 63/5
regard [8] 25/6 25/8 33/15 81/13 89/11
101/7 161/10 170/11

**R**

regarding [8] 35/1 46/5 70/22
71/19 72/11 75/13 129/4 141/11 144/20
regardless [5] 9/13 81/12 117/25 149/5
149/11
regroup [1] 96/8
regular [2] 31/7 47/3
regulated [8] 50/16 50/17 53/5 53/14
53/19 54/2 54/4 94/13
regulations [4] 76/17 79/15 88/2 94/12
rejected [2] 14/15 42/25
relate [4] 51/5 51/7 78/15 141/22
related [18] 18/3 43/24 44/17 59/16
59/17 61/25 62/4 63/4 64/16 73/12 78/7
78/9 78/17 80/19 83/14 115/18 160/13
162/5
relatedly [1] 161/2
relates [3] 9/4 90/20 145/14
relating [4] 42/2 43/9 95/9 124/17
relationship [4] 34/4 34/5 34/16 136/12
relative [1] 110/21
relatively [1] 80/11
relatives [1] 106/9
relaying [1] 53/2
relevance [4] 53/25 64/7 76/6 124/12
relevancy [1] 25/9
relevant [37] 26/14 38/10 39/10 41/4
41/16 41/20 46/5 46/6 50/7 50/21 50/25
51/14 52/13 54/1 54/12 55/19 57/14
63/1 63/7 67/19 71/8 75/21 76/7 82/1
105/11 111/11 115/13 115/21 123/1
124/21 124/23 126/22 128/15 140/19
141/10 157/16 171/13
reliable [1] 160/3
reliance [1] 45/10
relied [1] 50/24
rely [4] 44/12 45/8 46/20 122/3
relying [2] 126/12 126/13
remain [1] 7/16
remained [1] 19/14
remarks [1] 97/2
remedy [1] 16/5
remember [2] 21/8 93/24
Remind [1] 19/24
reminded [1] 110/17
removed [1] 152/4
removing [1] 146/8
render [2] 41/24 124/6
rendered [2] 34/25 55/11
repeated [1] 153/1
repeatedly [1] 45/18
rephrased [1] 99/19
replayed [1] 118/7
replaying [1] 119/21
reported [1] 172/5
Reporter [4] 1/20 172/1 172/3 172/20
represent [1] 67/13
representation [3] 58/24 58/24 124/4
representations [10] 39/15 40/19 43/3
55/12 55/13 75/23 145/20 147/20
148/19 148/22
representative [3] 108/23 110/18 164/6
representatives [3] 20/12 20/22 39/18
represented [3] 65/2 65/4 67/10
representing [2] 18/8 25/24
represents [1] 42/20
request [11] 7/1 30/12 33/19 43/24 44/3
54/17 87/23 89/12 104/19 140/16
requested [3] 74/1 135/24 152/17
requests [2] 17/23 103/19

require [6] 23/18 25/8 62/12 154/19
159/3 168/7
required [13] 55/7 58/17 58/15 59/13
58/3 94/13 136/20 137/3 138/4 138/10
138/19 138/24 154/16
requirement [1] 60/12
requiring [1] 78/1
research [1] 112/21
reside [1] 105/4
resolution [1] 3/11
resolve [4] 3/6 3/20 125/11 171/14
resort [1] 166/11
respect [10] 24/14 70/19 71/16 71/17
73/5 103/22 117/8 117/10 118/9 145/1
respectful [1] 166/13
respects [2] 125/21 125/22
respond [4] 42/14 85/9 87/18 87/21
response [4] 6/18 24/12 27/18 41/16
responses [2] 41/8 42/5
restating [1] 147/10
restriction [1] 111/9
restrictions [1] 82/6
result [2] 4/19 8/20
reveals [1] 95/6
review [12] 3/10 57/18 75/2 78/14 78/17
78/19 78/19 84/15 84/23 86/11 116/16
158/18
reviewed [2] 27/2 38/3
revised [1] 129/17
revision [1] 144/24
revisions [2] 129/19 139/16
revisit [2] 127/25 128/17
reword [1] 144/19
right [39] 2/19 5/3 12/25 13/9 14/1 18/5
28/7 52/2 52/3 52/10 53/7 54/4 55/10
57/23 64/10 65/7 68/2 72/8 80/2 80/6
85/3 90/14 91/24 93/16 93/22 96/23
99/10 104/13 116/11 122/13 133/25
137/18 140/7 145/10 148/15 155/8
158/2 160/17 161/23
rights [6] 4/18 13/19 14/8 16/2 16/4 30/8
ring [1] 72/15
rise [1] 140/24
risk [1] 105/10
RMR [1] 1/20
road [1] 152/12
Robbins [1] 1/15
role [3] 20/2 114/18 170/23
rolling [1] 84/24
rolls [1] 35/20
Roman [2] 110/7 157/8
room [4] 60/7 61/4 120/7 127/3
roughly [1] 53/18
row [3] 96/17 96/19 170/23
rows [2] 96/20 99/13
rule [52] 23/18 27/4 33/11 39/24 41/19
42/3 42/20 42/25 43/14 49/14 50/10
58/2 59/13 59/18 60/4 60/9 60/13 61/14
62/12 62/17 73/2 73/3 74/13 74/14 77/5
78/1 80/4 84/8 84/9 84/11 90/3 90/10
91/6 110/18 110/22 120/2 123/24 125/3
125/18 125/19 125/19 125/24 126/4
126/23 141/13 159/3 159/15 159/25
160/11 162/12 164/5 166/16
ruled [1] 40/24
rules [5] 37/15 49/14 88/8 158/16
166/17
ruling [6] 9/22 52/8 67/3 67/22 94/24
122/18
run [6] 12/23 13/17 14/6 125/16 162/21

171/3
run-of-the-mill [3] 12/23 13/17 14/6
running [1] 155/19
runs [1] 170/6
RUSH [2] 1/1 2/9
Russell [1] 1/15

**S**

sacrifice [1] 16/4
safe [6] 22/13 23/1 23/3 23/8 23/22
23/23
said [50] 7/20 14/13 14/14 16/16 18/6
19/24 19/25 20/18 24/15 35/21 39/10
48/17 49/22 52/17 52/20 55/1 55/1 56/1
58/13 59/25 61/6 62/16 67/4 70/16
71/14 71/22 77/11 81/23 83/6 86/25
89/1 90/2 97/15 103/20 106/17 106/19
107/2 118/6 119/19 120/14 122/8
125/20 126/1 126/14 131/5 153/13
162/20 172/9 172/12 172/14
sake [2] 58/5 104/10
same [43] 7/18 9/19 11/14 11/17 11/21
14/7 17/14 19/3 21/9 31/4 51/7 57/16
58/10 58/10 60/6 60/15 64/7 73/25
73/25 87/24 93/5 95/9 96/19 98/18
100/13 106/16 108/7 131/2 136/2 141/3
143/17 144/14 144/16 144/19 150/21
150/21 154/18 155/2 163/23 165/14
166/5 167/12 171/3
sanction [1] 61/16
Sand [10] 129/3 133/25 134/14 134/17
135/6 143/25 144/12 145/12 149/5
152/4
sat [1] 14/13
satisfied [3] 34/22 38/22 154/6
Saturday [2] 85/17 85/17
Sauber [1] 1/15
save [4] 157/14 159/18 162/19 166/12
saw [10] 48/16 63/9 70/4 70/9 73/8
73/11 81/12 87/4 100/14 116/25
saw that [1] 73/11
say [71] 5/4 7/19 11/16 15/10 17/23
22/22 23/3 32/7 35/24 36/23 37/13 46/6
51/1 53/13 56/5 56/11 58/5 58/12 60/3
63/23 71/11 71/15 76/3 76/13 76/20
78/1 78/2 78/12 79/9 81/10 83/25 84/3
87/11 87/23 88/16 88/21 89/15 91/9
94/16 106/10 107/1 113/23 118/18
118/23 125/23 126/6 126/21 130/1
132/1 134/25 136/8 136/14 136/17
136/17 136/18 137/1 137/2 137/23
139/13 142/9 151/9 151/10 151/12
152/8 152/23 154/11 155/9 159/19
159/20 168/15 170/13
saying [66] 8/14 14/18 25/17 25/17
25/24 26/7 26/8 26/10 51/4 51/13 53/15
53/15 53/19 54/5 54/19 55/17 55/22
56/21 56/23 56/25 57/8 59/14 59/18
59/21 65/24 68/24 69/6 69/24 70/1 70/4
70/3 71/7 72/7 72/24 73/6 73/22 76/21
77/20 79/25 81/19 83/5 84/6 87/3 88/15
88/19 89/5 90/13 91/8 91/12 92/16
103/22 117/14 118/24 127/24 131/13
137/14 138/3 138/18 139/1 145/17
146/4 146/23 148/2 150/20 154/4 154/5
says [20] 9/14 38/16 50/12 84/13 90/4
90/7 97/14 118/12 118/20 132/10 134/6
134/9 140/11 146/20 147/19 148/18
149/7 151/9 152/9 153/10

