UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LEE ELBAZ,<br><br>Defendant. | Criminal Action No. TDC-18-0157 |

**ORDER**

Pending before the Court is Defendant Lee Elbaz's Motion for Expedited Reconsideration of Order Revoking Bail, ECF No. 313. On March 22, 2018, a federal grand jury returned an indictment against Elbaz charging her with one count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and three counts of wire fraud, in violation of 18 U.S.C. § 1343 and 2. On August 7, 2019, after a three-week trial, the jury returned a verdict of guilty on all counts. The Court (Hazel, J.) ordered Elbaz, who had been on pretrial release prior to trial, detained pending sentencing.

Upon conviction of a defendant, "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1) (2018). Thus, upon a finding of guilt, "the presumption of innocence is replaced by a presumption of detention." *Moreland v. United States*, 968 F.2d 655, 660 n.9 (8th Cir. 1992). The burden therefore rests upon the defendant to establish by clear and convincing evidence that detention is not necessary to assure her appearance at trial. *See United States v. Abuhamra*, 389 F.3d 309, 320 (2d Cir. 2004). In this instance, where there is no evidence that Elbaz presents a danger to any

individual or the community, the question is whether she has met this burden on the issue of risk of flight. In assessing the issue of risk of flight, the Court considers the factors identified in 18 U.S.C. § 3142(g). *See United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988); *United States v. Majors*, 932 F. Supp. 853, 855 (E.D. Tex. 1996) ("Among factors the district court should consider in determining whether to grant a convicted defendant's motion for release pending sentencing are those factors enumerated in 18 U.S.C. § 3142(g)."). As relevant here, these factors consist of the nature and circumstances of the offense and the history and characteristics of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g). In assessing these factors, the Court considers not only the submissions of the parties, but also the evidence presented at trial and the overall record in this case.

On the nature and circumstances of the offense, the wire fraud conspiracy was an extensive international conspiracy involving companies based in Israel and Mauritius engaging in fraudulent telephone and email communications designed to cause individuals to invest in purportedly legitimate financial instruments under false pretenses. Elbaz was the Chief Executive Officer of one such company, Yukom, based in Caesaria, Israel, and instructed numerous retention agents to lie to potential investors in order to procure such investments. Elbaz also had a role in the work of retention agents working for another company, Numaris, located in Tel Aviv, Israel, and with another company, Linkopia, based in Mauritius. Although the precise loss amount has yet to be calculated, exhibits introduced at trial provide evidence that the fraud may have involved over $100 million, with over $36 million from the United States. Trial Ex. 29.1. Without making any

findings as to the applicable guideline range, the Court notes that even if the loss amount proved to be significantly lower, such as a conservative loss amount calculation of more than $9.5 million, the offense level would still be approximately 31, factoring in the same enhancements for number of victims and the international nature of the scheme that were applied for other defendants in this same scheme. U.S.S.G. § 2B1.1(a)(1), (b)(1)(K), (b)(2)(A), (b)(10)(B). Even with a conservative two-level upward role adjustment, U.S.S.G. § 3B1.1(c), the total offense level would be 33, resulting in a guideline range of approximately 11 to 14 years of imprisonment. Such a significant potential sentence is a substantial factor in illustrating the significant risk of flight. Also relevant from the nature and circumstances of the offense are the fact Elbaz has significant ties to foreign countries and international travel experience, that Yukom, Linkopia, and owners of those companies who have derived significant financial resources from the criminal scheme remain beyond the reach of the American justice system in foreign countries, and that despite the testimony of character witnesses who had no insight into the criminal scheme, Elbaz has a history of using lies and deception to achieve her goals. All of these facts support a finding that Elbaz presents a significant risk of flight if released.

As for the defendant's history and characteristics, Elbaz has no criminal record, she has complied with conditions of release for the entire pre-trial period, and she has appeared for all court proceedings. Although she has an employment history, in recent years it has substantially consisted of work as part of the criminal scheme, and none of it has been in the United States. Significantly, other than her aunt in California, Elbaz has no family ties or community ties to the United States. Her entire life is in Israel.

Elbaz's pretrial compliance, although a factor weighing in favor of release, is of limited value. Prior to trial, Elbaz had an incentive to appear for trial because she had the possibility of

acquittal. Indeed, during a telephone status conference relating to a motion to continue the first trial date, Elbaz specifically told the Court, in emphatic and convincing fashion, that she wanted the opportunity to demonstrate her innocence at trial. Now that she has been convicted, the incentive to appear in court has significantly diminished, particularly in light of the very significant sentence that would likely be suggested by the Sentencing Guidelines.

More compelling is her almost complete lack of family or community ties to the United States and her fully established life in Israel, her native country. She has no personal incentive to appear for sentencing in order to maintain the ability to reside in the United States in the future. Moreover, given that her entire life is in Israel, Elbaz's claims that she lacks the resources needed to flee are exaggerated. This case is not one in which the defendant necessarily must secure sufficient resources to build a brand new life in a new country that can be sustained into the future indefinitely. While Elbaz could seek to flee to a third country, all that may be required is for Elbaz to find her way back to Israel. Where many of the defendants in related cases were based in Israel, the only ones that the Government has been able to bring before the Court are those who were based in the United States or who unwittingly or voluntarily traveled to the United States. The Government has yet to be able to extradite any individuals related to this scheme from Israel, or any other country, to the United States. There has been no showing that if Elbaz were to flee to Israel, she could be compelled to return.

In the face of all of these factors weighing against release, Elbaz argues that her proposed conditions of release are sufficient to assure her appearance at sentencing. Specifically, Elbaz's aunt has already posted assets valued at approximately $1.8 million if she does not appear for sentencing, and Elbaz offers to have relatives in Israel pledge real property in Israel. Although the possible loss of her aunt's property would appear to be a significant disincentive to flee, the Court

notes that the proceeds of the fraudulent scheme dwarf the value of that security, those proceeds have not been fully accounted for, and Elbaz has acknowledged in court filings that she remains aligned with those with control over Yukom and Linkopia, who likely continue to have access to the proceeds of the crime. Under these circumstances, and when considered in light of the likely length of sentence, Elbaz has not demonstrated by clear and convincing evidence that the proffered security is sufficient to reasonably assure her appearance at trial.

As for the offer to post real property in Israel as additional security, there has been no showing that the Court could, as a practical matter, seize such assets. Rather, the history of this case and related cases, in which individuals in Israel have to date remained beyond the reach of the American justice system, has shown that it would be extremely difficult, if not impossible, to secure such assets.

Accordingly, the Court concludes that Elbaz has not demonstrated by clear and convincing evidence that there are conditions of release that will reasonably assure her appearance at sentencing. For the foregoing reasons, it is hereby ORDERED that the Motion for Expedited Reconsideration of Order Revoking Bail, ECF No. 313, is DENIED.

Date: October 4, 2019

THEODORE D. CHUANG
United States District Judge