**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   v.<br><br>LEE ELBAZ,<br><br>   Defendant. | Criminal Action No. TDC-18-0157 |

**MEMORANDUM ORDER**

On August 7, 2019, after a three-week trial, Defendant Lee Elbaz was convicted of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and three counts of wire fraud, in violation of 18 U.S.C. § 1343. On December 19, 2019, the Court sentenced Elbaz to a total of 264 months of imprisonment to be followed by three years of supervised release.

The wire fraud conspiracy was an extensive international conspiracy involving companies based in Israel and Mauritius engaging in fraudulent telephone and email communications designed to cause individuals to invest under false pretenses in purportedly legitimate financial instruments known as binary options, under the brand names BinaryBook and BigOption. Elbaz was the Chief Executive Officer of one such company, Yukom, based in Caesaria, Israel, and instructed numerous retention agents to lie to potential investors in order to procure such investments. Elbaz also had a significant role in the work of retention agents at another company, Numaris, located in Tel Aviv, Israel, and with training of personnel at a third company engaged in the fraudulent scheme, Linkopia, based in Mauritius. Accordingly, at sentencing, the Court found that based on the evidence at trial, the loss attributable to Elbaz included the losses to all victims of fraud, from May 2014 to June 2017, based on investing under the brand names BinaryBook or

Big Option where the fraud was connected to Yukom, Numaris, or Linkopia, because such losses were attributable to the charged conspiracy and reasonably foreseeable to Elbaz.

In seeking to establish the loss amount for purposes of the United States Sentencing Guidelines, however, the Government relied almost exclusively on the Spot Option database, a data set that generally provided information on fraudulent transactions involving the BinaryBook and Big Option brands, and broadly argued that all transactions in the Spot Option database were part of the fraud. Because the Court found insufficient evidence to conclude that all of the listed transactions were connected to Yukom, Numaris, or Linkopia, it declined to accept the Government's position and instead, based on the available evidence, calculated the loss amount for purposes of the Guidelines as over $28 million. At that time, the Court did not impose an order of restitution but instead granted the Government leave to submit evidence to establish the appropriate restitution amount. *See* 18 U.S.C. § 3664(d)(5).

On March 18, 2020, the Government filed the Position of the United States on Restitution. ECF Nos. 367, 369. On May, 20, 2020, Elbaz filed her Response to the Position of the United States on Restitution. ECF Nos. 377, 379. The parties have waived a hearing on the restitution amount. ECF No. 393. Although the Court's determination has not been made within 90 days of sentencing, it may nevertheless order restitution because the Court previously found that restitution was warranted and was awaiting information only as to the proper amount, and the Court finds no prejudice to Elbaz.[1] *Dolan v. United States*, 560 U.S. 605, 611 (2010); *United States v. Johnson*, 400 F.3d 187, 199 (4th Cir. 2005).

---

[1] The Court notes that resolution of this issue was hindered by the onset COVID-19 pandemic. After the Government's submission on restitution was filed on March 18, 2020, the Court curtailed most operations due to the pandemic and issued standing orders generally extending all deadlines by a total of 84 days. *See, e.g.*, *In Re: Court Operations Under the Exigent Circumstances Created*

## DISCUSSION

Under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (2018), the Court must order full restitution to victims, consisting of those individuals or entities "directly or proximately harmed as a result of the commission of an offense for which restitution may be ordered," a category which includes the charged offenses. 18 U.S.C. § 3663(A)(a)(2). The Government has the burden to prove the amount of loss to victims to be included in a restitution order by a preponderance of the evidence. 18 U.S.C. § 3664(e). If the Government offers evidence supporting its restitution calculation, the defendant then has the burden to present evidence to dispute the amount. *United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018).

Although at sentencing the Court concluded that the Government had not established that the entire $140 million of loss reflected in the Spot Option database was attributable to Elbaz, it has now received supplemental information linking a substantial portion of those transactions to Elbaz and the charged conspiracy. The Government has now submitted, in addition to the Spot Option database, the third declaration of Michael J. Petron, a Certified Public Accountant and Certified Fraud Examiner, who undertook a manual review of the individual transactions from May 1, 2014 to June 30, 2017, the period of Elbaz's participation in the conspiracy, and isolated those which contained a reference to an agent identification number that, based on monthly sales reports, was assigned to an agent at Yukom, Numaris, or Linkopia. *See* Petron Decl. ¶¶ 4-10, ECF No. 367-1. The specific methodology included several conservative assumptions, such as including only those agent identification numbers associated 100 percent of the time with one of the three identified locations. *Id.* ¶ 5. By isolating those transactions, and considering the overall

---

*by COVID-19*, No. 00-0308 (D. Md. Apr. 10, 2020). The Court remains only partially operational at this time.

loss to consist of the total customer deposits in those transactions minus the withdrawals reflected in those transactions, Petron calculated an estimated loss attributable to transactions involving Yukom, Numaris, or Linkopia agents of over $106 million. *Id.* ¶ 7 & n.7. Out of an abundance of caution, and consistent with the information made available to the Court at sentencing, the Government seeks only a conservative restitution amount of $28 million. *Id.* ¶ 10. The Court finds that this methodology, as more fully described in Petron's declaration, ECF No. 367-1, was sound and yields a reasonable estimate of the loss to victims attributable to Elbaz. *See United States v. Gushlak*, 728 F.3d 184, 203 (2d Cir. 2013) (permitting a court to estimate the amount of loss qualifying as restitution where a precise determination would be difficult).