**S**

scenario [1] 148/25
scenarios [1] 148/25
schedule [4] 80/11 84/6 95/18 100/12
scheduled [2] 7/21 158/14
schedules [2] 80/13 101/20
scheduling [1] 5/8
scheme [4] 37/24 38/18 157/22 160/13
schemers [1] 38/19
scope [29] 47/13 47/13 47/19 47/25
 48/11 49/8 54/18 57/1 68/13 69/2 69/19
 69/20 74/22 76/24 77/5 77/7 79/3 79/11
 79/14 83/11 86/23 88/6 89/9 89/18
 89/20 92/16 124/23 128/17 133/7
sea [1] 157/2
seal [4] 7/16 29/15 31/6 31/14
sealed [3] 5/20 24/6 95/10
seamless [1] 3/3
search [5] 58/10 58/15 81/6 86/5 86/6
searches [1] 56/19
seat [3] 96/12 98/21 98/21
seated [1] 97/2
second [18] 18/23 33/6 37/6 41/6 45/12
 47/20 50/15 62/17 69/19 90/1 94/22
 96/20 104/21 105/14 110/14 124/21
 151/19 163/17
secondary [1] 98/5
Secondly [2] 9/9 12/12
Secret [1] 32/16
section [1] 114/16
secure [1] 13/1
security [1] 36/24
see [63] 3/15 7/22 12/9 17/15 21/25
 52/7 53/25 56/3 58/15 58/17 59/7 59/11
 64/10 67/20 68/5 70/9 78/15 80/3 80/9
 80/18 83/25 87/17 90/2 93/12 95/16
 95/21 95/22 98/20 103/6 105/10 106/24
 108/13 109/4 109/24 110/10 113/13
 113/25 114/24 115/13 118/7 123/6
 127/20 128/17 134/14 139/20 140/4
 140/17 140/25 141/23 143/6 143/18
 145/13 146/1 146/22 146/23 147/2
 149/24 152/18 155/6 155/24 159/12
 161/4 168/9
seeing [3] 118/15 120/23 157/4
seek [3] 41/22 45/8 87/11
seeking [12] 23/15 27/6 27/14 33/7
 34/14 35/14 39/16 44/10 45/6 46/4
 89/10 94/24
seeks [1] 91/21
seem [6] 51/4 63/11 63/20 81/16 125/14
 134/4
seemed [4] 43/19 53/12 75/14 89/1
seems [18] 11/12 26/6 43/24 48/14 49/1
 51/17 63/17 71/10 71/25 73/10 75/10
 108/22 119/23 129/1 132/4 143/23
 152/11 155/10
seen [3] 24/21 47/19 83/14
sees [1] 118/20
selection [1] 100/20
selectively [4] 45/13 45/22 46/2 54/14
self [2] 28/6 30/11
self-incrimination [2] 28/6 30/11
sell [1] 69/8
send [3] 45/18 109/12 109/17
sense [23] 35/6 41/22 43/8 46/2 60/13
 72/16 72/21 87/25 104/24 105/6 113/10
 115/10 119/13 130/12 133/1 140/20
 149/20 149/23 155/24 156/14 157/3
 157/13 167/15

sentence [17] 38/14 130/1 130/3 130/11
 131/6 131/6 131/19 134/20 137/1
 137/20 138/2 138/7 143/4 145/9 146/7
 155/8 155/11
sentencing [1] 132/12
separate [17] 19/15 21/20 23/9 45/5
 57/24 57/25 76/5 115/11 133/3 136/3
 143/14 149/20 150/15 152/2 152/18
 160/25 163/13
separately [5] 23/6 58/1 133/15 143/20
 149/5
sequence [3] 4/8 96/25 132/9
seriousness [1] 109/23
served [1] 13/7
Service [1] 32/16
session [2] 3/3 26/24
set [13] 4/13 59/23 61/14 80/11 81/24
 84/23 86/10 86/13 161/1 163/3 163/6
 163/8 163/17
setting [1] 59/20
seven [1] 101/18
several [1] 153/1
severance [1] 12/19
shaking [1] 48/16
shape [1] 109/6
share [5] 4/21 24/22 25/7 167/21 168/7
shared [1] 52/21
sharing [2] 65/13 65/18
she [31] 24/8 25/17 27/8 27/12 27/14
 34/19 44/12 47/2 48/6 50/12 50/24
 51/25 52/14 55/14 69/21 70/9 73/11
 75/22 75/23 90/7 90/7 90/12 90/13
 128/4 147/20 148/2 148/3 148/3 148/6
 150/17 150/18
she's [6] 47/5 48/11 56/7 76/18 76/19
 76/22
sheet [1] 163/8
shift [1] 144/5
shifts [1] 101/1
Shoham [2] 2/23
short [1] 21/7
shorter [1] 121/14
shorthand [2] 172/6 172/13
shortly [1] 17/25
should [47] 8/1 10/6 15/8 19/23 22/22
 26/8 28/14 60/4 63/21 72/14 77/22 79/4
 81/20 84/22 85/4 85/8 87/13 91/6 91/10
 91/14 93/18 110/1 112/21 116/4 127/5
 128/15 133/19 134/7 135/15 143/24
 146/19 147/11 151/18 158/6 158/17
 159/2 164/4 162/17 165/12 165/22
 166/3 166/8 166/11 168/2 169/14
 169/20 169/22
shouldn't [2] 64/6 112/23
show [14] 15/10 17/16 19/5 36/18 54/22
 60/2 60/14 136/20 137/3 138/4 138/19
 138/24 168/5 170/6
showed [2] 41/2 55/17
showing [5] 15/22 28/9 28/17 34/2
 35/15 43/4 57/4
shown [1] 31/13
shows [5] 30/20 31/22 98/14 126/20
 159/22
side [24] 3/2 4/8 62/16 85/6 96/20 96/21
 99/8 99/9 99/13 99/14 111/20 120/13
 120/14 128/21 151/8 156/3 159/10
 120/25 145/25 164/1 167/15 168/5
 169/7 169/18
side's [1] 98/20
sides [11] 39/25 40/3 61/12 61/17 73/3

78/2 98/17 105/1 143/24 161/20 164/3
sign [2] 30/7 31/21
signed [1] 121/17
significance [5] 10/7 41/23 41/24 42/21
 81/21
significant [5] 13/23 25/3 104/16 106/2
 133/15
silence [1] 124/9
similar [4] 29/19 43/3 129/4 138/25
Similarly [1] 29/2
simply [10] 9/6 12/23 15/3 16/1 23/3
 31/6 105/20 118/4 118/12 118/24
simultaneous [1] 98/16
since [12] 8/8 38/8 44/5 57/20 59/2
 71/10 77/18 106/22 154/19 158/10
 168/2 170/20
since these [1] 57/20
single [4] 10/9 36/8 91/4 121/6
singles [1] 135/14
sit [7] 20/15 96/17 103/3 109/3 164/24
 170/21 170/23
sits [2] 96/21 170/18
sitting [5] 98/25 99/1 107/25 108/6
 127/3
situation [16] 11/5 12/1 12/4 13/24 14/5
 14/6 20/24 21/21 22/3 43/3 58/25 114/9
 131/20 144/15 159/10 165/13
sixteen [1] 16/24
Sixth [2] 28/6 32/14
skip [1] 100/17
slide [1] 168/19
slightly [2] 41/6 66/17
slip [1] 163/8
smaller [2] 109/5 121/14
smoothly [1] 170/6
smuggling [1] 29/7
so [373]
soil [1] 23/5
sold [1] 156/24
sole [1] 50/9
solely [3] 50/24 122/3 161/11
solution [1] 6/4
some [124] 3/19 4/10 4/23 11/25 14/16
 14/16 15/9 16/5 16/14 24/14 25/11
 26/18 29/25 30/23 31/1 32/6 34/14
 34/20 37/19 43/12 44/7 44/8 46/8 46/10
 46/23 46/24 48/17 49/9 49/16 50/25
 52/19 55/2 59/20 61/16 62/2 62/9 64/22
 65/10 67/7 67/7 67/19 71/21 72/18
 72/23 74/10 75/15 78/11 80/18 86/5
 87/4 88/9 88/10 90/24 93/23 93/23
 95/21 97/15 99/19 99/23 101/10 105/6
 107/8 110/9 111/9 112/11 112/22
 112/25 113/4 113/9 113/20 115/19
 116/6 117/16 121/19 121/20 123/13
 123/13 125/21 127/4 127/12 127/23
 128/9 128/10 128/25 129/19 131/11
 133/9 133/12 133/19 134/24 135/9
 137/6 137/12 140/19 140/23 141/3
 142/12 143/1 143/21 144/9 144/11
 144/12 145/11 145/19 146/3 150/1
 150/21 150/25 154/13 156/9 156/12
 156/14 157/18 158/15 160/1 160/8
 163/1 164/10 168/4 168/9 168/19 169/6
 169/8 171/14
somebody [11] 11/16 15/17 50/6 53/2
 123/24 128/3 128/5 130/10 131/23
 165/8 170/18
somehow [7] 14/17 17/4 62/11 75/20
 90/15 126/22 152/19