Where the Government has met its burden, Elbaz offers no contrary evidence and provides no persuasive argument to undermine the Government's calculation. First, Elbaz argues that the restitution calculation is inflated by including transactions linked to both Linkopia conversion agents and Linkopia retention agents when, in her view, the fraud was limited to the work of retention agents. The Court does not agree with such a narrow view of the evidence. At trial, the evidence established that Linkopia engaged in conversion—connecting potential victims who had responded to emails or other internet offerings to retention agents elsewhere—such that conversion activities were also part of the charged conspiracy. Where Elbaz was directly involved in turning conversion leads from Linkopia into transactions executed by retention agents at Yukom and Numaris, and she was also directly engaged in the work of Linkopia by personally conducting training for Linkopia agents, the evidence amply established that the fraud connected to Linkopia in some way, whether because of conversion or retention services, was tied to the charged conspiracy and reasonably foreseeable to Elbaz, such that the proceeds of such fraud are fairly included in the restitution amount.

Second, Elbaz takes issue with Petron's methodology in several ways, including the decision to consider certain transactions from the Spot Option database as matches to information in monthly sales reports connected to particular retention agents where the transaction amount differed by less than 10 percent. Such a rule, however, was reasonable where it was imposed to account for differences in exchange rates that would make an exact match unlikely. Any overinclusion of certain transactions is more than offset by the Government's request for a significantly lower overall figure than its total calculation using this methodology. Elbaz also argues that the methodology was flawed because Petron lacked a complete set of monthly sales reports. While this data gap provided for the possibility that an agent who matched a particular office 100 percent of the time would not have done so had there been more comprehensive data, Petron's conservative requirement that there be a 100 percent match provides a reasonable assurance that the limited set of monthly sales reports did not unfairly inflate the estimated loss.

Likewise, while agents such as Lissa Mel or Austin Smith were listed as working in two different locations depending on whether their services were rendered for BinaryBook or Big Option, Petron's decision not to include transactions connected to offices other than Yukom, Numaris, or Linkopia may have actually reduced the restitution amount artificially by excluding transactions that, based on other evidence in the case, were fairly attributable to one of those three offices. Finally, Elbaz's reference to the fact that certain retention agents known to be based in Tel Aviv were instead listed under Israel identifies a hypertechnical distinction of no consequence.

In the end, Elbaz's criticisms, even if fair in some instances, do not identify a systemic flaw in the methodology that renders the estimate unreliable. When a conspiracy is international in nature, extends over multiple years, involves millions of dollars in transactions, and includes the participation of numerous co-conspirators and victims, it is unrealistic to demand a precise

calculation and entirely appropriate to rely on a reasonable calculation based on appropriate assumptions and estimates. *See Gushlak*, 728 F.3d at 203. Any potential overestimate based on perceived methodological flaws is more than offset by the fact that the Government argues only for a $28 million restitution amount, significantly less than the overall, reasonable calculation by Petron. Upon consideration of the evidence at trial, at sentencing, and in the submission on restitution, the Court finds by a preponderance of the evidence that the Government has established a restitution amount of $28 million.

At the present time, however, the Court lacks sufficient information to finalize an Amended Judgment because although the Government has submitted a spreadsheet that appears to contain the customer identification numbers of the identified victims, it has not submitted a list of victims with their names and addresses and the specific amounts to be paid to each. *See* ECF Nos. 367, 369. The Government will be required to submit such a victim list, or provide legal authority for dispensing with this standard step, prior to the issuance of the Amended Judgment.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Elbaz's Judgment of Conviction will be amended to include a restitution amount of $28 million and a finding that Elbaz is jointly and severally liable for the amounts contained in the prior restitution orders against Lissa Mel, Shira Uzan, Yair Hadar, Leora Welles, and Austin Smith.

2. The Government shall, within **seven days** of the date of this Order, file a list of victims, including their names, available addresses, and the amounts due, to be included in the Amended Judgment. If the Government cannot provide such a list, it must provide

6

legal authority for the issuance of a restitution order in an Amended Judgment without such a list.

Date: August 7, 2020                              /s/ *Theodore D. Chuang*
                                                  THEODORE D. CHUANG
                                                  United States District Judge