## S

someone [5] 88/11 88/12 88/16 91/18 108/6 111/13 132/8 132/17 132/21 162/19
something [79] 49/16 49/19 51/25 55/10 57/20 60/3 60/5 60/23 60/24 61/8 61/9 62/23 63/3 63/4 64/21 70/18 73/14 73/20 74/15 77/7 77/10 79/2 79/17 79/20 79/25 81/18 87/13 88/17 91/18 93/1 93/10 104/3 104/9 104/18 106/10 106/19 111/9 111/11 112/17 112/23 114/25 115/12 118/6 118/20 120/16 123/9 123/20 125/8 128/16 128/21 129/15 130/22 132/13 136/25 137/11 137/11 139/9 141/17 144/6 145/16 146/2 146/4 150/13 151/18 151/20 157/8 157/25 158/22 159/21 161/2 161/5 162/5 164/18 165/24 166/11 166/24 169/6 169/24 171/17
sometimes [21] 3/18 3/18 96/14 100/7 112/24 114/7 115/15 123/7 137/20 137/21 137/25 138/3 138/9 138/22 138/25 139/4 155/5 160/1 160/9 162/10 171/13
somewhat [2] 119/23 127/19
somewhere [5] 61/5 83/7 104/5 121/17 133/9
soon [1] 166/8
sorry [2] 50/13 142/16
sort [44] 9/2 15/9 17/22 19/10 26/12 45/5 46/8 46/24 52/18 58/5 60/12 60/16 66/24 68/15 69/1 69/10 73/1 74/10 76/9 76/14 86/5 88/3 90/24 91/23 96/7 104/1 106/7 121/20 124/3 127/4 127/20 131/3 131/16 131/20 136/10 139/2 142/12 145/7 145/11 146/8 152/11 155/11 169/6 170/16
sorts [1] 169/16
sought [2] 24/22 30/9
sound [2] 79/5 102/1
sounds [17] 46/8 49/2 51/6 57/2 59/21 62/19 66/7 79/7 83/9 87/4 87/6 107/5 112/9 126/5 135/1 137/21 142/23
source [2] 62/6 148/12
sources [3] 28/12 33/14 56/19
SOUTHERN [1] 1/2
spaces [1] 109/5
speak [2] 7/14 39/3
speaking [5] 32/4 113/25 164/20 166/16 166/22
speaks [1] 120/21
Special [3] 107/24 108/1 108/2
specific [14] 33/12 66/11 67/14 67/16 74/20 75/20 79/16 85/3 87/9 105/19 110/8 114/7 143/1 148/10
specifically [8] 4/21 21/17 30/3 38/10 112/13 140/11 153/8 169/1
spending [1] 82/9
spent [1] 82/19
sponte [2] 28/1 168/17
spots [1] 99/1
squarely [3] 36/15 122/8 148/4
staff [5] 165/7 169/20 169/23 170/4 171/6
stage [16] 50/14 50/15 53/4 63/11 63/16 64/5 69/24 75/11 86/21 94/11 106/12 109/14 109/17 124/1 128/11 128/12
stand [7] 90/7 97/9 106/23 164/15 166/18 166/21 167/7
standard [25] 10/18 10/25 36/1 39/20 40/3 40/8 41/14 110/9 113/3 114/17 115/1 115/14 117/1 124/3 127/24 131/9 133/12 143/21 144/8 144/10 144/18 145/8 146/20 152/16 154/15
standing [7] 67/25 100/5 107/1 146/14 147/3 147/11 166/23
standpoint [4] 36/22 84/21 150/2 151/5
stands [2] 36/8 123/7
start [14] 3/6 4/1 49/23 77/21 81/20 87/20 94/2 99/8 101/20 113/2 123/10 165/3 167/24 169/11
started [5] 17/21 26/10 49/3 67/11 90/16
starting [3] 100/25 146/8 165/14
starts [1] 6/22
state [13] 2/21 18/14 18/16 33/7 42/2 50/11 50/21 52/14 52/23 54/13 55/19 105/3 105/8
stated [4] 28/2 30/23 34/11 35/1
statement [15] 32/8 32/9 32/13 41/19 42/22 101/13 116/13 116/15 116/16 116/21 137/7 138/17 147/18 150/6 150/22
statements [11] 10/2 10/4 41/13 43/10 51/18 100/25 101/21 121/14 148/20 149/12 167/13
STATES [46] 1/1 1/3 1/9 1/21 2/3 2/8 5/7 8/23 8/24 11/13 13/12 13/15 14/18 16/3 16/22 16/25 17/9 17/20 18/6 19/2 19/5 22/12 23/8 23/11 23/13 23/15 29/18 31/8 31/12 32/1 32/7 34/13 35/4 45/6 50/19 51/16 52/7 68/23 75/17 76/17 94/15 94/18 113/15 132/3 172/4 172/8
stating [2] 84/11 135/21
status [3] 19/21 30/11 34/24
statute [2] 136/4 143/17
stay [1] 165/6
stenography [1] 1/24
step [3] 39/5 94/4 129/6
steps [6] 24/17 25/14 25/18 31/11 39/8 94/5
still [11] 43/7 46/8 61/6 73/24 76/15 108/22 112/18 115/7 123/15 145/3 146/15
stipulation [4] 113/3 115/5 118/12 118/24
stipulations [2] 115/3 115/7
stop [3] 114/23 114/25 127/13
stopped [1] 161/14
stops [1] 86/25
story [1] 88/15
strategic [1] 168/6
strategy [1] 31/15
Street [1] 1/17
strictly [1] 122/1
strike [8] 98/15 98/17 98/18 128/12 134/19 134/20 153/11 153/17
strikes [3] 98/12 98/20 136/2
strongest [1] 91/20
stuff [1] 132/6
stupid [1] 134/10
sua [2] 28/1 168/16
sub [2] 113/8 162/17
sub-instructions [1] 113/8
subject [17] 29/5 29/22 50/10 51/19 53/16 61/17 63/13 66/21 69/1 75/18 81/7 91/21 92/3 92/5 95/9 95/12 122/18
subjected [1] 53/23
subjective [3] 36/25 39/9 39/21
subjectively [1] 150/17
subjects [1] 92/4 92/24
submissions [1] 27/3
submitted [3] 6/15 53/13 83/9
Subpoenas [1] 66/3
subscribed [1] 172/15
subsequently [1] 62/9
subset [2] 48/9 74/3
subsets [2] 69/15 76/19
substance [4] 113/5 123/14 147/13 149/6
substantial [1] 76/2
substantially [1] 19/14
substantive [4] 113/21 122/10 149/3 154/18
subtract [1] 5/1
succeed [1] 34/15
success [1] 39/17
successful [3] 15/15 31/5 31/15
such [20] 28/7 35/2 39/17 40/25 41/3 56/6 56/6 64/13 65/15 72/8 75/20 112/17 123/2 132/10 135/12 135/13 141/7 156/25 159/15 165/8
sudden [1] 82/21
sufficient [6] 33/8 70/25 81/23 152/8 153/1 153/11
suggest [6] 104/18 132/15 132/23 133/6 157/5 168/7
suggested [4] 18/24 113/20 143/14 151/8
suggesting [1] 17/4
suggestion [8] 46/23 70/18 86/4 114/4 131/17 136/6 152/19 160/20
suggestive [1] 16/25
suggests [2] 24/23 51/24
summaries [1] 116/9
summary [1] 113/6
superseding [1] 11/8
support [2] 90/23 110/24
supported [1] 144/9
supports [1] 153/6
suppose [4] 109/2 111/12 113/12 137/6
supposed [2] 92/18 165/6
sure [42] 4/3 22/8 24/7 25/22 45/3 49/11 51/14 53/19 59/3 62/19 63/7 65/1 72/20 73/19 74/2 88/13 100/13 101/7 103/6 103/21 104/15 106/20 109/18 112/24 113/9 119/24 126/6 131/9 132/19 142/4 147/17 151/13 158/17 158/21 161/24 162/1 164/17 167/5 167/11 168/3 169/23 169/24
surrounding [1] 46/14
susceptibility [1] 38/16
susceptible [1] 38/20
suspect [2] 23/20 23/23
swear [1] 98/23
swearing [1] 112/15
sworn [2] 2/20 97/3
synthesize [1] 144/10
system [2] 160/17 163/2

## T

table [6] 2/9 91/17 96/17 98/13 140/4 170/22
tainted [1] 20/23
take [46] 5/6 5/9 7/2 12/1 23/16 24/18 31/11 48/2 63/10 72/12 92/2 94/5 95/15 100/8 102/5 103/6 103/11 113/1 118/17 122/13 123/9 124/8 133/21 134/25

**T**

take... [24] 85/13 89/13 91/7
137/22 138/3 138/9 138/23 139/5
145/10 148/6 149/17 151/1 151/21
152/13 155/6 155/14 155/20 157/21
158/7 162/20 168/25
taken [13] 4/10 16/1 16/6 16/17 16/25
23/19 25/18 30/15 30/21 48/22 114/6
156/11 172/13
takes [2] 10/19 137/5
taking [8] 24/17 25/13 48/5 57/12 97/12
117/8 120/6 137/12
talk [13] 3/22 62/17 75/4 114/25 121/1
143/7 154/15 158/9 165/19 166/9 167/7
168/12 170/8
talked [5] 24/16 70/11 74/10 150/15
167/9
talking [29] 12/12 12/14 15/17 18/1 31/2
44/17 52/5 53/18 53/22 63/16 70/20
79/1 81/9 85/4 86/8 93/14 112/4 114/9
119/1 121/8 121/15 123/10 130/7
130/13 130/14 132/9 138/1 139/24
143/2
talks [4] 88/23 135/12
tangential [1] 110/16
tape [1] 172/14
target [1] 73/18
tax [1] 144/15
TDC [3] 1/3 2/3 172/9
TDC-18-00157 [2] 1/3 172/9
TDC-18-0157 [1] 2/3
team [66] 8/23 44/14 44/19 44/23 47/8
47/12 47/16 48/9 56/16 57/12 57/16
57/18 58/9 58/14 58/18 58/21 59/4 59/6
63/15 64/3 65/14 65/25 67/13 67/20
70/21 71/23 72/8 72/16 75/1 75/2 75/8
78/10 78/14 78/23 79/17 79/25 80/1
80/9 80/12 80/17 81/5 81/15 81/20
81/23 82/4 82/12 82/13 83/16 84/15
84/17 84/23 85/10 86/4 86/9 86/25
89/11 89/13 89/19 92/15 92/22 93/2
93/8 93/11 93/19 93/24 94/5
team's [3] 47/9 56/13 82/6
technical [1] 109/3
teed [2] 73/17 74/12
tell [27] 4/20 6/24 6/25 19/8 55/18 56/2
56/6 73/19 87/15 88/14 89/11 89/13
94/3 100/21 102/12 103/7 103/8 113/11
127/2 135/9 140/7 158/21 158/24 164/9
165/25 168/2 168/10
telling [2] 101/11 135/16
temporal [1] 131/16
ten [1] 165/10
Tenth [1] 40/23
term [2] 109/21 114/8
terms [22] 7/25 8/4 10/25 11/6 19/21
19/23 58/2 63/19 68/7 73/20 79/20
84/14 89/10 114/15 120/13 122/3 122/3
142/5 145/9 158/13 163/2 170/17
test [1] 169/24
testified [3] 4/16 20/19 32/19
testify [32] 12/24 13/9 15/13 20/11
21/12 22/11 22/2 22/7 22/12 22/19 22/25
23/8 23/9 23/12 27/10 29/21 32/1 34/13
35/9 37/2 37/11 105/1 110/18 120/22
123/23 124/2 129/8 130/15 130/18
130/20 131/22 131/23
testifying [13] 10/1 11/20 35/11 42/8
108/13 108/16 111/4 111/10 129/12
130/8 130/10 132/2 140/20

testimony [41] 9/21 9/24 10/1 12/17
12/20 13/5 14/3 14/5 15/6 16/6 23/16
27/10 29/4 29/7 29/9 33/9 33/11 33/12
33/24 35/14 38/1 42/1 42/3 42/16 42/18
42/20 89/3 101/18 110/25 111/6 115/5
115/8 124/10 126/23 131/19 134/22
136/22 137/5 141/11 142/5 172/7
than [34] 3/9 21/14 22/4 24/17 30/1 33/6
35/13 37/21 72/10 73/9 73/22 74/19
83/10 87/12 90/3 102/6 102/18 104/14
104/24 109/5 109/12 114/2 114/9
121/22 125/20 134/17 144/6 144/8
146/4 146/13 147/10 160/8 161/4 165/2
Thank [22] 2/24 8/3 16/11 16/12 23/24
26/16 26/23 26/25 38/2 39/11 68/11
95/23 95/24 96/2 99/16 116/23 128/23
139/12 154/7 154/8 171/11 171/20
that [1177]
that's [115] 3/18 3/21 7/23 8/25 11/10
15/7 15/8 17/20 20/13 22/16 24/9 24/17
25/16 25/23 37/17 37/23 46/11 46/19
51/16 53/9 53/21 58/7 59/11 61/10
61/17 62/8 64/6 64/20 69/1 71/6 71/7
72/5 72/8 72/20 73/9 75/11 76/2 76/18
76/24 77/11 79/2 81/9 83/12 84/2 86/15
87/14 88/20 89/3 89/6 89/9 89/22 91/5
92/8 93/5 93/10 94/6 97/1 100/19
101/13 101/23 103/9 103/25 104/3
104/20 107/6 108/24 109/4 109/7
109/22 111/8 111/11 111/14 112/22
114/11 114/18 114/19 118/18 118/20
121/25 124/20 126/4 126/9 127/6 127/8
127/11 130/9 130/21 131/1 131/8
131/20 136/10 136/16 136/18 137/7
137/9 137/11 144/23 147/12 148/8
150/18 151/20 152/9 154/2 154/20
155/7 157/5 157/13 160/12 160/12
161/2 161/16 163/17 164/2 168/9 171/5
their [43] 4/18 7/20 9/25 12/16 12/24
13/1 13/3 13/10 13/18 13/19 30/11
33/11 33/12 34/24 35/14 39/19 41/12
42/15 43/16 51/17 53/23 54/17 60/13
76/6 78/14 86/23 89/12 97/10 99/2
105/5 110/2 111/14 112/22 119/17
130/2 131/18 162/17 164/12 164/23
164/23 166/1 166/13 170/13
theirs [1] 34/19
them [132] 4/21 4/22 8/15 12/10 13/3
13/4 14/7 14/14 17/8 17/9 17/11 17/15
17/23 18/6 23/3 23/4 23/14 23/21 23/21
26/4 27/21 29/14 30/19 31/3 31/7 34/20
34/25 35/5 35/11 37/25 39/1 41/24 45/4
46/25 48/22 50/8 52/25 55/3 56/6 57/14
57/17 57/19 57/22 59/9 60/13 62/5
63/20 64/4 65/1 65/5 65/8 67/14 67/16
69/8 70/23 71/5 72/18 72/19 72/19
72/20 76/5 76/12 78/19 78/19 79/19
81/8 83/5 85/4 85/19 86/11 87/1 90/19
90/21 90/22 91/22 92/10 94/3 96/8
96/12 97/3 97/10 97/16 97/18 99/2
99/19 99/20 99/20 101/14 103/7 103/8
103/11 106/23 106/24 108/11 109/19
110/9 112/21 113/3 113/11 116/5
116/21 119/17 119/18 119/24 125/22
135/1 135/9 136/1 136/9 137/10 137/12
138/13 139/2 141/10 141/11 151/6
156/14 157/2 158/21 158/23 158/25
162/10 164/17 165/9 166/3 167/7 167/7
168/5 168/8 168/14 168/15 171/5

themselves [10] 37/21 55/22 57/16
136/19 137/2 137/21 138/3 138/9
138/19 138/25
then [172] 3/7 3/9 3/12 3/22 4/19 4/19
5/12 6/3 8/8 9/14 14/6 15/9 15/12 20/17
22/18 23/6 23/9 23/18 23/25 30/1 30/9
35/19 37/25 43/11 43/18 43/23 46/13
46/21 47/21 49/6 49/9 51/13 52/3 52/13
54/25 55/16 57/6 57/11 59/13 60/15
61/2 61/14 61/15 61/25 62/15 62/16
62/16 62/17 64/6 67/2 67/19 67/21
67/21 70/22 70/24 72/11 73/16 73/22
74/25 76/23 78/14 78/18 78/22 78/25
80/14 80/16 81/8 81/14 81/15 84/14
84/19 85/9 86/9 86/19 87/17 89/6 89/13
90/1 90/7 90/23 91/10 91/13 92/17 94/3
94/14 94/19 96/18 96/19 96/20 96/23
97/2 97/10 97/17 98/11 98/12 98/16
98/19 98/22 99/4 99/12 99/23 100/7
101/3 101/9 101/22 103/13 104/20
108/25 109/2 111/12 111/19 111/22
112/3 112/10 113/18 114/15 114/16
114/22 115/2 115/25 116/5 116/24
117/3 120/14 123/10 123/15 130/5
133/16 134/6 134/20 136/17 140/23
142/2 142/11 142/22 143/5 143/20
143/23 144/16 144/17 145/8 145/16
149/4 149/20 149/21 149/24 150/12
153/9 153/19 154/9 156/7 156/23 157/7
157/19 157/22 157/23 158/3 158/7
158/13 159/11 159/19 161/2 161/7
162/9 162/14 162/23 163/8 163/9
165/18 166/14 171/5 171/18
THEODORE [1] 1/8
theories [2] 155/13 155/16
theory [10] 48/21 55/20 85/21 99/10
120/12 127/25 144/4 144/5 154/20
165/20
there [223]
there's [88] 3/7 3/8 3/24 7/7 13/23 15/1
15/25 19/4 20/11 21/20 21/23 22/20
23/6 33/5 35/18 36/2 43/25 46/24 49/8
52/4 54/1 62/2 64/4 66/2 66/17 67/19
70/23 71/11 71/13 71/25 72/9 73/9 74/6
76/8 77/9 82/5 83/1 83/3 83/13 83/13
83/23 84/2 84/19 86/25 88/8 88/22 90/5
90/10 90/22 91/8 91/16 92/9 92/21
100/7 101/6 104/6 104/6 105/25 117/7
117/10 120/4 124/9 129/18 133/5 134/9
139/20 143/7 143/13 146/8 148/11
150/4 152/19 155/13 155/21 157/4
157/20 157/20 160/19 162/23 163/14
165/17 165/20 167/16 167/22 168/9
170/21 170/22 171/18
thereafter [1] 18/7
therefore [3] 15/23 69/14 103/19
these [164] 4/18 5/5 6/23 7/17 7/20 8/6
8/7 8/21 10/11 10/13 14/4 17/1 17/19
18/24 19/3 22/21 22/22 23/11 24/15
24/16 24/16 24/25 25/2 26/3 27/16
27/20 30/8 30/14 31/11 31/19 33/3 34/8
34/8 34/14 34/21 34/23 35/3 35/10
35/12 36/9 37/1 37/5 37/14 37/21 37/23
38/9 41/13 41/21 44/12 44/15 44/17
44/22 45/15 45/25 46/15 46/16 46/21
47/5 47/15 48/20 48/24 49/1 49/4 49/6
50/7 51/4 52/12 52/14 53/2 53/17 54/6
54/13 54/23 55/23 56/12 57/14 57/16
57/20 57/23 58/13 58/13 59/2 60/1 62/7
62/10 62/20 64/3 66/7 66/11 66/18

# T

these... [7] 66/23 68/5 70/15 72/5 72/25 73/7 74/3 75/11 75/15 76/4 77/2 77/13 77/16 77/21 78/6 78/17 79/1 80/19 80/21 80/24 81/6 82/15 83/1 83/2 84/15 88/15 88/22 88/25 89/4 90/19 90/21 92/12 92/24 93/21 93/22 105/2 105/6 110/7 111/16 111/23 112/14 112/14 112/19 113/9 115/14 115/16 115/20 117/2 118/12 118/13 118/24 121/13 121/19 121/23 127/14 129/9 131/11 131/18 134/6 134/21 135/7 135/8 135/10 136/11 136/12 136/16 136/17 137/8 137/13 142/8 151/5 157/3 162/16 162/24

they [280]

they'll [1] 97/1

they're [23] 11/12 37/16 57/21 59/7 59/8 59/10 63/2 63/24 71/7 76/8 92/17 93/13 96/10 96/13 97/1 98/3 98/24 98/25 99/15 101/14 104/25 111/17 116/2

they've [8] 52/17 60/10 61/6 63/1 86/5 99/1 110/3 113/2

thing [32] 4/4 14/15 19/18 20/23 38/23 51/10 56/6 78/12 84/24 88/20 90/2 96/19 100/11 127/24 131/3 131/8 133/4 136/2 139/19 146/11 150/21 151/4 155/6 155/8 156/15 157/4 160/2 162/18 162/18 165/14 167/11 171/12

things [50] 3/19 3/23 6/21 32/6 48/16 48/19 49/4 50/25 54/7 57/9 58/21 64/13 70/21 74/8 80/16 82/1 82/8 83/1 87/2 89/8 92/22 93/4 95/20 95/21 100/6 102/25 110/7 111/23 117/1 121/15 124/1 127/11 127/11 129/3 137/9 143/13 143/15 144/21 144/22 150/7 151/23 151/23 155/6 157/20 159/19 161/20 161/21 165/20 165/23 166/18

think [321]

thinking [5] 87/20 91/24 121/23 125/2 144/23

thinks [6] 10/24 81/23 88/17 93/2 134/9 151/6

third [8] 11/9 12/18 43/11 43/12 47/21 93/5 93/6 101/25

this [330]

Thomas [1] 32/14

thoroughly [1] 58/25

those [78] 10/2 19/15 23/19 36/15 37/4 39/1 47/6 47/20 50/19 54/18 54/20 55/2 56/10 57/3 57/9 57/13 64/1 64/19 64/24 66/19 66/22 67/16 69/10 70/6 70/16 71/19 71/21 71/24 71/25 72/3 72/4 72/13 72/13 72/16 73/13 73/22 74/7 74/21 75/6 75/16 75/20 76/11 76/14 77/18 78/9 84/17 86/16 87/1 89/16 89/16 91/23 93/12 95/13 95/19 97/20 98/13 100/8 109/16 112/12 116/1 116/13 116/20 117/10 117/10 118/15 121/6 122/9 126/11 142/3 142/14 143/19 143/19 145/6 150/14 160/25 163/11 167/16 169/16

though [15] 5/9 6/9 11/5 31/1 40/7 41/3 41/17 61/5 77/23 110/24 119/23 123/12 136/3 151/8 168/1

thought [20] 7/21 7/24 10/16 16/7 65/20 65/21 75/22 77/7 91/10 104/7 120/13 123/13 131/11 144/8 147/11 148/3 155/20 155/21 155/23 157/1

thoughts [2] 135/4 168/4

thousand [2] 61/6 86/13

thousands [2] 45/19 93/25

threatened [1] 95/8

threatening [1] 32/13

three [53] 19/20 20/9 22/4 27/11 27/21 29/13 50/1 50/2 50/13 50/17 50/19 51/4 51/5 51/7 57/2 57/3 62/7 62/20 66/7 68/15 68/19 69/10 70/15 71/4 71/12 71/16 71/18 71/25 72/3 72/4 73/3 73/25 73/25 74/3 74/7 74/19 78/18 79/1 79/15 80/10 80/19 80/21 80/25 83/5 83/8 83/10 84/9 94/9 95/13 100/14 101/15 134/20 157/20

three-week [1] 100/14

through [34] 3/12 12/9 55/18 57/13 70/21 71/22 71/23 78/9 82/5 82/7 87/1 97/3 97/4 97/15 100/10 100/23 100/23 103/12 103/22 110/6 111/15 111/19 111/23 114/6 114/19 114/22 114/24 115/24 131/3 142/17 142/19 148/24 149/16 159/21

throughout [1] 14/12

throw [2] 128/20 138/13

thrust [1] 75/16

thumb [1] 162/12

Thursday [3] 101/22 102/18 102/19

thus [1] 33/11

tie [1] 21/12

tight [3] 80/11 85/3 171/2

time [42] 4/15 6/12 7/18 12/15 16/20 25/2 29/14 31/5 46/1 46/10 65/3 74/7 77/22 80/14 82/9 82/19 84/9 85/8 86/2 89/21 97/12 100/24 101/10 101/12 102/6 102/24 104/9 108/6 112/17 114/6 127/1 140/12 140/21 149/15 155/20 159/18 164/13 164/16 164/25 165/3 166/2 166/13

timeline [5] 6/21 6/22 7/7 26/6 85/3

timely [1] 125/19

times [6] 16/17 107/11 109/25 137/9 152/18 153/1

timing [5] 19/10 21/17 83/25 84/21 85/5

tinkering [1] 128/25

tip [1] 8/6

title [1] 114/2

today [10] 2/4 2/15 3/5 67/10 67/10 77/4 77/25 88/8 164/14 171/7

together [18] 3/3 12/11 12/19 12/21 19/1 19/8 72/17 91/7 139/20 144/16 144/23 151/1 154/22 158/11 160/7 162/7 162/8 172/13

told [20] 31/25 32/18 36/13 36/13 36/17 36/18 40/14 50/20 52/14 52/22 52/24 53/3 53/4 53/5 58/21 126/12 134/7 162/2 162/20 165/6

too [4] 19/18 115/10 149/19 166/2

took [8] 6/7 6/23 15/23 25/14 31/20 54/25 90/8 104/7

top [1] 121/12

topic [13] 6/15 46/10 54/12 54/16 63/10 63/14 66/4 79/20 80/22 81/12 91/13 92/11 117/22

topics [46] 30/15 30/19 51/4 51/7 53/2 54/20 57/2 57/14 57/23 58/14 62/7 62/10 62/21 66/8 66/18 66/22 69/6 72/12 71/16 71/18 71/19 71/24 71/25 72/3 73/8 73/13 73/23 73/25 74/7 74/20 74/21 77/13 78/9 78/18 79/1 79/16 80/10 80/19 80/21 80/25 83/5 84/16

totally [2] 51/19 148/4 156/24

touch [2] 69/21 158/11

towards [2] 3/17 32/12

track [5] 19/19 97/13 97/15 104/1 152/4

transaction [5] 40/6 90/4 90/6 90/8 90/13

transactions [3] 42/14 87/6 118/25

transcript [17] 1/8 1/24 117/11 117/12 117/18 118/2 118/8 119/11 119/22 120/2 120/3 120/5 120/15 120/15 120/24 121/10 172/12

transcription [1] 117/19

transcripts [5] 116/25 117/2 117/3 117/9 119/25

transfer [1] 151/13

transfers [1] 151/14

transition [1] 3/4

translate [1] 118/14

translated [2] 118/22 119/2

translation [8] 117/12 117/20 118/18 119/3 119/5 120/5 120/6 120/24

translations [8] 118/9 118/16 118/18 119/25 121/5 122/9 122/10 158/7

translator [4] 118/11 118/14 120/8 120/19

travel [6] 23/7 23/20 23/23 29/18 31/7 31/7

traveling [2] 22/12 23/11

treat [1] 161/3

treated [2] 105/23 120/6

treatment [2] 41/9 41/12

tremendous [2] 45/20 123/24

trial [56] 3/16 3/20 10/1 11/20 13/24 14/7 19/6 19/13 22/12 22/25 23/8 28/19 29/9 33/25 34/8 36/6 58/18 59/19 60/1 60/2 60/15 60/19 61/10 63/19 66/25 73/2 73/6 77/19 78/3 82/9 84/12 85/25 100/14 101/7 105/13 111/6 112/8 113/4 115/24 116/25 119/8 119/8 121/4 122/6 127/20 128/1 158/10 158/14 158/22 161/15 164/10 166/7 166/12 168/3 170/7 171/14

trials [1] 158/16

tried [8] 12/21 58/24 112/12 144/10 144/13 144/16 144/18 162/9

trigger [1] 84/4

trouble [5] 8/5 10/13 15/21 71/2 81/2

true [6] 16/21 25/11 32/8 85/13 139/5 139/8

trust [1] 70/17

truth [1] 148/18

truthful [8] 145/21 147/20 148/7 148/9 148/22 149/13 150/6 150/22

truthfully [4] 131/22 131/23 147/25 148/3

try [21] 3/10 31/11 77/23 78/21 85/15 85/16 103/6 114/1 125/16 133/8 137/12 150/9 155/6 161/19 162/18 165/3 165/12 166/9 167/3 167/5 167/23

trying [14] 3/6 31/19 48/18 75/11 75/19 82/8 91/22 119/7 125/11 135/16 146/14 149/18 152/5 153/16

Tuesday [5] 84/12 101/21 164/15 164/19 170/2

turn [1] 148/20

turned [2] 93/13 146/7

turns [1] 144/5

tweak [1] 123/7

93/5 93/15 94/11 95/13

torn [1] 131/24

totally [2] 51/19 53/19 148/4 156/24

touch [2] 69/21 158/11

towards [2] 3/17 32/12

track [5] 19/19 97/13 97/15 104/1 152/4

transaction [5] 40/6 90/4 90/6 90/8 90/13

transactions [3] 42/14 87/6 118/25

transcript [17] 1/8 1/24 117/11 117/12 117/18 118/2 118/8 119/11 119/22 120/2 120/3 120/5 120/15 120/15 120/24 121/10 172/12

transcription [1] 117/19

transcripts [5] 116/25 117/2 117/3 117/9 119/25

transfer [1] 151/13

transfers [1] 151/14

transition [1] 3/4

translate [1] 118/14

translated [2] 118/22 119/2

translation [8] 117/12 117/20 118/18 119/3 119/5 120/5 120/6 120/24

translations [8] 118/9 118/16 118/18 119/25 121/5 122/9 122/10 158/7

translator [4] 118/11 118/14 120/8 120/19

travel [6] 23/7 23/20 23/23 29/18 31/7 31/7

traveling [2] 22/12 23/11

treat [1] 161/3

treated [2] 105/23 120/6

treatment [2] 41/9 41/12

tremendous [2] 45/20 123/24

trial [56] 3/16 3/20 10/1 11/20 13/24 14/7 19/6 19/13 22/12 22/25 23/8 28/19 29/9 33/25 34/8 36/6 58/18 59/19 60/1 60/2 60/15 60/19 61/10 63/19 66/25 73/2 73/6 77/19 78/3 82/9 84/12 85/25 100/14 101/7 105/13 111/6 112/8 113/4 115/24 116/25 119/8 119/8 121/4 122/6 127/20 128/1 158/10 158/14 158/22 161/15 164/10 166/7 166/12 168/3 170/7 171/14

trials [1] 158/16

tried [8] 12/21 58/24 112/12 144/10 144/13 144/16 144/18 162/9

trigger [1] 84/4

trouble [5] 8/5 10/13 15/21 71/2 81/2

true [6] 16/21 25/11 32/8 85/13 139/5 139/8

trust [1] 70/17

truth [1] 148/18

truthful [8] 145/21 147/20 148/7 148/9 148/22 149/13 150/6 150/22

truthfully [4] 131/22 131/23 147/25 148/3

try [21] 3/10 31/11 77/23 78/21 85/15 85/16 103/6 114/1 125/16 133/8 137/12 150/9 155/6 161/19 162/18 165/3 165/12 166/9 167/3 167/5 167/23

trying [14] 3/6 31/19 48/18 75/11 75/19 82/8 91/22 119/7 125/11 135/16 146/14 149/18 152/5 153/16

Tuesday [5] 84/12 101/21 164/15 164/19 170/2

turn [1] 148/20

turned [2] 93/13 146/7

turns [1] 144/5

tweak [1] 123/7

**T**

twelve [2] 45/16 98/18
twice [1] 152/21
two [40] 7/14 11/7 20/17 22/20 30/25 35/13 35/18 39/1 49/12 64/1 68/14 77/19 78/16 82/8 82/11 82/11 89/14 92/21 98/10 98/11 104/6 108/2 109/19 112/5 112/8 117/1 121/19 121/20 129/9 136/23 138/2 140/9 141/20 143/13 152/7 152/18 153/18 155/13 155/15 160/22
two-front [1] 82/11
type [4] 43/5 133/13 137/8 162/18
types [5] 132/25 151/16 151/23 151/23 167/14
typically [5] 13/15 32/1 37/23 98/12 128/5

**U**

U.S [27] 1/11 23/4 27/24 28/2 28/12 28/22 29/2 32/14 33/20 35/7 40/1 40/12 40/23 41/25 42/11 42/24 51/25 69/7 69/8 69/25 88/18 88/19 94/21 95/11 158/20 160/16 168/12
ultimate [1] 155/2
ultimately [1] 156/6
Um [7] 5/25 6/6 14/11 44/25 69/3 129/23 134/2
Um-hum [7] 5/25 6/6 14/11 44/25 69/3 129/23 134/2
un [2] 72/15 132/18
un-indicted [1] 132/18
un-ring [1] 72/15
unavailable [2] 28/11 34/25
unaware [1] 4/15
unbeknownst [1] 55/15
unclear [2] 31/2 54/19
under [32] 7/16 9/4 13/8 17/1 24/22 24/22 27/24 28/25 29/13 29/15 31/6 31/14 33/1 33/20 37/16 39/5 39/24 40/1 40/7 40/15 41/19 42/3 42/20 48/22 50/10 59/13 74/21 91/6 120/12 121/20 154/20 160/11
undercover [1] 139/8
undermines [1] 70/7
understand [40] 3/1 4/5 5/14 7/3 9/1 10/23 24/20 26/15 37/3 47/2 48/10 48/18 51/3 58/3 58/4 61/9 64/8 69/13 71/16 73/8 75/10 76/12 88/7 90/15 91/3 110/17 119/12 119/23 120/23 123/18 128/14 148/11 155/25 156/12 156/19 159/7 160/2 160/19 161/23 163/12
understandable [1] 35/4
understanding [12] 4/5 4/7 5/21 20/8 20/13 44/16 44/21 66/6 67/1 81/3 100/14 154/17
understood [4] 70/3 71/3 99/16 163/9
underway [2] 17/2 26/4
undue [1] 43/5
unduly [1] 42/19
unexpected [1] 60/24
unexpectedly [1] 161/6
unfair [3] 9/20 84/3 155/7
unfettered [1] 83/17
unilaterally [1] 30/1
unique [4] 35/5 160/18 162/4 162/17
uniquely [1] 44/18
UNITED [47] 1/1 1/3 1/9 1/21 2/3 2/8 5/7 8/23 8/24 11/13 13/12 13/15 14/17 16/3 16/21 16/25 17/8 17/20 18/6 19/2

19/5 22/12 23/8 23/11 23/13 23/15 29/18 31/8 31/12 32/1 32/6 34/13 35/3 45/6 50/13 61/11 63/27 68/28 78/20/19 76/17 94/15 94/17 94/18 113/15 132/3 172/4 172/8
universe [2] 79/13 87/10
unless [3] 23/21 103/3 142/4
unnecessary [1] 139/20
unnerving [1] 166/22
unrealistic [1] 121/2
unseal [2] 6/12 8/5
unsealed [1] 17/24
unsealing [3] 4/20 30/9 31/18
untangle [1] 92/10
Untereiner [1] 1/15
until [15] 3/20 8/23 16/7 25/3 26/13 49/19 51/23 77/5 83/2 84/5 140/4 142/18 143/9 157/2 165/1
unwieldy [4] 99/25 119/23 138/13 147/12
unwilling [2] 23/20 168/6
unwittingly [2] 17/8 31/3
up [47] 17/16 17/19 24/15 25/25 26/17 26/21 57/21 60/2 60/14 60/23 61/8 73/17 74/13 85/25 87/19 88/5 90/7 95/18 96/1 96/15 96/18 97/9 97/19 98/3 100/1 100/5 100/9 105/15 106/23 107/1 107/23 108/3 113/24 114/13 123/1 123/5 124/9 131/24 132/10 139/18 142/18 143/9 150/11 157/17 158/22 170/18 171/1
update [1] 171/19
uphill [1] 135/6
upon [1] 172/7
us [30] 18/15 18/21 19/8 20/14 20/15 23/17 24/8 45/14 45/18 56/3 72/21 76/4 78/20 87/15 89/11 89/13 92/18 94/1 97/10 109/16 111/16 127/12 151/21 163/17 165/5 165/14 169/21 171/15 171/17 171/19
use [64] 15/4 15/6 15/10 29/8 30/24 36/6 39/8 39/13 43/16 43/23 46/8 46/10 47/13 48/22 49/3 50/15 53/4 54/6 56/7 58/6 58/7 59/14 61/7 61/9 62/5 64/10 65/1 69/24 73/6 73/10 73/12 75/11 78/5 78/7 91/21 109/21 110/4 115/15 116/13 116/15 116/21 120/11 121/24 124/1 134/22 135/7 135/8 136/21 137/4 151/2 153/21 153/22 161/17 163/1 163/19 166/25 167/3 167/15 167/17 167/22 168/18 170/9 170/12
used [27] 15/12 49/7 63/19 70/9 77/3 77/3 88/11 88/16 89/5 106/1 106/11 107/12 107/17 107/21 109/14 109/25 110/3 110/5 117/2 128/3 128/5 128/10 128/12 141/13 153/7 160/10 161/11
useful [2] 160/2 170/10
using [9] 45/17 63/12 77/17 107/6 118/21 128/6 140/11
usual [2] 24/9 109/5
usually [9] 3/19 96/9 98/9 100/2 100/21 100/24 108/7 114/1 119/16 127/11 159/16 160/25 165/1

**V**

value [2] 67/7 77/13
VAN [2] 1/12 2/9
various [3] 48/16 123/11 133/7
vast [1] 70/19

Vaughan [2] 28/12 28/16
venire [1] 112/25
venue [2] 156/23/17
veracity [1] 141/22
verdict [2] 157/15 158/11
versa [1] 118/19
version [5] 51/11 117/4 120/16 138/22 139/4
versus [22] 2/4 8/23 8/24 16/3 27/24 28/2 28/12 28/22 32/14 33/20 35/7 40/2 40/12 40/23 41/25 42/11 42/24 94/21 95/1 95/11 120/14 172/8
very [37] 9/17 11/1 11/19 14/5 17/25 21/7 23/15 24/17 24/18 25/2 25/13 28/14 60/7 65/19 75/12 80/14 81/16 83/13 85/3 88/9 89/4 89/6 90/6 91/13 91/16 94/17 110/6 114/7 134/6 134/21 135/23 137/13 144/18 150/5 160/12 164/22 171/20
vice [1] 118/19
victim [3] 38/17 39/14 100/3
victims [4] 37/21 37/24 39/16 39/22
video [9] 117/7 117/9 117/25 120/22 163/7 163/11 163/13 163/14 169/13
videos [2] 117/16 121/19
view [8] 25/9 57/1 72/12 73/5 124/14 146/11 162/3 164/21
viewed [1] 130/16
viewing [1] 73/4
violated [1] 60/4
virtually [1] 104/4
visual [1] 169/4
visually [2] 106/24 166/19
voir [8] 3/10 3/23 95/16 96/4 103/11 103/17 104/14 110/1
volition [1] 13/19
volume [4] 85/5 85/11 86/12 121/2
voluntarily [4] 14/4 21/12 22/24 29/18

**W**

wait [5] 7/21 17/15 84/5 140/17 155/24
waiting [1] 31/7
waive [4] 45/25 60/25 64/17 65/12
waived [23] 45/22 46/16 46/16 48/6 49/18 57/17 63/10 63/18 64/19 65/11 65/18 66/22 67/1 67/2 67/21 69/2 72/13 76/5 81/13 91/5 92/17 94/25 98/3
waiver [56] 44/1 47/22 47/23 47/24 47/25 48/3 49/6 49/7 49/8 49/19 57/22 57/25 62/17 62/19 62/20 63/1 63/13 63/23 64/24 66/6 66/7 66/19 67/18 67/24 68/13 69/20 70/22 70/24 71/11 71/13 71/17 71/20 74/7 74/11 74/19 74/22 74/25 75/7 76/24 77/5 80/21 83/4 84/2 84/15 86/20 88/6 89/10 89/13 91/1 91/4 91/20 92/4 94/10 94/21 95/4 104/18
waives [3] 46/2 46/3 95/8
waiving [2] 57/23 103/23
walk [2] 99/11 99/12
walking [2] 99/15 99/15
wall [5] 83/20 96/18 96/23 99/9 99/12
walled [1] 65/15
want [81] 4/3 6/14 6/18 7/15 8/5 11/17 16/9 19/2 25/7 25/22 30/24 37/8 38/3 46/8 46/9 46/13 46/14 46/15 54/5 54/6 57/11 58/5 58/15 58/17 60/6 60/25 61/8 62/17 65/25 68/1 71/10 71/14 73/22 73/24 79/3 79/19 80/10 80/22 81/1 84/1 87/3 87/11 93/11 99/21 99/22 101/7

want... [36] 3/23 3/18 30/10 37/7 44/6
104/17 106/12 108/3 112/18 114/25
116/14 117/4 125/9 125/21 126/5
126/21 128/20 130/10 137/23 144/22
146/2 147/4 149/3 151/4 153/16 155/25
156/2 158/9 158/19 161/12 164/17
165/8 166/1 166/5 168/11 169/10
wanted [21] 18/23 25/10 36/18 43/16
72/22 74/1 93/25 99/7 101/5 104/15
109/11 110/22 113/13 129/3 129/6
139/21 144/1 152/14 154/10 167/11
170/19
wants [9] 56/17 61/23 81/10 86/20
97/24 122/14 143/25 160/20 170/21
war [1] 82/11
warning [1] 112/21
warnings [4] 4/13 11/23 14/22 30/5
warranted [2] 27/22 33/22
was [189]
Washington [3] 1/13 1/18 27/24
wasn't [16] 6/8 8/11 8/15 9/23 10/3 14/2
20/2 25/17 25/24 31/13 55/14 62/11
118/21 125/4 148/3 161/24
wasting [1] 89/21
way [63] 3/22 7/15 7/21 9/15 10/19
12/15 13/14 15/2 15/25 16/2 23/10
29/16 32/6 37/7 39/2 39/4 49/13 55/18
56/1 56/4 56/7 62/4 66/5 72/1 77/2
81/17 88/15 90/22 91/1 91/8 92/19 96/9
96/10 97/1 99/11 99/12 100/22 103/4
105/13 114/13 122/19 133/5 133/18
135/14 135/17 138/25 139/20 146/16
149/12 150/9 150/10 154/5 154/13
157/8 157/10 158/13 159/17 160/23
165/9 168/1 169/3 169/8 170/14
ways [4] 11/10 60/17 133/2 137/6
we'd [2] 71/9 107/1
we'll [45] 3/22 3/25 26/23 52/7 53/25
59/11 71/24 76/11 85/15 87/17 92/12
92/14 94/5 95/13 95/15 95/21 95/21
96/25 98/7 98/23 100/9 101/8 102/11
103/13 107/22 107/23 110/4 114/13
114/16 123/6 123/8 127/10 127/18
127/20 128/16 139/9 140/17 140/25
141/23 141/24 153/17 156/6 165/19
166/9 171/5
we're [84] 10/8 10/9 12/12 26/5 45/16
46/4 53/16 53/21 61/7 64/9 70/6 70/20
72/6 73/20 76/21 77/17 77/19 77/20
79/9 80/13 81/9 81/11 81/17 83/15 84/7
85/20 86/8 86/24 87/25 88/23 89/21
92/22 93/14 95/25 97/11 100/13 100/22
101/11 101/18 101/23 102/12 102/14
103/1 103/2 107/6 111/15 112/17 113/4
114/9 115/6 115/16 115/24 115/25
117/22 118/11 118/19 120/9 120/22
121/9 121/18 121/21 122/12 124/18
124/19 127/3 129/7 133/8 133/16 135/2
137/13 137/14 139/23 141/2 141/5
141/15 142/11 143/2 148/25 150/20
155/19 156/5 156/14 159/20 166/9
we've [22] 19/19 39/25 47/18 52/16
59/6 61/24 74/4 74/7 75/9 79/14 94/10
100/18 118/10 124/24 125/7 150/15
155/16 158/10 162/6 162/21 164/8
170/22
weaker [1] 21/22
Wednesday [1] 100/18

week [7] 3/12 100/14 100/16 101/25
102/13 102/14 128/4
weekend [2] 85/16 86/17
weeks [2] 77/19 101/15
weigh [1] 71/14
weight [1] 126/23
welcome [1] 164/18
well [97] 8/11 10/15 11/4 12/8 12/19
14/15 15/10 16/9 18/12 22/5 22/17
24/15 25/16 27/2 37/8 37/14 38/23
48/13 52/20 55/4 56/2 56/5 57/10 57/24
58/4 62/16 62/25 63/6 64/1 64/22 66/1
66/15 67/9 70/14 71/20 75/9 76/25 77/3
77/20 78/4 78/16 79/18 81/19 82/14
82/19 85/8 85/21 86/9 88/5 88/17 90/7
90/18 93/3 105/12 108/21 110/2 111/8
115/23 119/12 120/9 120/18 121/7
122/12 125/2 125/14 126/6 126/25
127/1 127/18 128/2 130/13 131/15
132/4 133/1 135/18 138/14 138/21
139/19 140/17 141/12 141/23 143/13
145/13 146/10 146/12 147/6 147/8
155/9 155/12 156/16 157/22 158/2
158/18 163/19 164/18 165/7 169/17
went [9] 5/22 6/11 54/25 55/23 70/15
74/3 74/8 74/17 80/5
were [112] 4/11 5/5 5/6 5/9 6/10 6/23
7/4 7/13 7/19 7/21 8/9 8/21 10/13 11/13
11/14 12/6 13/4 14/4 14/4 14/10 15/15
17/1 17/9 17/13 17/18 17/19 18/7 18/9
18/20 18/20 19/6 19/8 22/25 23/4 23/12
23/13 23/21 24/23 24/25 25/25 26/1
26/17 26/19 32/25 33/1 34/12 35/1
35/12 36/12 36/17 37/15 38/24 41/3
41/3 41/9 41/10 41/13 42/5 43/3 43/16
44/22 45/3 47/2 47/3 48/17 50/12 51/15
52/5 52/6 55/13 56/15 62/8 63/15 66/17
69/22 72/5 77/19 83/9 83/18 87/5 87/6
98/15 104/7 108/10 112/4 118/13 119/8
119/8 123/13 125/2 125/10 127/14
128/5 130/5 131/23 140/10 140/21
140/23 145/21 146/9 147/15 147/20
147/24 148/22 149/9 149/12 149/13
155/22 157/3 163/6 167/12 168/18
weren't [9] 9/18 12/10 18/25 26/18
26/21 37/12 46/23 54/3 74/2
what [247]
what's [11] 57/13 67/1 85/5 95/7 144/6
146/10 147/15 151/9 161/8 161/9
166/20
whatever [10] 30/24 46/14 53/17 61/3
61/22 62/6 65/25 89/18 96/14 110/5
whathaveyou [2] 86/1 118/13
whatsoever [2] 13/1 13/2
when [69] 4/10 5/8 6/1 6/5 6/22 7/4 7/8
7/25 8/2 11/5 11/19 17/19 17/20 20/14
25/14 27/11 28/24 29/7 29/12 29/23
31/2 31/3 39/5 46/6 49/22 53/13 53/19
56/11 58/21 69/24 75/3 77/16 80/13
84/4 86/5 91/21 95/3 95/5 99/11 99/14
101/6 101/11 101/14 103/5 104/22
109/17 111/16 112/3 112/18 114/8
114/25 120/4 120/8 121/1 121/4 121/18
122/8 125/6 127/1 127/10 158/14
165/22 166/9 166/21 166/21 167/1
167/3 169/15 170/8
whenever [1] 158/14
where [65] 12/1 12/23 12/25 13/17 14/6
15/12 21/23 23/17 28/8 28/18 30/13
30/25 32/15 32/21 32/25 33/5 33/22

34/8 35/8 40/10 43/21 47/20 56/1 56/4
59/4 59/12 63/6 63/16 64/6 66/16 75/10
75/14 77/11 77/20 82/11 84/10 94/22
95/2 97/13 103/1 105/4 114/5 117/2
117/17 123/6 123/7 123/10 126/16
126/17 127/10 128/24 131/20 132/8
132/10 137/10 143/3 149/15 149/21
152/8 153/9 153/17 154/21 159/10
162/6 170/17
Whereas [2] 12/6 91/11
whereof [1] 172/15
wherever [1] 76/18
whether [103] 7/20 11/6 12/13 12/14
12/16 22/2 23/2 23/9 24/13 33/12 36/20
37/19 38/19 38/22 38/24 38/25 39/3
39/16 39/23 40/16 40/20 41/8 42/6
42/19 43/2 44/16 51/16 51/18 51/19
52/5 52/6 53/22 54/1 61/15 61/15 61/16
62/18 65/15 65/16 66/19 66/20 67/22
68/18 70/23 71/22 72/9 73/2 74/6 74/8
74/13 74/14 74/15 74/23 75/19 75/21
75/23 76/3 77/2 77/9 77/13 78/9 78/22
79/2 80/21 81/12 83/4 84/1 89/20 90/20
90/21 92/19 94/13 94/14 100/3 101/6
106/2 108/5 109/3 111/13 113/25
115/10 115/11 115/15 124/4 125/12
127/5 127/6 127/20 133/14 141/24
149/11 150/7 150/22 151/16 154/16
155/20 158/4 158/6 164/16 166/7
166/10 167/4 167/13
which [95] 3/9 7/9 7/15 10/1 13/24 15/1
15/3 15/16 17/16 22/14 22/15 23/15
23/20 24/3 24/22 24/25 26/13 27/4
27/20 29/23 31/8 35/20 36/6 37/2 38/12
38/16 39/7 39/9 41/16 43/16 43/19
43/25 44/8 45/10 48/22 50/6 50/9 58/12
63/7 64/16 65/9 65/14 65/19 70/21
71/22 73/8 74/4 78/6 78/11 86/4 88/13
90/23 91/22 92/7 92/24 94/11 95/7
96/25 97/14 98/9 98/10 98/14 100/12
100/15 102/1 102/16 104/7 104/7
105/15 110/21 114/18 115/1 116/9
119/22 129/20 130/19 131/3 131/11
132/16 135/25 136/9 138/8 139/3 139/7
142/4 142/10 142/16 145/3 145/15
148/10 153/1 154/20 157/9 162/4 166/1
while [10] 6/13 23/4 25/10 30/4 35/4
82/23 106/11 117/22 127/3 159/4
white [1] 97/19
who [75] 12/5 13/12 14/4 18/2 18/2
23/19 26/19 28/5 28/25 29/5 29/13
34/18 37/11 37/20 42/13 64/18 65/17
65/17 67/25 67/25 97/9 97/18 104/25
105/6 107/2 107/11 107/17 107/21
109/14 109/25 110/5 111/16 112/12
120/20 123/24 128/3 129/7 129/8 129/9
129/12 130/1 130/4 130/10 130/10
130/13 130/15 130/15 130/15 130/17
130/18 130/18 131/17 131/23 132/17
136/18 137/2 137/21 138/3 138/9
138/15 138/17 138/18 138/22 139/5
139/23 140/11 141/4 141/12 141/21
141/23 146/13 160/4 164/1 164/1
170/11
who's [2] 98/6 111/17
whole [8] 7/3 12/6 17/7 20/23 20/24
120/1 155/6 168/23
wholly [2] 64/12 121/2
whom [7] 27/12 32/4 34/19 35/9 128/9
128/10 140/15

W

whose [2] 55/1 84/18
why [46] 2/17 7/12 10/20 14/20 19/8
21/25 37/23 38/9 44/2 47/24 49/7 51/14
53/19 59/3 61/2 62/19 70/20 70/24 79/4
83/2 83/25 94/2 95/15 96/4 103/11
104/9 105/8 105/23 108/5 114/24
119/24 120/17 125/4 125/16 131/4
131/12 135/10 135/12 135/13 135/17
135/20 137/9 157/5 160/2 160/3 170/9
wiggle [2] 60/7 61/4
will [72] 3/3 3/11 5/4 7/17 12/16 15/21
17/23 18/21 22/6 33/18 35/16 36/2
36/21 37/2 43/8 52/13 61/3 61/22 76/3
78/1 79/9 85/1 85/19 87/23 87/23 87/24
88/3 94/3 94/19 97/10 98/12 98/13
98/14 98/17 100/1 104/11 104/15
108/16 109/14 110/19 112/16 112/24
113/23 113/25 114/1 115/10 115/23
116/1 116/19 123/2 124/1 127/1 129/12
130/15 134/14 139/16 141/11 142/10
142/23 153/16 158/7 158/21 159/12
162/23 163/1 163/7 164/20 165/9
165/21 167/21 169/16 169/25
willfully [4] 143/15 143/22 154/13
154/16
willfulness [1] 154/19
willing [10] 21/11 22/24 23/12 23/13
34/12 62/1 62/5 67/12 68/4 73/10
wind [1] 20/24
wire [22] 36/4 36/24 40/1 145/14 147/7
150/3 151/10 151/10 151/11 151/11
151/12 151/12 151/13 151/13 151/14
152/3 152/24 153/6 153/12 153/19
153/21 158/1
wires [4] 143/1 151/2 151/17 151/23
wish [1] 37/10
within [15] 24/18 27/23 33/23 34/7
37/14 49/2 62/1 76/23 79/14 80/10
89/20 92/15 93/9 122/7 148/4
without [18] 9/7 14/21 22/25 23/10
27/25 29/25 32/17 57/18 65/13 65/18
72/19 85/4 125/11 133/20 136/22 139/4
159/21 162/8
witness [78] 9/17 9/25 10/5 10/7 10/9
11/18 19/19 20/10 21/10 21/10 27/6
27/15 27/22 28/1 28/5 28/19 28/20
32/10 32/15 32/17 32/18 32/21 33/19
33/21 33/22 33/23 34/3 34/5 35/3 35/9
35/15 37/19 38/21 39/9 40/14 41/15
41/23 42/7 42/8 100/3 100/25 101/1
101/19 101/19 101/21 104/23 104/24
109/2 109/12 109/14 109/15 109/17
109/25 118/19 118/20 120/20 120/20
120/21 123/11 123/22 125/15 125/19
126/2 130/8 140/13 140/14 141/4 141/7
141/20 159/13 159/20 165/7 165/11
165/12 167/1 167/4 167/10 172/15
witness' [11] 9/24 19/21 20/22 29/9
31/25 33/24 34/4 36/19 40/16 132/11
161/12
witnesses [70] 4/14 4/18 8/9 8/15 8/21
9/18 10/9 10/12 10/13 12/4 14/4 19/20
20/15 27/5 27/8 27/9 27/12 27/16 27/20
27/22 29/13 29/16 29/21 30/2 30/4 30/6
30/8 30/10 30/18 32/25 33/3 34/8 34/9
34/12 34/15 34/16 34/21 34/24 35/11
35/12 37/1 39/14 42/5 42/13 52/5
108/14 110/19 110/20 110/22 110/23
118/22 128/9 129/7 129/12 130/1 130/4
130/14 131/17 133/8 135/1 135/8 135/8
136/9 136/13 140/9 140/15 160/24
163/25 164/8 164/9
witnesses' [4] 27/10 33/9 36/17 41/7
won't [8] 3/19 51/22 52/3 92/24 96/1
98/5 142/24 168/7
wondering [1] 137/11
word [3] 117/9 137/17 138/8
words [8] 53/3 58/10 81/4 119/7 168/20
168/25 169/1 169/1
work [13] 32/6 67/7 102/24 105/6
122/11 146/14 159/9 160/7 161/1
169/22 171/5 171/6 171/18
worked [5] 6/4 17/16 126/16 126/17
126/18
working [4] 3/17 17/24 115/7 140/12
works [3] 84/24 100/22 170/6
world [2] 74/12 75/3
would [251]
wouldn't [10] 15/6 23/4 37/9 49/7 65/19
107/16 111/6 119/18 120/8 140/16
wrap [2] 95/18 95/25
writ [2] 56/15 124/10
write [3] 97/16 150/10 168/2
writing [2] 6/15 65/4
written [4] 43/22 117/7 117/9 122/11
wrong [8] 57/19 59/18 88/18 90/5
105/10 145/23 146/8 150/18
wrote [1] 151/6

X

Xinis [6] 4/12 4/17 4/22 5/11 6/8 14/15
Xinis' [2] 5/23 6/2

Y

yeah [11] 20/1 57/10 64/12 68/11
105/22 109/23 122/5 145/25 147/7
150/14 150/20
years [1] 38/13
yes [46] 2/16 6/20 16/19 18/11 21/1
23/2 25/23 25/23 35/23 38/7 44/4 46/11
46/18 48/1 48/2 51/9 51/9 60/11 61/13
73/15 79/21 86/18 93/23 97/9 97/11
97/14 97/15 97/18 97/21 97/22 99/20
99/21 100/1 102/10 111/18 112/6
115/22 117/6 117/16 123/6 125/10
143/4 154/23 156/5 163/22 164/8
yesterday [2] 59/24 60/20
yet [8] 16/24 26/22 31/20 34/15 66/19
74/13 138/17 160/15
York [1] 1/13
Yosef [1] 70/11
you [428]
you'd [2] 57/22 97/13
you'll [5] 98/19 98/20 103/6 159/12
160/15
you're [59] 5/3 8/14 15/17 18/5 18/8
20/21 26/8 31/2 44/17 48/19 51/13 52/8
53/18 54/5 55/21 56/22 57/8 57/12
57/23 58/11 59/13 62/1 62/20 63/12
64/23 68/4 69/24 73/13 80/4 86/16 87/7
112/7 87/16 87/20 88/13 88/15 91/22
92/8 102/2 106/15 108/5 108/5 116/3
127/24 128/11 130/7 132/9 139/1
145/18 148/12 149/18 157/19 158/17
166/17 166/21 166/21 167/8 168/23
168/24
you've [33] 4/6 6/14 14/6 48/22 51/4
56/8 57/2 57/13 59/4 59/14 59/15 59/15
59/21 60/1 63/8 66/4 68/4 68/4 68/7

68/10 74/12 83/5 83/10 83/14 90/21
100/3 102/7 117/1 122/14 125/8 129/17
133/19 168/3
your [208]
yourself [2] 82/15 170/3
yourselves [1] 2/6
Yukom [14] 50/15 53/5 68/17 68/24
69/15 74/23 76/15 76/22 88/2 94/13
94/14 106/11 123/25 140/12
Yukom's [3] 55/9 79/15 88/1